SCHOPPE-RICO, John Moses.
PELICAN BAY STATE PRISON
C.D.C. # V-11328
P.O. BOX # 7500
CRESCENT CITY, CA. 95532,

IN PRO-PER.
FIRST AMENDED PETITION

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JUN 1 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JOHN SCHOPPE-RICO,
    PLAINTIFF.

VS.

ROBERT A. HOREL, WARDEN
    RESPONDENTS.

CASE NO. C-07-05416-JSW
"AMENDED PETITION" MOTION FOR LEAVE
TO AMEND. WITH MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF DENIAL
AND EXCEPTION TO THE RETURN ORDER
TO SHOW CAUSE.
HABEAS CORPUS, PURSUANT TO: 28 U.S.C. § 2254.

## MOTION FOR LEAVE TO AMEND.

TO: THE COURT; RESPONDENTS; PLEASE TAKE NOTICE, THAT PETITIONER SCHOPPE-RICO IN PROPRIA PERSONA, HEREBY SEEKS TO LEAVE TO AMEND THE FEDERAL HABEAS CORPUS PREVIOUSLY FILED IN THIS MATTER. AND TO FILE, IN ITS STEAD THE DOCUMENT PROVIDED HEREWITH AS THE "PROPOSED AMENDMENT". THE MOTION IS BASED ON THE SUPPORTING DOCUMENTS, WHICH ARE ATTACHED AND UPON THE FILES AND RECORDS OF THIS CASE. A PROPOSED ORDER IS ALSO SUBMITTED.

## BACKGROUND / LEGAL CLAIMS.

PETITIONER, MR. SCHOPPE-RICO BRINGS, THIS FEDERAL HABEAS CORPUS AFTER CONVICTION BY A JURY OF FIRST DEGREE MURDER (PEN CODE §187) [1]. DISCHARGING A FIREARM AT AN OCCUPIED VEHICLE (PEN CODE, §246), TWO COUNTS OF CARRYING A LOADED FIREARM BY AN ACTIVE PARTICIPANT IN A STREET GANG (§ 12031, (a)(2)(C) AND TWO COUNTS OF CARRYING A CONCEALED FIREARM BY AN ACTIVE PARTICIPANT IN THE STREET GANG §12025 (a)(b)(3). PETITIONER CONTENDS THAT HE WAS DENIED HIS CONSTITUTIONAL VALIDITY, BOTH STATE AND FEDERAL AMENDMENTS. AS THE MURDER COUNT, THERE WAS A FINDING OF INTENTIAL DISCHARGE OF A FIREARM CAUSING GREAT BODILY INJURY OR DEATH (§ 12022.53, (d).

    1.) PETITIONER CONTENDS THE STATUE UNDER THE STATE AND FEDERAL CONSTITUTION AMENDMENT SIX. WAS DENIED TO PETITIONER. COURT KNEW OF COUNSELS CONFLICTS OF INTEREST. THAT INFRINGES AND DENIES PETITIONER EFFECTIVE ASSISTANCE OF COUNSEL. IN RE: STRICKLAND V. WASHINGTON SUPRA. TO UNWAIVEN CONFLICT OF INTEREST INHERENT IN ATTORNEY REPRESENTATION OF PETITIONER IN RE: UNITED STATE V. ALLEN, §31, F.2d 1487, (9TH CIR. 1987) HE FURTHER CONTENDS THAT THE DEFECTS, SO AFFECTED THE TRIAL AND CONVICTION AS TO VIOLATE THE FUNDAMENTAL ASPECTS OF FAIRNESS.

---

1.) ALL REFERRING TO PENAL CODE (P.C. §, )

AND "RESULTS" IN A MISSCARRIGE OF JUSTICE., IN RE HARRIS (1993) 5. CAL. 4th 813. (21 CAL. RPTR. 2d. 373.).

2.) PETITIONER CONTENDS THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AND VIOLATED HIS FEDERAL SIXth AMENDMENT. CONSTITUTIONAL DUTY AND STATES. RIGHTS. WHEN PUBLIC DEFENDERS. INTENTIONALLY WITHHELD AND FAILED TO PROPERLY PRESENT A DEFENSE ON HIS HAND INJURIES OF HIS DISABILITIES, (I.E) AND INCLUDING ON FAILING TO ASK OR GET ANY DEALS OR PLEA OFFERS. IN RE. U.S. V. BLAYLOCK 20 F.3D. (1458) (9th CIR. 1994). COUNSEL HAS A DUTY TO PROBE MITIGATING AND EXONERATING EXCULPATORY EVIDENCE. OF PROOF DEMONSTRATING PHYSICAL IMPAIRMENTS AND USE IN/AS A DEFENSE. IN RE. U. STRICKLAND VS. WASHINGTON. INFRA. 466. U.S. 668 (1984). BEAN V. CALDERON . 163. F.3d 1073. (9th CIR. 1998). ESPECIALLY WHEN EXCLUSION OF EVIDENCE DEMONSTRATING PHYSICAL IMPAIRMENT IS ERROR. WHERE PROSECUTION VERSION OF EVENTS RELIED ON DEFENDANTS PHYSICAL ABILITY TO PERFORM CERTAIN ACTS PETITIONER WAS UNABLE TO PERFORM. ALSO COUNSELS FAILURE TO COMMUNI- CATE GOVERMENTS PLEA OFFER TO HER OR HIS CLIENT CONSTITUTES UNREASONABLE CONDUCT UNDER PREVAILING STANDARDS. UNDER . U.S. V. BLAYLOCK SUPRA.

3.). PETITIONER CONTENDS THAT PROSECUTOR WITH HELD EXCULPATORY EVIDENCE TO GAIN TACTICAL ADVANTAGE. FURTHER HE CONTENDS HE WAS DENIED HIS DUE PROCESS, RIGHTS UNDER BRADY V. MARYLAND (1963) 373. U.S. 83. IN RE. KYLES V. WHITELEY (1995) 514. U.S. 419  13. L.Ed. 2d. 490. 505. FAILURE TO DO SO CONSTITUTES A VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE UNITED STATES. STATE AND FEDERAL FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION. PETITIONER CONTENDS. POLICE AND HIM ACTED IN BAD FAITH ON THERE PART IN PRESERVING POTENTIALLY USEFUL EVIDENCE LIKE OF HAND INJURIES, INFORMANTS, COURT EXPERTS ECT. JUST AS IN  ARIZONA V. YOUNGBLOOD (1988) U.S. 51. 102. L.Ed. 2.d. 281. 169. S.Ct. 333. (HELD INFRA.).

4.) PETITIONER CONTENDS. HE WAS NOT FOUND LEGALLY DETAINED OF ARREST WITH- OUT BEING MIRANDIZED. HE WAS ARRESTED WITHOUT PROBABLE CAUSE AND A WARRANT SEARCHED AND SIEZED IN VIOLATION OF HIS FOURTH AND FOURTEENTH AMENDMENTS OF THE STATE AND FEDERAL U.S. CONSTITUTION RIGHTS. AND UNDER IN RE WONGSON. V. UNITED STATES (1963) 371. U.S. 471. 484. WHEN POLICE EXCEED THE LIMITS OF AN INVES- TIGATIVE STOP. FLORIDA V. ROYER (1983) 460. U.S. 491. 499. HE FURTHER CONTENDS COUNSEL'S FAILURE ON APPEAL AND AT TRIAL TO PROVE THIS CLAIM 4. VIOLATES HIS RIGHTS WHEN HE ESTABLISHED HE WAS SIEZED AND SEARCHED IN VIOLATION OF THE STATE AND FEDERAL FOURTH CONSTITUTIONAL AMENDMENT. WITHOUT PROBABLE CAUSE. STATEMENTS GIVEN FOLLOWING SIEZER AND INTERROGATION IS INADMISSIBLE . UNDER. IN RE'. DUNWAY. V. NEW YORK. 99 3. Ct. 2248 U.S. 2000.

5.) PETITIONER CONTENDS HE WAS WRONGLY CONVICTED. . IS DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL FAILURE OF PRESENTING A DEFENSE ON LURED CHARGES AND EVIDENCE AGAINST DISTRICT ATTORNEY VERSIONS OF EVENTS. ACTS. AND PHYSICAL IMPAIR MENTS OF DISABILITIES. OF INJURY. INTOXICATION. ELEMENT OF CRIME. AND PRESENTING COURT EXPERTS ECT. AND EXPOSING BRADY VIOLATIONS. AND VIOLATED HIS RIGHTS UNDER THE SIXTH AMENDMENT.

2

AN TO THE FOURTEETH AMENDMENT OF THE U.S. FEDERAL AND STATE CONSTITUTION UNDER STICKLAND V. WASHINGTON, SUPRA. TURNER V. DUNCAN, 158, F.3d, 449, (9th CIR 1998), HE FURTHER CONTEND THAT GOVERMENT VIOLATED HIS RIGHT TO EFFECTIVE. ASSISTANCE OF COUNSEL WHEN IT INTERFERES IN CERTAIN WAYS WITH ABILITY OF COUNSEL. TO MAKE INDEPENDENT DESCISION'S ABOUT HOW TO CONDUCT A DEFENSE STRATEGY, THE ACCUSSED SHALL ENJOY, RIGHT TO ASSISTANCE OF EFFECTIVE COUNSEL FOR HIS DEFENSE OBLIGATORY BY U.S. FEDERAL, CONSTITUTION SIX th AND FOURTEENTH AND ESSENTIAL TO A FAIR TRIAL. UNDER IN RE, GIDEON V. WAINWRIGHT. 372. U.S. 355, (1963) STILL UNFULLFILLED.    SEE IN RE; (CT; 2602 - 2603, ) MARSDEN DECLARATION ;.

(6.) PETITIONER CONTENDS HE WAS WRONGLY CONVICTED BY JURY AT CONTRA COSTA'S. COUNTY SUPERIOR COURT, HIS DUE PROCESS RIGHTS WERE DENIED AND TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONAL AMENDMENTS. IN RE; BATSON V. KENTUCKY 476, U.S. 79, 90. L. ED. 2D. 69. 106. S. CT. 1712. (1986). HE FURTHER CONTEND'S HIS RIGHTS WERE VIOLATED FED AND STATE. U.S. CONST; AMEND, WHEN D.A. INTENTIONALLY EXCLUDED, MEXICAN- AMERICAN AND HISPANICS FROM JURY. ALSO JURORS BIAS. DISCUSSIONS OF CASE DELIBE-RATION TO REPORTERS. COURTS FAILURE TO ALLOW INVESTIGATION OF CONDUCT OF JURORS, SUCH AS THE EX- MARINE, ATF AGENT BUDDY'S AN SO FORTH. IN RE UNDER WELL V. MURRAY, 831. F2d, 468, 472, (4th CIR. 1987) MACK V. STEWART, 137, F.3d. 630, (9th CIR, 1997.)

7.). PETITIONER CONTENDS HE WAS CONVICTED IN SUPERIOR COURT OF VIOLATION OF PENAL CODE § 246, WITH ENHANCEMENTS OF DICHARGING A FIREARM ON AN OCCUPIED DWELLING AND COUNSEL WAS INEFFECTIVE IN PRESENTING A DEFENSE ON THIS, BY OBJECTING AND ARGUE THE FACTS. OF THE BRADY VIOLATIONS. THAT HIS DUE PROCESS RIGHTS WERE VIOLATED UNDER STATE AND FEDERAL CONSTITUTIONAL AMENDMENTS THE SIX. IN RE; CROTTS V. SMITH, 73. F. 3 D. 861 (9th CIR. 1996) HE FURTHER CONTENDS COUNSELS ASSISTANCE PROFESSIONALLY REPRESENT-ATION FELL FAR BELOW ANY OBJECTIVE STANDARD OF REASONABLENESS, UNDER 'STRICKLAND US; WASHINGTON PRINCIPLES. WHEN ALL CAR WASH EVIDENCE WAS TAMPERED WITH. MOVED AND LOST ALSO UNDER MIRANDA SUPRA PRINCIPLES. HE WAS COERCED, THREATEN AND BRIBED INTO MAKING INVOLUNTARILY STATEMENTS ON CARWASH INCIDENT HE WAS LED TO BELIEVE IF HE ACCEPT KNOWLEDGE OF IT. HE WOULDN'T BE CHARGE WITH OR FOR IT. BY POLICE AND DETECTIVE WHILE HE WAS IN CUSTODY NUMEROUS OF TIMES THEN RELEASED. BUT THEN FILED ON TWO YEAR LATER HE FURTHER CONTENDS HIS RIGHTS UNDER PROCESS AND THE RIGHT TO A FAIR TRIAL WERE DENIED UNDER THE FOURTH, SIX AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BOTH STATE AND FEDERAL. IN RE; WONGSUN; SUPRA (1963) 371.U.S.471, 484.

8.) PETITIONER CONTENDS HE WAS CONVICTED AT TRIAL ON TAINTED ILLEGALLY OBTAINED EVIDENCE OF INCRIMINATION SEARCHED AND SEIZED BY DETECTIVES ILLEGALLY WITHOUT THE BENEFIT OF A WARRANT OR PROBABLE CAUSE UNDER THE U.S. FEDERAL AND STATE FOURTH AND FIFTH CONSTITUTIONAL AMENDMENTS UNDER. IN RE; BROWN V. ILLONIS (1975) U.S. 540. 45. L. ED. 2D. 416. 95. S.Ct. AND IN RE; WONGSUN; INFRA. HE FURTHER CONTEND'S THE EVIDENCE SEIZED UPON AN UNLAW SEARCH. WITH OUT PERMISSION TO SEARCH DETECTIVES HAPPEN UPON ALLEGED BULLET ITEMS AND CLOTHING WITHOUT PROOF. WERE INADMISSIBLE IN COURT, DUE TO ITS SUSPICIOUS NATURE HOW THEY WERE OBTAINED OF AND NO PHOTOS, VIDEO RECORDINGS, DIAGRAMS Ect. OF PROOF IT WASN'T OBTAINED IN AN UNLAWFUL.

MANNER SUCH AS BREAKING TO SOMEONES ROOM OR ANYTHING WAS LOGED AN NOT OR KEEP RECORD OFF OF FULL REPORT DISCLOSER. UNDER UNITED STATES V. MURRAY (1988) 487 U.S. 533. 101. L. Ed. 2. d. 472. 108. S. Ct. 2529. ENCLUDING DUE TO POLICE MISCONDUCT OF DOING TEST ON CLOTHING ECT. THEY VIOLATED PETITIONERS MIRANDA RIGHTS THE 4th AND 5th AMENDMENTS. CONSTITUTION. STATE AND FEDERAL.

9.) PETITIONER CONTENDS HE WAS CONVICTED ON APPEAL. DUE TO INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON APPEAL AND THIS DENIED HIS RIGHT. UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. FEDERAL AND STATE. THAT GAURTEED A DEFENDANT UNDER. IN RE: EVITTS V. LUCEY. 469. U.S. 387. 341. 405. (1985) HE FURTHER CONTENDS APPELLATE COUNSEL WAS ENEFFECTIVE IN ARGUEING JURY WAS'NT INSTRUCTED ON ONE ELEMENT CHARGED AND THEY NEVER CITED LEGISLATIVE HISTORY OR OFFERED PROOFED LAW. ECT ON ITS GANG STATUE CRITERIA I NEVER FELL UNDER OR MEET ALL CRITERIA'S. ALSO HE FAILED TO PRESENT MY CLAIMS. ONE THROUGH NINE. AND AKNOWLEDGED MY LETTERS, INFO, INPUTS, SUGGESTIONS, AND DUE TO HIM NOT HAVING A INTELLGENTABLE RECORD OF TRANSCRIPTS AS SO FOURTH BECAUSE OF TRIAL COUNSELS ERRORS. HE WOULD OF PREVAILED ON APPEAL. IN RE: MILLER VS. LUCEY SUPRA. CITING STRICKLAND 466. U.S. 688. 644. BIRDLE. 792. F.2d. AT 849. PETITIONERS RIGHTS WERE DOUBT VIOLATED AND DUE TO WHY ISSUES BARELY BEING RAISED, UNDER THE FEDERAL AND STATE CONSTITUTIONAL AMENDMENTS ARE BARELY NOW ARE BEING RAISED.

10.) PETITIONER CONTENDS HE WAS WRONGLY CONVICTED AND DENIED DUE PROCESS OF THE LAW TO A FAIR TRIAL. UNDER. PEOPLE. V. WATSON (1956) 46. COL. 2d. 818. 834. OF COURTS FAILURE TO EXCLUDE DOG SCENT EVIDENCE AS PROOF OF IDENTITY. PETITIONER FURTHER CONTENDS THERE WAS'NT INSUFFICIENT FOUNDATION HAD BEEN FOUND WITH REGARD TO THE DOGS HANDLER EXPERIENCE AND HER BIAS TESTIMONY WAS PRESENTED IN PREJUDICE AND IN VIOLATION OF THE U.S. CONSTITUTIONAL AMENDMENTS. BOTH FEDERAL AND STATE. UNDER PEOPLE V. KELLY SUPRA. 17. COL. 3d. AT PG 31. PEOPLE V. CRAIG (1978) 86. COL. APP. 2. d. 905. PEOPLE V. MAIGREN (1983) 134. COL. APP. 51 234. THERE WERE NO FOUNDATION. SUFFICIENTLY OF EVIDENCE AT WORST, AS NEW LAW AN EVIDENCE IS PRESENTED.

11.) PETITIONER CONTENDS HE WAS WRONGLY CONVICTED. DUE TO COURTS DENIEL TO GRANT COUNSELS PENAL CODE SECTION 1118.1, MOTION TO THE STREET GANG FIREARM COUNTS, THAT HIS RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT. AND HIS RIGHT TO JURY TRIAL UNDER THE SIXTH AMENDMENT. MADE APPLICABLE THROUGH THE FOURTEENTH AMENDMENT AND FIRST AMENDMENT OF THE U.S. FEDERAL AND STATE CONSTITUTION, WERE ALL VIOLATED IN RE: RUBIES SUPRA. 23. COL. 4th AT 1115 AND. U.S. V. WELFSWINKEL. (1995) 76. F.3. D. 1045 1063. THE PROSECUTION MAY NOT PROVE A DEFENDANTS GUILT BY SHOWING HIS ASSOCIATION WITH UNSAVORY CHARACTERS AS EXPLAINED IN NILES SUPRA. AND PEOPLE V. SENGPODYCHITTH. (2001) 26. COL. 4th 316. AT 324. HE FURTHER CONTENDS FAILURE OF EFFECTIVE ASSISTANCE OF COUNSEL. TO OBTAIN EXPERTS ON IDENTIFICATION ISSUE. PRELIMIN AND MAGISTRATE DENIED VIOLATED HIS DUE PROCESS RIGHT PROTECTED BY FEDERAL LAW. IF THATS THE REASON OF DENIAL OF MOTION AND ITS PARLADE OF ILLEGAL EVIDENCE. IN RE. U.S. V. DICKENS (1995) 775. F.2d. 1056. 1058. PEOPLE V. PEREZ (1981) 114. COL. APP. 3d. 470, 477. EVIDENCE OF GANG MEMBERSHIP INADMISSIBLE AS IN SO FAR IT DOES NOT HAVE "ANY" "TENDENCY" IN REASON TO PROVE A DISPUTED FACT. I.E. THE IDENTITY OF THE PERSON WHO COMMITTED THE CHARGED OFFENSE. N.E. NEW LAW. AND EVIDENCE WILL BE PRESENTEN

4.

12.) Petitioner contends he was wrongly convicted under, street gang firearm statues possession of enhancement. Instructions given to the jury were fatally deficient. Petitioner contends he was denied his right to due process under Fifth Amendment, his right to jury trial under sixth amendment, made applicable through the fourteenth amendment of the U.S. federal and state constitution in Re: Flores supra, Farrael. supra. People v. Robles, infra. See. Cunningham v. Zant 11th Cir. 1991) 918 F.2d 1006, in which relief was granted because instruction to jury that, the element of crime was committed for the benefit of gang was not read or modified when it was the case in chiefs principle foundation element judge and courts fail to give proper requested instruction, the supreme court ruled reversed an held the state statue did not take prescendent over constitutional law and that the judge had to give requested instruction /amdmendtion

13.) Petitioner contends, he was wrongly convicted as under the element of degree charge without proof and insufficient evidence, petitioner claims this violated his right to due process under fifth amendment, his right to jury trial under sixth amendment, made applicable through the fourteenth amendment an under his 5th amendment of the federal and state constitution, to be put twice in jeopardy on insufficient evidence, bars retrial. under. Jackson - v. Virginia (1949) 443. U.S. 307. People v. Redman (1969)-71, Cal. 2nd 745, 755. Burke v. united state, (1975) 437, U.S. 1. and Aprendi/Blackley supras in reviewing courts must ask whether the evidence considered as a whole was sufficient to permitt trier of fact to conclude crime was committed and in fact it supported the judgement of the jury which could have reasonably be reduced in evidence in light when reviewed. It must be reduced to a lesser sentence and element

## PARTIES,

1.) Petitioner in pro-per. Schoffe-Rico, C.D.C#V-11328, is a prisoner of the state of California. incarcerated at Pelican Bay state prison, other petitioner's, "Appointed-counsel." when appointed,

2.) Robert A. Horel, is the warden of Pelican Bay state prison and the legal custodian of petitioner.

3.) The attorney general is the respondent, for the warden, Robert A. Horel of P.B.S.P. and is responsible for the filings of. on his behalf vise-versa. of its state prison, including there releases, reversals, convictions set-a-side or sentence modifications, ect.

4.) I Schoffe-Rico. I am personally familiar with the facts stated herein, and I have personally reviewed the file in this matter, and on that basis. I declare as follows: 1.) This motion to seeks to amend all claims, one through thirteen, filed on October. 24, 2007. 2.) The purpose of the amendment is to have all claims considered on merits. 3.) This motion is being filed now rather than at an earlier time because: of alot of reasons, described in other motions,

5.

## STATEMENT OF CASE

PETITIONER WAS HELD ON A COMPLAINT FILED OCTOBER. 19. 2000. FIRST AMENDED
COMPLAINT WAS FILED ON NOVEMBER 2.nd. 2000. TRANSCRIPTS OF PRELIMINARY HEARING.
PAGES .(1-2.), SCHOPPE-RICO, WAS CHARGED BY AN INFORMATION FILED SEPTEMBER
26. 2001. (CT. 681) ⅔ THERE WAS A SECTION PENAL CODE 995 MOTION NOTICE FILED TO DISMISS
THE INFORMATION FILED, IT WAS PREJUDICIALLY DENIED, THEN THERE WAS A SECTION 1368.
REFERRAL FOR A COMPETENCY EVALUATION ON MAY 16. 2002 (CT. 730.) PETITIONER WAS FOUND
SUFFERING FROM DEPRESSION, AND CRIMINAL PROCEEDINGS WERE RE IN STATED ON SEPTEMBER.
16. 2002. (CT. 741) 1

ON FEBRUARY 21. 2003, THE DEFENSE FILED A MOTION TO EXCLUDE DOG SCENT IDENTIFI-
CATION EVIDENCE. (CT. 810) AND BEFORE ON JANUARY. 23. 2003. MOTION TO COMPEL
DISCLOSER OF CONFIDENTIAL INFORMANT MS. CONWAY, PG. 762.-767.). MOTION TO SUPPRESS
EVIDENCE (CT. 766.). MOTION TO SEVER. (CT. 914.) MOTION TO EXCLUDE DOG SCENT EVIDENCE
LINEUP. (CT. 993). MOTION TO EXCLUDE STATEMENT. (CT. 980) AND ALL WERE DENIED
AND UNSUCCESSFULLY GRANTED FOR COUNSEL AT TRIAL ...... (I.E) ON APPEAL COUNSEL
KHLEGEE FAILED TO RAISE AND EXHAUST THESE MOTIONS AND ISSUE, IN HIS WRIT. OPENING
BRIEF......

ON FEBRUARY 26. 27. AND 28. 2003. TRIAL BEGAN WITH HEARING ON IN LIMINE MOTIONS.
(CT. 1000, 1002, 1003.) THE MOTION TO EXCLUDE DOG SCENT IDENTIFICATION EVIDENCE
WAS DENIED ON FEBRUARY 28. 2003, (CT. 1003.) THE FIRST EVIDENCE WAS PRESENTED
ON MARCH 16. 2003. AND THE JURY HEARD INSTRUCTIONS AND ARGUEMENTS ON
MARCH. 16. 2003. AND DELIBERATIONS BEGAN THAT AFTERNOON (CT. 1034.) THE VERDICT
AND FINDINGS WERE RETURNED THE FOLLOWING AFTERNOON. (CT. 1036). DUE. I.E. TO
COUNSELS INCOMPETENCE AND D.A.S. BRADY VIOLATIONS & AND EXCLUSION RULE APPLIED.
IMPROPERLY OR FAIRLY.

