# EXHIBIT: E

1). the LASTEST OF PETITIONERS MENTAL HEALTH DISORDER CONDITIONS WHILE INCARCERATED. THEY DATE BACK TO 2002. BEFORE TRIAL. (I.E STILL WAITING TO OBTAIN MENTAL HEALTH DISCOVERY FROM CONTRA COSTA COUNTY JAIL
( 19-PAGES)

( pg 80)

ATTACHED TO. EXHIB
( 19 - PAGES ),

# MENTAL HEALTH PLACEMENT/REMOVAL

**NAME:** _Rhopper–Rios_    **CDC#:** _V11328_    **HOUSING:** _A2-129_    **DATE:** _3/4/04_

## COMPLETE SECTION "A" OR "B" AS APPROPRIATE:

**A.**    This inmate has completed a mental health assessment with the following results:

☐ DOES NOT MEET COURT ORDERED AT RISK CRITERIA FOR EXCLUSION FROM SHU

☑ MEETS COURT ORDERED AT RISK CRITERIA FOR EXCLUSION FROM SHU

☐ DOES NOT MEET CRITERIA FOR INCLUSION IN THE MENTAL HEALTH TREATMENT POPULATION

☑ MEETS INCLUSION CRITERIA FOR THE MENTAL HEALTH TREATMENT POPULATION

☑ No    ☐ Yes    Inclusion is based upon Medical Necessity.  (Obtain Chief Psychiatrist/Designee signature.)

☐ PRESENTLY INCLUDED IN MENTAL HEALTH TREATMENT POPULATION, **NEW LEVEL OF CARE.**

Level of Functioning Assessment (GAF) score or equivalent: _65_    Psychotropic Medication: YES: ☑  NO: ☐

Behavioral Alerts:_____

**Previous Level of Care:**
☐ Inpatient DMH.    ☐ Crisis Beds (MHCB)    ☐ Enhanced Outpatient (EOP)    ☑ Clinical Case Management (C³MS)
☐ NO Mental Health Needs    ☐ Other:_____

**Treatment Team's Current Level of Care Recommendation:**
☐ Inpatient DMH.    ☐ Crisis Beds (MHCB)    ☐ Enhanced Outpatient (EOP)    ☐ Clinical Case Management (C³MS)
☐ NO Mental Health Needs    ☐ Other:_____

**B.**    **THIS INMATE HAS COMPLETED A MENTAL HEALTH ASSESSMENT AND <u>DOES NOT MEET CRITERIA FOR INCLUSION IN THE MENTAL HEALTH TREATMENT POPULATION.</u>**  (Check applicable box below.)

☐ As of _____ this CCCMS inmate is in remission and free of psychotropic medication.  Clinical discharge from Mental Health Treatment Population will be on _____.

☐ The inmate is removed from the Mental Health Treatment Population.

☐ The inmate's clinical situation was one of medical necessity as diagnosed by CDC clinical staff on _____.  Medical necessity is no longer applicable, treatment has stopped and the inmate is removed from Mental Health Treatment Population.

☐ This inmate was initially designated as a Mental Health Treatment Population patient at a Reception Center or institution without a Mental Health Treatment Population program.  Within the last 90 days the inmate has transferred to a Mental Health Treatment Population facility and a review of the inmate's Unit Health Record and assessment by the Interdisciplinary Treatment Team concludes the inmate does not meet the criteria for continued inclusion in the Mental Health Treatment Population.

Additional Information: _Rios can't handle_____

_____

_____

Original: Health Record

cc:    CC-II
       C-File

_David M. Mandel, PhD_          _____
Treatment Team Chairperson          Chief Psychiatrist or Designee

DATE: _3/4/04_    NAME: _Rhopper–Rios_ CDC# _V1132V_ HOUSE: _A2-129_          128-C PBSP

Chronological Interdisciplinary Progress Notes: State of California, Department of Corrections –    Pelican Bay State Priso..

Date: 6/17/04  Time: 0930  Chart available? N  Reason for Visit: Weekly Flu  Location of Visit: Office

S: States went on meds when he 1st went to prison due
to adj. issues. No longer on meds. No longer symptomatic
would like to be removed from 3CMS. Will bring to IDTT
for discussion regarding CO C

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation.

: Calm / cooperative
No sign. Sxs
No distress

**A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 *first*, then concur, propose, etc..., *with supportive discussion*; condition, case formulation, data analyses, etc....

: Per MH2

**P:** Follow-up care/appt., *medication changes with rationale*, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc....

: CPP - Flu 1 week
IDTT Discussion Next week

PSYCHIATRIC MEDICATIONS (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|------|--------|----------|-------------------|-----------------------------------------------------------------------------------|
|      |        |          |                   |                                                                                   |
|      |        |          |                   |                                                                                   |
|      |        |          |                   |                                                                                   |
|      |        |          |                   |                                                                                   |

☐ SEE PAGE 2 →

Signature: _____  Print Name: Claudia K. Lake, Psy. D  PhD / LCSW / MD / PsyTech / Other :

MENTAL HEALTH
INTERDISCIPLINARY PROGRESS NOTE
MH 3    (10/11/02)
Confidential Client/Patient Information
See W & I Code, Section 5328

Level of Care

Inpatient
Outpatient ☑

Last Name:  Schoppe-Rico  First Name: J  MI:

CDC #: V11328  House: A2-128

Chronological Interdisciplinary Progress Notes: State of California, Department of Corrections – Pelican Bay State Prison

Date: 6-10-04 Time: 0830 Chart available? ✓ Reason for Visit: wk F/u Location of Visit: office

S: I/m declined 1:1. Has Dx of MDD.
"I'm doing alright". No longer on meds.

| O: Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation. | : No signs of distress. Cell neat - |
|---|---|
| A: Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 first, then concur, propose, etc..., with supportive discussion; condition, case formulation, data analyses, etc.... | : MDD per MH 2 |
| P: Follow-up care/appt., medication changes with rationale, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc.... | : F/u 1 week |

PSYCHIATRIC MEDICATIONS (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, compliance, anticipated duration, etc... |
|---|---|---|---|---|
| | | | | |

☐ SEE PAGE 2 →

Signature: _____  Print Name: C. Lake PsyD / LCSW / MD / PsyTech / Other:

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE | Level of Care | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 3    (10/11/02) | | Schoppe-Rico | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient Outpatient 5 | CDC #: V11320 | House: A3-121 | |

Chronological Interdisciplinary Progress Notes: State of California, Department of Corrections — **Pelican Bay State Prison**

Date: 6-8-04 Time: 1030 Chart available? _Yes_ Reason for Visit: _Pt. Req._ Location of Visit: _Office_

**S:** Age 22. Inmate requests meds be DC'd. States he was off of it for a few days due to a "mix up" and coped adequately without it. He says he is less depressed: "I can handle it."

| | |
|---|---|
| **O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation. | :O: Alert. He looks either sad or disconcerted - at least, he doesn't look happy in spite of saying he is OK. His speech is normally organized. No evidence of psychotic process occurring. Denies suicidal preoccupation or rumination - |
| **A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 _first_, then concur, propose, etc..., _with supportive discussion_; condition, case formulation, data analyses, etc.... | : MDD |
| **P:** Follow-up care/appt., _medication changes with rationale_, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc.... | : Warned patient that he may not be over depression, and if he needs help to ask for an appointment.  DC Wellbutrin |

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|---|---|---|---|---|
| Ø 4 meds | | | | |
| | | | | |

☐ SEE PAGE 2 →

Signature: _Glen Shipley_    Print Name: _G. Shipley, MD_    PhD / LCSW / MD / PsyTech / Other:

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE MH 3    (10/11/02) Confidential Client/Patient Information See W & I Code, Section 5328 | Level of Care  Inpatient Outpatient G | Last Name: _Schoppe-Rico_    First Name:    MI:  CDC #: _V11320_    House: _A3-121_ |

Chronological Interdisciplinary Pr | Notes: State of California, Department of ...tions — | **Pelican Bay State Prison**

Date: 6-1-04 Time: 915 Chart available? yes Reason for Visit: weekly F/u Location of Visit: OHCC

**S:**

"I didn't get my olsen review yet. I'm trying to get my records for my attorney." "I want to get off these medications cause I don't think I need them any more. I'm feeling better."

Advised to consult c̄ psychiatrist re: meds.

| | |
|---|---|
| **O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation. | : Alert, oriented, fair-good ADL. Thoughts are logical & goal directed. Denied A/H. Denied S/H ideation. Concentration and cognition's seem intact. Affect appropriate to ideation. |
| **A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 _first_, then concur, propose, etc..., _with supportive discussion_; condition, case formulation, data analyses, etc.... | : MDD in partial-fair remission on meds |
| **P:** Follow-up care/appt., _medication changes with rationale_, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc.... | : continue weekly monitoring · refer to psychiatry |

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☐ SEE PAGE 2 →

Signature: D. Roy LCSW   Print Name: D. Roy   PhD / (LCSW) / MD / PsyTech / Other :

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE MH 3 (10/11/02) Confidential Client/Patient Information See W & I Code, Section 5328 | Level of Care | Last Name: Schoppe-Rico | First Name: | MI: |
|---|---|---|---|---|
| | Inpatient Outpatient | CDC #: V11320 | House: | |

| Chronological Interdisciplinary Prog. | Notes: State of California, Department of C___ ___ions – | **Pelican Bay State Prison** |

Date: 4.20.04  Time: 0930  Chart available? [✓]  Reason for Visit: Y line  Location of Visit: Ad-Seg II

S: Inmate is compliant ē med + tolerates well.
States he wants to send papers from his chart to his
lawyer. Says his mood is depressed – says he is feeling
helpless + hopeless. Sleeping + eating O.K. Gets 6-8 hours
sleep. Denies is suicidal. Says gets on ē cellie OK.
Spends days writing to his lawyer. Would like to read a

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation.

: book. Thinks Wellbutrin helps his mood a
bit + his "spirits" are better since on meds.
Says has not heard voices for the last couple
of weeks.
Inmate appears dejected. He is coherent +
relevant. Able to think logically.

**A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 *first*, then concur, propose, etc..., *with supportive discussion*; condition, case formulation, data analyses, etc....

: Dx Major Depressive Disorder
Psychosis NOS — in remission

**P:** Follow-up care/appt., *medication changes with rationale*, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc....