ON APRIL 18. 2003. A MARSDEN MOTION WAS PRESENTED AND DENIED AFTER
WHICH A FARRETTA MOTION WAS MADE. (CT. 1393). A MARSDEN DECLARATION WAS
MADE AT (CT. 2662-2603) ITS NOT CLEAR FROM THE RECORD IF WHETHER THE
COURT NEW OF THE MARSDEN DECLARATION OR MISSED PLACED IT ON THEIR DESK. THE
FARRETTA MOTION WAS GRANTED ON APRIL 23. 2003. (CT. 1394.). ON MAY 19. 2003
SCHOPPE-RICO. MOTIONS FOR A TRANSCRIPT OF THE TRIAL AND FOR APPOINTMENT OF CO-
COUNSEL WERE DENIED (CT. 1395.). AN PETITIONERS DECLARATION SPECIFIES, MARSDEN
VIOLATIONS AT. (CT. 1456-1457) IN MAY AND JUNE. 2003. MR. SCHOPPE-RICO FILED A
SET OF PRO-SE DOCUMENTS THESE ENCLUDED A DECLARATION WITH RESPECT TO A MARSDEN
HEARING (CT. 1456-1468) AS WELL A MOTION FOR NEW TRIAL. AN FOR APPOINTMENT OF
COUNSEL. (CT. 1466). EVENTUALLY TRIAL COUNSEL WAS RE-APPOINTED ON JULY. 29. 2003.
(CT. 1585.) AND PETITIONER CONTENDS THIS OCCURRED IN VIOLATION OF HIS RIGHTS UNDER
THE FEDERAL LAW. AMENDMENTS AND CONSTITUTION. DUE TO ON MOTION FOR NEW TRIAL THE.
CONFLICTS AND COUNSELS ENEFFECTIVENESS WAS ALLOWED TO BREW/RESUME. IN AUGUST
2003. A MOTION FOR NEW TRIAL WAS FILED (CT. 1586) WITH OPPOSITION FILED WITHIN
DAYS. (CT. 1602) IN SEPTEMBER. 2003. A SUPPLEMENTAL NEW TRIAL MOTION WAS FILED
(CT. 1611).

WHICH WAS OPPOSED (CT. 1620) BOTH MOTIONS WERE DENIED AS THE JUDGE ACTED LIKE A THIRTEETH JUROR ON SEPTEMBER 26. 2003. (CT. 1630.) THE HEARING ON REPORT AND SENTENCE WAS HELD ON OCT. 23. 2003. MR. SCHOPPE-RICO WAS SENTENCED TO STATE PRISON FOR A DETERMINATE TERM OF TWENTY FIVE YEARS TO LIFE ENHANCED. BY TWENTY FIVE YEARS TO LIFE, FOR FIREARM USE UNDER SECTION: 12022.5, SUBDIVI-SION (B) CREDITS WERE ALLOWED FINES WERE IMPOSED AND ACTUAL RESTITUTION WAS ORDERED. (CT. 1660; 1662, 1664.). APPELLATE COUNSEL WAS INFORMED TO CHALLENGE RESTITUTION FINE AND NEVER DID...... NOTICE OF APPEAL WAS TIMELY FILED THE SAME DAY (CT. 1666).

IN DECEMBER OF 2003. COURT APPOINTED APPELLATE COUNSEL KYLE GEE WAS APPOINTED BY FIRST APPELLATE PROJECT....... ON JUNE. 29. 2006. FIRST APPELLATE DISTRICT DIVISION FOUR COURT OF APPEALS AFFIRMED AND DENIED OPENING BRIEF, S AND RETURN ON CLAIMS. HEREIN NINE. TEN. ELEVEN, TWELVE AND THIRTEEN,....ON OCTOBER. 18. 2006. THEREAFTER UPON PETITION OF REVIEW TO THE CALIFORNIA SUPREME COURT WAS DENIED. THEREAFTER PETITIONER FILED UNSUCCESSFUL COLLATERAL HABEAS, ATTACKS. ONE IN THE SUPERIOR COUNTY COURT OF CONTRA COSTA, ON NOVEMBER. 17. 2006 THAT WAS DENIED ON JANUARY 5th 2007. THEN RE-FILED IN THE SUPERIOR COURT, OF CONTRA COSTA COUNTY ON JANUARY 15. 2007, AND IT WAS DENIED FEBRUARY 20th 2007.... THE SECOND HABEAS WAS FILED IN THE FIRST APPELLATE DISTRICT COURT OF CALIFORNIA. ON MARCH. 23. 2007 THAT WAS DENIED ON OCTOBER. 18. 2006 ..... THIRDLY. THE THIRD HABEAS WAS FILED IN THE SUPREME COURT OF CALIFORNIA ON APRIL 12th 2007. RELIEF DENIED SEPTEMBER 19. 2007 .... FOURTHLY. SCHOPPE-RICO. THEN FILED A HABEAS CORPUS PURSUANT TO 28. U.S.C. § 2254. CHALLENGING CONSTITUTIONAL VALIDITY OF HIS STATE SENTENCE AND CONVICTION ON OCTOBER 17th. 2007.... THEN NOW ON APRIL 2nd 2008. RECIEVED A FILED NOTICE STAMP WITH THAT DATE, A ORDER TO SHOW CAUSE. GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS. ON APRIL. 12th 2008. PETITIONER FILED REPLY MOTIONS AND DECLARATIONS OF GOOD CAUSE FOR EXTENSION OF TIME TO FILE "AMENDED PETITION". WITH REQUEST OF A APPOINT-OF- COUNSEL. DECLARATION OF IDEGENCY, ATTORNEY GENERAL RECEIVED REQUEST OF INSPECTION AND PRODUCTION OF DOCUMENTS TO RESPONDENTS.

## STANDARD OF REVIEW

THIS COURT MAY ENTERTAIN A PETITION FOR A WRIT OF HABEAS CORPUS, "IN BEHALF OF A PERSON IN CUSTODY PURSUANT TO THE JUDGEMENT OF A STATE COURT ONLY ON THE GROUND THAT HE IS IN CUSTODY IN VIOLATION OF THE CONSTITUTION OR LAW OR TREATIES OF THE UNITED STATES." 28. U.S.C. § 2254. (3) AS HE CONTENDS HE IS. THEN IT SHALL AWARD THE WRIT OR ISSUE AN ORDER DIRECTING THE RESPONDENTS TO SHOW CAUSE. WHY THE WRIT SHOULD NOT BE GRANTED UNLESS IT APPEARS PETITIONER SHOULD BE AWARDED, OF HIS CASE BEING DROPT. CONVICTION REVERSED OR REMAND FOR TRIAL OR SENTENCE REDUCED.

## CONTENTIONS.

### GROUND ONE.

1. DEFENSE COUNSEL MUST AVOID CONFLICT OF INTEREST THAT INFRINGES OR DENIED PETITIONERS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. UNDER. STRICKLAND VS. WASHINGTON. 466. U.S. 668. 642. (1984). UNITED STATES VS. STUARTZ. 975. F.2d. 1092. (1992.). UNITED VS. ALLEN, 831. F.2d. 1487.   (9th CIR. 1987). BOTH STATE AND FEDERAL

### GROUND TWO.

2. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL. WHEN SHE INTENTIONALLY FAILED TO PROPERLY PRESENT A DEFENSE ON PETITIONERS HANDS INJURIES OF DISABILITIES. (E) INCLUDING ON FAILING TO ASK OR GET ANY DEALS ON PLEA BARGAINING. (THIS WAS A VIOLATION UNDER) U.S. V. BLAYLOCK. 20 F.3d. 1458 (9th CIR. 1994.) RILEY V. PAYNE 352. F.3d 113 13. (9th CIR 2003) STRICKLAND V. WASHINGTON. SUPRA. DEAN V. CALDERON 163. F.3d 1073. (9th CIR. 1998) BOTH STATE AND FEDERAL. CONST. AMEND.

### GROUND THREE.

3. PROSECUTOR MISCONDUCT RENDERED THE TRIAL FUNDAMENTALLY UNFAIR. WHEN THE PROSECUTOR WITHHELD EXCULPATORY EVIDENCE. (IN VIOLATION) UNDER. BRADY V. MARYLAND (1963) 373. U.S. 83. IN RE: KYLES. V. WHITELEY. (1995) 514. U.S. 419. 13. L.Ed. 2.d. 490. 505. ARIZONA V. YOUNG BLOOD. (1988). U.S. 51. 102. L.Ed. 2.d. 281. 109. S.Ct. 333. BOTH STATE AND FEDERAL CONST. AMEND.

### GROUND FOUR.

4. PETITIONERS FOURTH AND FOURTEENTH AMENDMENT RIGHT WERE VIOLATED. WHEN THE POLICE ARRESTED PETITIONER WITHOUT PROBABLE CAUSE. (IN VIOLATION UNDER.) WONGSON VS. UNITED STATES (1963) 371. U.S. 471. 484. DUNAWAY V. NEW YORK. 99. 3. Ct. 2248. U.S. 200. FLORIDA V. ROYER. OF BOTH STATE AND FEDERAL. CONST. AMEND.

### GROUND FIVE

5. PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO PRESENT A DEFENSE. (IN VIOLATION UNDER). STRICKLAND V. WASHINGTON 466. U.S. 668. 686. 642. (1984.). TURNER. V. DUNCAN. 158. F.3d. 449. (9th. CIR. 1998). PEN. CODE § 192. PEOPLE V. FLANNEL (1979) 25. E.3d. 668. 160. CR. 84. OF BOTH STATE AND FEDERAL. CONST. AMEND.

### GROUND SIX

6. JURY MISCONDUCT HAPPEN IN PETITIONER CASE WHEN THE JURY DISCUSSES PETITIONERS CASE OUTSIDE THE COURT THROUGH NEWS PAPER CLIPPINGS ARTICLES. Ect......

8.

(IN VIOLATION UNDER) BATSON V. KENTUCKY. 476. U.S. 79. 90. L. Ed 20. 69. 106.
S. Ct. 1712. (1986) - WELL V. MURRAY. 831. F. 2d. 468. 472. 4th CIR. (1987)
MACK V. STEWART. 137. F. 3d. 630 (9th CIR. 1997) OF BOTH STATE AND FEDERAL CONST. AMEN.

## GROUND SEVEN.

7. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO ARGUE OR OBJECT TO THE
PENAL CODE § 246 CASE. DISCHARGING A FIREARM ON AN OCCUPIED VEHICLE.
(IN VIOLATION UNDER) CROTTS V. SMITH. 73. F. 3d. 861. (9th CIR. 1996) STRICKLAND
V. WASHINGTON PRINCIPLES. DELGADO V. LEWES. 233 F. 3d 976. (9th CIR. 2000). PEOPLE.
V. VALENZUELA. APP. 150. CAL. RPTR. 314. OF BOTHE STATE AND FEDERAL CONST. AMEN.

## GROUND EIGHT.

8. PETITIONERS FOURTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN THE
DETECTIVES ILLEGALLY SEARCH AND SEIZED. PETITIONERS ALLEGED PROPERTY. (IN
VIOLATION) UNDER. BROWN V. ILLONOIS (1975) U.S. 590. 45. L. Ed. 2d. 416.
95. S. CT. 2254. UNITED STATES V. MURRAY. (1988) 487. U.S. 533. 101. L. Ed
2. 0. 472. 108. S. Ct. 2529. OF BOTH STATE AND FEDERAL. CONST. AMEND.

## GROUND NINE.

9. INEFFECTIVE ASSISTANCE OF APPELLATE, COUNSEL ON APPEAL (VIOLATED
HIS RIGHTS UNDER.) EVITTS V. LUCEY. 469. U.S. 387. 391. 405. (1985.
STRICKLAND V. WASHINGTON PRINCIPLES. MILLER. V. KEENEY. 882. F. 2d. 1428
1433. 4th CIR. 1989). UNITED STATES. V. BIRTLE. 792. F. 2d. 846. 847.
(9th CIR. 1986.)

## GROUND TEN

10. THE TRIAL COURT ERRED PREJUDICIALLY IN ADMITTING SCENT DESCRIMINATION
LINE UP EVIDENCE AS PROOF OF IDENTITY. (VIOLATED HIS RIGHTS) UNDER. KELLY.
FRYE. PRINCIPLES. KELLY V. PEOPLE. SUPRA. 17 CAL. 3d. AT P9. 31. PEOPLE. V. WATSON
(1956) 46. CAL. 2d 818. 836. PEOPLE. V. CRAIG. (1978) 86. CAL. APP. 2. d. 905.
PEOPLE V. MALGREN (1983) 139. CAL. APP. 312. 34. CITING. UNITED STATES VS GATES
(1983) 680 F. 2d. 1117. UNITED STATES. V. MCNEICE. (E.D. N.Y. 1983. 558. F.
SUPP. 612. OF BOTH STATE AND FEDERAL CONSTIT. AMEND.

## GROUND ELEVEN

THE TRIAL COURT ERRED IN FAILING TO GRANT THE PENAL CODE SECTION 1118.1,
MOTION AS TO THE STREET GANG FIREARM COUNTS. (VIOLATED HIS RIGHTS) UNDER
U.S. V. WELFSWINKEL (1995) 70. F. 3d. 1045. M. 1063. PEOPLE V. DICKENS (1985)
775. F. 2d. 1056. 1058. IN RE ROBLES. 23. CAL. 4th AT 1115. ECT. OF BOTH
STATE AND FEDERAL CONST. AMEND.

## GROUND TWELVE.

12. THE INSTRUCTIONS GIVEN TO DEFINE THE STREET GANG FIREARM POSSESSION OFFENSES WERE FATALLY DEFICIENT. ( IN VIOLATION UNDER ) CUNNIGHAM V. ZANT 11th CIR. (1991) 929. F.2d. 1006. FLORES (2005) 129. 4th 174. U.S. V. DICKENS. (1985) 775. F.2D. 1054. 1058., JAMES V. KENTUCKY 466. U.S. 341. 80 L.ed 2d, 346. 164. S. Ct. 1830. RUBIES. SUPRA. 23. C3L.4th. A.P.P. AT 1115. (OF BOTHE STATE AND FEDERAL.). AMEND. CONST.

## GROUND THIRTEEN.

13. THERE WAS NO SUBSTANTIAL EVIDENCE TO SUPPORT A VERDICT GUILTY OF PREMEDITATED AND DELIBERATE FIRST DEGREE MURDER. ( IN VIOLATION UNDER.) JACKSON V. VIRGINA. (1969) 443. U.S. 307. PEOPLE. V. PEREZ (1992) 2. Cal. 4th 1117. 1125. PEOPLE. V. ANDERSON (1968) 70 C3L. 20. 15, 27. APPRENDI SEE. BLACKELY V. WASHINGTON. SUPRA. 542. U.S. AT p 301. ,

## CONTENTION OF AMENDMENT

(1) TO CLEAN UP A HASTILY FILED PETITION , WHEN THE ORIGINAL PETITION HAD TO BE FILED IN HASTE IN ORDER TO COMPLY WITH THE ( AEDPA ) STATUE OF LIMITATION : THUS IS TO ADD OMMITTED FACTS. ATTACH OMITTED EXHIBITS AND GENERALY " CLEAN UP " ERRORS IN THE ORIGINAL PETITION CAUSED BY PRESSURE OF TIME.

(2.) TO REMOVE DEFECTS EXPOSED BY A MOTION TO DISMISS. A MOTION TO DISSMIS IS NOT AN ANSWER, THEREFORE PETITIONER EFFECTIVELY RESPONDS TO THE MOTION BY DISSMISSAL BY FILING A FIRST AMENDED PETITION : WHICH REMOVES THE DEFECTS IDENTIFIED IN THE DISSMISSAL MOTION. THE AMENDED PETITION IS FILED INSTEAD OF AN OPPOSITION TO THE DISSMISSAL MOTION

## STATEMENT OF FACTS.

ON SEPTEMBER 4. 2000. CARWASH INCIDENT. (CT. 402.) REASONS OF THE (PEN. CODE § 246.) VIOLATION WITH ENHANCEMENTS. FACTS AS FOLLOWS. " PATRICK CERRUTI." A CONTRA COSTA. COUNSY DETECTIVE ARRIVED AT THE CAR WASH AT 2845. WILLOW PASS. RD. HE HAD CONTACT WITH SHARON FAUCET AND HER CAR. (CT. 405.) AT THE CAR WASH ALLEGEDLY MS. FAUCET GOT A PHONE CALL FROM JENNIFER SMITH, ALLEGEDLY SHE ARRIVED TEN MINUTES LATER. (CT. 405) AND ALLEGEDLY MS. SMITH GOT INTO HER CAR. AND THEY HAD A CONVERSATION, THEN SHE HEARD POPING NOISES AND SAW ALLEGEDLY SCHOPPE-RICO, DEFENDANT, WITH A RIFLE POINTING IT AT HER CAR TIRES (CT. 407.) MR. PATRICK CERRUTI, THEN SAID FAUCET, SAID. MS. SMITH GOT OF FAUCETS. CAR. GOT INTO HER OWN VEHICLE THAT THEY ARRIVED IN AND DROVE OFF, DETECTIVE CERRUTI, WAS ASKED, " QUESTIONED. " WHILE YOU'RE STANDING THERE TALKING TO MS. FAUCET DID YOU SEE ANY SHELL CASING'S IN THE AREA. AROUND MS. FAUCETS VEHICLE. DETECTIVE CERRUTI, ANSWERED. HE SAID " NOT WHERE I SAW IT, IT HAD BEEN MOVED (CT. 408) NOW HOW'S THAT TRUE THEIR WERE NO EVIDENCE INDICATING IT WAS MOVED, BESIDE A BIAS STATEMENT OF FAUCETS. BLAMING PETITIONER. THEN MS. FAUCET ALLEGEDLY POINTED OUT SOME CASINGS TO HIM IN SOME AREA. WERE CAR ALLEGEDLY WAS STATIONED AT. (CT. 404). HE THEN COLLECTED THE CASINGS AND SUBMITTED THEM INTO EVIDENCE NO. 00-25-45-8. (CT. 410) PETITIONER ARGUES. THE STALL WERE MR. CERRUTI FOUND THE CASING WAS WERE JENNIFER SMITH WAS PARKED AT CLEANING OUT HER CAR. AT (CT. 458.) AND SHE WAS STATIONED WERE MR. CERRUTI FOUND HER. HE THEN REPORTED. MS. FAUCET SAID IT WAS'NT NO VIOLENT ACT, NO THREATS WERE MADE. NO ONE YELLED OUT. AND SHE DID'NT "SEE WHERE THE GUN HAD ORIGINALLY CAME FROM. THE CAR WAS ALLEGEDLY MOVED THIRTY TO FORTY FEET OUT OF STALL (CT. 412) HE ALSO DID NOT SEE OR FOUND FRESH MARKS IN THE ASPHAULT THAT WOULD SHOW A RESCENT GOUGING A FRESH GOUGE IN IT. MAYBE, IN THE AREA. WHERE THE ROUND WAS SHOT OFF THAT WOULD REFLECT A SLUG PENETRATING OR MISSING A TIRE MARK. "ANYTHING. BUT HE DIDN'T FIND NONE. (CT. 413) DUE TO THE CAR WAS NEVER STATIONED THERE.

NOW IN REGARDS TO THIS INCIDENTS. WHEN MS. SMITH HAD NO REASONS TO LIE OR-, WAS STATING THE TRUTH WHEN SHE FIRST WAS QUESTIONED WAS AS FOLLOWS. AFTER BEING FORCED TO TESTIFY IN VIOLATION OF HER FIFTH AMENDMENT FOR EXERCISING IT, SHE WAS BEING ACCUSSED FOR THE MURDER OF THE VICTIM. THIS EVIDENCE AUTOMATICALLY EXONERATED PETITIONER AT (CT. 390, 341. 342. 393. 394. 395. 396. 347. 398.) AND MS. SMITHS NAME WAS BEING PUBLISHED IN THE CONTRA COSTA TIMES. NEWS PAPER AS BEING CONSCENTLY IDENTIFIED AS BEING THE SHOOTER ON OCTOBER. 17. 2000. (CT. 415.) BY HER BEING ACCUSSED OF MURDER. HER AND DAN. BY THE COURT. LAWYERS DISTRICT ATTORNEY IN FRONT OF HER AND THE COURT. INDICTING HER WITH EVIDENCE AS BEING THE RESPONSIBLE (CT. 425.) SHE EVENTUALLY WAS FORCED TO TESTIFY ON THE CARWASH INCIDENT THE EVIDENCE TESTIMONY COLLABORATED WITH DETECTIVE. MR. CERRUTI, AS FOLLOWS HEREIN SUBMITTED. " ON SEPTEMBER 4th 2000, SHE VAGUELY REMEMBER THE INCIDENT. (CT. 427) SHE SAID " I DONT REMEMBER WHY I WAS GOING TO SHARON FAUCETS. "I JUST REMEMBER VAGUELY PARTS OF THE DAY. "I DONT REMEMBER WHY I SUPPOSE TO MEET HER !". THEN SHE SAID THAT "NO ITS NOT.", THE REASON WHY FAUCET AND HER WERE SUPPOSE TO MEET.

_____

(1). (C.T.) MEANS. IN RE: CLERK TRANSCRIPTS.    11.

THAT WHAT FAUCET CLAIMED WAS THE REASON; THAT NO SHE DID'NT SAY SHE WAS AFRAID OF THE DEFENDANT AND WANTED TO LEAVE HIM (CT: 429.), I'M SURE I'VE TOLD HER THAT LOTS OF TIMES, I DON'T RECALL EVER THAT BEING THE REASON WHY ON THAT DAY (CT: 430.) MS. SMITH WAS ASKED FURTHER, "HAD YOU AND THE DEFENDANT BEEN ARGUING PRIOR TO YOU GOING TO THE CAR WASH? SMITH SAYS, I DON'T RECALL. "UM I DON'T I DON'T KNOW, I DON'T RECALL, WE ARGUE EVERYDAY, SO I DON'T SPECIFICALLY REMEMBER THAT DAY WITH US FIGHTING, (CT: 431.), WHEN SHE ASKED REASONS OF GOING TO THE CAR WASH, SHE SAID, "TO WASH HER CAR (CT: 431) THAT SHE ALWAYS HAD ALOT OF STUFF IN HER CAR (CT: 431,) CLOTHES AND STUFF; STUFF COULD MEAN ANYTHING, SUCH AS CASINGS BEING SWEPT OUT OF HER CAR. ECT. ECT....   NOW ON OCTOBER. 23ₚᵈ 2000, SHE WAS INTERVIEWED BY POLICE. (CT: 433) SHE DENIED ANY ALLEGATION THE DISTRICT ATTORNEY WAS TRYING TO FORCE HER TO SAY ON HIS BIAS THEORY'S (CT: 434.), NOW BACK TO. SEPT 4. 2000. SHE FURTHER SAID. MS. SMITH AND THE DEFENDANT ARRIVED AT THE CAR WASH AND STARTED TO WASH HER CAR (CT: 436.) SHE WAS ASKED, " DID YOU GET IN MS. FAUCET'S CAR... SHE SAYS. "I DON'T RECALL" I KNOW, SHE WAS THERE. (CT: 437) THEN SHE SAYS, THE DEFENDANT AND HER WERE WIPEN THE WINDOWS AND CLEANING OUT THE CAR. GARBAGE AND STUFF IN IT, THEN MS. SMITH SAYS, " THERE WAS A BUNCH OF COMMOTION SOME YELLING OR SOMETHING, AND WE LEFT, ME AND JUNIOR, LEFT. (CT: 438.) NIETHER WHEN ASKED IF SHE SAW A GUN, SHE SAID, "I NEVER. SAW A. GUN AT THE CAR WASH WITH MY EYES, OR NOTHING. A S MS. FAUCET ALLEGES (CT: 439.) MS. SMITH THEN SAID, "ON OCTOBER. 23ᴿᴰ SHE NEVER SAID WHAT POLICE SAID SHE SAID, THAT SHE SAW PETITIONER SHOOT THE TIRES, AND IF SO SHE MADE IT UP. (CT: 439.) AND THAT NO SHE WOULD'NT LIE ABOUT THAT. (CT. 439) SHE FURTHER ASSURES, THAT SHE WAS NEVER IN FAUCETS CAR. WHEN THE SHOTS, THE TIRES WERE SHOT OUT (CT: 440.) SHE FURTHER CONTENDED. ON SEPTEMBER 4ᵗʰ SHE NEVER SAW PETITIONER WITH A GUN, SHE WAS POSITIVE OF IT. LCT: 443) AFTER STILL BEING COERCED, THREATEN AND ALL BY THE DISTRICT ATTORNEYS MIS CONDUCT, SHE DELIVERS THIS TESTIMONE, "I NEVER SAW HIM SHOOT OUT THE TIRES TO ANY CAR. (CT. 444.) SHE WAS NEVER PRESENT WHEN SOMEBODY SHOT OUT THE TIRES. (CT: 445) SHE WAS CLEANING OUT HER CAR. WHEN HERD SHOTS, VACCUMING (CT: 446) MS FAUCET ALSO WAS AT THE TIME CLEANING HER CAR, SHE SAID DEFENDANT WAS SOMEWHERE AROUND THE CAR WASH, WHEN SHE HERD SHOTS SHE CONTINUED TO CLEAN OUT HER CAR. SHE DIDN'T LOOK. (CT: 447) SHE WAS N'T. SURE HOW MANY SHOTS WERE FIRED (CT: 448) SHE SAW ALOT OF PEOPLE, THERE AT THE CAR WASH THAT DAY, WHEN SHE LOOKED TO SEE WHAT THE COMMOTION WAS ABOUT (CT. 449) (1 IE MISSING WITNESSES TO THE CASE MENTIONED AT. (CT. 449), AGAIN COURT AND DISTRICT ATTORNEY BEING ARGUEMENTATIVE, THREATENING THE WITNESS AT (CT. 451)

ON THIS INCIDENT NO CHARGES EXACT WERE FIED FOLLOWING THIS INCIDENT, AND PETITIONER, WAS CONTACTED MANY TIMES BY SHERIFFS AND SO FORTH AND WAS IN CUSTODY. RELEASED AND WAS'NT NEVER CHARGED, EVENTUALLY AFTER ALL EVIDENCE WAS LOST, A YEAR LATER ACCUSSED OF SOME ONE ELSE'S CRIME, HE WAS FIED ON, IT., WITHOUT DUE PROCESS OF THE LAW. NO EVIDENCE WAS RESERVED FOR PETITIONERS DEFENSE SUCH AS SECURITY VIDEO FOOTAGE. WITNESSES, ECT. OF EXCUDATORY VALUE. OR ANY OTHER FORENSIC EVIDENCE

1) (CT.) REFERRING TO COURT TRANSCRIPTS.