: Will ↑ Wellbutrin to help ē depressive
symptoms

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|---|---|---|---|---|
| △ ↑ Wellbutrin SR | 200 mg | bid | | |

[ ] SEE PAGE 2 →

Signature: L. Turner M___        Print Name: Turner        PhD / LCSW / MD / PsyTech / Other :

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE MH 3 (10/11/02) Confidential Client/Patient Information See W & I Code, Section 5328 | Level of Care | Last Name: Schoppe-Rico | First Name: | MI: |
|---|---|---|---|---|
| | Inpatient  Outpatient [✓] | CDC #: V11328 | House: A1-106 | |

| Chronological Interdisciplinary Prog. Notes: State of California, Department of Corrections – | Pelican Bay State Prison |

Date: 3/20/04  Time: 10⁰⁰  Chart available? yes  Reason for Visit: 30 day appt.  Location of Visit: office

S: cont. from page 1

( no prior notes in UHR available).

PBSP arrival 2/17/04.

3/04 UHR: Dx MDD single episode + psychosis, NOS

3/04 MAR: Bupropion SR 150 mg bid.

good medication compliance.

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation.

: O: alert. Hygiene + grooming – WNL. cooperative.
Eye contact – WNL. speech – soft, normoproductive.
Oriented x4. cognition, memory, concentration –
intact tho has subjective c/o of ↓ concentration.

**A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 *first*, then concur, propose, etc…, with *supportive discussion*; condition, case formulation, data analyses, etc.…

: affect/mood – depressed. Insight/judgment – nil
claimed  on + off AH. Ø VH. Ø delusions. Ø SI/HI.

A: Dx  MDD single episode }  MH 2. concur.
     psychosis, NOS

**P:** Follow-up care/appt., *medication changes with rationale*, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc.…

: ① no change in medication per pt's request
② Review lab next visit
③ RTC in 30 days or sooner prn
( pt knows how to reach)

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, **compliance**, anticipated duration, etc... |
|------|--------|----------|-------------------|------------------------------------------------------------------|
| Well SR | 150/150 | 90d | depression | ⊕ response |

☐ SEE PAGE 2 →

Signature: S. Gauthier   Print Name: S. Gauthier   PhD / LCSW / (MD) / PsyTech / Other :

| **MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE** MH 3    (10/11/02) Confidential Client/Patient Information See W & I Code, Section 5328 | Level of Care Inpatient Outpatient √ | Last Name: Schoppe – Reed  CDC #: V 11338 | First Name: | MI: House: |

Chronological Interdisciplinary Progress Notes: State of California, Department of Corrections – Pelican Bay State Prison

Date: 9-20-04  Time: 1330  Chart available? Yes  Reason for Visit: NA  Location of Visit: Kitchen Ad Seg

**S:** Inmate States this is his first term. Arrived from SQ on 2-17-04. States his problem is depression. States has been incarcerated since 2000. His trial ended 5-03. Says his depression started after incarcerated + was started on meds in county jail. Was previously on Paxil, Prozac, Risperdal. A+ SQ started on Wellbutrin - is compliant + meds + tolerates well. Says

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation.

: Used to hear voices "regular" but now hears once a week - not sure what voices says but says they yell something negative. Mood now he says is "Sad." Denies is Suicidal. Says no Suicide attempts while incarcerated. Thinks Wellbutrin helpful. Sleep- poor since PBSP- still

**A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 _first_, then concur, propose, etc..., _with supportive discussion_; condition, case formulation, data analyses, etc....

: adjusting to PBSP
Inmate appeared Sad. Was soft spoken. He was coherent + relevant. No abnormal movements

**P:** Follow-up care/appt., _medication changes with rationale_, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc....

: Will cont. some on Wellbutrin. Will change the Wellbutrin from Wellbutrin XL 300 to Wellbutrin SR 150mg bid

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, compliance, anticipated duration, etc... |
|------|--------|----------|-------------------|------------------------------------------------------------------------------|
| Wellbutrin | SR 300mg 150. | | bid X's 90 days | |
| | | | | |

☐ SEE PAGE 2 →

Signature: L. Turner MD    Print Name: L. Turner MD  PhD / LCSW / **MD** / PsyTech / Other:

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE MH 3 (10/11/02) Confidential Client/Patient Information See W & I Code. Section 5328 | Level of Care | Last Name: Schoppe-Rico | First Name: John | MI: |
|---|---|---|---|---|
| | Inpatient | | | |
| | Outpatient | CDC #: V11328 | House: A2 124 | |

State of California, Department of Corrections – Institution: **SQ** Prior Page Number: ___

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES: All Staff, Clinicians, Treatment Teams.

| Date/Time: | ✓ | Use Name & Title Stamp. |
|---|---|---|
| 1/23/04 9 | Reports yesterday the MTA did not stop to give him his meds. Reports he takes his meds all the time | |
| | % depression Feels like his losing hope & energy Claims around a lot & concentration | |
| | Denies difficulties c appetite | |
| | -SI-HI, ⊖AH ? paranoia | |
| | ⊖ Side effects psi chromoter retardation. | |
| | MSE speech soft normal rate & rhythm | |
| | Mood dysphonic affect flat | |
| | ⊖hx Sz TC - S+HI | |
| | TF linear | |
| | (imp) depression | |
| | (plan) Discuss withdrawal effects of paxil. Grave him choice of stopping paxil slowly or quickly DIC paxil | |
| | educ/consent wellbutrin 150 9AM | |
| | | |
| | | |
| | | Page # ___ |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 3 [3/21/96] | | Schappe-Rw | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | V11328 | | |
| | Outpatient | CDC # __ - ___ ___ | DOB __/__/__ | |

State of California, Department of Corrections – Institution: **SQ**    Prior Page Number: _____

**CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:**    All Staff, Clinicians, Treatment Teams.

| Date/Time: | ✓ | Use Name & Title Stamp. |
|---|---|---|

1/2/14

Pt doing alright. Compliant c meds although he reports he hasn't gotten Paxil (3cg/ finds he's a little depressed and is tired a lot. ↓ sleep ( falls asleep 2am wakeup at 5am) feels sleepy during day ↓ concentration Always hungry ⊖ hopelessness — S/I/HI (⊝) AH Some paranoia ⊝ Side effects. Pt doesn't think Paxel makes him sleepy — He was not feeling sleepiness during day started 3 weeks ago.

MSE speech normal rate & rhythm sho
Mood dysphoric mildly
affect w/n/l
TC — S/I — H/I
TF linear
(imp) Sleepiness during day
Not getting P on paxil
Plan) Paxil 3cg po q PM
[signature]

1/23/04   Pt reports his doing the same. Feels depressed + lost hope. Received note from MTA that he refused paxil + respertol that he refused meds x 2. He stated he was "sleeping on sometty and didn't went to get up"

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 3 [3/21/96] | | Schoppe Russ | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | V11328 | | |
| | Outpatient | CDC # __ - _ _ _ _ | DOB __/__/__ | |

12

State of California, Department of Corrections – Institution: _____ **SQ** _____ Prior Page Number: _____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:     All Staff, Clinicians, Treatment Teams.

| Date/Time: | ✓ | (✓ | Use Name & Title Stamp. |
|---|---|---|---|

10/4-13

[D] 22 yo ♂ arrived 10/23/03 1x S740 to life.

(HPI) Reports he didn't kill the person he convicted of kill

c/o a little depres Feels lonely and depressed
↓ Slurring concentrate x 4 mos
↓ sleep since yesterday
Venus difficulties ↓ appetite ? energy
(+) hopelessness -SI- 141 Ests + Ψ Sx few months ago
after arrest.
c/o H/t ? Paranous - worried about

| Psy | Medical | Meds | allergies | Habits | Family hx |
|---|---|---|---|---|---|
| ∅ | asthma | responded | PCats? | hx meth | ∅ |
| in jail | +tx wrist with pavel | | | Etoh 4 mo ago | |
| | junction school inhaler | | | | |
| | tinMy Acne | | | | |
| | +uz0 dme | | | | |

MSE speech normal rate and rythm.
Mood mildly dysphoric affect wnl
+C-SI-141
TI linear
Plan educ pavel
pavel
responded 3APS

(imp) Psychotic do NOS
Doesnot meet criteria for schizophrenia
II deferred
III None acute
IV incarceration
V SS

Page # _____ SDDUN

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | Last Name: Schoppe- Rico | First Name: | MI: |
|---|---|---|---|
| MH 3 [3/21/96] | V | 1328 | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | CDC # __ - ____ | DOB __/__/__ | |

*(All Staff, Clinicians, Treatment Teams)*                                    Pelican Bay State Prison

## ADMINISTRATIVE SEGREGATION (AD-SEG)

### IDTT Annual, Progress and Minutes Note

DATE: 6/30/04        ASSIGNED PRIMARY CLINICIAN: _Claudia K. Lake, Psy. D_

| REASON | | | |
|---|---|---|---|
| INITIAL EVALUATION ☐ | MH 2 ☐ | MED NECESSITY REVIEW ☐ |
| INITIAL EVALUATION EXTENSION ☐ | MHCB FOLLOW-UP ☐ | DISCHARGE CCCMS ☐ |
| 6-MO REVIEW ☐ | ANNUAL REVIEW ☐ | DISCUSSION *(everything NOT covered at left)* ☒ |

**IDTT MEMBERS** *(check those present)*

☒ D. Mandel, *Sr. Ph.D., Supervisor, Chairperson*      _Turner_ , M.D.

☒ R. Rushe, *Ph.D.*      _____ , LCSW

☒ D. Roy, *LCSW*      _Shellabarger_ , C/O

☒ ~~B. Pearson, OLPT~~ Lake Psy D      _Dixon_ , C/O

☒ S. Latham, *LPT*

**Patient:**
☒ Elected to attend
☐ Elected **NOT** to attend

CLINICAL STATUS (include dx): I/m's chart reviewed. I/m had DX of Maj. Dep c̄ Psychosis. But upon review of chart, there is not enough documented Sx's to support this DX. I/m when 1st placed in 3cms in 2/04, stated depression due to incarceration and "voices" were not clear or appear to be exaggerations. DX should be Adj D/o c̄ Dep mood

TREATMENT PLAN UPDATE RECOMMENDATIONS: I/m is not on meds since 6-8-04 — or Dep. D/o NOS I/m requesting removal on 3cms. Suggest placement on med necessity this date and review in 30 days.
d/c 3cms 2-05.