12.

OF PROOF THE TIRES WERE SHOT, PETITIONER CONTENDS AND ARGUES, MS. SMITH. SWEPT THEM CASINGS OUT OF HER CAR. AND WAS VACCUMING THE CAR. THEY COULD OF BEEN SWEPT OUT. WHILE SHE WAS CLEANING OUT CAR. THE FORENSIC EVIDENCE CRIMINALIST EXAMINER. CONCLUDED AT TRIAL. MR. FUJII. THAT ALL SIX PROBABLY OR COULD OF HAD BEEN FIRED FROM THE GUN IN QUESTION, THE MARKS IN THE DAMAGE CHAMBER. WERE NOT PRESENT ON THE SIX CARTRIDGE CASINGS, (RT: 2220) AS FOR THE SLUGS RECOVERED AT OCTOBER, 17, 2000 SCENE AND DURING THE AUTOPSY. MR. FUJII DEEMED, .22. CALIBER SLUGS DIFFICULT TO MATCH, HE WAS ABLE TO OPINE THAT THE SLUG COULD HAVE BEEN FIRED BY THE RIFLE (R.T. 2230-2235.) BUT DIDN'T MAKE A POSITIVE IDENTIFICATION MATCH. OR TO THE ONES FOUND ILLEGALLY AT 180 SHORE RD. HE SAID IN ADDITION, MR. FUJII EXAMINED THE CARTIGES CASE AND TWO CARTRIDGES RECOVERED FROM 180 SHORE .RD. (RT: 2235 ) HIS CONCLUSIONS WERE THE CARTRIDGE CASE AND ONE OF THE CARTRIDGES HAD "PROBABLY BEEN CYCLED THROUGH THE RIFLE (RT: 2237-2240) HOWEVER, THESE DID NOT HAVE THE MARKS MADE BY THE SCRATCHES INSIDE THE FIRING CHAMBER, AS DID THE OTHER CARTRIDGES CASES (RT: 2243)

<u>SEPTEMBER 20th 2000 INCIDENT</u>, .... ON AROUND 2:00 AM, DEPUTY SHERIFF KEN SIMPSON OF CONTRA COSTA COUNTY. RECEIVED A DISPATCH .THAT ADVISED OF A MAN SHOT IN FRONT OF THE BANKCLUB .(RT: 2281-2282.) HE ARRIVED AT THE LOCATION AND FOUND MR. SCHOPPE-RICO AND A FEMALE. HE BELIEVES WAS HIS GIRLFRIEND MS. SMITH. HE NOTICED INJURIES TO THE DEFENDANT. HE STATED, IN ADDITION. " HE HAD WHAT APPEARED TO BE A SMALL CALIBER GUNSHOT WOUND TO HIS RIGHT HAND IN THE/HIS PALM PRIMARILY (R.T. 2283 ). HE DIDN'T SEE NO EXIT WOUNDS IT APPEARED THAT THE BULLET HAD TRAVELED UP INTO HIS ARM. UP NEAR HIS WRIST AREA.... AND.... HE DIDN'T FIND NO GUN IN THE AREA. NOR LOCATED ONE. AFTER HIM AND DEPUTY TIM BIGGS SEARCHED THE AREA ON SEPEENBER 20th (RT: 2284) ( SEE EXHIBIT # A_____ ) TRIAL COUNSEL WAS ENEFFECTIVE. SO SHE NEVER ESTABLISHED A DEFENSE ON THIS ISSUE. HOWEVER ON THIS DAY OF SEP. 20th 2000. MR. SCHOPPE-RICO WAS TAKEN TO CONCORD. MT. DIABLO JOHN MUIR MEDICAL HOSPITAL EMERGENCY OPERATING ROOM, WERE DR. SOCCO, DID SURGERY AND PUT A FIXATION SCREW POSITION IN THE RADIAL STYLOID BONE SCREWED INTO THE SCAPHOID WRIST BONE. DUE TO SHATTERED BONES. NO SLUG WAS RECOVERED, WRIST STILL TO THIS DAY REMAINS FRACTURED.

<u>However</u> "ON OCTOBER. 17. 2000," SCHOPPE-RICO WAS STOPED. FOR INVESTIG-ATORY STOP. BY DEPUTY WHIDDON AND SERGEANT BRYAN .(RT: 1571-1573.)

---

1), (R.T.) REFERING TO REPORTER TRANSCRIPTS. IS WHAT (R.T.) MEANS. IN RE

While transported to Martinez. Ca. to a police interrogation room. Detective Costa and Gruenhied were aware of Schoppe-Rico's petitioners hand injury. Not only that he was never read his rights. Mirandalized. (See Exhibit: A._____.) and court trial Exhibit # T, (011510-5.Loged)#. On transcript of it on page two, the detective is real careful unhand cuffing petitioner/defendant. To test hands with a gun shot resloue kit, he then daibs his hands real quick. Then ask to flip it around, when detectives asked him to spread his hands? thumb. Petitioner couldnt a little bit. And he ask if thats the screwed up hand? Petitioner says, yeah. "That it hurts (T-pg.3)" He is also right handed. Detectives still daibs injured hand. Then cuffs him. (pg4.) Petitioner says he cant knock on the door. After detectives advises him he'll get bang up if he opens the door. Petitioner tells him I got "a messed up hand wrist, so I cant knock.". The detective acknowledges he had been shot and see's stitches (pg# 54.), then after that at 1:01 o'clock P.M. A nurse is to come an take D.N.A. blood samples for detectives. They state. that they they take blood out in all cases, it could help you in the long run. It could clear you, it tells us if youre on anything.... Petitioner says as long as they dont take alot out, I had lost alot of blood to my arm, and lost a lot of wieght. the detective. points to the hand, an says on this thing, yeah. (pg# 55) Then petitioner further contends there is no-way he'd shoot himself, and tells them how it happened. at (pgs. 56-57), at 1:09.:PM. A. registered nurse Ms. Vicki arrives to take blood samples. (pg 59J, after. detectives states ooh. wee.... you really messed up that arm there didnt you while re-cuffing Schoppe-Rico.

   October. 17th 2000. Incident....... on Oct. 17. 2000. Ms. Rita Taylor and Nick Taylor lived at 60-Bay Drive in Bay Point. Shore Acres (R.T. 1265), thats two an half blocks away from the corner of Port Chicago Highway an Pacifica. at approximately 9:00 A.M. they left together and she went to the dry cleaners [1](They both were 'bouncers' at the Cross Roads Cafe & Bar in Pittsburg. Were there was a out break incident, not sure if gang related, but it was between Afro-American's and Mexican's at the time (RT:1266.) this about two weeks to a month before October.17th 2000 Incident (RT:1267.) ) When Rita and Nick Taylor approached the shopping center. They "split up" He went to the bench area. (Rt. 1269.) She was in the cleaners for five to ten minutes. (RT: 1268-1269.). (i.e) so for five minutes he was alone aBright with the suspect. When she exited the cleaners, she saw him siting

Down (RT: 1264). She also said "No, I actually didn't see the shooter (RT: 1272) while Nick Taylor was in the area. Eventually Melton appears heading to the recycle place with two carts, he saw Nick near the intersection at the bus stop (CT: 302.) and he saw people going into the store and people at the other end of the bus stop. There's another bus stop across the street from where the shooting happened, there were one other person at the bus stop beside Nick and Melton (CT: 315) he didn't tell the police. While they were sitting at the bench, Taylor told Melton, something about a gun. Melton stared then looked around, then got up off the bench. (CT: 317) He didn't see no gun at that time and allegedly they ran an two shots were shot, (CT: 318.) (CT: 272)..... Evidence at trial established that Mr. Taylor was shot, twice, two shots were shot. Two people testified as being present and saw the shooting out of everyone there. was Paul Lancaster and Albert Melton (I.d) Mr. Lancaster provided a description of the shooter to police immediately following the shooting (CT: 133:17-135:24) he then was transported. to a location where Mr. Schoppe-Rico was detained and after looking at Mr. Schoppe-Rico, said that Mr. Schoppe-Rico was not the person who had shot Mr. Taylor, (see exhibit: __B__ ) (of evidence of video or transcript of interview). Six months later Lancaster was now unable to identify the shooter. (CT: 58:17-60: 18) and at trial wasn't asked to identify a shooter. or asked if the defendant was who he saw (than half year later ..... at the preliminary hearing, Lancaster said, "He knew who the shooter was beforehand. "Yes sir." He lived around the corner from me two houses....."My granddaughter use to baby sit him and his brother (CT: 60) he then on CCT: 17, 00 or the 18th was called by a detective who told him to change his story. (witness tampering) that they got the suspect in custody and they've recovered the gun and change of clothing. (CT: 78) Lancaster also said he had a friend who lived in the neighborhood, kinda a town crier " Paul Revere " He was at the scene and came over were was taped off and he couldn't hardly talk to him (CT: 79-80)

The only witnesses presented at trial and the preliminary hearing who mistakenly identified Mr. Schoppe-Rico as the person who shot Taylor was Albert Melton, Mr. Melton had also provided a description of the shooter to police. (CT: 134: 22, 135: 24,).

HE WAS ALSO TAKEN TO MR. SCHOPPE-RICO'S LOCATION IMMEDIATELY FOLLOWING THE SHOOTING (CT. '152:23, 153:4,) UPON SEEING MR. SCHOPPE-RICO, HIS STATEMENT WAS THAT MR. SCHOPPE-RICO WAS DRESSED DIFFERENTLY THAN THE SHOOTER HAD BEEN (CT: 153:27-24.), HE THEN SAID THAT MR. SCHOPPE-RICO, "COULD BE" THE SHOOTER NOTHING NEITHER MR. SCHOPPE-RICO NOT THE SHOOTER HAD ANY FACIAL HAIR. (CT: 155:25-154-12.) IN A STATEMENT GIVEN AT THE POLICE STATION ON (OCT. 17, 00,) AND (WHICH HE CONFIRMED IN COURT.) MR. MELTON DESCRIBED THE PERSON WHO SHOT MR. TAYLOR AS HAVING LONG HAIR. SPECIFICALLY STATING THAT HIS HAIR WAS LONGER THAN MR. MELTONS OWN WHICH WAS SHOULDER LENGTH (CT: 199:24-200-6, 295:2-17,) MR. SCHOPPE-RICO HAIR DID NOT EXTEND PAST HIS SHOULDER LENGTH ON OCTOBER. 17. 2000. (R.T.) (C.T: 206:26-201-4) IN COURT AT THE PRELIMINARY AND TRIAL HEARINGS MR. MELTON CONFIRMED THAT THE PERSON THAT THE PERSON WHO HE IDENTIFIED IN THE PHOTOGRAPHIC LINE UP WAS THE SHOOTER, SAYING HE WAS JUST AS SURE OF HIS IDENTIFICATION OF THAT PHOTOGRAPH AS HE WAS OF HIS IDENTIFICATION MR. SCHOPPE-RICO. (CT: 297.3-298:14) DURING CROSS EXAMINATION AT THE PRELIMINARY HEARING OF MR. MELTON, DEFENSE COUNSEL ATTEMPTED TO QUESTION HIM REGARDING HIS INGESTION OF DRUGS AND ALCOHOL. (CT: 320-19-22.) THIS LINE OF QUESTIONING WAS ILLEGALLY PROHIBITED BY THE MAGISTRATE ON RELEVANCE GROUNDS DESPITE AN OFFER OF PROOF THAT SUCH QUESTIONING WAS INTENDED TO CAST DOUBT, ON MR. MELTONS ASSERTION THAT HIS MEMORY WAS JUST AS CLEAR IN COURT ON MAY. 16th 2001. AS IT HAD BEEN IMMEDIATELY AFTER THE SHOOTING, ON OCT. 17, 2000, AND AN OFFER TO PRESENT EXPERT TESTIMONY ON THE EFFECTS OF CHRONIC ALCOHOL USE ON MEMORY, (CT: 320:19-321-18) DEFENSE COUNSEL ALSO ATTEMPTED TO ESTABLISH THAT MR. MELTON HAD ACTUALLY COME TO COURT DRUNK, WHEN PREVIOUSLY SUBPOENAED TO TESTIFY IN THIS CASE. (CT: 322-4-7.) THE QUESTION WAS PROHIBITED BY THE MAGISTRATE, DENYING PETITIONER A SUBSTANTIAL FEDERAL AMENDMENT CONSTITUTIONAL RIGHT OF DUE PROCESS. ALSO THE MR. GRAVES THE DISTRICT ATTORNEY AND INSPECTOR SAM SANCHEZ TELLING MR. MELTON NOT TO TALK TO THE PUBLIC DEFENDERS. (CT: 325.) IS FURTHER VIOLATING HIS RIGHTS, TAMPERING WITH A WITNESSES.

FIRST ON SCENE. ON OCTOBER 17, 2000. JESSICA FREDRICKSON HAD BEEN A STUDENT WORKER FOR THE SHERIFF DEPARTMENT (R.T. 1470) AT 9:30 A.M. SHE WAS DRIVING NORTH ON PORT CHICAGO HIGHWAY, WHEN SHE SAW SOMEONE ON THE GROUND AND CALLED DISPATCH. SHE DIDN'T SEE NO-ONE RUNNING OUT OF THE AREA OR SHE DIDN'T SEE NO-ONE SPEEDING (R.T: 1471-1472), PEOPLE WERE HYSTERICAL, YELLING PEOPLE WERE ALL AROUND THE BODY. FREDRICKSON ATTEMPTED TO GET A DESCRIPTION OF THE PERSON RESPONSIBLE. (R.T 1473-1474) EVENTUALLY OFFICERS ARRIVED. OFFICE DELUNA AND WHIDDON (R.T: 1476). BASED ON WHAT SHE RECORDED: DESCRIPTION OF A HISPANIC MALE. WEARING KHAKI PANTS AND A DARK SHIRT. (R.T. 1481) (SEE EXHIBIT: B.____) PEOPLE AROUND BODY AN BENCH AREA.

16.

DEPUTY WHIDDON....... TESTIFIED THAT HE'D AND DEPUTY BRYAN HAD REACHED THE SCENE AT APPROXIMATELY THE SAME TIME (R.T. 1504) THE DESCRIPTION HE WAS GIVEN WAS OF A HISPANIC MAN WEARING KHAKI PANTS, A DARK SHIRT. AND A HAT, (R.T. 1507) DEPUTY WHIDDON DROVE SOUTH ON PORTCHICAGO HIGHWAY AND TURNED AT THE SECOND LEFT WHICH WOULD HAVE BEEN LYNBROOK, (R.T. 1509.) HE WENDED THROUGH A RESIDENTIAL TRACT AND ENDED UP AT THE INTERSECTION OF SHARON DRIVE AND BRADFORD STREET (R.T. 1510. -1515. -1516.). DEPUTY WHIDDON THEN SAW A HISPANIC ON GREGORY DRIVE TO KEVIN DRIVE. HE DREW HIS HANDGUN AND ORDERED THE MAN TO HIS KNEE'S WITH HIS HANDS RAISED (R.T. 1519 -1520) SERGEANT BRYAN ARRIVED, HANDCUFFED THE MAN, AND PLACED THE MAN IN THE REAR OF HIS PATROL CAR (R.T. 1521.) NO WEAPONS OR BULLETS WERE FOUND ON MR. SCHOPPE-RICO. (R.T. 1545 )

WITNESS LYDIA WILLIAMS LIVED AT 516. BRADFORD ST. IN BAYPOINT (R.T. 1394.) SHE TESTIFIED THAT SHE HAD BEEN BACKING OUT OF HER DRIVE. WHEN A HISPANIC MAN IN A WHITE-T-SHIRT AND BLACK SHORTS, APPROACHED AND ASKED FOR A RIDE OR SOMETHING. (R.T. 1395 - 1398). (IN RE: CLERK TRANSCRIPTS) MS. WILLIAMS DROVE OFF GOING TO BONFARE STORE A FEW BLOCKS AWAY. ON HER WAY TO THE STORE, SHE DIDN'T SEE NO OFFICERS (CT. 111) WHEN SHE CAME BACK TO HER HOUSE AFTER TURNING AROUND TO CHECK HER A GARAGE DOOR. THATS WHEN SHE SAW A OFFICER (C.T. 112.) WILLIAMS THEN SAID WHEN ASKED." IF THE PERSON, THAT DEPUTY WHID-don CONTACTED. HAD APPROACHED HER IN HER DRIVEWAY. THAT IF SHE WOULD BE ABLE TO IDENTIFY HIM IF SHE SAW HIM AGAIN, SHE SAID NO. I DID'NT SEE HIS FACE. AND ALL SHE REMEMBERED SAYING WAS SOMETHING ABOUT A WHITE-T-SHIRT. SHE ALSO DENIED EVER TELLING WHIDDON, WHAT WHIDDON CLAIMS SAID SHE SAID. THAT THE PERSON HE STOPED WAS THE PERSON WHO APPROACHED HER CAR. SHE SAID WHIDDON NEVER ASKED HER THAT. AFTER SHE TOLD HIM WHAT THE GUY HAD ON, (IS A WHITE - T-SHIRT). SHE THEN SAID SHE NEVER POINTED HIM OUT TO DEPUTY WHIDDON. SHE EXPLAINED HOW HER AND WHIDDON BOTH GOT TO THE CORNER. WHIDDON LOOKED OVER AT HER, WHIDDON GOT OUT OF HIS CAR SO FAST, HE DID'NT ASK HER NOTHING. SHE DROVE OFF AND HE STAYED THERE WITH THE MAN (CT. 114.) (CT. 115.). SHE DENIES EVER POINTING PETITIONER OUT AN SHE WAS BLOCKED OFF IN THE MIDDLE OF THE ROAD BY WHIDDON (CT. 119) SHE SAID THE OFFICER HAD SAID SOMETHING TO HER THEN. BUT SHE COULDN'T REALLY HEAR HIM. BECAUSE WHIDDON WAS ON HER PASSENGER SIDE (CT. 122). ALSO SHE NEVER TOLD WHIDDON SHE SEEN ANYONE JUMPING FENCES (CT. 123.) I. WITNESS TAMPERING, DEPUTY WHIDDON SAW LYDIA WILLIAMS AGAIN LATER THAT DAY AND SHE HAD BEEN UPSET AND FEARFUL OF RETALIATION (RT. 1532 - 1534) DUE TO WHIDDON LEADING HER TO SAY, SHE SAW A MAN JUMPING FENCES, (RT. 1535). IN RE: (EXHIBIT: ___C___.) OF GEOGRAPHICAL AREA. OF YAHOO NAV-TEQ. OF SCENE.

THE DISCOVERY OF A RIFLE AND CLOTHING AT 40 SHARON DRIVE DEPUTY WHIDDON HAD ASSISTED TWO K-9'S OFFICERS IN A SEARCH OF THE AREA. LOOKING FOR A GUN AND DISCARDED CLOTHING. (R.T. 1527.) HE ALSO SAID THE MAN K-9'S. WALKED UP BY 40 SHARON DRIVE. (RT. 1529.) HOWEVER HE ASSERTED THAT THEY HAD NOT SEARCHED 40 SHARON DRIVE (RT. 1531). BACK YARD ..... LINDA KALEIKI LIVED AT 40 SHARON DRIVE. (RT. 1650-1651.1665) AFTER THEY RETURNED HOME IN MID-AFTERNOON, AFTER 3:30 PM. THE DAUGHTER AND SON WENT OUTSIDE BUT RETURNED SAYING THERE WAS A GUN IN THE YARD. (RT. 1656-1657.) MS. KALEIKI CALLED 911. (RT. 1657-1658).
DEPUTY HUNTINGTON WAS SENT TO 40 SHARON DRIVE. (R.T. 1608-1609) HE SAW CLOTHING UNDER BUSHES ON THE SIDE OF THE HOUSE AND A FIREARM WAS LEANING AGAINST A FENCE (RT. 1609.1611).
CRIMINALIST JOHN NELSON WENT TO 40 SHARON DRIVE TO EXAMINE THE RIFLE FINDING NO ROUND IN THE CHAMBER BUT TWELVE CARTRIDGES IN THE MAGAZINE (RT. 1755-1756.) . ACCORDING MR. MELTON HANDLED THE CLOTHING, WHICH WAS ON THE OPPOSITE SIDE OF THE FENCE FROM THE RIFLE (RT. 1758), HE FOUND IN THE PANTS POCKET A SCRAP OF PAPER WITH THE NUMBERS, "382". AND "1939-3000. AS WELL AS . 22 CALIBER CARTRIDGES. (RT. 1762.)
MR. QUINTIN NERIDA, CONTRA COSTA COUNTY LEAD FINGER-PRINT EXAMINER WHO FUSED THE .22 RIFLE FOUND AT 40 SHARON DR. (RT. 2187) AND HE DIDN'T FIND ANY PRINTS, FINGER PRINTS TO MATCH OF VALUE ON THE RIFLE OR (12) BULLET CARTRIDGES CASING. (RT. 2188-21-89-2190-2191) AS BEING LINKED TO PETITIONER. ALSO THE HAIRS THAT WERE OBTAINED FROM THE SWEATSHIRT AND BLACK PANTS FOUND AT 40 SHARON DRIVE. (RT. 1780) CRIMIN-ALIST ALEX TARYA COMPARED MS. SMITHS AND MR. SCHOPPE-RICO: HAIR WITH THE HAIR FOUND ON THE SWEATSHIRT AND WARMUP PANTS AND BOTH WERE ELIMINATED AS A POSSIBLE SOURCE FOR THOSE HAIRS (RT. 2329, 2333-2336.)
HOWEVER DETECTIVES TRYED TO USE A "SCENT DISCRIMINATION LINEUP." AND HAD A ENEXPERIENCE UNQUALIFIED, JUDY SCHETTLER, A VERTERINARIAN TECHNICIAN (RT. 1963.) HER 2 YEAR OLD DOG WAS NAMED "KILLIROH." (RT. 1964.) MS. SCHETTLER TESTIFIED THAT THE SCENT LINE UP IN THIS CASE HAD BEEN ON THE NIGHT OF OCTOBER. 17. 2000. AT THE SHERIFFS DEPARTMENT IN MARTINEZ (RT. 2028-2029.) IT HAD INVOLVED FOUR PERSONS. (RT. 2029).
DEPUTY GRUENHEID TESTIFIED THAT THE BAG CONTAINING THE SWEATSHIRT FROM SHARON DR. HAD BEEN LEFT ON HER DESK, SINCE THEY WERE BROUGHT TO HER BY SERGEANT HALE AND DETECTIVE COSTA. (RT. 2075-2076.) IT WAS DEPUTY GRUENHEID WHO CARRIED THE BAG AND PRESENTED IT TO THE DOG. (RT. 2077.).