NEXT REVIEW DATE: ____/____/____

CUSTODY COMMENTS: _____

ADAPTIVE FUNCTIONING: _____

COMMENTS *(include reason for Ad-Seg placement)*: _____

_Dav D M Mandel, PhD_
**SIGNATURE** *(Chairperson)*

| MENTAL HEALTH
Interdisciplinary Progress Notes
*(ADSEG - IDTT Annual, Progress, Minutes Notes)*
MH2 *(8/03)*

Confidential Client/Patient Information
See W&I Code, Section 5329 | LAST Name: _Schoppe-Rico_
FIRST Name: _____
CDC No: _V-1328_    Housing: _A2/28_ |

14

IDTT-AdSeg.xls 8-03

| Mental Health Treatment Plan Part One: | | Page 2 of 2 |
|---|---|---|

**IV. DSM IV**  Numerical ☐Last MSE __/__/__ ☐Last TP __/__/__  MH 1☐__/__/__  Last MH 4 ☐__/__/__

| Axis I | | Major depression c̄ psychosis |
|---|---|---|
| Axis II | | deferred |
| Axis III | | |
| Axis IV | | (current) |
| Axis V | | GAF = 60    Describe basis. |

**V.  Problem / Symptom List**

#1
depressed / sad mood

#2
crying jags

#3
poor sleep / appetite

| **VI.  Inmate's Strength and Weakness, Goals** | Inmate's Treatment Goals, ☐ MH 6 Input |
|---|---|
| | |
| | Treatment Readiness: ☐ Amenable ☐ Motivated ☐ Resistant |

**VII. Discharge Plan To:** ☐GP ☑CCCMS ☐EOP    ☐MHCB ☐DMH

Signature(s)  D. Roycew

| **MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION** MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages — Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | **LEVEL OF CARE**  Inpatient  Outpatient | Last Name:   First Name:   MI: Schoppe-Rico  CDC # V 11328     DOB 8 28 81 |
|---|---|---|

15

State of California, Department of Corrections: N/C/S Region, Service Area = ___ , Institution, ASP

TREATMENT PLAN PART TWO: PROBLEM → # _____ pg. _____    Today Date: 4/28/04

☐Initial Treatment Plan    ☐Update because _____    ☐Re-justify, _____ weeks

| Prob. # | Describe Problem: | Possible Completion | Date |
|---|---|---|---|
| ① | depressed mood / sad | Next Review | Date |
| ② | Sleep / appetite disturbance | | |
| | **Target Behavior(s):** | | |
| ① | crying jags / withdrawn | | |
| ② | effects functioning | | |
| | **Target Objective(s):** | | |
| ① | Improve mood 75% - ↓ crying jags | | |
| ② | Sleep 6 hrs night, consume meals offered | | |

| Date | Intervention (s) & Staff Assigned. | Frequency and Duration. | Results. |
|---|---|---|---|
| 4/28/04 | ①② | | |
| | medical management per M.D. order | ① 30 days | |
| | weekly monitoring by case manager | | |
| | daily observation by psych tech. | | |
| | ad seg milieu. | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages – Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE  Inpatient  Outpatient | Last Name: Schoppe- Rico    First Name:    MI:  CDC # V11328    DOB __/__/__ |
|---|---|---|

16

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 5/11/5 | | | 3 V X-ray ℞ wrist |
| | | | RTC 4' — 6 wks Ortho |
| | | | Noted Ad R 5/11/05 11⁵⁰ Minie |

ALLERGIES: PCN

INSTITUTION PBSP

ROOM/WING ASU A 1

CDC NUMBER, NAME (LAST, FIRST, MI)

Schoppe - Rico, J
V 11382

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA        OSP 00 35617        DEPARTMENT OF CORRECTIONS

17

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 4/8/05 | | (1) | Chronic Ace Wrap for ® wrist due to medical condition X 1 year |
| | | (2) | Erydem soln 2% BID ® face after cleansing X 90 days c̄ Benzoyl perox |
| | | (3) | Benzoyl peroxide 10 apply to face in AM + pm X 90 days |
| | | (4) | Doxycycline 100 mg BID X 30 days |
| | | (5) | F/U 6 weeks |
| | C̄ | (6) | D/C Benzoyl 5 % |
| | | | D/C PCN Caps    Linda _____ |
| | | | Noted _____ RN @ 1047 |

**ALLERGIES** PCN    **INSTITUTION** PBSP    **ROOM/WING** ASU-A-1

CDC NUMBER, NAME (LAST, FIRST, MI)
Schoppe-Rico, John
V 11328

Confidential
client information
See W & I Code, Sections 4514 and 5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA    OSP 00 35617    DEPARTMENT OF CORRECTIONS
18

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 12/22/04 | | | RTC - Mike only - Observe 2 wks |
| | | | RTC Ortho 3 mos c̄ Xray ®  wrist       [signature] |
| | | | Chrono - ® wrist brace x surg. |
| | | | Noted [signature] RN 12/22/04 10⁵⁵ |

ALLERGIES: **PCN**

INSTITUTION: **PBSP**

ROOM/WING: **B5 285**

Confidential
client information
See W & I Code, Sections 4514 and 5328

CDC NUMBER, NAME (LAST, FIRST, MI)

**Schoppe-Rico, J**
**V 11 328**

## PHYSICIAN'S ORDERS

CDC 7221 (2/00)
STATE OF CALIFORNIA          OSP 00  35617          DEPARTMENT OF CORRECTIONS

14

# EXHIBIT: F

1.) PAGE ONE. WAS LETTER FORWARDED TO KYLE GEE FOR HANDLING UR RESTITUTION FINE AND NEVER DID. AFTER COURT AND I CONTACTED HIM.

2.) PAGE TWO THROUGH TWELVE ARE COMPLAINTS FILED AGAINST KYLE GEE. APPELLATE ATTORNEY.

3.). PAGES THIRTEEN THROUGH FIFTEEN, IS LETTER ATTORNEY SENT ME, EXPLAINING HOW TO HANDLE MY STATE HABEAS AND FEDERAL HABEAS.

4.) SIXTEEN, SEVENTEEN ARE PAGES OF APPOINTED COUNSEL FROM PUBLIC DEFENDERS OFFICES SURVEY OF INEFFECTIVE ASSISTANCE OF COUNSEL THEY PROVIDE TO INDIGENT DEFENDANTS AND WHY

ATTACHED TO EXHIB.

( PG. 81 )

( 19 PAGE )

Superior Court of the State of California
County of Contra Costa
P.O. Box 911
Martinez, CA 94553

**7-1-04**

John Moses Schoppe-Ricco
PELICAN BAY STATE PRISON
C.D.C. #V11328
P.O. BOX 7500 –A2RM128
CRESCENT CITY, CA 94432

      Re: People v  Schoppe-Ricco
      Docket: 5-011510-5

This correspondence acknowledges receipt of your correspondence dated June
20, 2004 and received on June 28, 2004.

Your request to contest the restitution does not appear to be timely.  Your letter
has been forwarded to your appellate attorney for the appropriate action.

Very truly yours,

Diana Becton Smith, Judge

cc: Defendant
    Attorney KYLE GEE
    2626 Harrison St.
    Oakland, CA 94610



**THE STATE BAR
OF CALIFORNIA**

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

OFFICE OF THE CHIEF TRIAL COUNSEL
INTAKE

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1168
http://www.calbar.org

November 8, 2005

John M. Schoppe-Rico
CDC #V-11328
SHU C-11 RM 101-A-POD
P.O. Box 7500
Crescent City, CA 95532

**Re:    Inquiry No:    05-15915
        Respondent:    James Gee**

Dear Mr. Schoppe-Rico:

You have complained that Mr. Gee has not been in communication with you about the status of your case and has refused to provide you with copies of the letters you sent him, and the transcript.

Your complaint regarding the lack of communication concerns us. However, it is hoped that bringing your complaint to Mr. Gee's attention will resolve the matter.

We have advised Mr. Gee to re-establish contact with you within ten (10) working days and discuss the status of your case with you. If Mr. Gee fails to contact you within the specified time, please contact us **in writing**. If he fails to contact you, the State Bar will consider the matter for further intervention and/or action.

Regarding the documents, please be informed that an attorney is not obligated to make or provide copies of the documents he receives from his clients. It is the responsibility of the client to retain copies for his records. However, you may wish to provide Mr. Gee with a written request for the client file **at the end of the representation.**

You requested that the State Bar also provide you with a copy of the complaint you filed with us. Please be advised that all documents you send to the State Bar, whether **copies or originals** become State Bar property and cannot be returned. Additionally, the State Bar does not provide copies of the documents submitted to us. In this situation we have made an exception and are enclosing copies of the documents you submitted. However, **no further copies will be provided. In the future, please provide only copies.**

In light of the above, we are closing the complaint at this time.

Sincerely,

Sylvia Curling
Complaint Analyst

SC/kj

Enclosures

L

FR: PELICAN BAY STATE PRISON                    (3)
JOHN M. SCHOPPE-RICO, VS. PEOPLE NO: A104136
C.D.C # V-11328
B7 YARD ~ CELL 224.
P. O. BOX # 7500
CRESCENT CITY. CA 95532

TO:
THE STATE BAR OF CALIFORNIA
SYLVIA CURLING
COMPLAINT ANALYST
1149 SOUTH HILL STREET
LOS ANGELES. CALIFORNIA. 90015-2200

DATED. JULY 7, 2006.

RE: INQUIRY NO: 05-15915.
RESPONDENT: KYLE JAMES GEE.

DEAR. COMPLAINT ANALYST.

I HAVE PREVIOUSLY FILED AN COMPLAINT WITH YOU IN REGARDS TO AN COURT APPOINTED ATTORNEY, WHO FAILS TO CONTACT ME OR RESPOND TO ANY OF MY LETTERS IN REGARDS TO THE STATUS OF MY CASE OR THE UNKNOWN HARMFUL DESICIONS HE IS MAKING IN MY CASE AND WAISTING MY APPEAL. ON. I WAS ADVISED BY YOU TO CONTACT YOU IF HE DOESNT CONTACT ME SOON ON THE STATUS OF MY CASE WITHIN 10 WORKING DAYS WELL ITS BEEN MONTHS AND THIS LAWYER EXHAUSTED MY APPEAL AND LOSS MY CASE. NOW CAN YOU PLEASE INVESTIGATE SAID ATTORNEY AND HAVE HIM CONTACT ME AND SEND ME MY FILE. HIS REPRESENTATION IS OVER. AT NO TIME DID THIS ATTORNEY TRY TO HELP ME. WHERE DO YOU HIRE THESE INEFFECTIVE ATTORNEY AT, PLEASE REPLY SOON. THANK YOU. THE ABOVE ATTORNEY HASN'T CONTACTED ME OR BEEN IN CONTACT WITH ME, NOW THAT HIS REPRESENTATION IS OVER. I NEED OF HIM TO MAIL ME ALL EXCERPTS OF RECORD. REPORTER & COURT TRANSCRIPTS ENCLUDING EVERY LETTER & THING IN MY FILE. PLEASE REPLY SOON.