ACCORDING TO MS. SCHETTLER, KALLIROH PUT HER NOSE "IN" THE BAG, WITH THE SCENT MATERIAL AND WAS GIVEN A SEARCH COMMAND (RT: 2033.) THEN DOG WENT APPROX- IMATELY TEN FEET FORWARD TOWARD PERSON (4), BEFORING RETURNING TO SNIFF THE BAG AGAIN. IBID, THE DOG THEN RAN BETWEEN (2) AND (3) BEFORE GOING TO NUMBER (3), SNIFFING AND JUMPING "TOWARDS HIM", WHICH WOULD OF HAVE BEEN A "POSITIVE" ON NUMBER (3) IF SHE DIDN'T MOVE THE DOG, (RT: 2033-2036.) AFTER THIS MS. SCHETTLER TESTIFIED THAT IT WAS A POSITIVE IDENTIFICATION RT, 2034, 2041-2042.) WHEN SHE CORRECTED HER DOG TO TURN AND GO TO NUMBER (2) AND SNIFFED HIS LEGS (RT: 2033-2036) NUMBER. 2. WAS BAREFOOT, HOWEVER THE DOG HEADED BACK TO NUMBER 3, AND STOPPED AGAIN (RT: 2033-2036.) 2034.) FINALLY AFTER PROMPING HER DOG ON NUMBER, 2. TO PUT A PAW AND JUMP TWICE "(RT: 2034, 2036 & 2037-2042) SHE DECLARED IT PICKED NUMBER, 2. SCHOPPE-RICO, WHEN AT FIRST IT PICKED NUMBER 3., WHICH WOULD BE IMPOSSIBLE, WHEN MR. SCHOPPE- RICO HAIRS WERE COMPARED BY CRIMINALIST ALEX TAFIYA, WITH THE HAIR FOUND ON THE SWEATSHIRT AND WARM UP PANTS, AND ELIMINATED, SCHOPPE-RICO, AS A POSSIBLE SOURCE FOR THOSE HAIRS, ON THE CLOTHING. (RT: 2329,-2333-2336.) THAT WAS USED IN THE SCENT DESCRIMINATION LINE UP (I.E.), HOWEVER, THE VIDEO OF THE SCENT DISCRIMINATION LINEUP (COURT TRIAL EXHIBIT 61.) IS ILLUMANATING, IT SHOWS DEPUTY GRUENHEID CARRYING THE PAPER BAG CONTAINING THE SWEATSHIRT BY THE TOP CENTER, IT ALSO SHOWS THAT THE DOG DID NOT PUT HER NOSE "IN" THE BAG INSTEAD PLACING HER NOSE AT THE TOP OF THE BAG AT THE PLACE IT HAD BEEN HELD BY DEPUTY GRUENHEID. IT ALSO SHOWS THE DOG MEANDERING AMONG THE SUBJECTS IN THE LINEUP AND IT SHOWS THAT WHATEVER THE DOG DID IN -- NEVER "TRACKED" FROM THE CENTER LIGHT STICK TO MR. SCHOPPE-RICO' POSITION.  SEE EXHIBIT: D.

OTHER EVIDENCE SEIZED WITHOUT A SEARCH WARRANT. ON OCTOBER. 17, 18 AND 19, 2000,

LATE ON THE AFTERNOON OF OCTOBER. 17, 2000, PASS 5:30 PM, DECTIVE COSTA WENT TO 180 SHORE RD. WHERE MR. SCHOPPE-RICO LIVED (RT: 1627) WHILE HE WAS WALK- ING UP TO THE DOOR, SOMETHING ATTRACTED HIS ATTENTION ON THE PATIO DRIVE IN AREA ON SIDE OF THE HOUSE HE FOUND GRAY SWEATPANTS IN THE FRONT YARD (EXHIBIT: 30, OF TRIAL COURT.), WHICH WERE SAME COLOR AND APPARENT CONDITION AS THE SWEATSHIRT FOUND AT 40 SHARON DRIVE AND BEARING THE BRAND NAME PRO-SPORT. (RT 1631-1633.) HE FOUND THESE LOCATED IN PETITIONER'S SIDE OUT ROOM, BEHIND A YARD FENCE AND ENTERAINMENT CENTER. (I.E.) AND NOT ON A STREET SIDE WALK OR FRONT LAWN OF YARD.

AGAIN ON OCTOBER. 18, 2000, SERGEANT BRYAN WENT TO 180 SHORE Rd, IN BAY POINT (RT: 1591-1592.) WITHOUT A SEARCH WARRANT AND HE COLLECTED A SHELL CASING, A CARTRIDGE AND A DEFORMED SLUG (RT: 1592-1593), ON OCTOBER 19, 2000, DECTECTIVE COSTA RETURNED TO 180 SHORE, ROAD (RT: 1634.) HE FOUND

& 22 CALIBER CARTRIDGE CASING ON THE KITCHEN FLOOR (R.T. 1635.), ITS CLEAR, THAT ACCORDING TO THE CONFIDENTIAL INFORMANT, THAT ON THE DAY OF THE MURDER, JENNIFER SMITH AND DAN WERE AT 180 SHORE Rd, THAT MORNING SOMETIME, ALSO ON THE 18th, 19th, OF OCTOBER, 2000, THERE WERE NUMEROUS OF UNKNOWN INDIVIDUALS AT THE RESIDENT AND AGAIN ON OCTOBER 24th 2000, MOVING THINGS AND BEING THERE, (R.T. 584, 566, 569.) AND THERE WAS A SEARCH WARRANT SITTING ISSUES DETECTIVES HAD TO BE SITING ON THE HOUSE, (R.T. 570 -571.) DUE TO I.D HAVING BULLET CASINGS ON THEM, THAT MAY OF DROP THEM THERE, OBVIOUSLY THEY WERE NOT THERE ON OCT. 17 2000, IN ADDITION, MR FUJII, EXAMINED THE CART-RIDGES CASE AND TWO CARTRIDGES RECOVERED FROM 180 SHORE Rd (R.T. 2235.) HIS CONCLUSIONS WERE THAT THE CARTRIDGE CASE AND ONE OF THE CARTRIDGES HAD "PRUBABLY" BEEN CYCLED THROUGH THE RIFLE, (R.T. 2237-2240.) HOWEVER, "THESE-DID NOT HAVE" THE MARKS MADE BY THE SCRATCHES INSIDE THE FIRING CHAMBER, AS DID THE OTHER CARTRIDGE CASES, (R.T. 2243.).

## THE "GANG" EVIDENCE:

INSPECTOR RON HUPPERT WAS ASSIGNED TO THE GANG INTELLIGENCE UNIT (R.T. 2109.) HE DESCRIBED THE "EAST BAY LOCOS" (E.B.L.) AS A SUBSET OF THE NORTENOS, BOTH OF WHICH WERE CRIMINAL STREET GANGS WHICH IDENTIFIED WITH THE COLOR RED AND THE NUMBER, "14", (R.T. 2118, 2121, 2122.) THE PRIMARY ACTIVITIES OF BOTH GANGS WERE ASSUALTS WITH FIREARMS AND ASSUALTS CAUSING "GROSS BODILY HARM (R.T. 2123.) HE DEEMED MATTHEW SPURLING, HENRY GRENADOS AND DAVID STOKES "VALIDATED" MEMBERS OF THE NORTENOS AND EAST BAY LOCOS, AND THOSE THREE MEN HAD BEEN CONVICTED OF FELONY ASSUALT, (R.T. 2123-2124.).

INSPECTOR HUPPERT ALSO IDENTIFIED MR. SCHOPPE-RICO AS A "VALIDATED" EAST BAY LOCO GANG MEMBER, BASED ON A "96" SELF-ADMISSION, A TATTOO AND PRIOR ASSOCIATION WITH A KNOWN GANG MEMBER, (R.T. 2126-2127-2129-2131-2134.), IT WAS INSPECTOR HUPPERT'S OPINION THAT IN 2002, MR. SCHOPPE-RICO HAD STILL BEEN AN ACTIVE NORTENO, (R.T. 2170.) HOWEVER, HE ADMITTED THAT BETWEEN 1996 AND 2000, HE HAD NO CONTACTS WITH MR. SCHOPPE-RICO, AND MR. SCHOPPE-RICO'S "CARD" HAD NOT BEEN UPPATED WITH GANG RELATED CONTACTS, (R.T. 2181.) IN 1996, MR. SCHOPPE-RICO WAS ONLY 15 YEARS OLD, (1) AN THERE IS NO DISCOVERY ON HOW THIS OFFICER LOGED ON THE CARD OR DETERMINED THIS AT (R.T. 516, 517, 518, 519.) EXHIBITS 55.D. 55.E. AND 55.F. WERE PORTIONS OF LETTERS MR. SCHOPPE-RICO HAD SENT FROM JAIL TO HIS BROTHER CARL SCHOPPE (R.T. 2161.) IN ONE LETTER, HE COMPLAINED OF HAVING SEEN A TELEVISION SHOW IN WHICH THE SURENOS WERE FEATURED, BUT WHICH THE NORTE AINT BEING REPRESENTED (R.T 2165-2166.) IN ANOTHER LETTER MR. SCHOPPE-RICO SEEMED TO ASK VIOLENCE BE COMMITTED AGAINST HIS FORMER GIRLFRIEND, WHERE WITNESS INTIMIDATION WAS "TYPICAL" WITH GANGS, (R.T. 2168.) THE AUTHOR SIGNED THE LETTER, "XIV" AND "EBL" (R.T. 2169.)

INSPECTOR HUPPERT DESCRIBED VIOLENCE AS A "KEY ELEMENT OF THE NORTENO GANG SUBCULTURE SINCE IT ELEVATES THE STATUS OF THE GANG MEMBER, (R.T. 2171.) HE NOTED THAT THE

DECEDENT HAD BEEN WEARING BLUE AND THAT MR. SCHOPPE-RICO, HAD BEEN FOUND WITH A RED BANDANNA. (R.T. 2172-2173.) PETITIONER CONTENDS LETTERS WROTE HIS BROTHER CARL SCHOPPE- EXHIBITS. 55 D. 55.E. 55.F AT (R.T. 2461. 2164. 2165. 2166. 2169.) MAY OF NOT BEEN WRITTEN BY PETITIONER ALSO PETITIONER WAS ON DEPRESSION MEDICATION AT THAT TIME. FOR FEELING SUICIDAL BEING IN CUSTODY AND SEGREGATED ISOLATED IN THE MENTAL HEALTH UNIT.... ( SEE EXHIBIT.  E  ) OF MENTAL HEALTH TREATMENT.

OTHER EVIDENCE SEIZED AFTER OCTOBER 17. 2000 AFTER UNKNOWN INDIVIDUALS. WERE THERE. AT (R.T. 566. 570, 569,) TWO WEEKS AFTER THE SHOOTING POLICE RETURN-ED TO 180 SHORE ROAD. WHERE MR. SCHOPPE-RICO LIVED WITH ROBERT EAGLE (RT. 1671. 1672. 2079. 2041.) THE HOUSE WAS UNKEMPT. EVERYTHING WERE BAGED, THE OFFICERS SAW GANG GRAFFITI AND BULLET HOLES IN THE REAR BED ROOM. WHICH DID NOT HAVE A. BED. (R.T. 1674. 2080. 2097.). THEY FOUND IN A OLD BOX. PHOTOGRAPHS OF PERSONS FLASHING GANG SIGNS AS WELL AS " GANG TYPE" WRITINGS SUCH AS "14" AND "EBL" RT. 2081). 2085.).                    IN THE DECEDENT ROOM AFTER COURT EXCLUDED A DECEDENT'S HEARSAY THEY ALLOWED THE FOLLOWING . " IN ANOTHER BEDROOM HAD "INDICIA. "FOR ROBERT EAGLE. IN THAT ROOM. OFFICERS FOUND GUN CLEANING KITS. BOXES OF . 22. CALIBER CARTRIDGES AND A .22 CALIBER WINCHESTER RIFLE. (R.T. 2091-2092.), WERE NONE OF THIS WAS LINKED TO PETITIONER. AND THERE WAS EVIDENCE OF BULLETS MISSING FROM THE BOX OR THEY WERE IN PETITIONERS POSSESSION,

MS. SMITH SAID. ON AN OCCASSION IN AUGUST. 2000. MR. SCHOPPE-RICO, HAD RUN INTO THE HOUSE. ASKING MS. SMITH FOR HER CAR KEYS. AFTER WHICH HE LEFT IN HER CAR. LATER AS THEY WERE WALKING TO HER CAR. SHE SAW A LARGE MAN WEARING BLUE AND WHITE JERSEY APPROACHING. MR. SCHOPPE-RICO. SAID "HE'S A FRIEND I WENT TO SCHOOL WITH HIM." HOWEVER MR. SCHOPPE-RICO AND THE MAN HAD A VERBAL ALTERCATION (RT. 1814-1858.) A FEW DAYS LATER, A CAR PULLED UP AND STRANGERS GOT OUT AND TALKED WITH MR. SCHOPPE-RICO AFTER THE MEN LEFT. MR. SCHOPPE-RICO. RAN INSIDE. PUT ON HIS RED SLIPPERS. GRABBED HIS HAT AND SHOTGUN AND WENT UP THE STREET. MINUTES LATER. HE CAME RUNNING BACK WITH FIVE OR SIX MEN CHASING HIM. ONE WHOM WAS WEARING BLUE. WHEN MR. SCHOPPE-RICO. TURNED AND POINTED THE SHOTGUN AT THEM. THE MEN STOPPED RUNNING. MR. SCHOPPE-RICO THEN FIRED THE SHOTGUN INTO THE AIR. AND THE MEN RAN THE OTHER WAY. (R.T. 1820-1824.). THERE IS NO DOUBT HERE MR. SCHOPPE-RICOS LIFE WAS ENDANGER. NOR NONE OF THIS INDIVIDUALS WERE SUBPOENA'D TO VERIFY IF NICK TAYLOR WAS WITH THEM THIS DAY.

<u>JENNIFER SMITHS BACKGROUND TESTIMONY</u>

MS. SMITH'S CREDIBILITY WAS SUSPECT AT WORST AND BEST. SHE HAD SEVERAL THEFT-RELATED CONVICTIONS. INCLUDING FELONIES. (R.T. 1880.) WITH REGARDS "TO. BENEFITS "SHE HAD RECEIVED TO HER TESTIMONY. MS. SMITH CONCEDED THAT SHE HAD BEEN ARRESTED

---

1.) INSPECTOR RON HUPPERT TESTIFIED IN VIOLATION OF IN RE. FRANKS. (2006) 141. C.A. 4th.1192. 1196. 46. C.R. 3.d. 834. EVIDENCE IS INSUFFICIENT TO SUPPORT FINDING POSSESSION WAS FOR BENEFIT OF GANG.

Between October 23rd and the time of Mr. Schoppe-Rico's preliminary hearing and she had called the prosecutor from jail. (R.T.: 1910-1911.) She might have told the prosecutor she would help him if he got her out of custody (R.T.: 1911). The prosecutor recording talking to prosecutors. She's saying, " I just want to get out" - "I want to get out" - "This can benefit the both of us." - " I just want to to get out" She's not asking for any assurance, regarding outcome of case, at the end of the conversation prosecutor Graves saying, if you get out of custody will you come talk to us ? She saying yes, I will go directly to your office upon my release. She's released at the next release window at the jail. And prosecutor investigator Sam Sanchez, picks her up and takes her from the jail to the prosecutor office. (R.T.: 643-644) and they providing her if all with all Schoppe-Rico's, case discovery, However she was released from jail to the prosecutor's office. (R.T.: 1915.) Subsequently, the prosecutor accompanied Ms. Smith to court in Walnut Creek, where she faced a $35,000 warrant for a felony. (R.T.: 1915) the prosecutor asked the judge not to remand her into custody and the judge illegally agreed. (R.T.: 1916) Ms. Smith later wrote the prosecutor asking him to help her obtain admission into a drug program. (R.T.: 1916-1917 - 1934.) At the time she had five pending cases and was on felony probation (R.T.: 1917) with the prosecutor's help, she was sentenced to a drug program and not to prison (R.T.: 1918-1939.)

" The scent discrimination lineup "

Judy Schettler was a "veterinarian technician (R.T.: 1963.) who's dog only had approximately only "ninety hours" of training (c.t.: 9.). Her bloodhound dog was named "Kaiiiroh" (R.T.: 1969.) Ms. Schettler described a "scent line" as three to five people who walk out thirty feet in multiple directions from a point, which would result in the people being thirty feet from the starting point. And at least thirty feet from one another. The dog is exposed to scent material at the starting point. And the dog then selects the person who belongs to the scent material. (R.T.: 1966.) As of October, 17, 2000 , Ms. Schettler and Kaiiiroh had participated in sixteen scent lineups training. (R.T.: 1986-1987.) training lineups are in a controlled environment in which someone knows the correct person. (R.T.: 1988-1989) In one of the training lineups, in April, 1999, Kaiiiroh had gone to an incorrect person and jumped on them. (I.E.) before being taken down the line of all the subjects, untill she jumped on the correct person (R.T.: 2002-2003) IY, on another training lineup in December, 2000, Kaiiiroh had not taken a trail (R.T.: 2026.) In training lineups were considered by Ms. Schettler to be a success if her dog jumped on the wrong person "was corrected" by her, to then jumped on the right person (R.T.: 2058) As she did in Schoppe-Rico case prompt the dog on him........ Ms. Schettler testified that the scent lineup in this case had been on the night of October, 17, 2000, at the sheriff's department in Martinez. (R.T.: 2028-2029.) It involved four persons (R.T.: 2029.) A deputy and two reserve deputy's,

According to Ms. Schettler, Kahirch put her nose" in" the bag with the scent material and was given a search command (RT: 2033) the dog went approximately ten feet toward person #4, before returning to sniff the bag again, 1810, the dog then ran between number 2 and 3, before going to number 3, sniffing and jumping "towards him," which would have been a "positive" on number 3, a deputy, if Ms. Schettler did not move her dog and prompt it on #2. (RT: 2033, 2036.) The dog then turned and went to number 2 and sniffed his legs. (RT: 2033, 2036) then headed back to number 3 and stopped (RT: 2033, 2034, 2036) finally Ms. Schettler walked the dog, returning it to number 2, put up paw and jump twice. (RT: 2034, 2036, 2037.) Ms. Schettler however testified that this was a "positive" identification (RT: 2034, -2041, 2042,) and told deputy Gruenheid this. (RT: 2077-2078),........ however the video of the scent identification lineup (exhibit. 61) is illuminating, meaning, to view, no sound or proof of everything described occurred as they say. It shows deputy Gruenheid carrying the paper bag containing the sweatshirt by the top center. It also shows that the dog did not put her nose "in" the bag, instead placing her nose at the top of the bag at the place it had been held by deputy Gruenheid, who escorted Schoppe-Rico there, it also shows the dog meandering among the subjects in the lineup; on 3 ft. leash, and it shows that whatever the dog did. __ in it, never "tracked" from the center lightstick to Mr. Schoppe-Rico's position (3) times at lease. Until Schettler noticed Schoppe-Rico with no shoes on and saw him being escorted there, handcuffed from the parking lot, while getting her dog out the sheriff K-9 van; see exhibit; D;

POINTS AND AUTHORITIES.
IN SUPPORT OF MOTION FOR LEAVE TO AMEND.

PURSUANT TO THE POLICY IN RULE. 15 OF "EXTREME LIBERALITY. IN ALLOWING AMENDMENTS THE COURT SHOULD GRANT LEAVE TO AMEND AFTER THE OPPOSING PART HAS ANSWERED. RULE 15. OF THE FEDERAL RULES OF CIVIL PROCEDURE. FRAP (FRCP) PLACE LEAVE TO AMEND WITHIN THE SOUND DISCRETION OF THE TRIAL COURT. See. eg. UNITED STATES. V. WEBB, 665 F. 2d. 977. 979. (9th CIR. 1981) HOWEVER IN EXERCISING THAT DISCRETION, "A COURT MUST BE GUIDED BY THE UNDERLYING PURPOSE OF RULE 15 .... TO FACILITATE DECISION ON THE MERITS :. Ibid. CITING CONCLEY V. GIBSON 355. U.S. 41. 47-44. (1957). ACCORDINGLY." RULE 15's POLICY OF FAVORING ADMENDMENTS TO PLEADINGS SHOULD BE APPLIED WITH. "EXTREME LIBERALITY". WEBB .SUPRA. AT 979. CITING ROSENBURG. BROTHERS & CO. V. ARNOLD, 283. F. 2d. 9th CIR. 1960). SEE ALSO OWENS. V. KAISER FUND. HEALTH PLAN INC. 244. F. 3d 708, 712. (9th CIR. 2001) (LEAVE TO AMEND TO BE FREELY GIVEN WHEN JUSTICE SO REQUIRES". AND POLICY FAVORING AMENDMENT "TO BE APPLIED WITH EXTREME LIBERALITY.")

IN FORMAN V. DAVIS, 371. U.S. 178. 182. (1962). THE UNITED STATES SUPREME COURT IDENTIFIED THE FOLLOWING FACTORS. THAT A DISTRICT COURT SHOULD CONSIDER IN DECIDING WHETHER TO GRANT LEAVE TO AMEND:

IN THE ABSENCE OF ANY APPARENT OR DECLARED REASON. SUCH AS UNDUE DELAY. BAD FAITH OR DILATORY MOTIVE ON THE PART OF THE MOVANT REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENT PREVIOUSLY ALLOWED. UNDUE PREJUDICE TO THE OPPOSING PARTY BY VIRTUE OF ALLOWANCE OF THE AMENDMENT. FUTILITY OF AMENDMENT. etc. ..... THE LEAVE SOUGHT SHOULD. AS THE RULES REQUIRE. BE "FREELY GIVEN " Id. AT. 182. 83. S. Ct 227.

FURTHER PETITIONER/SCHOPPE-RICO. CONTENDS IN ALL THREE LEVELS OF CALIFORNIA. STATE COURTS HE WAS DENIED RELIEF. ON ALL OF HIS RAISED CLAIMS, ONE THROUGH NINE. AND THE REASONS WHY CLAIM FOUR AND EIGHT. UNDER THE FOURTH AMENDMENT ARE COGNIZABLE UNDER. STONE V. POWELL. 96. S. Ct. 428. U.S. (1976) IS DUE TO CALIFORNIA STATE PROCEDURE PROVIDES SCHOPPE-RICO. AN OPPORTUNITY. FOR FULL LITIGATION OF ANY 4th AMENDMENT CLAIM. IN STONE SUPRA: HELD IN THESE CASES. THIS COURT HAS HELD THE EFFECUATION OF THE 4th AMENDMENT AS APPLIED TO THE STATES THROUGH THE 14th AMENDMENT REQUIRES THE GRANTING OF HABEAS CORPUS RELIEF WHEN A PRISONER HAS BEEN CONVICTED IN STATE COURT ON THE BASIS OF EVIDENCE OBTAINED IN AN ILLEGAL SEARCH AND SEIZURE. SINCE THESE AMENDMENTS WERE HELD IN MAPP. V. OHIO. 367. U.S. 643. 81. S. Ct. 1684-6. L. Ed. 2. d. 108.

24.