SINCERELY
MR. SCHOPPE-RICO

3

(4)



# THE STATE BAR OF CALIFORNIA

## COMPLAINT FORM
Read reverse side before filing in this form.

Date _9- 1 -05._

(1) Your name and address _JOHN MOSES SCHOPPE-RICO — . FELICAN BAY STATE PRISON_
_P.O BOX 7500, CRESCENT CITY CA, 95532_

(2) Telephone number:    Residence _N/A_    Work _N/A_

(3) The name, address and telephone number of the attorney being complained about. (See note below.)
_KYLE GEE, ATTORNEY/LAW OFFICE, 2626 HARRISON STREET, OAKLAND CA._
_94612._

(4) Have you or a member of your family complained about this attorney previously?
Yes ☒, No ____. If yes, please state to whom the previous complaint was made, its approximate date and disposition.
_ME AN FAMILY HASN'T COMPLAINED OF THIS ATTORNEY, BUT I HAVE WROTE NUMEROUS OF LETTERS TO THE FIRST_
_APPEALLATE PROJECT EXECUTIVE DIRECTOR, PERTAINING TO ISSUES SEE SUPPLEMENTAL letter ATTACHED -_

(5) Did you employ the attorney? Answer yes or no and, if "yes," give the approximate date you employed him or them and the amount, if any, paid to him.
_NO_

(6) If your answer to 5 above is "no," what is your connection with the attorney? Explain briefly.
_ATTORNEY WAS COURT APPOINTED FOR APPEAL BY THE FIRST APPEALET PROJECT; HE WAS TO REPRESENT MY CASE BEST_
_INTEREST. BUT DUE TO HE'S A GOVERMENT COURT APPOINTED LAWYER THERES BEEN AN UNETHICAL DISADVANTAGE IN ISS_

(7) Write out on a separate piece of paper and send-with this form a statement of what the attorney did or did not do that you are complaining about. Please state the facts as you understand them. Do not include opinions or arguments. If you employed the attorney, state what you employed him to do. Sign and date such separate piece of paper. Further information may be requested. (Attach copies of pertaining documents.)

(8) If your complaint is about a law suit, answer the following, if known:
(a) Name of court (For example, Superior Court or Municipal - in what county)
_N/A_

(b) Title of the suit (For example, Smith against Jones).
_N/A_

(c) Number of the suit _N/A_

(d) Approximate date the suit was filed _N/A_

(e) If you are not a party to this suit, what is your connection with it? Explain briefly.

(9) Size of law firm complained about (*)
1 Attorney ____   2 - 10 Attorneys ____   11 + Attorneys ____   Don't know ____   Govt Attorney ☒ _GOVT ATT,_

NOTE: If you are complaining about more than one attorney, write out the information about each in answer to questions 3 through 8 above on separate sheets if necessary.

Mail to:
Office of the Chief Trial Counsel/Intake
State Bar of California
1149 South Hill Street

(*) Section 6095.1 of the Business and Professions Code mandates that the State Bar compile statistics concerning the size of the attorneys law firm - solo practitioner, small law firm (2-10 attorneys and large law firm (11 + attorneys).

Signature: _John M Schoppe R_



THE STATE BAR
OF CALIFORNIA

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

OFFICE OF THE CHIEF TRIAL COUNSEL
ENFORCEMENT

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1318

August 22, 2005

John M. Schoppe-Rico
Pelican Bay State Prison
C.D.C. #V-11323
P. O. Box #7500-SHU.
Crescent City, CA 95532

Dear Mr. Schoppe-Rico:

This is in response to your letter dated August 8, 2005. Enclosed per your request, is a complaint packet.

If in the future you are in need of information concerning California attorneys, you may visit our website at www.calbar.ca.gov .

Very truly yours,


OFFICE OF THE CHIEF TRIAL COUNSEL/INTAKE


P95


Enclosure

5

FR. JOHN H. ██████PPE-RICO
PELICAN BAY STATE PRISON
C.O.-C # V11328
P.O. BOX # ██7500/B7 RM 228
CRESCENT CITY CA. 95532.

A104643                    (6)
Kyle Gee, LRB/I
DATE: 04-02-04.

TO. DEAR.

COPY SENT TO RE: LETTER.
PANEL ATTORNEY

MR. MATTHEW ZWERLING
EXECUTIVE DIRECTOR.

RECEIVED
APR 0 6 2004
First District
APPELLATE Project

GREETING'S THIS LETTER IS IN REGARDS OF MR.

KYLE GEE'S Failure to Communicate with me. THIS is a very serious

CASE AN A Life is at STAKE. I'm WONDERING WHY KYLE GEE WHO WAS

APPOINTED to MY CASE HAVES NOT WROTE ME BACK. OR Answer any

OF MY letters. I've WROTE TO HIM SINCE DECEMBER. untill to this

DATE IT's CRUCIAL that he hasn't Responded back to me.

I am WRITING YOU because Your the executive Director. WHO

NOTIFY ME. That he is my APPEAL lawyer and How do I GET HIM

TO RESPOND back. is a complaint nessesery to be Filed OR can You

please notify him to WRITE soon. I am Looking FOR word to hear

SOMETHING SOON. Please sir. WRITE back. IN THIS matter ITS not

FAIR. How do iKnow if he's interested in doing His JOB. Thank YO

FOR YOUR TIME and COPERATION. Please notify me and Respond

SOON. TAKE CARE.

            SINCERELY
            MR. SCHOPPE-RICO.

His Address. # (510) 839-9230-
  KYLE GEE
  2626 HARRISON STREET
  OAKLAND, CA. 94610.
  IN. People VS SCHOPPE-RICO
  RE. CASE NO. A104363

              4.

( 7 )

# FIRST DISTRICT APPELLATE PROJECT

730 Harrison Street, Suite 201• San Francisco, California 94107 • (415) 495-3119 • Facsimile: (415) 495-0166

July 16, 2004

John Shoppe-Rico
V11328
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Re:     People v. John Shoppe-Rico; A104363

**CONFIDENTIAL: ATTORNEY/CLIENT COMMUNICATION**

Dear Mr. Shoppe-Rico:

Thank you for your letter received July 14, 2004. (copy enclosed). You wanted to know what kind of experience your attorney Kyle Gee has. I can assure you that Mr. Gee has handled hundreds of appeals, and that he is an excellent attorney. You want to know what his success rate is. We do not keep such records.

You also wanted copies of all the letters you send Mr. Gee. You will need to ask Mr. Gee about this. I am sending him a copy of this letter.

I hope I have answered your questions.

Sincerely,

L. Richard Braucher
Staff Attorney
enclosure

cc:     Kyle Gee, Esq.

*Kylee Gee*

FROM: MR. SCHOPPE-RICO, JOHN MOSES.
PELICAN BAY STATE PRISON
C.D.C. # V11328
P.O. BOX # 7500
CRESCENT CITY, CA 95532

T':

MR. MATTHEW ZWERLING
EXECUTIVE DIRECTOR.
FIRST DISTRICT APPELLATE PROJECT.
730 HARRISON STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA. 94107 ·
(415) 495-3119 · FACSIMILE (415) 495-0166 .

RESPECTFULLY SUBMITTED
DATED: JULY 9. 2004

RECEIVED

JUL 14 2004

First District
APPELLATE Project

RE:# A104363 VS. MR. SCHOPPE-RICO

CONFIDENTIAL: ATTORNEY / CLIENT   ~~SENT TO PANEL ATTORNEY~~

DEAR, MR. ZWERLING.

THIS MR. SCHOPPE-RICO WITH MORE CONCERNS, I EXTEND
TO YOU FROM THE CESSPOOL OF POVERTY AND CORRUPTION. HERE AT PELICAN BAY STATE
PRISON. MY REASONING FOR THIS NOTE IS TO RESPECTFULLY REQUEST. ANY HELP YOU MAY BE
TO ME IN PROVIDING ANY BIT INFORMATION ON THE MR. KYLE GEE. FR. APPEAL LAW OFFICES.
8626 HARRISON STREET, OAKLAND CA, 94610. I NEED TO KNOW WHAT KIND OF EXPERIENCE
DOES HE HAVE AN WHY. HE WAS ASSIGNED TO MY CASE. CAN YOU PLEASE PROVIDE ME WITH
HIS TRACK PERFORMANCE NUMBER OF HOW MANY ___ FELONY APPEALS AND ___ MURDER
APPEAL TRIALS. HE HAS REPRESENTED IN HIS CARRER. AS AN ATTORNEY. REASONING OF THIS.
I KNOW WHAT A DUMP TRUCK IS. AN I'M HOPING YOU'VE PROVIDED ME WITH A SKILLED EXP-
ERIENCE DEFENSE ATTORNEY. ALSO HAS HE EVER REPRESENTED AN INNOCENT MAN IN PRISON.
I WILL FILL AT EASE IF YOU CAN PROVIDE ME WITH HIS SUCCESS RATE, HOWEVER. I AM NEW TO
THIS COURT SYSTEM AN IS LOOKING FORWARD TO THIS APPEAL. MY HOPES OF A SECOND CHANCE.
TO THE CONTRARY I'VE NEVER BEEN IN TROUBLE BEFORE OR BEEN TO PRISON. THE ONLY RUN IN I'VE
HAD WITH LAW WAS A D.U.I. BUT THAT WAS IT. BUT I WAS HARRASSED MANY OF TIMES. I WAS
ALWAYS STOPED BY THE POLICE, WALKING HOME UP TO THE STORE. YA' IT'S RIDICULIES. YOU KNOW
THEIR TACTICS... BUT ALSO I AM VERY CONCERN ABOUT MR. KYLE GEE NOT PROVIDING ME ANY
COPY'S OF THE LETTERS I'VE SENT HIM. I'VE WROTE HIM QUIT A FEW TIMES AT THE SAME TIME
REQUESTING FOR HIM TO PLEASE PROVIDE ME PHOTO COPY'S OF ALL THE LETTERS I'VE SENT TO HIM.
FROM ME, MR. SCHOPPE-RICO. ALONG WITH A CORRESPONDANCE RESPONSE, I'M A "PRISONER."
SO I DON'T HAVE ACCESS TO A PHOTO COPY MACHINE, SO THERE'S NO WAY, I CAN MAKE A COPY
FOR MY OWN PERSONAL FILE'S AND SECURITY. HE SHOULD KNOW THAT. AN PROVIDE ME PHOTO COPY
THE PHOTO COPY'S OF THE LETTERS I'VE WROTE TO HIM. SO FAR. WELL INTILL THEN I AM NOT TO
THRILLED AN HOPE'ING THINGS WORK OUT. PLEASE CONTACT KYLE GEE OF THIS MATTER AS WELL.
I WILL FEEL MORE COMFORTABLE JUST KNOWING HE DID RECEIVED MY LETTERS. AND BEEN RECEIVING
MY LETTERS OF MY TRIAL. IF THERE'S ANY EXPENSES COST FOR THE PHOTO COPY'S PLEASE PROVIDE
THE CORRECT FULL AMOUNT. SO I CAN PROVIDE THE PROPER AMOUNT OF FOUNDS FOR ANY COST.