IN SCHOPPE-RICO'S CASE DO TO REQUIRE EXCLUSION OF SUCH EVIDENCE AT TRIAL AND REVERSAL OF CONVICTION UPON DIRECT REVIEW OF CLAIMS. FOUR AND EIGHT, OF SCHOPPE-RICO. TRIAL COUNSEL WAS INEFFECTIVE IN PRESENTING THEM, UNDER, EVITTS V. LUCEY. INFR. AND UNDER GORDON V. DURAN INFRA. STRICKLAND INFRA. QUOTING KAUFMAN V. UNITED STATES. 394. U.S. 217. 277. 89. S. Ct. 1068. 1079. L. Ed. 2. d. 227. (1969) THEY REJECT the RATIONAL AND AS KAUFMAN HELD. NOTED, THAT THE FEDERAL HABEAS REMEDY EXTENDS TO STATE PRISONERS ALLEGING UNCONSTITUTATIONALY OBTAINED EVIDENCE WAS ADMITTED AGAINST THEM AT TRIAL. THAT SEARCH AND SEIZURE CLAIMS ARE "COGNIZABLE" IN HABEAS PROCEEDINGS. CITING. MANCUSI. DE V. DEFORLE. 392. [428. U.S. 480] U.S. 364. 88. S. Ct. 2120. 20. L. Ed. 2. d. 1154. (1968) CARAFAS. V. LA VALLES. 391. U.S. 234. 85. THE FOURTH AMENDMENT ASSURES the RIGHTS OF THE PEOPLE TO BE SECURED IN THEIR PERSONS. HOUSES. PAPERS. AND EFFECTS. AGAINST UNREASONABLE SEARCHES AND SEIZURES. THE AMENDMENT WAS PRIMARILY A REACTION TO THE EVILS ASSOCIATED WITH THE USE OF THE GENERAL WARRANT IN ENGLAND AND WRIT OF ASSISTANCE IN THE COLONIES. STANDFORD V. TEXAS. 379. U.S. 476. 481. 48. S. Ct. 85. S. Ct. 506. 504. 511. 13. L. Ed. 2. d. 431. (1965). FRANK V. MARYLAND. SUPRA. AND WAS INTENDED TO PROTECT THE SANCTITY OF A MANS HOME AND THE PRIVELEDGES OF LIFE. BOYD. V. UNITED STATES. 116. U.S. 616. 630. 6 S. Ct. 524. 532. 29. L. Ed. 746. (1886). AND SCHOPPE-RICO CONTENDS DUE TO THE CONFLICT OF INTEREST AN INEFFECTIVE ASSISTANCE OF COUNSEL BOTH TRIAL AND APPELLATE COUNSEL. UNDER STRICKLAND V. WASHINGTON INFRA. EVITTS V. LUCEY, 469. U.S. 387. 391. 405. DUE TO COUNSELS UNPROFESSIONAL ERRORS. HE WOULD OF HAVE PREVAILED ON APPEAL AND AT TRIAL. MILLER V. LUCEY. INFRA. FAILED TO LITIGATE CLAIMS. IN RE: HARRIS. (1993) 5. CAL. 4th. 813. [24. CAL. RPTR. 2. d. 373] WERE NEW FACTS "ARISES." LAW AND EVIDENCE BEING PRESENTED, THAT WAS NOT PREVIOUSLY AVAILABLE OR NOT IN THE RECORD ON APPEAL. MAY BE NOW ALLOWED FOR PETITIONER TO LITIGATE THOSE ISSUES. IN RE. GAY. (1998) CAL. 4th TH. [80 CAL. RPTR. 2. d. 765.] MEANING SCHOPPE-RICO IS ALSO PRESENTED ISSUES NOT ON RECORD.

MR. SCHOPPE-RICO CONTENDS CLAIMS. NINE. TEN. ELEVEN. TWELVE AND THIRTEEN. WERE RAISED ON DIRECT APPEAL. WERE EXHAUSTED AFTER TRIAL IN THE TWO STATE COURTS. THE APPEAL COURTS FIRST DISTRICT. THE SUPREME COURT ON PETITION FOR REVIEW. FILED BY APPELLATE COUNSEL THAT WAS DENIED OCTOBER. 18. 2006. HE MAILED ME LATTER. LETTER. TELLING ME WHAT STEPS TO NEXT TAKE. (SEE ATTACHED EXHIBIT! __F pg. 15. \) SO I TOOK HIS ADVISE. AND FILED (2) HABEAS CORPUS. (1) IN SUPERIOR COURT. (1) IN APPELLATE COURT. THEN ONE IN CALIFORNIA SUPREME COURT. THAT WAS FILED ON APRIL 12th 2007 AND DENIED SEPTEMBER. 19. 2007. SO THESE HABEAS CLAIMS NINE THROUGH THIRTEN HAVE FEDERAL BASIS AS DEMONSTRATED AND WERE FEDERALIZED SUBMITTED AND EXHAUSTED IN THE SUPREME COURT. BY BOTH APPELLATE COUNSEL AND MR. SCHOPPE-RICO. IN PROPIA~PERSONA~

THE FEDERAL BASIS OF THESE CLAIMS AND LAW ARE AMENDMENTS CONSTITUTIONAL VIOLATIONS. ERRORS, PREJUDICAL ERRORS AND VIOLATION OF DUE PROCESS OF THE LAW AN TO A FAIR TRIAL ALL APPLICABLE THROUGH THE FOURTEENTH AMENDMENT. AFTER TRIAL COUNSEL WAS ENEFFECTIVE. SHE RELIED ON CLAIMS NINE THROUGH THIRTEEN AS THE FEDERAL BASIS WHY SHE WAS ENEFFECTIVE IN THE OVERALL CASE. APPELLATE COUNSEL WAS ENEFFECTIVE DUE TO TRIAL COUNSEL NOT PROVIDING AN INTELLEGENTABLE RECORD CLAIMS TO APPEAL ON AND WORK WITH AND DUE TO D.A'S PROSECUTORS MISCONDUCT BRADY VIOLATIONS.......... THEREFORE PETITIONER COMES BEFORE THE COURT TO RELITIGATE THESE ISSUES UPON THE STATE VIOLATIONS AND FEDERAL BASIS IN DENYING RELIEF UNDER. ROSE V. HODGES 413. U.S. 19, 21. (1975).

GROUND ONE:

DEFENSE COUNSEL MUST AVOID CONFLICT OF INTEREST THAT INFRINGES OR DENIES PETITIONER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

MR. SCHOPPE-RICO CONTENDS THAT HIS SIX AMENDMENT CONSTITUTIONAL RIGHTS BOTH OF STATE AND FEDERAL WERE VIOLATED, DUE TO ACTUAL CONFLICTS OF INTEREST WICH AFFECTED COUNSELS PERFORMANCE AND REVERSAL IS REQUIRED UPON REPORTING THIS. COUNSEL MIS REPRE-SENTATION OF DEFENDANTS CULPABILITY IN ORDER TO PROTECT OTHERS, THIS VIOLATING SCHOPPE-RICOS RIGHTS, UNDER. PEOPLE V. ALLEN. 831. F.2d. 1487. (9th CIR. 1987), CITING STRICKLAND V. WASHING-TON 466. U.S. 668. 692. (1984). WHICH DENIED SCHOPPE-RICO TO A FAIR AND IMPARTIAL TRIAL GUARANTEED UNDER THE STATE AND FEDERAL CONSTITUTION AT SENTENCING. DISPOSITION FOR A TRIAL. SCHOPPE-RICO FILED A MARSDEN MOTION (R.T. 2536) ON RECORD WITH AN MARSDEN DECLARATION AT: (C.T. 1456-1457.) AT SENTENCING COUNSEL ADMITTED TO THE FOLLOWING FOR RECORD: COLLOQUY AS FLLOWS. ___ [DEFENSE COUNSEL] "I MEAN BEFORE APRIL 11th THROUGH THE PENDENCY OF THE CASE, HE'S GIVEN ME INFORMATION ABOUT FINDING CERTAIN WITNESSES THAT WE HAVEN'T FOUND. ⌒. SPECIFIC PEOPLE [YES], I HAD FIRST NAMES . (ATTEMPTS MADE) [DEFENSE COUNSEL] I HAD AN INVESTIGATOR GO TO THE HOUSE THAT THE PERSON WAS SUPPOSE TO LIVE AT MANY OF TIMES. KNOCK ON THE DOOR, WAIT OUTSIDE. GO THERE WITH JENNIFER SMITH. ACTUALLY WHO AT THE TIME WAS TRYING TO HELP US LOCATE THE PERSON AND WE WERE NEVER ABLE TO FIND HIM .... (NOW THE FOLLOWING STATEMENT IS WERE CONFLICT OF INTEREST ARISES WITH COUNSEL AN SCHOPPE-RICO.) SHE STATES THIS PERSON WAS TO TESTIFY HE HAD SCHOPPE-RICOS GUN. (R.T. 2544). THIS STATEMENT IS A MIS-REPRESENTATION OF SCHOPPE-RICOS CULPABILITY. BY HER CLAIMING ITS PETITIONER GUN AT (R.T. 2544) I NEVER TOLD THAT. AND SHE DOING IT IN ORDER TO PROTECT OTHERS IN VIOLATION OF SCHOPPE-RICO'S SIXTH AMENDMENT CONSTI-TUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. COUNSEL WAS WELL AWARE OF SCHOPPE-RICO GANG ENHANCEMENTS AND GANG EVIDENCE PROSECUTION WAS USING. PLUS WITH INFORMATION SHE OBTAINED FROM PETITIONER THAT THERES OTHER AFFILIATES OR MEMBER OF THIS GANG EQUALLY RESPONSIBLE THE RON HUPPERT FAILED THOUROUGHLY TO EXPLAIN (R.T. 2109) HOWEVER HE DEEMED MATTHEW SPURLING, HENRY GRENADOS, AND DAVID STOKES. VALIDATED MEMBERS OF THE NORTENOS AND EASTBAY LUCCS AND THAT THE THREE MEN HAD BEEN CONVICTED OF FELONY ASSUALT (R.T. 2123-2124.) AS IN U.S. V.S. ALLEN SUPRA. COUNSEL FELL SHORT OF EFFECTIVE ASSISTANCE OF COUNSEL. WITH THE CONFLICT OF INTEREST IN PROTECTING THE "DRUG RING" [GENERALS] SMUGGLING OPERATION. THE DEFENDANT ALLEN. WAS ORIGINALLY THOUGHT ALLEN WAS ONE OF THE THREE PRINCIPALS OF THE OPERATION AN IT WAS CONCEDED ALLEN ACTED AS "ONLY" AN "CARTAKER." OF THE RANCH. AND TOOK HIS ORDER S. FROM CO-DEFENDANTS (U.S. 1490). CHARLES MINNIG. WERE THE CODEFENDANTS WHO HAD INSTRUCTED HIM BEFORE THE OPERATION TO CONTACT OTERI & WEINBERG. IF CAUGHT. ONCE NOTIFIED ATTORNEY JAMES LAWSON OF THE FIRM FLEW TO OREGON. LAWSON TOLD THE GROUP

27.

OF (IT) NOT TO TALK TO ANYONE AND THAT YOUR FRIENDS ARE TAKING CARE OF YOU [AND]
WILL BE PROVIDING FOR YOU. ITS A KNOWN FACT THE MEN WHO WOULD NOT BE INDICTED AS THE
PRINCIPAL GENERALS OF THE SMUGGLING OPERATION DELIVERED LARGE SUMS OF CASH TO THE
OFFICES OF OTERI & WEINBERG. AND IN RETURN HE PROTECTED THEM AND USED ALLEN AS AN
SCAPEGOAT. . . . . .  _____  IN  MR. SCHOPPE-RICOS CASE THE SITUATION IS SIMILAR.
BASED ON HOW THE EAST BAY LOCOS. NORTENO GANG OPERATE. AS THE ALIEN SMUGGLING.
OPERATION IN  ALIENS SUPRA;  WERE THE PRINCIPAL (3) OF THAT GANG. USED PETITIONER AS
THERE SCAPEGOAT. THE NORTENO GANG ASSOCIATES AND MEMBERS, TAKE ORDERS. AND ARE.
ORGANIZED BY NUESTRA RAZA. DISRUPTIVE GROUP AND NORTHERN STRUCTURE PRISON GANG, WHO
WORK IN CONCERT WITH AND ARE SUBSERVIENT TO THE NUESTRA FAMILIA. LEADERS AND GENERALS,
DAVID STOKE, MATTHEW SPURLING AND GRENADOS HAVING BEEN CONVICTED OF FELONY ASSUALT
[RT: 2123-2124) ARE ASSOCIATES OR MEMBERS. RESPONSIBLE. COUNSEL DEFENDING THEM WITH DAN. . . . .
ALSO COUNSEL WAS ENEFFECTIVE IN PRESENTING EVIDENCE THAT MR. SCHOPPE-RICO WAS.
UNDER THE INFLUENCE OF METHAMPETAMINES AND ALCOHOL. THAT CAME BACK IN HIS BLOOD
TEST. (HIGH DOSAGES). THAT WERE PERFORMED ON HIM AFTER HIS ARREST ON OCT. 17. 2000 BY NURSE
VICKI. SHE ALSO ENEFFECTIVELY EXCLUDED IT A TRIAL (RT: 587) IAN FAILED TO USE THE REQUESTED
INTOXICATION DEFENSE. OF DEFENDANTS MENTAL CAPACITY GRAVELY DISABLED. WCLF &.11C. 85150,
85170 INTENT IF THE DEFENDANT SHOWS AS EVIDENCE AT (R.T.1587) OF MENTAL ILLNESS THAT HE
LACKED THE INTENT TO KILL. PUBLIC DEFENDER SHOULD OF TRY TO GET THE CRIME REDUCED TO INVOL—
UNTARY MANSLAUGHTER. PEOPLE V. SAILLE. (1991) 54. L.ED. 1103. 2. CR. 2.d. 364, SIMILAR
EVIDENCE OF VOLUNTARY INTOXICATION CAN NEGATE THE INTENT TO KILL. PEOPLE V. WEBBER (1991)
228. CA. 3.d. 1146, 1162. 274. CR. 437, 445. (SECOND DEGREE MURDER REVERSED BECAUSE TRIAL
COURT REFUSED REQUESTED INVOLUNTARY MANSLAUGHTE INSTRUCTIONS.) BASED ON SUBSTANTIAL
EVIDENCE. OBJECTIVE STANDARD OF PENAL CODE §192. OR IMPERFECT. SELF-DEFENSE DOCTRINE.
OF PEOPLE V. FLANNEL (1979) 25. CAL. 3.d. 660. 160. CR. 84. THE FLANNEL. DIMINISHED CAPACITY,
OR UNDER. IN RE. CHRISTIAN. S. (1994) 7. C. 4th. 768. 774. 30. CR. 2.d. 23. PER. PEN. C. §22C.
SUCH EVIDENCE IS ADMISSIBLE THE DEFENDANT. UNCONSCIOUSNESS THE CRIMINAL NEGLIGENCE
REQUISITE TO A FINDING OF INVOLUNTARY MANSLAUGHTER IS ESTABLISHED BY HIS ACT OF
VOLUNTARY INTOXICATION. . . . AN/OR PEN. C. 226. . . . . PEOPLE V. OCHOA. SUPRA/INFRA. SUCH
EVIDENCE IS ADMISSIBLE AT ISSUE OF DEFENDANTS PREMEDITATED. DELIBERATE OR HARBORED EXPRESS
MALICE AFORE THOUGHT. . . . . .  HOWEVER MR. SCHOPPE-RICO. CONTENDS. UNDER.
STRICKLAND SUPRA PRINCIPLES. CITED Re. UNITED STATES V. JOHNSON 327. U.S. 106. 112. 66. S. CT.
464. 466. 90. L.ED. 562. (1946) AN INEFFECTIVE ASSISTANCE CLAIM ASSERTS THE ABSENCE OF
ASSURANCE THE PROCEEDING IS RELIABLE SO FINALITY CONCERNS ARE WEAKER AN APPROPIATE
STANDARD. OF PREJUDICE THE RESULT OF THE PROCEEDING CAN BE RENDERED UNRELIABLE AND

28.

HENCE THE PROCEEDING ITSELF UNFAIR. EVEN IF THE ERRORS OF COUNSEL CAN'T BE SHOWN BY PREPONDANCE OF EVIDENCE TO DETERMINE OUTCOME, THE APPROPIATE TEST FOR PREJUDICE, FINDS ITS ROOTS IN THE TEST FOR MATERIALITY OF EXCULPATORY EVIDENCE/INFORMATION NOT DISCLOSED TO DEFENSE BY PROSECUTOR. UNITED STATES V. AGURS. 427. U.S. AT 104.112, 113, 96.5, Ct. 2397. 2401 - 2402. IN THE TEST FOR MATERIALITY OF TESTIMONY MADE UNAVAILABLE TO THE DEFENSE BY GOVERTMENT. IN RE RILEY V. PAYNE. 352. F.3d, 1313, (CA.9 WASH. 2001) HELD IT WAS "UNREASONABLE OF COUNSEL TO NOT TO INTERVIEW DEFENDANTS ASSOCIATE, IN PROSECUTION FOR ASSUALT. UNDER (THE STRICKLAND TEST") ASSAULT WITH A DEADLY WEAPON WHO WOULD OF BEEN A MATERIAL WITNESS TO HIS /RILEY DEFENSE OF SELF DEFENSE. . . . . DEFENDANTS ASSOCIATES NEVER CAME FORWARD DUE TO HIS REPUTATION AND WARRANTS THE COURT REVERSED UPON SEEING AFFADAVITS. AND HELD IT WAS ERROR OF COUNSEL NOT TO INVESTIGATE PETITIS/MATERIAL WITNESSES . . . . . THE SAME IS IN SCHOPPE-RICOS CASE. SHE FAILED TO INTERVIEW DAN. OWNER OF RED CRYSLER, ALSO COUNSEL FAILED TO INTERVIEW NORTENO EAST BAY LOCOS MEMBERS OF MATERIAL WITNESSES, WHO WOULD OF SUPPORTED PETITIONERS ARGUEMENTS. STRICKLAND SUPRA - HELD, ITS COUNSEL DUTY TO MAKE REASON- ABLE INVESTIGATIONS OR TO MAKE A REASONABLE DECISION THAT MAKE INVESTIGATIONS UN- NECESSARY. ITS HELD THAT A LAWYER WHO FAILS TO INVESTIGATE AND TO INTRODUCE INTO EVIDENCE EVIDENCE THAT DEMONSTRATES HIS CLIENTS FACTUAL INNOCENCE OR THAT RAISES SUFFICIENT DOUBT. AS TO THE QUESTION TO UNDERMINE CONFIDENCE IN THE VERDICT. RENDERS DIFFICIENT PERFORMANCE. I.D. AT 318. - A-(3) (4) (5) (314). COUNSEL FAILURE IN SCHOPPE-RICOS CASE PRESENTING EVIDENCE HAND/ARM INJURIES IS DIFICIENT PERFORMANCE. INVESTIGATING DAN. AND JENNIFER. SMITH. IS DIFICIENT. PLUS PETITIONER ALLEGES HIS LAWYER ENDEAVORED TO PREVENT HIM FROM DISCLOSING THE IDENTITY OF THE TRUE EASTBAY LOCOS NORTENOS GENERALS, OF THE CONSPIRACY AND TO PROTECT THEM CERTAIN DEFENDANTS, 2) FAILED TO CORRECT THE ERRONEOUS CULPABILITY ASSESSMENT BY DEFENSE COUNSEL. THAT INACCURATELY INFLATED SCHOPPE-RICOS CULPABILITY AND DEFLATED THAT OF DAN. DAVID STOKE. M. SPURLING AND GREGADOS, AND 3) INSISTED, UPON IMPLIED THREAT OF FORCE HE NEVER REPORTS COUNSEL TO COURT. TO TESTIFY OR AND TO CONFRONT- ATION 4) SUBORNED PERJURY, TO HIS DETRIMENT. AND 5.) PREVENTED HIM FROM TAKING AN DEAL. AN IN SHORT MADE ME TAKE A FALL FOR JENNIFER SMITH. AND DAN AND OTHER EAST BAY LOCOS MEMBERS /ASSOCIATES, NO ONE SHOULD BE REPRESENTED BY AN ATTORNEY WHO IS MAKING PETITIONER THE FALL GUY BY DESIGN. UNITED STATES V. DE BERRY, 487. F.2d. 448.454. (2ND CIR. 1973) COUNSEL WAS ENFFECTIVE ALL LONG. DISAGREEING WITH ME. MAKING PROMISES. NEVER FILED MOTIONS ECT. (SEE CT. 1456-1457) OF ALL SHORTCOMMINGS.

29.

GROUND TWO:

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN SHE INTENTIONALLY FAILED TO PROPERLY PRESENT A DEFENSE ON PETITIONERS HANDS INJURIES, OR HIS DISABILITIES. (LIE) INCLUDING ON FAILING TO ASK OR GET ANY DEALS OR PLEA BARGAINS.

MR. SCHOPPE-RICO CONTENDS THAT THIS UNDER THE FEDERAL AND STATE AMENDMENT SIX, U.S. CONSTITUTION VIOLATED HIS RIGHT UNDER U.S. V. BLAYLOCK, 20, F.3d, 1458, (CA.9.CAL, 1994.). PUBLIC DEFENDERS HAS A SIXTH AMENDMENT DUTY AND RESPONSIBILITY TO PROPERLY INVESTIGATE POSSIBLE MITIGATING AND EXONERATING EVIDENCE. IN RE: STRICKLAND 466, U.S. AT 688, 104. S. Ct. 2052 COUNSEL HAS DUTY TO MAKE REASONABLE INVESTIGATIONS OR TO MAKE A REASONABLE DECISION THAT MAKES PARTICULAR INVESTIGATIONS UNNECESSARY," Id AT. 691,104, S. Ct. 2052. WE HAVE HELD THAT A LAWYER WHO FAILS TO ADEQUATELY TO INVESTIGATE AND TO INTRODUCE INTO EVIDENCE, EVIDENCE THAT DEMONSTRATES HIS CLIENTS FACTUAL INNOCENCE OR THAT RAISES SUFFICIENT DOUBTS AS TO THE QUESTION TO UNDERMINE CONFIDENCE IN THE VERDICT, RENDERS DEFICIENT PERFORMANCE," AVILA. V. GALAZA. 297. F.3d.911, 919,(9th CIR 2002) (QUOTING) HART V. GOMEZ. 174. F.3d 1067, 1070. (9th CIR. 1999). SEE LORD V. WOOD .184,F.3d, 1083, 1096, (9th CIR. 1999) ( COUNSELS PERFORMANCE WAS DEFICIENT, WHERE COUNSEL, FAILED TO INTERVIEW THREE WITNESSES WHO HAD MATERIAL EVIDENCE AS TO THERE CLIENTS INNOCENCE.) IN RILEY V. PAYNE. 352. F.3d 1313. (C.A. 9 WASH. 2003), THUS THE RULE OF STRICKLAND BEFORE LIMITING INVESTIGATION, REQUIRES A "REASONABLE PROFESSIONAL JUDGEMENT, THE GOVERMENT HAS PROVIDED NO TESTIMONY OF COUNSELS AS TO WHY HE DID NOT CONTACT WITNESSES, PUBLIC DEFENDERS NEVER HAVING INTERVIEWED WITNESS, PUBLIC DEFENDER COULD NOT HAVE DETERMINED WHAT WITNESS PETITIO, WOULD HAVE SAID,") . . . . . . . . PETITIONER CONTENDS HIS RIGHTS WERE VIOLATED WHEN ANY EVIDENCE DEMONSTRATING PROOF OF HAND / ARM INJURIES AND FINGERS, OF PHYSICAL IMPAIRMENT WERE NOT USED IN MR. SCHOPPE-RICOS DEFENSE. DENIED HIM HIS SIXTH AMENDMENT FEDERAL AND STATE CONSTITUTIONAL RIGHT. PROOF AS FOLLOWS, . . . . . . . ON OCTOBER. 17, 2000, SCHOPPE-RICO WAS PHYSICALLY DISABLED. SEE COURT EXHIBIT # 7. PAGES. 1, 2, 3. FROM TRIAL.) ON SEPTEMBER. 20th 2000. SCHOPPE-RICO WAS SHOT, (RT. 2281-2282.) DEPUTY SIMPSON SAW SCHOPPE-RICO, INJURIES. HE SAID, HE HAD SUSTAINED A SMALL CALIBER GUN SHOT WOUND TO HIS RIGHT PALM ? PRIMARILY, THAT TRAVELED UP INTO HIS ARM AND WRIST, NO EXIT POINT WAS SEEN (RT. 2283.) THIS WAS SEP. 20th .00 (RT, 2284.), SCHOPPE-RICO, WAS TAKEN TO CONCORD, MT. DIABLO JOHN MUIR HOSPITAL, WERE EMERGENCY ROOM ON CALL DOCTOR. M.D. SOCCO, OPERATED ON SCHOPPE-RICO HE IMPLANTED A FIXATION SCREW REPLACING THE WRIST SHATTERED BONE. THE FIXATION SCREW WAS POSITION IN THE RADIAL STYLOID BONE. INSERTED INTO THE SCAPHOID WRIST JOINTS BONE, THIS WAS APPROXIMATELY TWO AND HALF WEEKS, BEFORE SCHOPPE-RICOS ARREST WERE UPON LAWYERS, PROSECUTORS AND POLICE AND DETECTIVES KNEW THAT ON OCTOBER, 17, 2000, HE WAS DISABLED AND PHYSICALY IMPAIRED (SEE EXHIBIT. ___A___. ) TYPE OF INJURIES AND REPORTS. . . . THE EXCLUSION OF THIS EVIDENCE DEMONSTRATING PHYSICAL IMPAIRMENT IS OF GRAVE ERROR. AND PREJUDICAL. WHERE PROSECUTORS VERSION OF EVENTS RELIED ON DEFENDANTS PHYSICAL