THANK YOU SIR. FOR YOUR TIME AND COOPERATION IN THIS MATTER ANY SERVICE YOU MAY BE
WILL BE HIGHLY APPRECIATED WIT GRATITUDE. TAKE CARE _____ IN REGARDS TO THIS LETTER
RE. MIRANDA VS. CLARK COUNTY NEVADA. CITE NO 319 F.3d 465 (9TH CIR. 2003)

SINCERELY,

*J. Schoppe-Rico*

J. MOSES SCHOPPE-RICO .
DEFENDANT _____
ENCLOSER —

AN I SWEAR UNDER PERJURY THAT THE FOREGOING IS TRUE AN CORRECT IN ORDER DATED 7-9-04
P.S. ALSO LET ME NOTE I FIND IT DIFFICULT TO WRITE WITH MY RIGHT HAND. DUE TO AN INJURY. OL' GUN
SHOT WOUND FROM DEPT 28.00 __ SO I CAN'T WRITE MUCH WITH MY HAND N' WRIST IN ACCORDANCE
WITH THE PROVISIONS OF THE AMERICAN'S WITH DISABILITIES ACT. (A.D.A.) 18 —

8

FR: JOHN M. SCHOPPE-RICO
PELICAN BAY STATE PRISON
C.D.C # ● 328
P.O. BOX # 7500
CRESCENT CITY. CA 95532.

(9)

TO:
STATE BAR OF CALIFORNIA
333 S. BEAUDRY AVE. 9TH FLOOR.
LOS ANGELES. CA. 90017- 1488.

DATED 8-28-04.

RE: "WARRANT-" STATEMENT OF CLIENT RIGHTS." MANUEL.

_DEAR, SIR OR MADAM.

I AM CURRENTLY IN POST-TRIAL PROCEEDING IN THE APPEAL COURTS. HOWEVER. I WILL LIKE TO OBTAIN INFORMATION ON "STATEMENT OF CLIENT RIGHTS. I WILL HIGHLY APPRECIATE IF YOU WILL SEND ME A COPY OF ABOVE MENTION INFORMATION, SINCE THE ATTORNEY NEVER provided ME WITH A "STATEMENT OF CLIENT RIGHTS, BOOK, MEMO. OR MANUEL. THANCK YOU FOR YOUR TIME I WILL JUST HATE TO BE wrongly CONVICTED BASED ON BECAUSE I DIDN'T KNOW MY RIGHTS. PLEASE SEND THE INFORMATION SOON. (P.S - WRITE TO ABOVE ADDRESS.) KINDLY APPRECIATED THANCK YOU.

Truely yourS. INDIGIENT,

MR. SCHOPPE-RICO.

9

$(10)$

# FIRST DISTRICT APPELLATE PROJECT

730 Harrison Street, Suite 201• San Francisco, California 94107 • (415) 495-3119 • Facsimile: (415) 495-0166

April 15, 2004

John Shoppe-Rico
V11328
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Re:    People v. John Shoppe-Rico; A104363

**CONFIDENTIAL: ATTORNEY/CLIENT COMMUNICATION**

Dear Mr. Shoppe-Rico:

Thank you for your letter received April 6, 2004 (copy enclosed). I spoke with you attorney Kyle Gee today, who assures me that he will be writing to you soon. He explained that he has spoken to your mother often, and believed that she was acting as a kind of go-between, relaying information.

I hope this clears up all of your concerns.

Sincerely,

L. Richard Braucher
Staff Attorney
enclosure

Chronological Interdisciplinary Progress Notes: State of California, Department of Corrections – **Pelican Bay State Prison**

Date: 2-20-04  Time: 1330  Chart available? Yes  Reason for Visit: NA  Location of Visit: Kitchen

S: Inmate States this is his first term. Arrived from SQ on 2.17.04. States his problem is depression. States has been incarcerated since 2000. His trial ended 5-03. Says his depression started after incarcerated + was started on meds in county jail. Was previously on Paxil, Prozac, Risperdal. At SQ started on Wellbutrin - is compliant + meds tolerates well. Says

**O:** Appearance, Behavior, Speech, LOC, Orientation, Cognition, Memory, Concentration, Affect, Mood, Insight, Judgment, Thought Processes & Content, Suicidal and/or Homicidal ideation.

: Used to hear voices "regular" but now hears once a week — not sure what voices says. Says they tell something negative. Mood now he says is "sad." Denies is suicidal. Says no suicide attempts while incarcerated. Thinks Wellbutrin helpful. Sleep- poor since PBSP- still : adjusting to PBSP

**A:** Diagnosis & Discussion: Treatment Team's diagnosis per MH 2 _first_, then concur, propose, etc..., _with supportive discussion_; condition, case formulation, data analyses, etc....

Inmate appeared sad. Was soft spoken. He was coherent + relevant. No abnormal movements

**P:** Follow-up care/appt., _medication changes with rationale_, treatment recommendations, AIMS, consents, diagnostic studies, patient education, etc....

: Will cont. con. on Wellbutrin. Will change the Wellbutrin from Wellbutrin XL 300 to Wellbutrin SR 150 mg bid

**PSYCHIATRIC MEDICATIONS** (optional for clinicians):

| Drug | Dosing | Duration | Target Symptom(s) | Response, blood level, lab results, compliance, anticipated duration, etc... |
|---|---|---|---|---|
| Wellbutrin | SR 150. | | bid X 90 days | |

☐ SEE PAGE 2 →

Signature: L. Turner MD  Print Name: L. Turner MD  PhD / LCSW / **MD** / PsyTech / Other :

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTE MH 3  (10/11/02) Confidential Client/Patient Information See W & I Code, Section 5328 | Level of Care | Last Name: Schoppe-Rico | First Name: John | MI: |
|---|---|---|---|---|
| | Inpatient Outpatient ✓ | CDC #: V11328 | House: A2 124 | |

State of California, Department of Corrections – Institution:    **SQ**    Prior Page Number: ____

**CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:**    All Staff, Clinicians, Treatment Teams.

| Date/Time: ✓ | Use Name & Title Stamp. |
|---|---|
| 1/25/04 | Reports yesterday the MTA did not stop to give him his meds. Reports he takes his meds all the time |
| | % depression Feels like his losing hope & energy. Cries around a lot! ↓ concentration |
| | Denies difficulties c̄ appetite |
| | −SI−HI, ⊖AH ? Paranoia |
| | ⊖Side effects   psychomotor retardation. |
| | MSE speech soft normal rate & rhythm |
| | Mood dysphonic affect flat |
| | TC −SI−HI |
| Ohr S² | TF linear |
| (Imp) depression |
| (Plan) Discuss w/ Adrenwal affects of paxil. Leave him choice of stopping paxil slowly or quickly |
| | D/C paxil |
| | reduc/censed wellbun 150 9AM |
| | Page # ____ |

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 3 [3/21/96] | | Schippe-Riw | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | V11328 | | |
| | Outpatient | CDC # __ - __ __ __ __ | DOB __/__/__ | |

State of California, Department of Corrections – Institution: **SQ**    Prior Page Number: ____ ____

**CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:**    All Staff, Clinicians, Treatment Teams.

| Date/Time: | ✓ | Use Name & Title Stamp. |
|---|---|---|

4/2/14

Pt doing alright. Compliant ī meds although he reports he hasn't gotten T paxil (3cy) Finds he's a little depressed and is tired a lot. ↓ sleep ( falls asleep 2 am Wakeup at 5am) Feels sleepy during. day ↓ concentration

Always hungry ⊖ hopelessness –S/-/+/
⊖ AH Some paranoia ⊖ Side effts
Pt doesn't think Paxil makes him Sleepy
– He was not feeling Sleepiness durg day
started 3 weeks ago

MSE speech normal rate r right Sb
Mood dysphoric mildly
affect wnl

TC – S /-/+/
TF lining

(Imp) Sleepiness durg day
Not getting 2 in paxil

plan) paxil 3 cy poQPM

Signature

1/23/04    Pt reports his doing the same. Feels depressed + lost time. Removed note from MTA that he refused paxil + requested that he refused meds x 2. He stated he was "sleeping a somebly and did not went to get up

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | Last Name: | First Name: | MI: |
|---|---|---|---|---|
| MH 3 [3/21/96] | | Schoppe Russ | | |
| Confidential Client/Patient Information See W & I Code, Section 5328 | Inpatient | V11328 | | |
| | Outpatient | CDC # __ · _ _ _ _ | DOB __/__/__ | |

State of California, Department of Corrections – Institution: **SQ**    Prior Page Number: _____

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:    All Staff, Clinicians, Treatment Teams.

| Date/Time: ✓ | ✓ | Use Name & Title Stamp. |
|---|---|---|

10-24-3

(D) 22 yo 07 arrived 10/23/03 1x57yo to life.