ABILITY TO PERFORM CERTAIN ACTS THAT AT THE TIME, MR. SCHOPPE-RICO, WAS VERY UNABLE TO PERFORM. THESE ACTS WILL CONSIST OF SCHOPPE-RICO, 1.) WRONGLY ACCUSSED OF PUNCHING HIS GIRLFRIEND WITH INJURED HAND/ARM. 2.) OF MAKING THREATS OF GETTING HIS GUN AND CARRYING IT. WITH HIS DISABLED HAND/ARM. 3.) AND, AS ALBERT MELTON AND DISTRICT ATTORNEY ALLEGES, PULLING THIS RIFLE OUT IN ANY EVENT AND FIRING THIS. ODD RIFLE THAT ONLY WORKS IN A CERTAIN WAY, THEN CLIMING OVER A RETAINING WALL UNDRESSING, THEN JUMPING OVER FENCES. IF COURT FINDS MEDICAL RECORDS AND INJURY HAS FOUNDATION AND RELEVANT EVIDENCE, THAT COUNSEL WAS INEFFECTIVE IN PRESENTING IT, THEN REVERSE CONVICTION, OR REMAND IT. ". BECAUSE MEDICAL RECORDS, DOCTOR REPORTS AND DOCTOR AN NURSES TESTIMONY, WILL CONTRADICT THE OFFICERS STORY, WITNESSES AND DISTRICT ATTORNEYS VERSION OF EVENTS OF OCTOBER 17, 2000, WHEN PRESENTED, THIS PROOF OF GUNSHOT INJURY WILL ESTABLISH IN COURT. THIS EVIDENCE OF SCHOPPE-RICOS HAND/ARM INJURY WOULD OF HAVE MADE IT IMPOSSIBLE, DIFFICULT FOR HIM TO HAVE RUN AND PUNCHED JENNIFER SMITH, AND DRAGED HER AS ANITA THOMPSON AND HER TESTIFIED AT (RT. 1880 THROUGH 1920), AND AT (RT. 1427-1429, TO, 1450) IT WOULD ALSO WOULD OF BUTTERSS COUNSELS ARUGEMENT THAT MS. SMITH ONLY SAID THOSE LIES TO HELP THE PROSECUTOR OUT IN EXCHANGE FOR HER RELEASE. AND DAMIAN URIBE, TESTIFIED SHE NEVER WAS HIT OR THREATEN (RT. 2103). AND THAT WAS REASONING ON THE ELEMENT OF OVER EXCESSIVE CHARGE OF 1ST DEGREE AND RELEVANT TESTIMONY OF ALL DEFENDANTS FORENSIC EVIDENCE EXONERATING HIM. WITNESSES AND POLICE OFFICERS TESTIFIED THEY LINKED SOME DISCARGED CLOTHING NEXT TO THE GUN TO SCHOPPE-RICO, THROUGH A ILLEGAL SEARCH AND SEIZURE, AN A SCENT-DOG DESCRIMINATION LINE UP,..... PER FEDERAL RULE EVID, RULE 401. 28, U.S.C.A, MR. SCHOPPE-RICO, HAS TRIED TO HAVE COUNSEL INTRODUCE THIS EVIDENCE OF MEDICAL RECORDS, SHOWING THAT SCHOPPE-RICO WAS RECEIVING TREATMENT FOR HAND/ARM INJURY AT THE TIME OF HIS ARREST AND WAS ON PAIN, VICODIN MEDICATION. SCHOPPE-RICO CONTENDS THAT THE MEDICAL RECORDS, AND INJURY EVIDENCE WOULD OF HAVE UNDERMINED, THE CREDIBILITY OF THE OFFICERS, AND BIAS WITNESSES AND CAST DOUBTS ON THEIR VERSION OF THE EVENTS, BECAUSE THE RECORDS SHOWS THAT HE COULD NOT HAVE RUN AFTER MS. SMITH, PUNCH HER, GRABED AND CARRIED A GUN/RIFLE AND SHOT NICK TAYLOR THEN JUMPED OVER RETAINING WALLS, FENCES, AN DISCARDING WEAPON AND CLOTHING AS THE OFFICERS, AND DISTRICT ATTORNEY ALLEGES, AND COERCED WITNESSES TO ..... THE COURT, LAWYERS AND PROSECUTOR ILLEGALLY WITHHELD OR EXCLUDED THESE MEDICAL RECORDS AND FACTS TO GAIN TACTICAL ADVANTAGE TO WRONGLY CONVICT PETITIONER, IN VIOLATION OF HIS RIGHTS.

THE MEDICAL RECORDS IN QUESTION IF OBTAINED BY ENEFFECTIVE ASSISTANCE OF COUNSEL OR HANDED OVER IN DISCOVERY BY THE PROSECUTOR, WOULD OF CONTAINED A REPORT BY, SCHOPPE-RICOS DOCTOR, MD, MR SOCCO, OF CONCORDS MT. DIABLO HOSPITAL THAT AFTER SURGERY ON SEPTEMBER 20TH 2000 JUST WEEKS BEFORE SCHOPPE-RICOS ARREST. THE RECORD SHOWS, MR. SCHOPPE-RICO, RIGHT HAND FINGERS, WRIST UP TO ELBOW OF ARM, WAS WEAKEN PARLYZED, NUMB SWOLLEN, AND BONES SHATTERED WITH FIXATION SCREW IMPLANTED IN WRIST, FROM FOREARM. BONE TO HAND BONES, AS A RESULT OF A GUN SHOT WOUND ON SEPTEMBER, 20TH, THAT AFTER, THE OPERATION, THE DOCTOR PRESCRIBED, VICODIN, MOTRIN MEDICATION FOR 60 DAYS FOR PAIN

ASSOCIATED WITH GUN SHOT INJURY. WHICH A FULL HAND TO ELBOW ARM CAST, WITH SPLINT FOR STABILITY WAS PRESCRIBED. IT ALSO WOULD OF REFERENCE TO THE FACT. SCHOPPE-RICO, LOST WIEGHT WAS INACTIVE (SCHOPPE-RICO ALSO REPORTED TO DOCTORS IN JAIL, LAWYERS, AND DETECTIVES OF THIS) AN SO WOULD OF HIS DOCTOR WOULD OF REFERENCE HE WAS UNLIABLE TO PARTICIPATE IN ATHLETIC ACTIVITIES. THAT HE HAD DIFFICULTY PERFORMING A RANGE OF MOTIONS, TASK. THUS INCLUDING HOLDING, GRIPING, HITING, CARRYING, DRESSING AND WASHING HIMSELF AND HAVING SEXAUL INTERCOURSE. THUS ALL UNABLE TO WITH RIGHT ARM AS ALLEGED. AND PETITIONER IS RIGHT HANDED. (SEE EXHIBIT: ___A___ ) ENGAGE IN SUCH A EXTREME EVENT.....

UNDER. IN RE: BLAYLOCK SUPRA. RELEVANCE OF MEDICAL INJURY DOCUMENTS. UNDER THE BUSINESS RECORDS "ARE EXCEPTION TO HEARSAY UNDER, FEDERAL RULE EVIDENCE 803.(6)" THAT THEY HAVE FOUNDATION AND RELEVANCE".....BEFORE A DOCUMENT CAN BE FOUND RELEVANT THE COURT MUST FIND IT HAS FOUNDATION. SEE (FED. R. EVID. 901(a).). AND ADVISORY COMMITTEE NOTE (AUTHENTICATION AND IDENTIFICATION REPRESENTS. A SPECIAL ASPECT OF RELEVANCY." THE NEED FOR AUTHENTICATION [IS] AN INHERENT LOGICAL NECESSITY OF RELEVANCE"..... MOREOVER THE PROSECUSOR IN BRADY VIOLATION WITHHELD MEDICAL DOCUMENTS OF THIS. AND TRIAL COUNSEL WAS ENEFFECTIVE IN OBTAINING SUCH RECORDS AND USING THEM AT TRIAL CONSTITUTED, VIOLATIONS UNDER STRICKLAND SUPRA, STANDARDS, IN BLAYLOCK SUPRA: PETITIONER MEETS THE PREQUIS- ITES. FOR ADMITTING THE DOCUMENTS IN RE: UNITED STATE. V. BELLUCCI. 995. F. 2d. 157. 160. (9th CIR 1993) (PROPONENT OF DOCUMENTS MUST SHOW AUTHENTICATION, BEST EVIDENCE AND LACK OF HEAR. SAY.) THE EVIDENCE IS RELEVANT WHEN IT HAS TENDENCY TO MAKE THE EXISTANCE OF ANY FACT THAT IS OF CONSEQUENCE TO THE DETERMINATION OF THE ACTION MORE OR LESS PROBABLE. FED. R. EVID. 401. UNITED STATES V. IVES. 609. F. 2d. 930. 933. (9th CIR 1979.) CERT DENIED, 445. U.S. 919. 100. S. Ct. 1283. 63. L. Ed. 2d. 605 (1980)....... THE MEDICAL RECORDS, THE NURSE VIKII, DOCTOR. SOCCO AND ARGUEMENTS ON THIS IS RELEVANT TO BOTH. THE CREDIBILITY OF THE FORENSIC EVIDENCE CLEARING PETITIONER. THE DOG HANDLER JUDY SHETLER, JENNIFER SMITH, ANITA THOMPSON, ALBERT. MELTON, PAUL LANCASTER, LYDIA WILLIAMS, AND THE POLICE OFFICERS TESTIMONY AND TO THE PLAUSIBILITY OF MR. SCHOPPE-RICOS. DEFENSE JUSTIFICATION, THE MEDICAL RECORDS, CONSTITU- TE EVIDENCE THAT SCHOPPE-RICO WOULD HAVE DIFFICULTY, INABILITY, CARRYING, HOLDING, PULLING, PUNCHING, GRIPING UNDRESSING AND CLEANING HIS SELF ON THE DAY IN QUESTION, ACCORDING TO SCHOPPE-RICOS MEDICAL RECORDS, (SEE EXHIBIT. ___A___ ) AN THE WITH. THE WITHHELD RECORDS OF. SEPTEMBER 20th AND OCTOBER. COURT CAN REVIEW, SCHOPPE-RICOS MEDICAL DOCUMENTS AND WHAT PROOF IS ON RECORD, BY NURSES, POLICE OFFICERS, REPORTING MR. SCHOPPE-RICO GUN SHOT INJURY. PHYSICAL IMPAIRMENT, A CAST, SPLINT AND PAIN MEDICATION PRESCRIBED TO HIM ON SEPTEMBER 20th 2000, THROUGH DURATION PAST OCTOBER, 17, 2000, THAT HE WAS DISABLED, THE VERY DAY THE ARREST TOOK PLACE........ THE RECORDS ATTACHED AS ( EXHIBITS: * ___A___ ), AND THE REST WAITING TO OBTAIN. STATE IN PLAIN LAUNGUAGE THAT. MR. SCHOPPE-RICO HAD A SERIOUS HAND, ARM, INJURY. THAT HE NEEDED A CAST WITH SPLINT TO STABILIZE LIMB, AND THAT HE WAS UNABLE TO PARTICIPATE IN A RANGE OF PHYSICAL ACTIVITIES, IN RE: BLAYLOCK SUPRA. THE COURT REFUSED TO APPROVE THE WITNESS FEES.

32.

FOR MEDICAL EXPERT TESTIMONY TO INTERPET, HIS MEDICAL RECORDS, BUT BECAUSE THE MEDICAL RECORDS WERE WRITTEN IN PLAIN LAUNGAGE, IT WAS UNNECESSARY THAT A DOCTOR EXPLAIN TO THE JURY THE REASONABLE INFERENCES IT WOULD DRAW FROM IT, WHILE THE TREATING DOCOTORS, NURSES, MIGHT OF HAVE ELABORATED MORE FULLY IN HIS REPORT A REASONABLE JURY WOULD NOT HAVE BEEN MISLED, BY ITS CONTENTS, . . . . . . . TO REVERSE A CONVICTION BASED ON ERRONEOUS EXCLUSION OF A DOCUMENT IT MUST BE MORE PROBABLE THAN NOT THE ERROR AFFECTED THE VERDICT, UNITED STATES V. MC ALLISTER, 747 F.2d, 1273, 1277, (9th CIR, 1984,) CITING, UNITED STATES V. BAILLEAUX, 685, F.2d, 1105, 1115, (9th CIR, 1982,) — UNITED STATES V. VALLE-VALDEZ, 554, F.2d, 911, 916, (9th CIR, 1977), THE OUTCOME OF THIS CASE TURNED ON THE JURYS ASSESSMENT OF TWO COMPELLING FACTUAL ACCOUNTS AND THE MEDICAL RECORDS WOULD HAVE SIGNIFICANTLY BUTTERESSED THE ACCOUNT THE JURY ULTIMATELY REJECTED, FURTHERMORE ALTHOUGH BROWN TESTIMONY CRUCIAL TO BLAYLOCKS JUSTIFICATION DEFENSE, (LIKE JUST AS IN SCHOPPE-RICOS, CASE,), THE MEDICAL WOULD WOULD LIKELY TIPPED THE SCALES IN FAVOR OF BROWN ACCOUNTS OF THE EVENT, THE JURY WOULD OF HAVE INFERRED HIM FROM THE MEDICAL RECORDS ALONE ON APRIL. 1. 1991, BLAYLOCK, COULD NOT RUN . . . . . . .   IN  CONCLUSION HAD THE JURY SEEN SCHOPPE-RICOS, MEDICAL, RECORDS IT MORE PROBABLY THAN NOT WOULD HAVE CONCLUDED THE EVIDENCE WAS CREDIBLE CLEAR-ING PETITIONER AND THUS, THAT JUSTIFICATION DEFENSE WAS VALID AN SUPPORTED. . . . . .

WHEN THERES, EVIDENCE ON RECORD COUNSEL MUST BE IMCOMPETENT ENOUGH TO INVESTIGATE IT AND USE IT, ESPECIALLY IF PROOF IS IN PLAIN VIEW AND LAUNGAGE, ON THE RECORD (SEE TRIAL, COURT EXHIBIT, # 7, INTERROGATION TRANSCRIPT OR VIDEOS), (PAGE, C.T : 58, LINES 20 + 26,) AT 1:09 PM MARTINEZ POLICE DEPARTMENT REGIRSTER NURSE ENTERS INTERROGATION ROOM, NURSE VIKCI, SHE IS THE LADY WHO TOOK SCHOPPE-RICOS BLOODOUT, (AT PAGE 59,) PETITIONER ASK WHAT ARM SHE WANTS TO TAKE BLOOD OUT, THE NURSE ACKNOWLEDGES AN SEES INJURED RIGHT HAND/ARM, AND ADVISES, TO USE OTHER ARM SINCE PETITIONER HAD SURGERY, SOMETHING HERE, NURSE, V ICKI, STATES, SCHOPPE-RICOS RIGHT HAND, ARM LOOKED SWOLLEN (PG, 60), PETITIONER TELLS OFFICERS HE WAS SHOT AND HIS WRIST BONES ARE SHATTERED, AND SAYS IT HURTS (PG, 61), AT (PG, 2 OF TRANSCRIPT EXHIBIT, 7,) DURING GUN SHOT RESIDUE KIT, DETECTIVES SEE INJURED HAND AN DABB IT, GENTLY, (T, PG, 3 ) THEY CUFF HIM AND WARN HIM TO NOT TO LEAVE, MR. SCHOPPE-RICO, STATES HE CANT KNOCK ON THE DOOR THAT HE GOTS A MESSED UP WRIST HAND, DETECTIVES SEES, HE GOTS STITCHES AND BEEN SHOT, (PG, 4 ) . . . . . .         PETITIONER CONTENDS HIS DENIAL OF HIS SIX AMENDMENT RIGHTS, WERE VIOLATED, UNDER, STRICKLAND SUPRA, PRINCIPLES, WHEN COUNSEL FAILED TO USE THIS EVIDENCE AND WITH HELD IT, IN MR. SCHOPPE-RICO STRIAL, IN STRICKLAND, THE COURT AGREED THE SIXTH AMENDMENT IMPOSES ON COUNSEL DUTY TO INVESTIGATE REASONSONBLY EFFECTIVE ASSISTANCE BASED ON PROFESSIONAL DECISIONS AND INFORMED LEGAL CHOICES CAN ONLY BE MADE AFTER INVES-TIGATING OF OPTIONS, (Id. 2061.) REPRESENTATION OF CRIMINAL DEFENDANT ENTAILS CERTAIN BASIC DUTIES, COUNSEL FUNCTIONS AS ASSISTANCE TO ASSIST THE DEFENDANT AND HENCE COUNSEL OWES THE CLIENT A DUTY TO AVOID CONFLICT OF INTEREST, SEE, CUYLER V. SULLIVAN SUPRA, 466, U.S. AT 346, 90, S. CT. AT 1717, FROM COUNSEL FUNCTIONS AS ASSISTANCE TO THE DEFENDANT DERIVE THE OVERARCHING DUTY TO ADVOCATE THE DEFENDANTS, CAUSE,

AND THE MORE PARTICULAR DUTIES TO CONSULT WITH THE DEFENDANT ON IMPORTANT DECISIONS KEEP HIM INFORMED ON THEM, AND DEVELOPMENTS IN THE COURSE OF THE PROSECUTION, COUNSEL HAS THE DUTY TO BRING TO BEAR SUCH SKILL AND KNOWLEDGE AS WILL RENDER THE TRIAL RELIABLE ADVERSARIAL TESTING PROCESS. POWELL V. ALLABAMA. 287. U.S. 68, 69. 53. S. Ct. AT 64.63 . . . . . . . . . A PROCEEDING IN WHICH THE DEFENDANT DOES NOT RECEIVE MEANINGFUL ASSISTANCE IN MEETING THE FORCES OF THE STATE DOES NOT IN ANY WAY CONSTITUTE DUE PROCESS. IN CALIFORNIA V. CHAPMAN. 386. U.S. 18, 23. 87. S. Ct. 824. 827. 17. L. Ed. 2d. 705. (1967) WE ACKNOWLEDGED THAT CERTAIN CONSTITUTIONAL RIGHTS ARE "SO BASIC TO A FAIR TRIAL THAT THEIR INFRACTION CAN NEVER BE TREATED AS HARMLESS ERROR." AMONG THESE RIGHTS TO THE ASSISTANCE OF COUNSEL AT TRIAL. I.d. AT 23. n. 8. 87. S. Ct. AT 827. n. 8. SEE. GIDEON V. WAINWRIGHT 372. U.S. 335. 83. S. Ct. 792. 9. L. Ed. 2d. 799. (1963) IN MY VIEW [466. U.S. 712] TO EFFECTIVE ASSISTANCE OF COUNSEL IS ENTAILED BY THE RIGHT TO COUNSEL, AND ABRIDGMENT OF THE FORMER IS EQUIVALENT TO ABRIDGEMENT OF THE LATTER. THUS HOLD THAT A SHOWING THE PERFORMANCE OF DEFENDANTS LAWYER DEPARTED FROM CONSTITUTIONALLY PRESCRIBED STANDARDS. REQUIRES A NEW TRIAL REGARDLESS OF WHETHER DEFENDANT SUFFERED DEMONSTRATABLE PREJUDICE.

NOW THE OTHER DEFICIENT PERFORMANCE OF COUNSEL PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO INFORM HIM THAT THE GOVERMENT HAD MADE A PLEA OFFER. OR ASK FOR ONE. NINTH CIRCUIT ADDRESSED THE QUESTION IN U.S. V. BLAYLOCK SUPRA. AN SEVERAL OTHER CIRCUITS HELD FAILURE CONSTITUTES UNREASONABLE PERFORMANCE UNDER PROFESSIONAL PREVAILING STANDARDS. . . . IN UNITED STATES ex. rel. CARUSO V. ZELINSKY. 689. F. 2d. 435. (3RD CIR. 1982) THE DEFENDANT ALLEGED THAT COUNSEL HAD FAILED TO COMMUNICATE TO HIM A PLEA OFFER. THE CARUSO COURT HELD THAT. THE DECISION TO REJECT A PLEA BARGIN OFFER . . . IS A DECISION FOR THE ACCUSED TO MAKE . . . . A FAILURE OF COUNSEL TO ADVISE CLIENT OF PLEA BARGIN CONSTITUTES A GROSS DEVIATION FROM PROFESSIONAL ACCEPTED STANDARDS . . . . . . . THE ATTORNEY HAS THE DUTY TO ADVISE THE DEFENDANT OF THE AVAILABLE OPTIONS AND POSSIBLE CONSEQUENCES" AND FAILURE TO DO SO CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL . . . . ON OCTOBER. 19. 2000. A COMPLAINT WAS FILED AGAINST MR. SCHOPPE-RICO. BETWEEN THEN TILL THE FIRST AMENDED COMPLAINT WAS FILED NOVEMBER. 2ND. 2000. TRANSCRIPT OF PRELIMINARY HEARING PAGES 1-294). WAS THE TIME PETITIONER BELIEVES PLEA OFFER WAS MADE TO COUNSEL OR/AND SHE FAILED TO INFORM. MS. SCHOPPE-RICO OF ONE OR OBTAINED ONE. IN RE. BLAYLOCK SUPRA. HAD BLAYLOCK BEEN INFORMED OF AND ACCEPTED THE PLEA OFFER. THE GOVERMENT WOULD HAVE BEEN PRECLUDED FROM FILING ENHANCE PENALTY CHARGES. ON NOVEMBER 2. ND 2000. JUST AS IN BLAYLOCK. MR. SCHOPPE-RICO. CONTENDS THE SAME IF HE WOULD OF KNEW OF PLEA OFFER HE MIGHT OF TOOK IT. AND RECIEVED A POINT REDUCTION IN HIS BASE OFFENSE LEVEL. FOR ACCEPTANCE OF RESPONSIBLTY. AND WOULD OF HAD NOT BEEN SENTENCED 57 TO LIFE. AS AN GANG MEMBER ARMED CAREER CRIMINAL WHO COMMITTED A MURDER. SEE BLAYLOCK SUPRA. COURT ERRED IN DENYING HIS INEFFECTIVE ASSISTANCE CLAIM WITHOUT AN EVIDENTIARY HEARING.

APPROPRIATE REMEDY IF SCHOPPE-RICO PREVAILS ON INEFFECTIVE ASSISTANCE OF COUNSEL. THE DISTRICT COURT WILL HAVE TO FASHION A REMEDY THAT IS TAILORED TO THE INJURY SUFFERED, AND [DOES] NOT UNNECESSARY INFRINGE ON COMPETING INTERESTS." UNITED STATES V. MORRISON, 449. U.S. 361, 364, 101. S.Ct. 665, 668. 46. L.Ed. 2d. 564 (1981) SINCE THE REMEDY FOR COUNSELS INEFFECTIVE ASSISTANCE SHOULD PUT DEFENDANT BACK IN POSITION HAVE THE SIXTH AMENDMENT VIOLATION NOT OCCURRED BEFORE TRIAL. REQUIRING THE GOVERMENT TO REINSTATE ITS ORIGINAL PLEA OFFER IS CONSTITUTIONALY PERMISSIBLE SEE. MABBY V. JOHNSON 467. U.S. 504, 510. N. 11. 104. S.Ct. 2543, 2548. 11. 81. L.Ed. 2d. 437. (1984) SANTOBELLO V. NEW YOURK. INFRA.

GROUND THREE:

PROSECUTOR MISCONDUCT RENDERED THE TRIAL FUNDAMENTALLY UNFAIR. WHEN THE PROSECUTOR WITH HELD EXCULPATORY EVIDENCE.