(JPI) Reports he didn't kill the person his convicted of kills

c/o a little depress Feels lonely and depressed
↓ Slushly concentration ↑↓ms
↓ sleep since yesterday
Denies difficultia ē appetite ? energy
(+) hopelessness. -SI- H/I    Fest + 4 8x few mos/yo
after arrest
c/o H/I ? Paranoia - worried about

| Phy | Mother | Meds | allergies | Habits | Family hx) |
|---|---|---|---|---|---|
| φ | asthma | respond | PCA=? | hx meth | φ |
| Injur | ↑↓ wnst with purud | | Ebh 4/yr ago | |
| | (narration school whala | | | |
| | Tobacc Acne | | | |
| | Tuxo drue | | | |

HSE Speech normal rate and rythm.
Mood mildly dysphoric (affid wnl)
+C-S+ H/I
II linear

Plan) educ purso
purso
respond 3 q 15

imp) Psychotic do NOT
Doesn't meet criteria to
Schizophren
I defered
III Done acute
IV incarcerat
V SS
Page # SDDUN

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES  MH 3 [3/21/96]  Confidential Client/Patient Information See W & I Code, Section 5328 | OF  Patient  O County | Last Name:  Schoppe-Rico  V 1 1328  CDC #__-_____ | First Name:  MI:  DOB __/__/__ |

*(All Staff, Clinicians, Treatment Teams)*                                                    Pelican Bay State Prison

## ADMINISTRATIVE SEGREGATION (AD-SEG)

### IDTT Annual, Progress and Minutes Note

| DATE: 6/30/04 | ASSIGNED PRIMARY CLINICIAN: Claudia K. Lake, Psy. D |
|---|---|

**REASON**

| | | | | | |
|---|---|---|---|---|---|
| INITIAL EVALUATION | ☐ | MH 2 | ☐ | MED NECESSITY REVIEW | ☐ |
| INITIAL EVALUATION EXTENSION | ☐ | MHCB FOLLOW-UP | ☐ | DISCHARGE CCCMS | ☐ |
| 6-MO REVIEW | ☐ | ANNUAL REVIEW | ☐ | DISCUSSION *(everything NOT covered at left)* | ☒ |

**IDTT MEMBERS** *(check those present)*

| | | |
|---|---|---|
| ☒ D. Mandel, Sr. Ph.D., Supervisor, Chairperson | Turner , M.D. | **Patient:** |
| ☒ R. Rushe, Ph.D. | , LCSW | ☒ Elected to attend |
| ☒ D. Roy, LCSW | Shellabarger , C/O | ☐ Elected **NOT** to attend |
| ☒ B. Pearson, OLPT Lake Psy.D | Dixon , C/O | |
| ☒ S. Latham, LPT | | |

CLINICAL STATUS (include dx): I/m's chart reviewed. I/m had DX of Maj. Dep c̄ Psychosis. But upon review of chart, there is not enough documented Sx's to support this DX. I/m when 1st placed in 3CMS in 2/04, stated depression due to incarceration and "voices" were not clear or appear to be exaggerations. DX should be Adj D/o c̄ Dep mood

TREATMENT PLAN UPDATE RECOMMENDATIONS: I/m is not on meds since 6-8-04 — or Dep. D/O MDS I/m requesting removal on 3CMS. Suggest placement on med necessity this date and review in 30 days.

D/c 3CMS 2-05.

NEXT REVIEW DATE: _____ / _____ / _____

CUSTODY COMMENTS: _____

ADAPTIVE FUNCTIONING: _____

COMMENTS *(include reason for Ad-Seg placement)*: _____

| | |
|---|---|
| *Der D.W. Mandel, PhD* **SIGNATURE** *(Chairperson)* | |

| MENTAL HEALTH Interdisciplinary Progress Notes *(ADSEG - IDTT Annual, Progress, Minutes Notes)* MH2 (8/03) Confidential Client/Patient Information See W&I Code, Section 5329 | LAST Name: Schoppe-Rice FIRST Name: _____ CDC No: V1328     Housing: A2/28 |
|---|---|

14

IDTT-AdSeg.xls 8-03

Mental Health Treatment Plan Part One:                                    Page 2 of 2

IV. DSM IV  Numerical ☐Last MSE  _/_/_  ☐Last TP _/_/_   MH 1☐_/_/_   Last MH 4 ☐ _/_/_

| Axis I | | Major depression c̄ psychosis | |
| --- | --- | --- | --- |
| | | | |
| | | | |
| Axis II | | deferred | |
| | | | |
| Axis III | | | |
| Axis IV | | (current) | |
| Axis V | | GAF = 60  Describe basis. | |

**V. Problem / Symptom List**

#1
depressed / sad mood

#2
crying jags

#3
poor sleep / appetite

**VI. Inmate's Strength and Weakness, Goals**      Inmate's Treatment Goals, ☐ MH 6 Input

Treatment Readiness: ☐ Amenable ☐ Motivated ☐ Resistant

**VII. Discharge Plan To:** ☐GP ☑CCCMS ☐EOP      ☐MHCB ☐DMH

**Signature(s)**  D. Roy LCSW

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages — Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE — Inpatient — Outpatient | Last Name:  Schoppe-Rico      First Name:      MI: |
| --- | --- | --- |

CDC # V 11328      DOB 8/28/81

15

State of California, Department of Corrections: N / C / S Region, Service Area = ___, Institution, *PBSP*

| TREATMENT PLAN PART TWO: PROBLEM → # _____ pg. _____ | | Today Date: 4/20/04 |
|---|---|---|
| ☐Initial Treatment Plan    ☐Update because _____ | ☐Re-justify, _____ weeks | |

| Prob. # | Describe Problem: | Possible Completion | Date |
|---|---|---|---|
| ① | depressed mood / sad· | | |
| ② | sleep/appetite disturbance· | Next Review | Date |
| | **Target Behavior(s):** | | |
| ① | crying jags/withdrawn | | |
| ② | effects functioning | | |
| | **Target Objective(s):** | | |
| ① | improve mood 75% · ↓ crying jags· | | |
| ② | sleep 6 hrs night , consume meals offered· | | |

| Date | Intervention (s) & Staff Assigned. | Frequency and Duration. | Results. |
|---|---|---|---|
| 4/28/04 | ①② medical management per M.D. order | Q 30 days | |
| | weekly monitoring by case manager | | |
| | daily observation by psych tech. | | |
| | ad seg milieu. | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [3/29/96] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages -- Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE | Last Name: Schoppe- Rico | First Name: | MI: |
|---|---|---|---|---|
| | Inpatient | | | |
| | Outpatient | CDC # V 11328 ___ ___ | DOB __/__/__ | |

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication<br>(Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 5/11/5 | | | 3 V X-ray ®️ wrist<br>RTC 4' - 6 wks Ortho<br>Noted _Ad_ 5/11/05 _11:50_ _Brune_ |

ALLERGIES:
PCN

INSTITUTION
PBSP

ROOM/WING
ASU  A 1

CDC NUMBER, NAME (LAST, FIRST, MI)

Schoppe - Rico, J
V 11382

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA            OSP 00 35617       DEPARTMENT OF CORRECTIONS

17

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 4-8-05 | | (1) | Chronic Ace Wrap for ® wrist due to medical conditions X 1 year |
| | | (2) | Erydem soln 2% BID to face after cleansing X 90 days c Benzoyl perox |
| | | (3) | Benzoyl peroxide 10 apply to face in AM + pm X 90 days |
| | | (4) | Doxycycline 100 mg BID X 30 days |
| | | (5) | FU 6 weeks |
| | | (6) | D/C Benzoyl 5% (7) D/C TCN Caps |

ALLERGIES: PCN

INSTITUTION: PBSP

ROOM/WING: ASU-A-1

CDC NUMBER, NAME (LAST, FIRST, MI):
Schoppe-Rico, John
V 11328

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA        OSP 00  35617        DEPARTMENT OF CORRECTIONS

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication<br>(Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 12/22/04 | | | RTC - Mike only - Observe 2 wks |
| | | | RTC Ortho 3 mos c̄ Xray ® wrist. _____ |
| | | | |
| | | | Chrono - ® wrist brace x 1 yr. |
| | | | Notd. J.R. RN 12/22 10⁵⁵ |

**ALLERGIES:** PCN

**INSTITUTION** PBSP

**ROOM/WING** B5 285

Confidential
client information
See W & I Code, Sections 4514 and
5328

**CDC NUMBER, NAME (LAST, FIRST, MI)**

Schoppe-Rico, J
V 11 328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA        OSP 00  35617        DEPARTMENT OF CORRECTIONS

14

SUPPLEMENTAL ATTACHMENT TO #7.    (5)

#7.

MY COURT APPOINTED ATTORNEY, HAS NOT DONE MANY OF THINGS, I'VE
REQUESTED FOR HIM TO DO, (1) HE WAS SUPPOSE TO POST MY BAIL · SET MY BAIL
(2) HE WAS TO UPDATE ME ON MY CASE AS THINGS DEVELOPED. (3) HE WAS
SUPPOSE TO KEEP IN CONTACT WITH ME AN CONSULT THE ISSUES TO BE
RAISED ON APPEAL. (4) HE WAS SUPPOSED TO PROVIDE ME WITH COPYS
OF ALL THE LETTERS I'VE SENT HIM, HE KNOWS I AM IMPRISONED AT PELICAN BAY
STATE PRISON SUPERMAX AN I HAS NO ACCESS TO A PHOTO COPY MACHINE, COPYS
ALL THE LETTERS I'VE SENT HIM HAS NOT BEEN PROVIDED TO ME YET TO DATE,
(5) HE WAS SUPPOSE TO PROVIDE ME A COPY OF THE COURT TRANSCRIPTS IN MY
CASE HE HAS IN HIS POSSESSION, STILL HAS NOT YET TO DATE. AN FUNDS WERE MADE
AVAILABLE FOR COPYS, (6) THERE WERE MENTIONED GROUNDS TO APPEAL ON,
MOTIONS THAT WERE FILED HOWEVER THOSE APPELLABLE GROUNDS WERE NEVER
MENTIONED IN THE OPENING BRIEF. (7) HE STILL HASN'T TOLD ME ANY VALUBLE
INSTRUCTIONS WHAT TO DO OR PROVIDE ME INFORMATION ON THE STATUS OF MY CASE
THE POSSIBILITY OF ACQUITTAL OR/OF LATER EXPUNGEMENT OR RECLUCTION OF
CHARGES AND IF APPROPRIATE, THE TERMS AN CONDITIONS OF PROBATION (8)
THEIR HASN'T BEEN NO RETAINMENT AGREEMENTS OR NOTHING, (9) I AM
AN INDIGENT DEFENDANT AN I HAVE THE U.S AMENDMENTS AN CONSTITUTIONAL
RIGHTS TO A FAIR RIGHTEOUS EFFECTIVE REPRESENTATION ON ALL GROUNDS
APPELLABLE AN A CONFLICT INTEREST FREE REPRESENTATION AN THE RIGHT
TO BE FULLY INFORMED OF ISSUES PERTAINING TO MY LIFE AN THIS CASE. (10) TH
ATTORNEY HASN'T ASSURED ME OF NOTHING ABOUT MY APPEAL IF ITS BEEN
GRANTED OR DENIED NOR HAS HE ASSURED ME THAT IF ITS DENIED IS HE
GOING TO FILE AN APPEAL TO THE SUPREME COURT FOR ME AS I'VE REQUESTED
HIM TO DO, THEIR FORE I'd LIKE TO REQUEST THE BAR TO ORDER FOR THE LAW
TO HAND OVER MY FILE OR/AN ACKNOWLEDGE WHAT HE'S FAILED TO DO AN START
COMPLYING, UNDER RULE OF PROFESSIONAL CONDUCT

CAN YOU PLEASE PROVIDE ME A COPY, THANK YOU.
SEND ME A COPY OF THIS COMPLAINT.