MR. SCHOPPE-RICO CONTENDS THE PROSECUTOR WITHHELD EXCULPATORY EVIDENCE FROM THE DEFENSE AN SUPPRESSION OF THIS EVIDENCE WAS A VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. THE NON-DISCLOSER OF EVIDENCE IS A PROHIBITED UNDER, BRADY V. MARYLAND, 83. S.Ct. 11. 1944. 373. U.S. 83. (U.S. MD. 1963); ARIZONA. V. YOUNG BLOOD. 109, S.Ct. 333, 488. U.S. 51. (U.S. ARIZ. 1988) AND THE FAILURE OF THE POLICE PERSERVING EVIDENCE OF PETITIONER HAND INJURY SUCH AS TAKEN PHOTOS OF INJURED LIMB; CONDUCTING TEST; FOLLOWING UP ON MEDICAL RECORDS AND SO FORTH THAT WAS INTENTIONALLY WITH HELD DUE TO IT DEMONSTRATED PHYSICAL IMPAIRMENT ON OCT. 17. 2000, THE PROSECUTION HAS AN AFFIRMATIVE DUTY TO DISCLOSE TO THE DEFENDANT ANY EVIDENCE FAVORABLE TO HIM. INCLUDING ANY EVIDENCE REFLECTING ON THE CREDIBILITY OF MATERIAL WITNESSES. BRADY SUPRA. FAILURE TO DO SO CONSTITUTES VIOLATION OF DUE PROCESS CLAUSE OF THE (14th) AMENDMENT. PROSECUTION HAS THE DUTY TO DISCLOSE EXCULPATORY EVIDENCE WHETHER OR NOT THE DEFENDANT REQUEST IT; UNITED STATES V. BAGLEY. (1985) 473. U.S. 667. KYLES. V. WHITLEY (1995) 514. U.S. 419. 131. L.Ed. 2d. 490. 505.

MOREOVER PROSECUTORS HAVE AN AFFIRMATIVE OBLIGATION TO LEARN OF ANY FAVORABLE EVIDENCE KNOWN TO OTHERS ACTING ON BEHALF OF THE GOVERMENT. INCLUDING POLICE OFFICER, KYLES SUPRA AT 508. SECONDLY PROSECUTOR WITHHOLDING INFORMATION, ALBERT MELTON HAS. BY SAM SANCHEZ TELLING HIM NOT TO TALK TO PUBLIC DEFENDERS. (C.T. 325) IS DEPRIVING PETITIONER RIGHT TO QUESTION WITNESSES AND CONFRONT THEIR CREDIBILITY OF EXONERATING INFORMATION, ALSO HE DIDN'T WANT TO DISCLOSE THE CONFIDENTAIL INFORMANT; THEN HE FOLLOWS UP ALLEGEDLY THE OTHER SUSPECT DAN, WHO OWNS A RED CHRYSLER WHO SHOT NICK TAYLOR OR SAW JENNIFER SMITH, DAN WAS NEVER PUT IN A PHOTO LINE UP. FOR WITNESSES OR BROUGHT INTO COURT. HIS HAIRS WERE NEVER COMPARED TO THE HAIRS FOUND ON THE CLOTHING AT. 40 SHARON DR. TO SEE IF IT WAS A MATCH (RT. 1786) OR TESTED BY CRIMINALIST ALEX TAFYA. WHO COMPARED

HIS ARM AN WRIST. ( RT: 2283.) THE ONLY REASON THIS WAS ADMITTED BY THE BAD FAITH ACTING PROSECUTOR IN COURT. WASN'T TO ACT IN GOOD FAITH AN SHOW PETITIONERS PHYSICAL IMPAIRMENT BUT SHOW PRIOR FAULTY POSSESSION, BASED ON UNRELIABLE INFORMATION THATS VAGUE AND OVERBOARD. (SEE PETITIONER CLAIM NO: 2. ) (AND EXHIBIT: _A_ )

ON OCTOBER, IT: ALSO SEE INTERROGATION ROOM TRANSCRIPT OF VIDEO .1 THRU 4, AND PAGES #2 AND #3, MR. SCHOPPE-RICOS PHYSICAL IMPAIRMENT ON OCT.17, 2000, EVEN PREVENTED HIM KNOCKING ON THE DOOR. WITH HIS HAND AND TELLS DETECTIVES HE GOTS A MESSEDUP HAND (TRANSCRIPT 1, 2, 3.) ALSO DETECTIVES HAVE REGISTER NURSE VICKI, ARRIVES TO TAKE BLOOD. (TRANSCRIP. 54) SHE WAS NEVER LISTED AS WITNESS BY PROSECUTOR, THE NURSES, INFORMATION WAS WITH-HELD. AND NURSE VICKI SEE'S INJURIED HAND/ARM AND STATES IT WAS SWOLLEN, AND SCHOPPE-RICO EXPLAINS HE JUST HAD SURGERY TO USE TO OTHER ARM, FOR BLOOD DRAW. (TRANSCRIP. 57, 58) ALL THESE FACTS OF MISCONDUCT OR INFO WITH HELD IS AN BLANTANT VIOLATION OF DUE PROCESS UNDER BRADY SUPRA. IN BRADYS CASE PRIOR TO BRADY' TRIAL. BRADYS COUNSEL HAD REQUESTED THE PROSECUTION TO ALLOW HIM TO EXAMINE HIS CO-DEFENDANT BOBLITS STATEMENTS. SEVERAL OF THESE STATEMENTS WERE SHOWN TO HIM, BUT ONE WASN'T WHICH BOBLIT ADMITTED THE ACTUAL HOMICIDE. THAT WAS WITH HELD BY THE PROSECUTION WHICH DID NOT COME TO PETITIONERS NOTICE UNTIL AFTER HE WAS TRIED, CONVICTED, SENTENCED AND CONVICTION AFFIRMED.

IN MR. SCHOPPE-RICOS CASE. SUPRA EXPLAINED IS SIMILAR TO THE BRADY VIOLATIONS, IN BRADY SUPRA. THAT THE PROSECUTOR HAS DONE TO FAVORABLE EVIDENCE IN SCHOPPE-RICOS CASE OF WITHHOLD-ING IT OR SUPPRESSING IT /EVIDENCE IN BAD FAITH. IN BRADY SUPRA. THEY HELD THIS RULING IS IN EXTENSION OF MOONEY V. HOLOHAN 294. U.S. 103, 112. 55. S. Ct. 340, 347. 79. L. Ed. 791, WHERE THE COURT RULED. NON DISCLOSER BY A PROSECUTOR VIOLATED DUE PROCESS. . . . . . [IT IS A REQUIRE-MENT THAT CANNOT BE DEEMED TO BE SATISFIED BY MERE NOTICE AND HEARING], "IF STATE, CONTRIEVED A CONVICTION THROUGH THE PRETENSES OF A TRIAL". [" WHICH IN TRUTH IS BUT USED AS A MEANS OF DEPRIVING A DEFENDANT OF LIBERTY THROUGH A DELIBERATE DECEPTION OF COURT AND JURY.] . . . ." BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED". . . . SUCH A CONTRIVANCE BY A STATE TO PROCURE, THE CONVICTION AND IMPRISONMENT OF A, DEFENDANT IS AS INCONSISTENT WITH THE RUDIMENTARY DEMANDS OF JUSTICE AS IS THE OBTAINING OF A LIKE RESULT BY INTIMIDATION . . . . .  IN PYLE V. KANSH . 317. U.S. 213 , 215, 216, 63, THE THE RULE IS PHRASED IN BETTER TERMS PETITIONERS PAPERS ARE INEXPERTLY DRAWN. BUT THEY DO SET FORTH ALLEGATIONS THAT HIS IMPRISONMENT RESULTED FROM PERJURED TESTIMONY KNOWINGLY USED BY THE STATE AUTHORITIES, OF EVIDENCE FAVORABLE TO HIM. THESE ALLEGATIONS SUFFICIENTLY CHARGE A DEPRIVATION OF RIGHT GUARANTEED BY THE FEDERAL CONSTITUTION IF PROVEN WOULD ENTITLE PETITIONER RELEASE FROM HIS PRESENT CUSTODY. MOONEY. V. HOLOHAN SUPRA

MR. SCHOPPE-RICO'S HAIR WITH THE HAIR FOUND ON THE SWEATSHIRT AND WARM UP PANTS ELIMINATING SCHOPPE-RICO AS A POSSIBLE SOURCE FOR THOSE HAIRS (RT; 2329-2333, 2336) (C.T.; 393, 394), PROSECUTION WITHHOLDING THESE FACTS, ALSO OTHER INFORMATION HE IS WITHHOLDING AT (R.T. 507-508,) NO, #7. HE NEVER HANDED OVER COMPLIED WITH A SINGLE TRAINING MANUAL, PUBLICATION OR REPORT ON RON HUPPERT'S ON GANG ACTIVITY OR FIELD CARDS (R.T; 516.) (SEE CLAIM ONE) i.d. ALSO HUPPERT NEVER COMPLIED WITH DISCOVERY NO; 8, ORDER OF NORTENOS, GUIDELINES, HISTORY, MEMBERS, CONFIDENTIAL INFURMANTS, ECT. HE, RELIES ON HE ALSO NEVER GENERATED COPS ISSUE ON CARDS F.I CARDS CRETERIA. THEY USE TO VALIDATE MINORS ECT. (R.T.) 516, 517, 518.) HE ALSO REFUSED TO r, NO, 20 OR NO; 21, WASN'T COMPLIED WITH OF POLICE OR COUNTY COUNSEL OR CITY ATTORNEY HAVE CREDIBILITY OF OFFICERS (RT; 525, 526,) AT THIS LEVEL OF WITHHELD INFORMATION AT TRIAL, IS GOVERMENTS INTERFERENCE OF COUNSEL'S PERFORMANCE AND DUTIES OF PRESENTING A GANG DEFENSE AT LEASE IN THE NORTENO'S GENERALS CULPABILITY IN THE (E.B.L) OPERATION RING, NOT ONLY THIS OFFICERS AN DISTRICT ATTORNEY WITHHOLDING FACTS OF THEIR OUTRAGEOUS MISCONDUCT, AND ARE IN DENIAL OF ILLEGALLY ELLICITING AN UNRELIABLE INFORMANT/WITNESS, OF JENNIFER SMITHS, TESTIMONY, SHE GAVE AFTER READING DISCOVERY IN CASE OF, HER DESPERATION IN WANTING TO GET OUT OF JAIL AND PROSECUTORS DESPERATION TO GET HER TO HELP HIM FOR HER. COERCED, BIAS TESTIMONY TO HELP HIM WRONGLY CONVICT. SCHOPPE-RICO (RT; 642, 643, 644, 645, 646, 647,). MS, SMITH A DRUG ADDICT CHARGED WITH POSSESSION OF DRUG NEEDLES, SEVERAL RECEIVING STOLEN PROPERTY (R.T; 641.) TWO CASES OF FELONY PROBATION FOR STOLEN PROPERTY (R.T. 641) TWO OF FELONY PROBATION SHE WAS ON; ON OCT. 2000, ALSO ARRESTED FOR FOUR SEPERATE OFFENSES AFTER. OCT. 17. 2006 SHE'S EVENTUALLY IN CUSTODY, (THIS GO'S FOR MORAL TURPITUDE, AND IN TERMS OF HER CHANGING HER TESTIMONY TO HELP THE PROSECUTOR), WHILE SHE'S IN CUSTODY AN SHE CALLS THE PROSECUTORS OFFICE, THEY HAVE A CONVERSATION, WHERE MS, SMITH IN EXCHANGE WILL GO TO THE PROSECUTION OFFICE, IF HE GETS/ARRANGES HER RELEASE AN HE DID, (R.T; 642) SHE'S IN CUSTODY ON THE CASE DEPUTY BRYAN ARRESTED HER FOR, IS HE HAS WARRANTS OUT (R.T; 645). MS. SMITH RECORDING TALKING TO PROSECUTOR IN CUSTODY SHE SAYING "I JUST WANT TO GET OUT", I WANT TO GET OUT, THIS CAN BENEFIT THE BOTH OF US, I JUST WANT TO GET, SHE'S NOT ASKING FOR ANY ASSURANCE REGARDING OUTCOME OF CASE AT THE END OF THE CONVERSATION THE PROSECUTOR SAYING "IF YOU GET OUT OF CUSTODY WILL YOU COME TALK TO US,? SHE SAYING YES, I WILL GO TO YOUR OFFICE DIRECTLY UPON MY RELEASE,....SHE'S RELEASED AT THE NEXT WINDOW AT THE JAIL, PROSECUTORS INVESTIGATOR GO'S TO THE JAIL, SAM SANCHEZ AND TAKES HER TO THE PROSECUTOR OFFICE, (R.T; 644) SUPPRESSION OF THIS EVIDENCE IS CRITICIAL, AND ALLEGEDLY BRYAN RELEASED HER (R.T; 645-646) THIS WITNESSES TESTIMONY SHOULD OF BEEN EXCLUDED DUE TO IT'S PERJURED ELICIT EVIDENCE AND THE PROSECUTOR IS TRYING TO HIDE THAT, ...., NOW THE OTHER EVIDENCE AT ISSUE HERE IN "_SUPRA_" THE OTHER EVIDENCE ON RECORD ALL PETITIONER HAS TO WORK WITH OF HIS HAND INJURIES IS WERE DEPUTY SIMPSON TESTIFIES ON SEPTEMBER 20th 2000 (RT; 2281, 2282) HE SAW MR. SCHOPPE-RICO WAS SHOT. HE SAID HE, SUSTAINED A SMALL CALIBER GUN SHOT WOUND TO HIS RIGHT PALM PRIMARLY, THAT TRAVELED UP INTO

37,

PRINCIPLES IS NOT PUNISHMENT OF SOCIETY FOR MISDEEDS OF A PROSECUTOR BUT AVOIDANCE OF AN UNFAIR TRIAL. TO THE ACCUSED. SOCIETY WINS NOT ONLY WHEN THEY GUILTY ARE CONVICTED "BUT". [WHEN CRIMMINAL TRIALS ARE FAIR.] " OUR SYSTEM OF THE ADMINISTRATION OF JUSTICE SUFFERS WHEN ANY ACCUSED IS TREATED UNFAIRLY.

UNDER ARIZONA V. YOUNGBLOOD, 109, S. Ct. 333, 488, U.S. 51 (U.S. ARIZ. 1988), HELD THE FOURTEENTH AMENDMENT REQUIRES THE STATE TO PRESERVE EVIDENTIARY MATERIAL. THAT MIGHT BE USEFUL TO A CRIMINAL DEFENDANT. TO AGAIN CONSIDER WHAT MIGHT LOSELY/LOOSELY BE CALLED THE AREA OF CONSTITUTIONALY GUARANTEED ACCESS TO EVIDENCE. UNITED STATES V. VALENZUELA-BERNAL. 458 U.S. 858, 867, 102, S. Ct. 3440, 73, L. ed. 2d, 1193 (1983) HELD THAT THE SUPPRESSION BY THE PROSECU-TION OF EVIDENCE FAVORABLE TO THE ACCUSED UPON REQUEST VIOLATES DUE PROCESS WHERE THE EVIDENCE IS MATERIAL. EITHER TO GUILT OR TO PUNISHMENT. IRRESPECTIVE OF THE GOOD FAITH OR BAD FAITH OF THE PROSECUTION. BRADY AND AGURS SUPRA. THE CASE IN THIS AREA. ESTABLISHES POLICE ACTION S TAKEN IN BAD FAITH ARE NOT THE ONLY SPECIES OF POLICE CONDUCT VIOLATIVE OF DUE PROCESS ..... NOW MR. SCHOPPE-RICO CONTENDS REVERSAL REQUIRED FOR ONE. CRIMINALIST JASON KWASKI SHOULD OF BEEN ALLOWED TO DO HAIR SAMPLES AND COMPARE DANS HAIRS. WITH THE HAIRS FOUND ON THE CLOTHING AT 40-SHARON DR. (RT: 1780), FOR ONE WE KNOW THE HAIRS/D.N.A. ON THE CLOTHING UNDOUBTEDLY CAME FROM THE ASSAILANT. SECOND THE SAMPLES COULD OF HAD BEEN USED TESTED. USING TECHNOLOGY AVAILABLE AND IN USE AT THE POLICE DEPARTMENT. TO SHOW EITHER BLOODTYPE, MARKER, HAIR COLOR MATCH. OR MARKER INTO OTHER BODY D.N.A. BLOODTYPE. THIRD THE EVIDENCE WAS CLEARLY IMPORTANT OF TESTING DANS OR ANY (E.B.L. ER) ASSOCIATE OF THE NORTENO GANG. (C.T. 392-393.) JUST AS A SEMEN SAMPLE IN A RAPE CASE WHERE IDENTITY IS QUESTIONED IS ALWAYS SIGNIFICANT HILLARD V. SPALDING, 719, F. 2d, 1443, 1446, 1446, 47.) C.A. 9. 198) PEOPLE V. NATION 26. CAL. 3d. 169, 176-177. 161, CAL. R.P.TR. 299, 302.304. 604, P. 2d, (1980). THE SOCIETAL INTEREST IN SEEING CRIMIN-ALS PUNISHED RIGHTLY REQUIRES THAT INDICTMENTS BE DISMISSED ONLY WHEN THE UNAVAILABILITY OF THE EVIDENCE PREVENT THE DEFENDANT FROM RECEIVING A FAIR TRIAL. FOR THESE REASON IN HERE. MR. SCHOPPE-RICO REQUEST YOU RULE IN HIS FAVOR. ON THIS GROUNDS LISTED HERE IN.

GROUND FOUR.

PETITIONERS FOURTH AND FOURTEENTH AMENDMENTS RIGHTS WERE VIOLATED WHEN POLICE ARRESTED PETITIONER WITHOUT PROBABLE CAUSE.

1.) POLICE DETAINED PETITIONER WITHOUT A WARRANT. THE COMPLAINED ABOUT SEARCH AND SEIZURE VIOLATES DEFENDANTS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES, CONSTITION IN WONGSUN V. UNITED STATES (1963) 371, U.S. 471, 484. MR. SCHOPPE-RICO WAS ALSO SEARCHED AND SEIZED WITHOUT THE BENEFITS OF WARRANT AS WONGSON AND TOY SUPRA. HERE THE THRESHOLD QUESTION THEREFORE IS WHETHER A OFFICER COULD ON THE INFORMATION WHICH IMPELLED THEM TO ACT COULD OF HAD PERCURRED A WARRANT FOR THE ARREST OF MR. SCHOPPE-RICO/PETITIONER. LIKE IN WONGSON/TOY. WE THINK THAT NO WARRANT WOULD HAVE ISSUED ON EVIDENCE THEN AVAILIABLE. IN WONG SUN SUPRA. THE COURT HELD THE ARREST OF BOTH PETITIONERS WERE ILLEGAL. NOT BASED ON PROBABLE CAUSE WITHIN THE 4th AMENDMENT NOR REASONABLE GROUNDS WITHIN THE MEANING OF THE NARCOTICS (371. U.S. 478) CONTROAL ACT OF 1956. THE COURT SAID OF TOY AN WONGSON ARREST THERE WERE NO SHOWING THAT AGENT KNEW "HOM-WAY" TO BE RELIABLE. IN THIS CASE OF MR. SCHOPPE-RICOS. THERES NO EVIDENCE INDICATING THERE WITNESSES. MELTON OR M.S. SMITH WERE RELIABLE OR ANYONE ELSE....... MR. SCHOPPE-RICO HOWEVER WAS ARRESTED AND DETAINED. AT GUN POINT. (RT: 1519 - 1520) AND THEN AFTER A LINEUP WAS TAKEN TO THE MARTINEZ POLICE STATION. AND HIS ARREST WAS COMPLETELY UNJUSTICIFIED. BY THE INFORMATION KNOWN TO OFFICERS. AT THE TIME. (C.T. 114, 115. 118.) LYDIA WILLIAMS DENIED EVER TELLING THE OFFICER ANY OF DEPUTY WHIDDONS ALLEGATIONS. THAT SHE POINTED PETITIONER OUT. THATS WHAT HE HOPE FOR. SHE ALSO DENIED SEEING ANYONE JUMPING OVER FENCES (RT: 1535.) AT THE LINEUP. WITNESS DESCRIPTIONS. OF THE SHOOTER VARIED NONE OF THE WITNESSES SAID OR IDENTIFIED PETITIONER. NOR IN PHOTO LINE UPS. IN RE (CT 133:17. - 135:24.) SEE COURT TRIAL(EXHIBIT B ) SEE (1) (CT: 152:22 - 153:4) (CT: 199:24 - 200: 6 - 295.). PAUL LACANSTER AND MELTON WERE THEIR WITNESSES. LANCASTER SAID NO-WAY HE COULD BE THE SHOOTER AND COULDNT IDENTIFY SCHOPPERICO AS THE SHOOTER. (CT: 133:17 - 135:24). THIS EXONERATING PETITIONER. FURTHERMORE WERE SUSPECT STOOD IN DIRT AREA. SHOE IMPRESSIONS WERE PHOTOGRAPHED AND CAST IN THE DIRT AREA NEAR THE CARTRIDGE CASINGS (RT: - 1783 - 1874 - 1787.) THE PATTERN TYPE DID NOT MATCH THE PATTERN ON MR. SCHOPPE-RICO'S SHOES. (RT: 1789 - 1792.) ALSO ALLEGED BLOOD SPOT ON SHIRT WAS EXCLUDED AND NEVER TESTED (RT: 649.) ALEX TAFLYA ELIMINATED PETITIONER AS A SOURCE TO THE HAIRS FOUND ON THEIR EVIDENCE SWEAT PANTS AND SWEAT SHIRT. (RT: 2324 - 2333 - 2336.) MR. QUINTIN NERIDA. FINGER PRINT EXAMINER. EXAMINED THE RIFLE AND (12) BULLET CARTRIDGE CASINGS. NONE HAD FINGER PRINTS TO MATCH. RT: 2188 - 2189 - 2190 - 2191). THIS FURTHER EXONERATING ...... A.). MR. SCHOPPE-

(1) REFERING TO PG 41. AUTHORITIES ON FAULTY IDENTIFICATION

Rico was arrested when officers having detained him at gun point and hand cuffed him. Put him in the back of a police car. And transported him to the police Martinez department officers violated his fourth and fourteenth amendments. without probable cause, they seized petitioner. then transported to interrogate. In re: Dunaway v. New York 19.79. 442. U.S. 200, An U.S. v. Bizler. III. F.3d. 214. 1st (Cir. 1997) Maltby v. Winston. 36. F.3d. 548. (7th Cir. 1994) evidence recovered after arrest may not form basis of probable cause for the arrest. And any tainted evidence obtained after that should be excluded. So therefore. the officers did to arrest Schoppe-Rico without probable cause. To have probable cause to arrest, exists when the facts known to the arresting officers exist and lead a person of ordinary care and prudence to entertain a honest and strong suspicion that the person arrested is guilty of a crime. People v. Price. (1991) 1.Cal.4th. 324. 410 ). Police cannot arrest suspects without probable cause in order to investigate a crime conduct a line up or interview a suspect. In re Dunaway supra. Florida v. Royer. 103. S. Ct. 1319, 460 (U.S. Fla 1953) exceptions to the general rule that seizures of the person or of his auto mobile or "other effects". nor may detentions may not be "investigative yet. vio-lative of the fourth amendment absent probable cause. In the name of investigat-ing a person more than suspected of criminal activity the police may not carry out full search, nor may the police seek to verify their suspicion by means that approach the conditions of arrest. Dunaway v. New York. supra, made clear there the suspect was taken to police station from his home and without being formally arrested, interrogated, for an hour, the resulting incriminating himself statements were held inadmissible. Reasonable suspicion of a crime is insufficient to justify custodial interrogation even though the interrogation is investigative. Id. 442. U.S. at. 211-212. 99 S.ct. at 2255 2556. Brown v. Illinois. 422. U.S. 590. 95. S. Ct. 2254. 45. L. Ed. 2d. 416. 1975. And Davis v. Mississippi. 394. u.S.721. 89. S. Ct. 1394. 22. L. Ed 2d. 676. 1969. are to the same effect. 460. U.S. 501. Dunaway and Brown held that statements giving during a period of illegal detention are inadmissible even though. voluntarily given if they are the product of the illegal detention and not the results of an independent act of free will. Brown v. Illinois. supra. .... B.) Because the defendant was seized and searched illegally all evidence obtained as a result of the illegal seizure must be suppressed / excluded. ...... The arrest of Mr. Schoppe-Rico violated state and federal constitutional rights to be free of unreasonable searches and seizures consequently all evidence obtained during and as a direct result. of this seizure must be excluded / suppress it well settled under both federal and California law that all evidence obtained through illegal police conduct and its fruits. must be excluded from evidence Mapp v. Ohio. (1961) 367. U.S. 643. 1.) If the court finds that Ms. Williams never made the statement that Mr. Schoppe-Rico was jumping fences defendent contends that the police even lacked reasonable suspicion

TO DETAIN MR. SCHOPPE-RICO. AND MOVES TO EXCLUDE /SUPPRESS ALL EVIDENCE FLOWING FROM HIS ILLEGAL DETENTION NOT LIMITED TO THE EVIDENCE WHICH RESULTED FROM HIS ARREST. ... 2.) THIS INCLUDES ANY EVIDENCE RECOVERED FROM 180 SHORE. RD, AS WELL AS THE STATEMENTS OF ALL WITNESSES WHOSE IDENTITES THE POLICE ONLY ASCERTAINS AS A RESULT OF STOPPING AND IDENTIFYING PETITIONER. (TRIAL COUNSEL, WAS INEFFECTIVE IN REQUESTING THIS. AND APPELLATE COUNSEL REFUSED TO RAISE THIS GROUND ON HIS OWN. IIE)

IN <u>WONGSON SUPRA</u>, (11)/12/(13) IT WAS CONCEDED, THAT TOY.S DECLARATIONS IN HIS BEDROOM. ARE TO BE EXCLUDED, IF THEY ARE HELD TO BE FRUITS OF THE AGENTS UNLAWFUL ACTIONS. IN ORDER TO MAKE EFFECTIVE THE FUNDAMENTAL CONSTITUTIONAL GUARANTEES OF SANCTITY OF HOME AND INVIOLABILITY OF THE PERSON. <u>BOYD V. UNITED STATES. 116. U.S. 616</u>, 6. S. Ct. 524. 29. L. Ed. 746. THIS COURT HELD NEARLY HALF A CENTURY AGO THAT EVIDENCE SEIZED DURING AN UNLAWFUL SEARCH COULD NOT CONSTITUTE PROOF AGAINST THE VICTUM OF THE SEARCH. <u>WEEKS V. UNITED STATES. 232. U.S. 383. 34. S. Ct. 341. 58. L. Ed. 652</u>. THE EXCLUSION RULE PROHIBITION EXTENDS AS WELL TO THE INDIRECT AS THE DIRECT PRODUCTS OF SUCH INVASIONS. SILVER THORNE LUMBER CO. V. UNITED STATES. 251. 371. U.S. 485, U.S. 385. 40. S. Ct. 182. 64 L. Ed. 319 MR. JUSTICE HOLMES SPEAKING FOR THE COURT IN THAT CASE IN HOLDING THAT GOVERNMENT MIGHT NOT BE MAKE USE OF INFORMATION OBTAINED DURING AN UNLAWFUL SEARCH. TO SUBPOENA FROM THE VICTUM THE VERY DOCUMENTS ILLEGALLY VIEWED EXPRESSED SUCCINCTLY THE POLICY OF THE BROAD.