STATE BAR STAFF.
P. S.

LAW OFFICE OF
# KYLE GEE

Tel:    510/839-9230
FAX:   510/763-3833

Certified Specialist in Appellate Law
(The State Bar of California Board of Legal Specialization)

2626 Harrison Street
Oakland, CA 94612

October 26, 2006

John M. Schoppe-Rico
V-11328, B-7 Yard, Cell 224
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532-7500

Re: *People* v. *Schoppe-Rico*

Dear Mr. Schoppe-Rico:

The Supreme Court has determined not to grant review in your case. A copy of their order is enclosed. My appointment as your lawyer now ends.

There are two ways that one can go after affirmance of the judgment on direct appeal. The enclosed diagram may be helpful in understanding the possible courses of action.

You have gone through Steps 1, 2, and 3. Step 4 is usually skipped, except in capital cases and in cases presenting very significant federal constitutional issues which have not been decided by the United States Supreme Court. Your case involves no such issues.

In cases involving Federal Constitutional issues, one can go from Step 4 to Step 9, which is a petition for writ of habeas corpus in the United States District Court in San Francisco. Their address is: United States District Court, Northern District of California, P.O. Box 36060, San Francisco, CA 94102-3483. They can provide you with forms which you can use in that District Court.

Your second potential course is Steps 5 through 7. This is a state habeas petition alleging matters which could not be raised on direct appeal. You would first file this in the Superior Court in which you were convicted. If you lose in the Superior Court, you would file another habeas corpus petition in the Court of Appeal. If you lose in the Court or Appeal, you would file another habeas corpus petition in the

John M. Schoppe-Rico                          October 26, 2006
Page 2

Court or Appeal, you would file another habeas corpus petition in the
California Supreme Court.  There is also a special form for use in state
court, and you would use the same form in the Superior Court, in the
Court of Appeal, and in the California Supreme Court.

    I warn you that the federal habeas law is very complicated, both in
terms of what issues you can raise, and the time within which to raise
them.  PLEASE NOTE ALL OF THE FOLLOWING:

    (1)  The only issues you can raise in a habeas petition in
federal court are federal constitutional issues;

    (2)  You can raise now in a habeas petition in the United
States District Court all of the federal constitutional issues
which were raised and denied in your direct appeal;

    (3)  However, you may only have one federal habeas.  If
you file a federal habeas now, to raise the federal constitu-
tional issues already raised in your direct appeal, that is the
only federal habeas proceeding you will have;

    (4)  This means that -- if you intend to raise other federal
constitutional issues in a state habeas, beyond those already
raised in your direct appeal -- you would have to present
your state habeas *fully* in state court before you could take
those issues to federal court.  Raising the issues *fully* means
a state habeas petition in the Superior Court, and another
state habeas petition in the California Court of Appeal (if
unsuccessful in the Superior Court), and another state habe-
as petition in the California Supreme Court (if unsuccessful
both in the Superior Court and California Court of Appeal);

    (5)  Only when the state habeas has been concluded would
you go on to a federal habeas, in which you would raise all
the federal constitutional issues raised in your direct appeal,
and all of the federal constitutional issues raised in your
state habeas;

    (6)  The federal habeas corpus law establishes a one-year
Statute of Limitations for a person in state custody to file a

John M. Schoppe-Rico                    October 26, 2006
Page 3

     Petition for Writ of Habeas Corpus in federal court. In
general, you should assume that the year starts to run from
the date the California Supreme Court denies a Petition for
Review. However, the running of the year is temporarily
suspended during times that a habeas corpus petition is
pending in state court, *but only during those times.* More-
over, the running of the year is only "suspended" while a
habeas corpus petition is pending in state court -- the year
does not start over when the habeas is denied.

     All of this means that, if you are going to pursue a state habeas
petition, you need to file that as soon as possible, and be ready to file
your federal habeas as soon as the state habeas has been denied in the
California Superior Court, Court of Appeal, and Supreme Court. If you
are not going to pursue a state habeas petition but intend to pursue a
federal habeas petition, you need to file that as soon as possible. **Do not
wait until the last minute. The earlier you file, the safer you will be.**

     I wish you the best of luck in your efforts. I am sorry things did
not work out in your appeal.

                      Very truly yours,

                      Kyle Gee

KG:lo
Encl.

# Study Finds Federal Defenders Outperform CJA Attorneys

Indigent federal criminal defendants represented by court-appointed private attorneys "are, on average, more likely to be found guilty and... to receive longer sentences" than defendants represented by public defenders, according to a new study by a Harvard economist.

The study was conducted by Radha Iyengar, a postdoctoral fellow at the Harvard Institute for Quantitative Social Science, and was presented in June, 2007, as a working paper of the National Bureau of Economic Research.

Ms. Iyengar analyzed data from the Administrative Office of the U.S. Courts (AOUSC) Criminal Docket for 1997-2002, which reveals that: 25.3 percent of federal criminal defendants are represented by privately retained counsel; 1.81 percent proceed pro se; and 72.9 percent are represented by indigent defense counsel.

Defendants qualifying for indigent representation may be appointed a federal public defender—a salaried federal employee who represents indigent defendants full-time—or a "Criminal Justice Act (CJA) Panel Attorney"—a private attorney paid by the hour. Cases are randomly assigned to either the CJA panel or the public defender pool. During the study period, 54.3 percent of indigent defendants were represented by public defenders, and 45.6 percent were represented by CJA panel attorneys.

The study found that "defendants with CJA panel attorneys are more likely to be found guilty." Additionally, "CJA panel attorneys are over 8 percentage points less likely to negotiate pleas for lesser included charges." This is significant because "plea bargaining is the only way to negotiate lower sentences for defendants." Thus, "the difference in the probability of being found guilty combined with lower plea rates by CJA panel attorneys suggests that: 1) CJA panel attorneys are performing significantly worse at trial, and/or 2) CJA panel attorneys are not taking the 'right' cases to trial."

"Overall, the defendants with CJA attorneys have nearly eight months of additional jail time," according to the study. "The effect of having a CJA panel attorney ranges from a difference of about 5 months for violent offenses to...nearly a year and a half for weapons offenses."

Moreover, "even when plea bargaining, CJA attorneys take significantly longer to dispose of cases (by about 20 days, corresponding to about 10 percent longer)," Iyengar found. Overall, "using

CJA panel attorneys imposes a $5,800 per case cost on the federal system or a cost of $61.1 million per year."

Analysis of data from California and Arizona reveals several reasons for these differences. "The court-appointed lawyers tend to be quite young,... from small practices and... from lower ranked law schools," said Iyengar. "They have a smaller client base and fewer interactions with prosecutors."

Judge Morris B. Hoffman, Colorado district court judge and co-author of a 2005 study on indigent defense representation was not surprised by a number of the study's conclusions. However they represent their clients, explains Judge Morris, less experienced lawyers tend to do less well in plea negotiations, deciding which cases to take to trial, and in trial outcomes.

Iyengar concluded that "the most striking result" of the study "is the unintended consequence attorney assignment has on perpetuating discriminatory case outcomes on the basis of race." While African-Americans make up only 13 percent of the U.S. population, over 30 percent of indigent defendants are African-American, according to Iyengar. "About 4,000 cases per year involve minority defendants who are randomly assigned CJA panel attorneys," notes Iyengar. "Given the large fraction of defendants

of African-American descent, it becomes obvious that poor quality representation may disproportionately affect them."

"Though the procedures implemented to assign counsel are facially neutral, the difference in performance and the disproportionate impact this difference has on minorities may support a case for discrimination based on disparate impact," the study suggests. These differences "may legally constitute a case of discrimination under Title VI of the Civil Rights Act (1964)."

David Carroll, research director for the National Legal Aid and Defender Association, believes the study's most important point is economic. "There is a cost savings in establishing staff public defender offices," says Carroll. See: *An Analysis of The Performance of Federal Indigent Defense Counsel*, by Radha Iyengar, Working Paper 13187, National Bureau of Economic Research (June 2007).

Copies of the study are available at http://www.nber.org/papers/w1317. Ms. Iyengar can be reached at: Harvard University, Center for Government and International Studies, 1730 Cambridge Street, Room 408, Cambridge, MA 02138, riyengar@rwj.harvard.edu, or at the National Bureau of Economic Research, 1050 Massachusetts Ave., Cambridge, MA 02138. ◪

# New York Pays State Prisoner $1,100 for Disregarding Work Restrictions

On March 31, 2006, a court of claims in Rochester, New York, awarded $1,100 to a state prisoner who was forced to pick up a laundry bag despite a work restriction prohibiting such activity.

Plaintiff Stephen Gagne claimed that on November 22, 1999, medical staff at the Wende, New York, Correctional Facility where he was imprisoned restricted him from performing physical labor. Despite the restriction, Gagne claimed that on July 27, 2000, a guard ordered him to pick up a laundry bag weighing between 30 and 50 pounds as part of his porter duties. Gagne refused, and, according to the complaint, he received a misbehavior report. As a result Gagne was placed in keeplock for 10 days. In a separate incident, Gagne alleged on August 14, 2000, he was forbidden from using his cane on the recreation yard.

Gagne sued the New York Depart-

ment of Correctional Services (NYDCS), *pro se*, claiming wrongful confinement and permanent physical and mental injuries.

Judge Philip J. Patti found that, because the guard who ordered Gagne to pick up the laundry bag was aware of his restrictions, the state was liable for Gagne's injuries that resulted from that incident. Patti also held that a guard may not override a medical restriction and that Gagne should have been allowed to use his cane on the recreation yard. Patti denied Gagne's claim of wrongful confinement holding that since he was ultimately found not guilty of the misbehavior report this claim was not actionable.