THE EXCLUSIONARY RULE HAS TRADITIONALLY BARRED FROM PHYSICAL MATERIALS OBTAINED EITHER DURING OR AS A DIRECT RESULT OF AN UNLAWFUL INVASION IT FOLLOWS FROM THE HOLDING IN <u>SILVERMEN V. UNITED STATES. 365 U.S. 505. 51. S. Ct. 679 S. L. Ed. 2d. 734.</u> THAT THE FOURTH-AMENDMENT MAY PROTECT AGAINST THE OVER-HEARING OF VERBAL STATEMENTS, AS WELL AS AGAINST THE MORE TRADITIONAL SEIZURE OF PAPERS AND EFFECTS SIMILARY TESTIMONY AS TO MATTER OBSERVED DURING AN UNLAWFUL INVASION HAS BEEN EXCLUDED IN ORDER TO ENFORCE THE BASIC CONSTITUTIONAL POLICIES <u>MCGINNIS V. UNITED STATES. 11 CIR. 727 F. 2d. 598.</u> ALSO JENNIFER SMITHS ILLEGAL ELLICIT TESTIMONY AFTER HER OBTAINING THE DISCOVERY IN SCHOPPE-RICOS. CASE. IS LIKE A OVER-HEARING VERBAL STATEMENT. AND THE D.A. PROSECUTOR ELLICITING TAINTED TESTIMONY AND SAM SANCHEZ PROSECUTORS INSPECTOR PICKING UP MS. SMITH. OUT OF JAIL AND TOOK HER TO THE DISTRICT ATTORNEY OFFICE (RT! 645.) SHOULD BE EXCLUDED HER FULL PREJUDED TESTIMONY GIVEN AFTER THAT AS WELL IN THIS CASE AND DEFENSE

## GROUND FIVE

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL. COUNSEL FAILED TO PRESENT A DEFENSE.

1.) IN RE: EYE WITNESS TESTIMONY BY. ELIZABETH LOFTUS    172 P'G'S BOOK. FROM JUSTICE DENIED ONE LEADING AUTHORITY ON MIS IDENTIFICATIONS. & IN RE'. NO CRUELER TYRANNIES. ACCUSSATIONS. FALSE WITNESS & OTHER TERRORS OF OUR TIMES. BY DORTHY ROBINWITZ.   ( 41. IN RE'. ACTUAL INNOCENCE. BY BARRY SCHECK.

EVIDENCE THAT MR. SCHOPPE-RICO WAS HIGHLY UNDER THE INFLUENCE OF METHADMHETMINES ALCOHOL AND VICODIN, THAT CAME BACK IN HIS BLOOD TEST. THAT WERE PERFORMED ON HIM AFTER HE WAS ARRESTED "(R.T. 587)" TRIAL COUNSEL DIFICIENT PERFORMANCE REPRESENTATION WAS PREJUDICIAL WHEN SHE NEGLECTED AND FAILED TO ESTABLISH DUE TO CONFLICTS OF INTEREST, THAT MR. SCHOPPE-RICO MENTAL STATE AND MENTAL DISORDER AT THE TIME WAS SEVER. AFTER ALL THE EVIDENCE AND TESTIMONY ABOUT MR. SCHOPPE-RICO'S DRUG USE RESULTED IN AN DIMINISHED CAPACITY TO THINK OF MENTAL STATE OF DISORDER WAS USED AT TRIAL... PETITIONER WAS UNDER THE INFLUENCE, SUCH AS EVIDENCE MS. SMITH SAID, TESTIFIED TO A FEW INCIDENTS OF MEN WEARING BLUE AND BEING BLACK GETING INTO CONFONTATIONS OR VERBAL ALTERCATIONS (RT. 1814-1818) AND DAYS LATER CARS PULLING UP TO HIS HOUSE AND MEN IN BLUE FIVE TO SIX MEN CHASING HIM. IN FRONT OF HIS HOUSE (RT. 1820-1824) SHE EVEN SAW PETITIONER ON THE GROUND. (C.T. 575.) WHERE AT TIMES, HE WAS THREATEN HIS LIFE ENDANGERED WITHOUT HIM PROVOKING IT, MS. SMITH EVEN TESTIFIED, THAT ALL SUMMER LONG SHE WAS USING METHAMPHETAMINES ALOT AND DOESN'T REMEMBER ALOT OF THINGS DUE TO IT (CT. 543.). SHE WAS SALING DRUGS DOING DRUGS. (C.T. 537.) AND PROVIDING THEM TO PETITIONER. MR. SCHOPPE-RICO'S LAB REPORTS TEST FOUND HIGH COSENTRATION AMOUNTS OF METHAMPHETAMINES AN ALCOHOL IN HIS BLOOD. (RT. 587) ITS DEFENSE WAS WITH HELD. JURORS WOULD OF EASILY UNDERSTOOD AND ACQUITTED OR REDUCED DEGREE OF THE CRIME CHARGE TO MANSLAUGHTER INVOLUNTARY, IF COUNSEL DID NOT FAIL TO INTRODUCE THE LAW AN FACTS IN REGARDS TO IT, AND FULLY INSTRUCT THE JURY ON DEFENSE ISSUES OF INTOXICATION, IMPERFECT SELF-DEFENSE, NON STATUTORY MANSLAUGHTER AND INSTRUCT ON INVOLUNTARY MANSLAUGHTER INTOXICATION AND UNCONSCIOUSNESS, REGARDING PETITIONERS DRUG INTOXICATION AND PSYCHOTIC PARANOIA WITH HALLUCINATIONS,..., MR. SCHOPPE-RICO CONTENDS VIOLATIONS HIS CONSTITUTIONAL RIGHTS AMENDMENTS TO EFFECTIVE ASSISTANCE OF COUNSEL OCCURRED AND THERE IS CURE FOR IT, COUNSEL FAILED TO ESTABLISH AND ARGUE, MR. SCHOPPE-RICO WASN'T EVEN AWARE CONSCIOUS OF WHAT, WHY OR WHERE OR WHEN, WHY HE WAS IN THE LYNBROOK AREA WHEN HE WAS INVESTIGATORILY STOPED AT GUN POINT AFTER VISITING ASSOCIATES, DUE TO HE WAS HIGHLY INTOXICATED UNDER THE INFLUENCE OF NARCOTICS. COUNSEL FAILED TO ESTABLISH THIS DIMINISHED MENTAL STATE CAPACITY OF BEING ABLE TO THINK OR KNOW WHATS GOING ON OR THAT OCCURED. IN RE. PEOPLE V. WEBBER. 279 CAL. RPTR. 437, 228. CAL.APP. 3d. 1146, CITING RAJ INFRA. HELD THAT WHEN THERE IS EVIDENCE OF TWO FACTORS A SORT OF CAUSE AND EFFECT RELATIONSHIP BETWEEN INTOXICATION AND LACK OF INTENT TO KILL OR KNOW, IN WEBBER, SUPRA. THE COURT NOTED THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE AFORETHOUGHT IS MURDER § 187. SUBD(B) PENAL CODE. "[I.F.] BECAUSE OF "DIMINISHED CAPACITY" THE PREPETRATOR IS UNABLE TO ENTERTAIN MALICE OR HEAT IN/OF THE PASSION, BUT NEVERTHELESS

43.

IS FOUND TO BE ABLE TO FORM THE INTENT TO KILL, THE CRIME IS VOLUNTARY MANSLAUGHTER IF BECAUSE OF DIMINISHED CAPACITY, HE ADDITIONALLY DID NOT INTEND TO KILL, HIS CRIME IS INVOLANTARY MANSLAUGHTER. FINDING DEFENDANT HAD BOTH DIMINISHED CAPACITY AISO UNCONSCIOUSNESS OR LACK OF INTENT TO KILL . . . . . . . . . . IN WEBBER SUPRA, EXPERT TESTIMONY WAS RECEIVED ON THE EFFECT OF APPELLANTS LONG TERM DRUG USE, DR. SIEGEL STATED THAT THE AMOUNT OF METHAMPHETAMINE FOUND IN DEFENDANTS BLOOD SAMPLES WAS A HIGH CONCEN-TRATION OF METHAMPHETAMINES . . . . . ABOUT (10) TO (15) TIMES THE AMOUNT NORMALLY USED FOR THERAPEUTIC PURPOSE.   IN DR. SIEGELS OPINION. APPELLANT WAS INTOXICATED WITH METH-AMPHETAMINES ON THE NIGHT OF THE SHOOTING, " EXPERIENCING A PARANOID PSYCHOTIC EPISODE AND HALLUCINATING THAT HE WAS ABOUT TO BE THE VICTIM OF A DRIVE BY SHOOTING, THE COURT REVERSED 2ND DEGREE MURDER AND REMAND FOR NEW TRIAL WITH PROPER JURY INTOXICATION INVOLUNTARY MANSLAUGHTER INSTRUCTION. AS IN MR. SCHOPPE-RICOS CASE SHOULD DO THE SAME . . . . . . . . . . MR. SCHOPPE-RICO CONTENDS THE FOLLOWING EVIDENCE IS PROOF AND SUPPORTS HIS REQUEST FOR REVERSAL AND SAID PETITION TO BE GRANTED; SEE. DETECTIVE MICHAEL COSTA'S TESTIMONY WHEN GRUENHIED WAS IN SAME INTERVIEW WITH MR. SCHOPPE-RICO, ASKED IF HE WAS ON DRUGS, AND HE SAID "YES" (R.T. 248); HE WAS WAY OUT THERE. ALSO MR. SCHOPPE-RICO TOLD THEM HE WAS COLD AND DID'NT GET MUCH SLEEP LAST NIGHT. DETECTIVE COSTA PERSISTED IN ASKING WHAT TYPE OF DRUGS, HE WAS ON; MR. SCHOPPE-RICO TOLD HIM HE INGESTED EXTASY (R.T. 249.) WITH ALL OF THIS AND MORE INTOXICATION DIMINISHED CAPACITY MENTAL STATE AN DISORDER EVIDENCE, AT TRIAL, ENCLUDING LAB REPORTS, WERE SUFFICIENT EVIDENCE, WITH ASSOCIATES AND WITNESS. TESTIMONY THAT PETITIONER WAS NOT CLEARLY THINKING, BUT EFFECTED AND DRUGED, UPON MR. SCHOPPE-RICOS DEMANDS COUNSEL PROMISED TO PRESENT THIS EVIDENCE THEN FAILED TO (R.T. 587.) BASED ON HER ASSUMPTION INEFFECTIVELY. AS FAR AS SHE WAS CONCERN IT WAS'NT PART OF HER DEFENSE STRATEGY, WHICH SHE NEVER HAD ONE, SHE FAILED TO REALIZE IT, SAY SHE ARGUED THAT MR. SCHOPPE-RICO WAS NEVER IDENTIFIED BY THE WITNESSES AND HAD REASONS TO BE IN THE AREA BECAUSE HIM AND HIS ASSOCIATES LIVED IN THE AREA, HOWEVER COUNSEL MS. LEONIDA STILL FAILED TO ARGUE AND ESTABLISH, LADIES AND GENTLEMEN AND IF YOU, THEY HAD REASONS TO BELIEVE HE WAS THE SHOOTER. THEN AT THE TIME HE WAS HIGHLY INTOXICATED AT THE TIME AND STILL WOULD'NT HAVE THE INTENT TO KILL. AN INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGH-TER INTOXICATION SELF-IMPERFECT DEFENSE. SO COUNSEL WAS ALSO INEFFECTIVE IN DEMONSTRATING THAT HE NOR THERE WERE SUFFICIENT EVIDENCE TO SUPPORT A 1ST DEGREE OR 2ND DEGREE MURDER CONVICTION. COUNSEL PREJUDICIALLY FAILED TO PRESENT A DEFENSE TO HIS ALIBI AND INTOXICATION AND FAILED TO GET A JURY INSTRUCTION ON THIS OF INTOXICATED INVOLUNTARY MANSLAUGHTER, TRIAL COURT EVEN PREJUDICIALLY DENIED MANSLAUGHTER INSTRUCTIONS ON OTHER BASIS. (SEE COUNSELS INEFFECTIVENESS AT) (R.T. 2362 THROUGH. R.T. 2365.) IN WEBBER SUPRA: HELD WHERE THERE IS SUBSTANTIAL EVIDENCE THAT DEFENDANT WAS UNABLE TO ENTERTAIN INTENT TO KILL, COURT HAS SUA SPONTE DUTY TO INSTRUCT ON INVOLUNTARY MANSLAUGHTER

QUESTION OF DEFENDANTS INTENT TO KILL WAS NOT RESOLVED BY JURY BECAUSE IT DID
NOT HAVE FULL RANGE OF APPLICABLE LESSER INCLUDED OFFENSES OFFERED TO IT.
INEFFECTIVE ASSISTANCE OF COUNSEL IS REVIEWABLE UNDER ROSE V. LUNDY, CITED IN
STRICKLAND V. WASHINGTON, 104. S. Ct. 2052, 466. U.S. 668 (U.S. FLA. 1984) HELD PETITION
ERS. IN A LONG LINE OF CASES INCLUDING, POWELL V. ALABAMA; 287. U.S. 45, 55, S. Ct. 55, 77. L. Ed.
158. (1932) JOHNSON V. ZERBST 304. U.S. 458. 58. S. Ct. 1019. 82. L. Ed. 1461. (1938) AND GIDEON V.
WAINWRIGHT 372. U.S. 335, 83. S. Ct. 742. 9. L. Ed. 2. d. 799. (1963) THIS COURT HAS RECOGNIZED THE
SIXTH AMENDMENT RIGHT TO COUNSEL EXIST AND IS NEEDED IN ORDER TO PROTECT THE FUNDAMENTAL
RIGHT TO A FAIR TRIAL THE CONSTITUTION GUARANTEES A FAIR TRIAL THROUGH [466. U.S. 685] DUE
PROCESS CLAUSE. IT DEFINES THE BASIC ELEMENTS OF A FAIR TRIAL LARGELY THROUGH THE SEVERAL
PROVISIONS OF THE SIXTH AMENDMENT INCLUDING "THE COUNSEL CLAUSE" . . . . . . . . . . WHICH HELD
A PERSON WHO HAPPEN TO BE A LAWYER PRESENT AT TRIAL ALONGSIDE THE ACCUSED. IS NOT JUST A
ENOUGH TO SATISFY THE CONSTITUTIONAL COMMAND. THE SIXTH AMENDMENT RECOGNIZES THE RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL IT ENVISIONS COUNSELS PLAYING A ROLE THAT IS CRITICAL TO
THE ABILITY OF THE ADVERSIAL SYSTEM TO PRODUCE A JUST "RESULT". AN ACCUSED IS ENTITLED TO BE
ASSISTED BY AN ATTORNEY, RETAINED OR WHETHER APPOINTED WHO PLAYS A EFFECTIVE ROLE NECESSARY
TO ENSURE A FAIR TRIAL . . . . . . . . [2] THE GOVERNING LEGAL STANDARD PLAYS A CRITICAL ROLE IN
DEFINING THE QUESTION IN ASSESSING PREJUDICE FOR COUNSELS ERROR. WHEN A DEFENDANT CHALLENGES A
CONVICTION, THE QUESTION IS WHETHER THERE IS A REASONABLE PROBABILITY ABSENT THE ERROR, THE
FACT FINDER WOULD HAD A REASONABLE DOUBT, WHEN A DEFENDANT CHALLENGES A FIRST DEGREE SENT-
ENCE ON MURDER WITH ENHANCEMENT AND JOINDER. SUCH AS THE ONE AT ISSUE IN THIS CASE
THE QUESTION IS WHETHER THERE IS A REASONABLE PROBABILITY THAT ABSENT ERRORS. SENTENCER
INCLUDING COURTS CAN RE INDEPENDENTLY REWIEGH THE EVIDENCE WOULD HAVE CONCLUDED
THAT THE BALANCE OF AGGRAVATING. MITIGATING CIRCUMSTANCES DID NOT WARRANT LIFE SENTENCE.
. . . . . . . . . IN RILEYS SUPRA, UNDER STRICKLAND TEST DETERMINED COUNSEL'S PERFORMANCE FELL BELOW AN
OBJECTIVE STANDARD OF REASONABLENESS, 466. U.S. AT 688. 104. S. Ct. 2052. COUNSEL HAS A DUTY TO
MAKE REASONABLE INVESTIGATIONS OR TO MAKE A REASONABLE DECISION THAT MAKES PARTICULAR
INVESTIGATIONS UNNECESSARY ID. AT 691. 104. S. Ct. 2052. WE HAVE HELD THAT A LAWYER. WHO FAILS
ADEQUATELY TO INVESTIGATE AND INTRODUCE INTO EVIDENCE. EVIDENCE THAT DEMONSTRATES HIS CLIENTS
FACTUAL INNOCENCE OR THAT RAISES SUFFICIENT DOUBT AS TO THAT QUESTION TO UNDERMINE CONFIDENCE
IN THE VERDICT RENDERS DEFICIENT PERFORMANCE. AVILA V. GALAZA, 297. F. 3d. 911. 919. (9TH CIR 2002.)
QUOTING. HART V. GOMEZ. 174. F. 3d. 1067. 1070 (9TH CIR. 1999.) SEE ALSO LORD V. WOOD. 184. F.3d. 1083. 1096. SEE.
ALSO LORD V. WOOD. 184. F. 3d. 1083. 1096. (9TH CIR. 1999.) COUNSELS PERFORMANCE WAS DIFICIENT WHERE
COUNSEL FAILED TO INTERVIEW THREE WITNESSES WHO HAD MATERIAL EVIDENCE AS TO THEIR CLIENTS INNOCENCE.
IN LE GRAND V. STEWART (9TH CIR. 1998). AS HERE A LAWYER WHO DOES NOT PUT A WITNESS ON THE
STAND. HIS DECISION WILL BE ENTITLED TO LESS DEFERENCE THAN IF HE INTERVIEWS THE WITNESS. THE REASON
FOR THIS IS SIMPLE A LAWYER WHO INTERVIEWS THE WITNESS CAN RELY ON HIS ASSESSMENT OF THERE ARTICUL-
ATENESS AND DEMEANOR FACTOR WE ARE NOT IN POSITION TO SECONDLY GUESS.

GROUND SIX:

## JURY MISCONDUCT.

PETITIONER CONTENDS HIS RIGHTS TO A IMPARTIAL JURY WAS VIOLATED, WHEN JURY PANEL WAS EXPOSED TO POTENTIAL JUROR EXPERT LIKE STATEMENTS REGARDING, CIRCUMST-ANTIAL EVIDENCE INTRUSION DEFINED BY PROSECUTION BIASLY, GANG ASSOCIATION EVIDENCE,, CLAIMS POLICE OFFICERS ARE ALWAYS PERFECT, INFALLABLE, AND SCENT DISCRIMINATION DOGS ARE PERFECT AND INFALLIBLE. AND STATEMENTS ON BATTER WOMAN. WERE ALL TALKED ABOUT ISSUES DURING VOIR DIRE. AND SCHOPPE-RICOS CASE WAS BASED ON THESE FACTS OF DEPENDING ON A PARTIAL JURY TO FOLLOW THE CIRCUMSTANCIAL EVIDENCE INSTRUCTIONS. WIEGH THE GANG AFFILATION EVIDENCE AND THE DOGS AND OF POLICE OFFICERS. SECONDLY MOST OF THEM SERVED ON POSSIBLY PREVIOUS TAINTED JURYS OR BECAME BIAS. ALSO NONE WERE OF THE SAME PEER GROUP OR SOCIAL AND POLITICAL CLASS OR AGE AS SCHOPPE-RICO ALL OF PETITIONERS RACE OF MEXICAN-AMERICANS WERE EXCLUDED LEAVING NOTHING BUT RETIRED MILITARY SERVICE MEN - M.P'S. COPS. AND SONS OF POLICE. TO SERVE ON THE JURY, WHO'S BELIEFS OR MORAL UNDERSTANDING AUTOMATICALLY IS BIASED. PETITIONER THIRDLY CONTENDS HIS STATE AND FEDERAL SIXTH AND FOURTEENTH. AMENDMENTS CONSTITUTIONAL RIGHTS WERE VIOLATED. AND DUE THESE SUBSTANTIAL EFFECTS, OR INFLUENCE ON THE VERDICT WARRANTS A REVERSAL. UNDER. MACH. V. STEWART. 157. F.3d. 630. (C.A.9. ARIZ. 1997.). AND UNDER. BATSON V. KENTUCKY.(U.S. KY. 1986,) 106. S. CT. 1712. 476. U.S. 79. PETITIONER FURTHER CONTENDS JURORS WHEN THEY DISCUSS INFORMATION ABOUT THEIR DELIBERATIONS TO NEWS PAPER REPORTER IS PROOF OF A BIAS. JUROR. IN SCHOPPE-RICOS CASE. ONE TOLD THE REPORTER THAT, JENNIFER SMITHS. TESTIMONY DID'NT PLAY A ROLE IN THEIR VERDICT. WHEN IT DID. SEE EXHIBIT, ___ PUBLISHED ARTICLE ON THAT. THE FOLLOWING IS OFF OF THE RECORD IN SCHOPPE-RICOS. VOIR DIRE. TRIAL. AT 9:05 AM, MARCH 5, 2005, THE CONTRA COSTA COUNTY CLERK. SWEARS IN THE FOLLOWING JURORS, TO RENDER A VERDICT. # 118. 18. 72. 77. 8. 9. 119. 22. 59. 15. 94. AND 92........ ALL THESE JURORS STATEMENTS ARE AS FOLLOWS. AND INFORMATION'S: ALL JURORS OF SPANISH NAMES WERE DISMISSED, AT, (RT: 789.). ALL THEREIN LISTED SPANISH NAMES WERE EXCLUDED. THEN THE PROSECUTOR. PEREMPTORILY CHALLENGE TO DISMISS MS. UNTIVEROS (R.T. 765.) FOR BEING MEXICAN-AMERICAN NOW ALL JURORS WHO REMAINED CAME FROM A CROSS SELECTION OF POLICE OFFICERS, RETIRED-MILITARY MEN AND CHILDREN OF POLICE OFFICERS OR RELATIVES. THAT AUTOM-ATICALLY PUTS A MEXICAN-AMERICAN PETITIONER AT DISADVANTAGE. ESPECIALLY WHEN BEING ACCUSSED OF BEING ASSOCIATE WITH A MEXICAN-AMERICAN NORTENO GANG, DURING VOIR DOIRE. PETITIONER KNOWS OF NO COPS OUR WAS RELATED TO ONE OR LITTLE LESS SOMEONE WHO SERVED IN THE MILITARY