Consequently, Patti made Gagne a single award of $1,100 for past and future pain and suffering. See: *Gagne v. The State of New York*, Rochester Court of Claims, Case No. 103202. ◪

# EXHIBIT: G

1.) PROPOSED QUESTIONAIRES FOR WITNESSES

# EXHIBIT: H

1.) PAGE ONE NEWS PAPER ARTICLE. OF WHICH STATEMENTS OF JURORS MADE TO NEWSPAPER REPORTER ON DELIBERATIONS.

2.) TWO AND THREE. AN ATTACH LETTER OF QUESTIONS WE HAD FOR JURORS AND INVESTIGATOR. INVESTIGATING JURY MISCONDUCT, PUBLIC DEFENDER WITHDREW INVESTIGATION AN MOTION AFTER IT WAS GRANTED.

( PG. 83 )    ( 3c PAGES. )

# Jurors convict man of killing pedestrian

■ Nick Taylor, 47, was murdered in 2000 as he helped a friend push recyclables across the street

**By Claire Booth**
TIMES STAFF WRITER

MARTINEZ — Jurors convicted a Bay Point man of first-degree murder Wednesday for killing a man who was helping a friend cross the street.

A Contra Costa Superior Court jury found that John Moses Shoppe-Rico was the one who fatally shot Nick Taylor on Oct. 17, 2000.

Taylor, 47, was helping a friend push two carts full of recyclables at Pacifica Avenue and Port Chicago Highway when he was shot in the back.

"Justice has been done," Taylor's wife, Rita Taylor, said after the verdict. "This has been a long time coming."

The gun used in the shooting, a modified .22-caliber rifle, and a sweat shirt and pants were found in the yard of a nearby home. Shoppe-Rico, then 19, was stopped in that neighborhood within minutes of the killing.

A bloodhound picked Shoppe-Rico out of a "scent lineup" as the one who had contact with the sweat shirt.

And Shoppe-Rico's former girlfriend testified that she saw him often with the weapon.

Shoppe-Rico's attorney questioned the girlfriend's credibility. The woman first told police she saw her boyfriend in a white T-shirt and shorts the morning of the killing. She later revised her story, including information that she bought Shoppe-Rico a sweat suit that matched the shirt found near the gun, defense attorney Ellen Leonida said during her closing argument Tuesday.

Shoppe-Rico was wearing a white T-shirt and shorts, not a gray sweat shirt, when police stopped him, she said.

A juror said after the verdict that the girlfriend's testimony did not play a part in their deliberations.

During his closing argument to the jury, deputy district attorney Paul Graves said that Shoppe-Rico was enraged over a fight with his girlfriend. He took

"Because (Taylor) was in the wrong place at the wrong time, because he was wearing the wrong color sweat shirt ... his life ended that day."

— deputy district attorney
Paul Graves

his gun and happened upon Taylor.

Graves contended that Shoppe-Rico belonged to a gang that uses the color red as identification. That gang has an enemy gang that wears blue.

Taylor wore a blue sweat shirt that morning.

"Because (Taylor) was in the wrong place at the wrong time, because he was wearing the wrong color sweat shirt ... his life ended that day," Graves said.

Graves said that although witnesses' accounts of the shooter and his clothing did vary, they all clearly described the gun.

"I think that gives you a pretty clear indication of where their attention was focused," he said.

Leonida said that Shoppe-Rico was not the one who shot Taylor and had reason to be in the area at the time because he lived there.

And Graves' contention that Taylor was mistaken for a gang enemy was implausible, she said.

"It's absurd to think that a 47-year-old African-American man pushing a cart ... is being mistaken by anybody as a ... gang member," she told jurors.

Shoppe-Rico also was convicted Wednesday of several gang offenses and of shooting into an occupied vehicle in connection with a prior incident.

A juror said after the verdict that the gang charges were the most difficult during deliberations. Shoppe-Rico will be sentenced in May; he faces 50 years to life in prison.

*Claire Booth covers courts. Reach her at 925-228-6177 or cbooth@cctimes.com.*

ored People, Curtis Timmons, an executive board member, also resigned this month.

Timmons said the resignations come after first vice president Darnell Turner, speaking on behalf of the East County NAACP, made unauthorized comments about a white student's desire to start a Caucasian club at Freedom High.

A Sept. 17 Times story quoted Turner saying, "The club's concept sounded similar to former Ku Klux Klan leader David Duke's 1989 election campaign," and that the club will create a racial division.

Timmons said the comments were not reflective of the organization and showed the 300-member East County NAACP in a negative light.

Turner said Wednesday that he was speaking for himself and not the group. He has assumed the presidency in accordance with the succession policies of the group's bylaws.

— Kelli Phillips

## Martinez

## Man gets 50-to-life for shooting death

A Bay Point man was sentenced to 50 years to life in prison Wednesday for shooting a death a man as he helped a friend cross the street.

John Moses Shoppe-Rico, 22, was convicted in March of the first-degree murder of Nick Taylor, who was crossing a Bay Point street Oct. 17, 2000.

Prosecutors alleged that

Shoppe-Rico was enraged after a fight with his girlfriend, took his gun and shot the first person he came upon who happened to be wearing a rival gang color.

Taylor, a 47-year-old who was wearing a blue sweat shirt, was not a member of any gang.

Contra Costa Superior Court Judge Garrett Grant sentenced Shoppe-Rico to the mandatory term of 50 years to life in prison — 25-to-life for the murder and 25-to-life for using a gun to do it.

Grant also sentenced Shoppe-Rico to an additional seven years for other gang charges in connection with an incident prior to Taylor's killing.

— Claire Booth

## Oakland

## Death on BART track ruled suicide

The death of a Piedmont woman who was run over by a BART train at Oakland's Rockridge station this week was ruled a suicide, police said Wednesday.

Tatyana Bush, 49, a landscape architect who is survived by her mother in New York, died instantly Tuesday when she was struck by a 10-car train traveling at about 38 mph as it entered the station, said BART spokesman Mike Healy.

"Witnesses that were interviewed said she appeared to climb down and wait for the train," Healy said.

The station was closed for two hours while emergency crews worked to remove the woman

# JUROR QUESTIONAIRE

1. DID ANY JURORS
   VIOLATE THE JUDGES INSTRUCTIONS

2. DID ANY JURORS DISCUSS CASE
   WITH ANYONE BEFORE DELIBERATION
   BEGINNING

3. DID ANY JUROR HAVE
   A HEARING, SIGHT OR OTHER
   MEDICAL CONDITION DURING
   TRIAL SERVICE.

4. ARE YOU CERTAIN THAT
   THE FINAL VOTE WAS
   UNANIMOUS



1. GET SOMEONE TO SIT DOWN WITH SHARON CONWAY AND HAVE HER CALL INV. JONES 800 570 1813 OR IF THEY GET ANS MACHINE CALL MY CELL 925 381 6618.

I NEED TO INTERVIEW CONWAY

2. HAVE YOUR MOM MAIL ME LEGAL PAPERS + BOOKS 2063 MAIN # 222 OAKLEY 94561

3. HAVE YOU LAWYER MAIL ME JUROR ADDRESS LIST.

4. FINALIZE YOUR JUROR QUESTIONS LETTER — DISCUSS WITH ATTORNEY I CAN THEN MAIL THEM TO ALL THE JURORS.

5. LET ME KNOW IF YOUR MOM GETS A NEW CELL PHONE

3

# EXHIBIT: I

1.) ACCURATE DIAGRAM OF 180 SHORE Rd. RESIDENCE.
AND LOCATION WERE ILLEGAL SEARCH & SEIZURES
TOOK PLACE.



FENCED.

BACKYARD.

10.) BACKYARD.

9.) STORAGE SHED.
STORAGE STUFF
FROM 1992. LOOTERS.
TOOK OUT IN HOUSE.

3.) BEDROOM.

4.) MASTER BEDROOM.
ROBERT EAGLES
STORAGE

5.) BATHROOM.

6.) LAUNDRY
ROOM.

7.) FENCED IN CARPORT.

6.) KITCHEN.

2.) LIVINGROOM
OLD STORAGED
STUFF FROM
92.

11.) FENCES SIDE YARD.
X  NOTE: THIS IS WERE
THE CLOTHES
WERE FOUND IN
THIS AREA.

NOTE: THESE ARE THE
CLOTHES WERE
LOCATED AN COLLECTED
WITHOUT A WARRANT.

STORAGE
&
GARBAGE

CARPORT
X  THIS IS WERE
X  CASINGS WERE
X  ILLEGALLY COLLECTED WITHOUT WARRANT
FRONT DOOR. (8.)

ONE BY

SIDE WALK.

RESIDENCE OF 180 SHORE RD.

X— MARKS THE SPOTS WERE, EVIDENCE
WERE SIEZZED WITH OUT A WARRANT,
WHEN DETECTIVES BEGAN TO LOOK AROUND
WITHOUT A WARRANT, AREA #11 AND #3,
WERE THE AREA, ONLY PETITIONER OCCUPIED,
DIAGRAM IS ACCURATE OF REPRESENTATION
OF 180 SHORE RD, ANY ONE, LANYER,
INVESTIGATORS, ECT, CAN VERIFY THIS FOR
THE COURT.

1.) KITCHEN. DEPUTY BRIAN FOUND CHIRPED CASING X MARK SPOT.
2.) LIVINGROOM, STORAGE BOXES, BAGS, EVERY WEEK, UNKEMPT.
3.) BEDROOM, R. HAS EMPTY, GLUE EAHHED CAN GRAFFATI, & A BOX.
4. MASTER BEDROOM, ROBERT EAGLES ROOM/STORAGE W/EAGLES INDICIAS.
5.) BATHROOM, EMPTY
6.) LAUNDRY ROOM, STORAGE.
7.) FENCED CARPORT, STORAGE & GARBAGE & WERE CLOTHES W/FOUND
8.) FRONT DOOR, A CASING HAPPEN UPON BY COSTA.
9.) STORAGE SHED, INITIALLY WERE ALL BOXES WERE FROM C11, 92.
10.) BACK YARD, CAR, STORAGE & MOTER HOME.
11.) FENCE SIDE YARD, OUTSIDE LIVING QUARTERS W/ENTERTAINMENT

DIAGRAM OF 180 SHORE RD.
LOCATION OF ILLEGAL SEARCHES.

( PG. 1. )