Pelican Bay State Prison
Schoppe-Rico, J.
C.D.C. # V-11328
P.O. Box # 7500
Crescent City, CA. 95532.
    in pro-per.

REQUESTING A EVIDENTIARY HEARING.

[PROPOSED SECOND AMENDMENT]

**RECEIVED**

JUL 3 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF CALIFORNIA

JOHN H. SCHOPPE-RICO.
        PLANTIFF/PETITIONER.

        VS,

ROBERT A. HOREL. P.B.S.P. WARDEN
        RESPONDENTS.

CASE NO: C-07-5416-MJJ-PR.
                            JSW

" STAY AND ABEYANCE"
    MOTION. AND
"SECOND AMENDED PETITION"

PURSUANT TO: 28 U.S.C. 2254.

• MOTION FOR LEAVE TO AMEND.

TO: THE COURT; RESPONDENTS: PLEASE TAKE NOTICE THAT PETITIONER SCHOPPE-RICO IN PROPIA-PERSONA HEREBY IS MOVING FOR AN "STAY AND ABEYANCE" TO AMEND THE FEDERAL HABEAS CORPUS EXHAUSTED AND UNEXHAUSTED CLAIMS PREVIOUSLY FILED IN THIS MATTER AND TO FILE IN ITS STEAD THE DOCUMENTS PROVIDED HEREWITH AS THE "SECOND PROPOSED AMENDMENT "AND" STAY AND ABEYANCE MOTION". THE MOTION IS BASED ON THE SUPPORTING DOCUMENTS WHICH ARE ATTACHED AND UPON THE FILES AND RECORD OF THIS CASE. A PROPOSED ORDER IS ALSO SUBMITTED.     • BACK GROUND.

PETITIONER MR. SCHOPPE-RICO BRINGS THIS FEDERAL HABEAS CORPUS AFTER CONVICTION BY A JURY OF FIRST DEGREE MURDER. (PENAL CODE 187) DISCHARGING A FIREARM AT AN OCCUPIED VEHICLE (PENAL CODE 246). WITH TWO COUNTS OF CARRYING A LOADED FIREARM BY AN ACTIVE PARTICIPANT IN A STREET GANG. (PEN CODE 12025. (A)(A)(3)).    PETITIONER CONTENDS THE STATUES OF HIS CONSTITUTIONAL AMENDMENTS BOTH FEDERAL AND STATE VALIDITY WERE DENIED AS TO ALL THE COUNTS AND AS TO THE PENAL CODE 187. THERE WAS A FINDING OF INTENTIONAL DISCHARGE OF A FIREARM CAUSING BODILY INJURY OR DEATH. PEN CODE · 12022.53(d).

• AMENDMENT SECOND DECLARATION OF PETITIONER IN SUPPORT OF MOTION FOR "STAY AND ABEYANCE."

I. MR. SCHOPPE-RICO, AM THE PETITIONER IN PROPRIA-PERSONA ........ I AM PERSONALLY FAMILIAR WITH THE FACTS STATED HEREIN, AND I HAVE PERSONALLY REVIEWED THE FILE IN THIS MATTER, AND ON THAT BASIS I DECLARE AS FOLLOWS:

1.) THIS MOTION TO SEEKS TO AMEND FIRST AMENDED PETITION, FILED ON 1ST OF JUNE 2008.

2.) THE PURPOSE OF THE AMENDMENT IS TO RESPECTFULLY REQUEST A "STAY AND ABEYANCE", TO REMOVE DEFECTS EXPOSED BY A MOTION TO DISMISS, AND TO CLEAN UP A HASTILY FILED PETITION WHEN THE ORIGINAL PETITION HAD TO BE FILED IN HASTE IN ORDER TO COMPLY WITH THE (AEDPA)

1

STATUE OF LIMITATIONS A AMENDED PETITION CAN ONCE THE CLOCK HAS BEEN STOPPED BY THE INITIAL FILING ADD OMITTED FACTS, ATTACH OMITTED EXHIBITS AND GENERALLY "CLEAN UP" ERRORS IN THE ORIGINAL PETITION CAUSED BY THE PRESSURE OF TIME. PETITIONER IS NOW MOVING THE COURT TO ALLOW HIM TO GO BACK TO STATE COURT TO EXHAUST CLAIMS FOUR AND EIGHT. CLAIMS FOUR AND EIGHT FEDERAL BASIS COULD BE PRESENTED AGAIN TO THE CALIFORNIA SUPREME COURT. TO RE-PROPERLY EXHAUST THEM. ALSO CLAIMS NINE THROUGH THIRTEENTH AS WELL THE PURPOSE IS TO GIVE THE STATE AGAIN A OPPORTUNITY FOR FULL AND FAIR LITIGATIONS OF THOSE CLAIMS WITH THE NEW ADDED OMITTED FACTS, ATTACHED OMITTED EXHIBITS AND THE NEW GENERALLY "CLEANUP" ERRORS IN THE ORIGINAL PETITION CAUSED BY THE PRESSURE OF TIME. AND PRESENT AND RE-RAISE THE FEDERAL BASIS OF THEM. MR. SCHOPPE-RICO NOW WISHES TO GO BACK TO STATE COURT TO EXHAUST THESE CLAIMS AND THE NEW CLAIM FOURTEEN AND THEN RETURN TO FEDERAL COURT ONCE EXHAUSTION HAS BEEN COMPLETED (NOTE NEW GROUND FOURTEEN IS ATTACHED.)

PETITIONER TAKES ACTION TO HAVE THE FEDERAL HABEAS CORPUS ACTION "STAYED" (FROZEN IN TIME) PENDING THE PETITIONERS RETURN TO STATE COURT. AND STOP AND FREEZE THE (AEPPA) STATUE OF LIMITATIONS ON THE RETURN TO FEDERAL COURT. REQUESTING SUCH A STAY IS CALLED A "STAY AND ABEYANCE". AND THIS REQUEST IS GOVERN AND GRANTED THROUGH SET FORTH IN R HINES V. WEBER. 124. S. Ct. 1529. — KELLY V. SMALL. (9TH CIR. 2003) 315. F.3d 1063 (SEE ALSO OLIVERA V. GIURBINO (9TH CIR. 2004.) 371. F.3d 569. PACE V. DI GUGLIELMO (2005) 544. U.S. 408 [125. S. Ct. 1807; 161. L.Ed. 2d 669.] STATES IF PETITIONER HAD GOOD CAUSE FOR FAILURE TO EXHAUST, HIS UNEXHAUSTED CLAIMS ARE POTENTIALLY MERITORIOUS AND THERE IS NO INDICATION THAT PETITIONER ENGAGED IN INTENTIONALLY LITIGATION TACTICS. FEDERAL COURT MAY GRANT REQUEST FOR "STAY AND ABEYANCE". AND PUT A TIME TOIL ON HIS RETURN TO STATE COURT.

3.) THIS MOTION IS BEING FILED NOW RATHER THAN AT AN EARLIER TIME BECAUSE; HE IS NOW CURRENTLY HOUSED IN ADMINISTRATIVE SEGREGATION. WERE HE HASNT HAD ANY ACCESS TO HIS LEGAL DOCUMENTS, COURT TRANSCRIPTS, WRITS, COURT OPINION ECT, SINCE THE 18TH OF JANUARY OF 2008. HE HAS NO KNOWLEDGE OF THE LAW, EDUCATION OR A HIGH SCHOOL DIPLOMAS. AND HE WAS JUST A VICTIM OF A ATTEMPTED MURDER WORE HE RECEIVED EYE INJURY THAT REQUIRED EYE SURGERY AND HAS BEEN PARTIALLY BLIND HEALING WITH SUTTRA STITCHES IN HIS EYE. THEN (C.D.C.) PELICAN BAY STAFF HAS BEEN REFUSING THE PETITIONER ACCESS TO LAW LIBRARY. HIS LAW BOOKS, MANUALS AND HIS PROPERTY AND THEY HASNT COMPLIED WITH THERE OWN POLICIES, AND PROCEDURES OR IN GRANTING PETITIONER MEANINGFUL ACCESS TO THE COURTS PER LAW (NOTE AUTHORITY CITED IN C.D.C. TITLE 15. SECTION 5058, PENAL CODE REFERENCE; SECTIONS 5054 AND 2601, PENAL CODE.) THIS ALL DELAYING AND PREVENTING MR. SCHOPPE-RICO TO PROPERLY FILE ANYTHING IN RESPONSE ON HIS BEHALF IN A TIMELY MANNER OR FASHION . . . . . . . SECONDLY MR. SCHOPPE-RICO BARELY GOT A FEDERAL HABE CORPUS INFORMATION PACKET FROM THE ATTORNEYS AT THE PRISON LAW OFFICES- GENERAL DELIVERY, IN SANQUENTIN. CA. AND AFTER VIEWING IT. KNOWS NOW ITS PROBABLY BEST TO REQUEST AN "ABEYANCE AND STAY" MOTION IN MY TYPE OF SITUATION AND HEREBY PRAYS THAT THE COURT GRANTS IT.

I DECLARE UNDER PENALTY AND PURSUANT TO THE LAWS OF CALIFORNIA THAT THE FOREGO-ING IS TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

EXECUTED ON 9TH OF JULY 2008, AT    CRESCENT CITY CALIFORNIA.

SEE CLAIM FOURTEEN; THE TRIAL COURTS ORDER IMPOSING THE RESTITUTION FINE. PURSUANT TO PENAL CODE SECTIONS 1202.4. AND PENAL CODE 1202.45, MUST BE STRICKEN BECAUSE THEIR IS INSUFFICIENT EVIDENCE OF DEFEN DANT/PETITIONER ABILITY TO PAY IT.

<u>POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR "STAY AND ABEYANCE" TO AMEND.</u>

IN RE: <u>RHINES V. WEBER</u> (U.S. 2005) 125 S. Ct. 1528, 544 U.S. 269, HELD: A DISTRICT COURT HAS DISCRETION TO STAY A MIXED PETITION TO ALLOW A PRISONER TO PRESENT HIS UNEXHAUSTED CLAIMS TO THE STATE COURT IN THE FIRST INSTANCE AND THEN TO RETURN TO FEDERAL COURT FOR REVIEW OF HIS PERFECTED PETITION. Pp. 1532-1534,

(B) FOURTEEN YEARS BEFORE CONGRESS ENACTED (AEDPA) THIS COURT HELD THAT FEDERAL DISTRICT COURTS MAY NOT ADJUDICATE MIXED PETITIONS BUT MUST GIVE STATE COURTS THE FIRST OPPORT- UNITY TO DECIDE A PETITIONERS CLAIMS. IMPOSED A "TOTAL EXHAUSTION" REQUIREMENT AND DIRECTED FEDERAL COURTS TO EFFECTUATE THAT REQUIREMENT BY DISMISSING MIXED PETITIONS WITHOUT PREJUDICE AND ALLOWING PETITIONERS TO RETURN TO STATE COURT. <u>ROSE V. LUNDY</u>. 455 U.S. 509, 518-519, 102 S. Ct. 1198, 71 L.ed. 2d 379. EVEN HELD A PETITIONER WHO FILES [544. U.S. 270] EARLY CANNOT CONTROL WHEN A DISTRICT COURT WILL RESOLVE THE EXHAUSTION QUESTION. THE GRAVITY AND DIFFICULTY OF THIS PROBLEM HAS LED SOME DISTRICT COURTS TO ADOPT THE "STAY AND ABEYANCE" PROCEDURE AT ISSUE. Pp. 1532-1534. . . . . . . . .

IN <u>RHINES V. WEBER</u> SUPRA. STATED ITS LIKELY WOULD BE AN ABUSE OF DISCRETION FOR A DISTRICT COURT TO DENY A STAY AND DISMISS A MIXED PETITION IF THE PETITIONER HAD GOOD CAUSE FOR HIS FAILURE TO EXHAUST HIS UNEXHAUSTED CLAIMS ARE POTENTIALLY MERITORIOUS AND THERE IS NO INDICATION THAT HE ENGAGED IN INTENTIONALLY DILATORY LITIGATION TACTICS, SUCH A PETITIONERS INTEREST IN OBTAINING FEDERAL REVIEW OF HIS CLAIM OUT WEIGHS THE COMPETING INTERESTS IN FINALTY . . . . . .

WHEN THE COURT DECIDED ROSE V. LUNDY. ID. AT 522, 102 S. Ct. 1198, THERE WERE NO STATUE OF LIMITATION: ON THE FILING OF FEDERAL HABEAS CORPUS PETITIONS. AS A RESULT PETITIONERS WHO RETURNED TO STATE COURT TO EXHAUST THEIR PREVIOUSLY UNEXHAUSTED CLAIMS COULD COME BACK TO FEDERAL COURTS TO PRESENT THEIR PERFECTED PETITIONS WITH RELATIVE "EASE". SEE. <u>SLACK V. McDANIEL</u> 529 U.S. 473. 486. " DISMISSAL WITHOUT PREJUDICE UNDER LUNDY "CONTEMPLATED THAT THE PRISONER COULD RETURN TO FEDERAL COURT AFTER THE REQUISITE EXHAUSTION : ALTHOUGH THE LIMITATIONS PERIOD IS TOLLED UNDER THE AEDPA. DURING THE PENDENCY OF A PROPER FILED APPLICATION FOR STATE POST CONVICTION OR OTHER COLLATERAL REVIEW. & 2244 (d)(2) THE FILING OF A PETITION FOR HABEAS CORPUS IN FEDERAL COURT DOES NOT TOLL THE STATUE OF LIMITATION'S. <u>DUNCAN SUPRA</u>. AT 181-182, 121. S. Ct. 2120 . . . . . . .
HOWEVER <u>RHINES SUPRA</u>. AT 544. U.S. 276. RECOGNIZED THE GRAVITY OF THIS PROBLEM AND THE DIFFICULTY IT HAS POSED FOR PETITIONERS AND FEDERAL DISTRICT COURTS ALIKE HAVE SOLVE THE LUNDY ISSUE UNDER THE RHINES SUPRA. HOLDING A DISTRICT COURT MAY STAY THE PETITION AS MR. SCHOPPE-RICOS AND HOLD IT IN ABEYANCE WHILE MR. SCHOPPE-RICO RETURNS TO STATE COURT TO EXHAUST HIS PREVIOUSLY UNEXHAUSTED CLAIMS: ONCE MR. SCHOPPE-RICO EXHAUSTS HIS STATE REMEDIES THE DISTRICT COURT CAN LIFT THE STAY AND ALLOW THE PETITIONER TO PROCEED IN FEDERAL COURT.
DISTRICT COURTS DO ORDINARILY HAVE AUTHORITY TO ISSUE STAYS. SEE : <u>LANDIS V. NORTH AMERICA CO</u>, U.S. 248, 254. 57. S. Ct. 163, 81 L.ed. 153 (1936) WHERE SUCH A STAY WOULD BE A PROPER EXERCISE OF DISCRETION. SEE. <u>CLINTON V. JONES</u>. 520 U.S. 681, 706, 117. S. Ct. 1636, 137 L.ed. 2d. 445 (1997) (AEDPA) DOES NOT DEPRIVE DISTRICT COURTS OF THAT AUTHORITY. Cf. 28. U.S.C. & 2254 (b)(1)(A)
ALSO RHINES HAS HELD DISTRICTS COURT SHOULD PLACE REASONABLE TIME LIMITS ON A PETITIONERS TRIP TO STATE COURT AND BACK (SEE E.G. <u>ZARVELA</u>. 254. F.3d. AT 381 [DISTRICT COURTS] SHOULD EXPLICITLY CONDITION THE STAY ON THE PRISONERS PURSUING STATE COURT REMEDIES WITHIN A BRIEF INTERVAL. NORMALLY 30 DAYS. AFTER STATE COURT EXHAUSTION IS COMPLETED") AND IF A PETITIONER ON THE OTHER HAND. IT LIKELY WOULD BE AN ABUSE OF DISCRETION FOR A DISTRICT COURT TO DENY A STAY AND TO DISMISS A MIXED PETITION UPON GOOD CAUSE FOR HIS FAILURE TO EXHAUST.

PURSUANT TO THE POLICY IN RULE (15), OF EXTREME LIBERALITY" IN ALLOWING AMENDMENTS. THE COURT SHOULD GRANT LEAVE TO AMEND SECOND AMENDED PETITION FOR "STAY AND ABEYANCE.

AFTER THE OPPOSING PARTY HAS ANSWERED, RULE. 15, OF THE FEDERAL RULES OF CIVIL PROCEDURE (FRCP) PLACES LEAVE TO AMEND WITHIN THE SOUND DISCRETION OF THE TRIAL COURT. SEE. E.G. UNITED. STATES V. WEBB, 655. F.2d. 977. 979. (9th CIR. 1981) HOWEVER IN EXERCISING THAT DISCRETION," A COURT MUST BE GUIDED BY THE UNDERLYING PURPOSE OF RULE: 15 ... [WHICH IS] ... TO FACILITATE DECISION ON THE MERITS .... "IBID"., CITING. CONLEY V. GIBSON, 355. U.S. 41. 47. 48 (1957). ACCORDINGLY, RULE. 15'S POLICY OF FAVORING AMENDMENTS TO PLEADINGS SHOULD BE APPLIED WITH "EXTREME LIBERALITY", WEBB. SUPRA. AT 979. CITING. ROSENBURG BROTHERS & CO. V. ARNOLD., 283. F.2d. 406. (9th CIR. 1960). SEE ALSO OWENS V. KAISER-FOUND. HEALTH PLAN, INC. 244. F.3d. 708. 712. (9th CIR. 2001). LEAVE TO AMEND TO BE "FREELY GIVEN WHEN JUSTICE SO REQUIRES".. AND POLICY FAVORING AMENDMENT. "TO BE APPLIED WITH EXTREME LIBERALITY"].

IN FORMAN V. DAVIS, 371. U.S. 178. 182. (1962) THE UNITED STATES SUPREME COURT IDENTIF-IED THE FOLLOWING FACTORS THAT A DISTRICT COURT SHOULD CONSIDER IN DECIDING WHETHER TO GRANT A STAY AND ABEYANCE. OR LEAVE TO AMEND ........ IN THE ABSENCE OF ANY APPARENT OR DECLARED REASON — ' SUCH AS UNDUE DELAY, BAD FAITH, OR DILATORY MOTIVE ON THE PART OF THE MOVANT. REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED, UNDUE PREJUDICE TO THE OPPOSING PARTY BY VIRTUE OF ALLOWANCE OF THE AMENDMENT, FUTILITY OF AMENDMENT, ETC. — THE LEAVE SOUGHT. SHOULD AS THE RULES REQUIRE. BE "FREELY GIVEN".

[PROPOSED] ORDER GRANTING MOTION FOR "STAY AND ABEYANCE". TO AMEND.

THE COURT HAS CONSIDERED PETITIONERS MOTION FOR LEAVE TO AMEND AND SUPPORTING DOCUMENTS

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED, THAT PETITIONER'S MOTION TO AMEND AND "STAY AND ABEYANCE. TO BE GRANTED.

THE CLERK IS ORDERED TO FILE THE PROPOSED AMENDMENT AND MOTION TO STAY AND ABEYANCE.

DATED _____                    _____

                                          U.S. DISTRICT JUDGE.

(NOTE.) SCHOPPE-RICO/PETITIONER WISHES PERMISSION TO RETURN TO STATE COURT AND BE ABLE TO RETURN TO FEDERAL COURT WITH THE NOW UNEXHAUSTED CLAIMS EXHAUSTED (2) OR FOR THE COURT TO ALLOW ALL. THESE CLAIMS TO PROCEED ON AND BE HEARD ON ALL FOURTEEN OF THEM. AS SHOULD BE ALLOWED. AND (3). IF COURTS RULES IT'S ONLY WILLING TO HEAR CERTAIN ONES. AND WISHES TO PROCEED ON THE CERTAIN ONES. I GUESS PETITIONER HAS NO CHOICE. THEN TO PROCEED. BUT HE PRAYS NO CLAIMS ARE DROPT.

GROUND FOURTEEN

THE TRIAL COURTS ORDER IMPOSING THE RESTITUTION FINE. PURSUANT TO PENAL
CODES § 1202.4.   AND § 1202.45. MUST BE STRICKEN BECAUSE THEIR IS INSUFFICIENT
EVIDENCE OF DEFENDANTS /PETITIONERS ABILITY TO PAY IT.

DEFENDANT CONTENDS THE ISSUE OF WHAT CONSIDERATION MUST BE GIVEN A
CRIMINAL DEFENDANT /PETITIONER' ABILITY TO PAY BEFORE THE IMPOSITION OF A PENAL
CODE SECTION 1202.4.    AND 1202.45. (3) RESTITUTION FINE HAS BEEN
PRESENTED BEFORE THE HIGHEST COURT OF THE STATE. IN AT LEASE SIX CASES.

PEOPLE. V. JOHNSON  (APP. 4TH DIST. 2003). 7. CAL. RPTR. 3d. 442. 114.

PEOPLE V. MARICHALAR. (APP. 3. DIST. 2003.) 53. CAL. RPTR. 3d. 61. 144.

PEOPLE V. OGANESYAN. (APP. 2. DIST. 1999.) 83. CAL. RPTR. 2d. 157. 70.

PEOPLE V.  ROWLAND (APP. 1ST DIST. 1997.) 60. CAL. RPTR. 2d. 132. 30.

PEOPLE V. HARVEST. (APP. 1ST DIST. 2000.) 201. CAL. RPTR. 2d. 135.64.

PEOPLE V.  ROMERO. (APP. 3 DIST. 1996.) 51. CAL. RPTR. 2d. 26.

OBVIOUSLY THESE ISSUES HAVE ULTIMATELY BEEN RESOLVED. BY THE SUPREME.
COURT. IN  PEOPLE.V. WILSON ( CAL. APP. 1 DIST. 1999.) SUPRA AT 537. 26. CAL. RPTR.
2d. 537. WHERE IT HAS BEEN CLEARLY ESTABLISHED THAT "  " SENTENCING. COURT
MUST CONSIDER. DEFENDANTS ABILITY TO PAY WHEN IT IMPOSES RESTITION FINE ",
PEOPLE V. WILSON SUPRA. WEST ANNOTATED CAL. PENAL CODE.  1202.4. 1202.4(8)
WEST  ANNOTATED CAL. GOV. CODE.  13960 (3).

PEOPLE V. ROMERO. SUPRA. AT 26. TRIAL COURT MUST BE REQUIRED TO FIND ABILITY
OF DEFENDANTS TO PAY RESTITUTION FINE. BEARING ON AMOUNT OF FINE.
IN THE  INTERIM HOWEVER THIS  HONORABLE COURT HAS A DUTY TO ADDRESS THE MERITS.
AND TO DECIDE THESE ISSUES AS BEST. AS IT CAN WITHOUT EVIDENCE FROM ON HIGH.

• A. THE ISSUE HAS NOT BEEN WAIVED.

THIS ISSUE HAS NOT BEEN WAIVED BY ANY PERCEIVED FAILURE BY DEFENDANT/PETITIONER.
TO OBJECT. TO THESE ISSUES AT THE TIME OF THE IMPOSITION OF THE FINE. AND SENTENCE
PEOPLE V. LE. (APP 6TH DIST. 2006.) 39. CAL. RPTR. 3d. 146. 136. CAL. APP. 4TH 425.) . . . . . .
IT IS THIS PETITIONERS CONTENTION AND BELIEF. THINKING LOGICALLY THAT; A NUMBER.
OF THESE CASES HAVE RECENTLY BEEN REMANDED TO THE VARIOUS DISTRICTS AND
DIVISIONS OF THE COURT OF APPEALS. HOWEVER THIS IS PETITIONER IS AWARE THAT
IT IS  NECESSARY FOR A CRIMINAL DEFENDANT TO OBJECT TO DISCRETIONARY SENTENCIN
G - EFFORTS IN THE TRIAL COURTS IN ORDER TO PRESERVE THESE TYPE OF ISSUES ON APPEAL.

B.    THE TRIAL COURT ERRED.

THE ISSUE IN THIS CASE IS CREATED BY AN APPARENT DISPUTE BETWEEN TWO STATUES.
THE FIRST STATUE SEEMS TO REQUIRE THAT THE SENTENCING COURTS CONSIDER'S
DEFENDANT ABILITY TO PAY IN SETTING THE AMOUNT OF THE FINE AS AMENDED IN 2004. C
(S.B. 631.), .... SEE. PEOPLE V. JENKINS. (APP. 2. DIST. 2006.) 44. CAL. RPTR. 3d. 788.
A PAROLE REVOCATION FINE MAY NOT BE IMPOSED FOR A TERM OF LIFE IN PRISON WITHOUT THE
POSSIBILITY OF PAROLE. PENAL CODE SECTION 1202.45. READS IN PERTINENT PART.
"(1)    IN EVERY CASE WHERE A PERSON IS CONVICTED OF A CRIME THE RESTITUTION FINE SHALL
BE SET AT THE DISCRETION OF THE COURT AND COMMENSURATE WITH THE SERIOUSNESS
OF THE OFFENSE BUT SHALL NOT BE LESS THAN TWO HUNDRED DOLLARS. ($200.") AND NOT
MORE THAN TEN THOUSAND DOLLARS. ($10.000.) IF THE PERSON IS CONVICTED OF A FELONY
AND SHALL NOT BE LESS THAN ONE HUNDRED DOLLARS. ($100.) AND NOT MORE THAN ONE THOUSAND
$1.000. IF THE PERSON IS CONVICTED OF A MISDEMEANOR." ...
PENAL CODE 1202.45. REFERS US TO PENAL CODE. 1202.4. WHICH READS AS ABOVE
IN PERTINENT PART. THE SECOND STATUE, ON THE OTHER HAND SEEMS TO REQUIRE THE
SENTENCING COURT IGNORE THE DEFENDANTS ABILITY TO PAY WHEN IT IMPOSES A RESTITUTION
FINE PURSUANT TO PENAL CODE. SECTION 1202.4. PROVIDES: READS AS FOLLOWS:)
"(d)" IN SETTING THE AMOUNT OF THE FINE PURSUANT TO SUBDIVISION (b) IN EXCESS OF THE
TWO HUNDRED DOLLAR ($200) OR ONE HUNDRED DOLLAR ($100) MINIMUM. THE COURT
SHALL CONSIDER ANY RELEVANT FACTORS INCLUDING BUT NOT LIMITED TO THE DEFENDANTS
INABILITY TO PAY. THE SERIOUSNESS AND GRAVITY OF THE OFFENSE AND THE CIRCUMSTANCES
OF ITS COMMISSION. ANY ECONOMIC GAIN DERIVED BY THE DEFENDANT AS A RESULT OF
THE CRIME, THE EXTENT TO WHICH OTHER ANY PERSONS SUFFERED ANY LOSSES AS A RESULT OF
CRIME THE EXTENT TO WHICH ANY OTHER PERSON SUFFERED ANY LOSSES AND THE NUMBER OF
VICTIMS INVOLVED IN THE CRIME. THOSE LOSSES MAY INCLUDE PECUNIARY LOSS TO THE
VICTIM OR HIS OR HER DEPENDENTS AS WELL AS INTANGIBLE LOSSES. SUCH AS PSYCHOLOGICAL
HARM CAUSED BY THE CRIME. CONSIDERATION OF DEFENDANTS INABILITY TO PAY MAY INCLUDE
HIS OR HER FUTURE EARNING CAPACITY. A DEFENDANT INABILITY TO PAY MAY INCLUDE HIS
OR HER FUTURE EARNING CAPACITY. A DEFENDANT SHALL BEAR THE BURDEN OF DEMONSTRATING
HIS OR HER INABILITY TO PAY. EXPRESS FINDINGS BY THE COURT AS TO THE FACTORS BEARING
ON THE AMOUNT OF THE FINE SHALL NOT BE REQUIRED. A SEPERATE HEARING FOR THE FINE
SHALL NOT BE REQUIRED. "
THE RELEVANT CASE LAW HEREIN TO PENAL CODES SECTION § 1202.45 AND § 1202.
4. HELD THAT A FINE WAS TO BE IMPOSED REGARDLESS OF THE DEFENDANTS ABILITY TO PAY
PEOPLE V. HARVEST (APP. 1. DIST.) 2000.) 101. CAL. RPTR. 2d. 135. PEOPLE V. KUNITZ (APP. 3 DIST.
2004.) 18. CAL. RPTR. 3d. 893. IN RE DINA. V. (APP. 1 DIST 2007.) 59. CAL. RPTR. 3d 1862.
151. CAL. APP. 4TH 486. *PEOPLE V. WALKER (1991) 54. CAL. 3d. 1013. 1019." ⌐
HOWEVER THIS CASE LAW WAS APPARENTLY ABROGATED BY THE LEGISLATIVE AMENDMENT
WHICH ADDED THE ABOVE LANGUAGE REGARDING THE DEFENDANTS ABILITY TO PAY. THE
COURT SHALL IMPOSE A SEPERATE AND ADDITIONAL RESTITUTION FINE OF NOT LESS THAN $200.00
SUBJECT TO THE DEFENDANTS ABILITY TO PAY. [STATUTES IN 2004. C. S.B. 631.] WEST CALIF-
ORNIA LEGISLATIVE SERVICE S.B. 631.) THE 2004 THROUGH 2007. COURT OF APPEALS DECISIONS

WHICH REMAINS PUBLISHED AS OF THIS DATE HAS ATTEMPTED TO HARMONIZE THE APPARENT STATUTORY CONTRADICTIONS; BY HOLDING THAT THE TRIAL COURT MAY IMPOSE THE MINIMUM. ($200.00) FINE WITHOUT A DETERMINATION OF THE DEFENDANTS ABILITY TO PAY BUT THAT ANY GREATER FINE (i.e. $201.00 TO $10,000.00). REQUIRES AN ASSESSMENT BY THE TRIAL COURT OF THE DEFENDANTS ABILITY TO PAY IT, AN ASSESSMENT WHICH MUST BE SUPPORTED BY SUBSTANTIAL EVIDENCE. DE NOVO. PEOPLE V. FRYE (1994) 21. CAL. APP-Hth .1483. — IN RE. ENRIQUE. Z. (APP. 5. DIST 1994.) 36. CAL. RPTR. 2d. 132.

THIS INTERPRETATION HOWEVER APPEARS TO BE PARTIALLY CORRECT. BECAUSE IT FAILS TO ACCOUNT FOR THE LANGUAGE IN THE OTHER SECTIONS OF PENAL CODE 1202.4. THAT THE COURT MAY WAIVE THE IMPOSITION OF THE FINE FOR "COMPELLING AND EXTRAORDINARY REASONS". AND THE REFERENCE TO PENAL CODE SECTION 1202.4 (b) IN PENAL CODE SECTION 1202.45. REFERS US TO THE PENAL CODE SECTION 1202.4 (b) IN SETTING A FINE. THE INTERPRETATION AS NOW IS BEING DEMONSTRATED MORE FAVORABLE TO THE PETITIONER IS POSSIBLE. AND THE INTERPRETATIONS IN "FRYE. SUPRA." AND "IN RE ENRIQUE.Z. SUPRA". HOWEVER IT ALSO IGNORES THE PRINCIPLE THAT: IN CONSTRUING A CRIMINAL STATUE. A DEFENDANT MUST BE GIVEN THE BENEFIT OF EVERY REASONABLE DOUBT AS TO WHETHER THE STATUE WAS APPLICABLE TO HIM."

PEOPLE V. CAUDILLO. (1978) 21 CAL. 3d. 562. — PEOPLE V. SAINT-AMANS (APP 1st DIST. 2005.) 32. CAL. RPTR. 3d. 518, PEOPLE VS. BRYANT (1992) 10 CAL. APP. 4th 1584. 1599.

IN EXAMINING THE PURPOSE OF THE STATUE IN THIS CASE. IT IS IMPORTANT TO NOTE THAT PENAL CODE SECTION 1202.45. AND CALIFORNIA PENAL CODE SECTION 1202.4. WERE. BOTH ENACTED RESPONSES TO A "CONSTITUTIONAL" AMENDMENT BOTH STATE AND FEDERAL. ADAPTED BY VOTERS AS PART OF PROPOSITION 8, [SEE -2004. c. S.B. 631.] THE AMENDMENT REQUIRED THE LEGISLATURE TO ENSURE THAT "RESTITUTION SHALL BE ORDERED FROM THE CONVICTED PERSONS IN EVERY CASE IN WHICH A CRIME VICTIM SUFFERS A LOSS." UNLESS COMPELLING AND EXTRAORDINARY REASONS EXIST TO THE CONTRARY HOWEVER. THE CONSTITUTIONAL AMENDMENT FEDERAL AND STATE. DIDN'T FULLY APPLY WHEN THE COURT ORDERED A RESTITUTION FINE OF $2,545.00 (FUNERAL) EXPENSE CLAIM # 628809, AND $3.750.00 (MENTAL HEALTH) CLAIM # 628812. THE COURT NEVER SPECIFY WHETHER THE DEFENDANTS ABILITY TO PAY. COULD BE CONSIDERED IN SETTING THE AMOUNT OF RESTITUTION. NOR THERE WAS NO DUE PROCESS OF LAW HEARING HELD OR EVEN EVIDENCE SUCH AS RECEIPTS ECT. PRESENTED TO DETERMINE A RESTITUTION AMOUNT FINE OF $6.295.00. THERE WERE NO EVIDENCE VICTIM RECEIVED MENTAL HEALTH TREATMENT OR IF ANY PROGRAM OF VICTIMS PAYED FUNERAL EXPENSES. TO CHARGE PETITIONER FOR. WITH ALL THE ABOVE IN MIND THE COUNSELS FAILURE ON APPEAL TO CHALLENGE THIS FINE IS SEVER. THIS HONORABLE COURT IS URGED TO CONCLUDE THAT THE 2004. AMENDED. (2004. c. S.B. 631.) TO PENAL CODE. 1202.4 (d) WAS INTENDED TO AND DID. BRING THE DEFENDANTS ABILITY TO PAY INTO THE RESTITUTION EQUATION. IN EFFECT. THE STATUE AN AMENDMENT CREATES A

7

However in at lease a couple of cases. e.g.... PEOPLE V. SCOTT. (citation omitted). IN RE: I.M. (APP. 1. DIST. 2005) 23 CAL. Rptr. 3d. 375, the court was quite clear that this new waiver requirement would be applied prospectively only.

Therefore even assuming that the "erroneous" imposition of a restitution fine constitutes discretionary error, the failure to challenge said fine in this case does not bar raising this issue on this matter.

Furthermore: it is clear that unauthorized or illegal sentence errors are not subject to waiver: and are correctable whenever they are discovered: PEOPLE. V. SAINT-AMANS. (APP. 1. DIST. 2005) 32. CAL. Rptr. 3d. 518, statute is reviewed de novo.... Now in PEOPLE V. SERRATO (1973) 9 CAL 3d. 753:763, the appellate court held that:

" Sentencing errors which go to the jurisdiction of the court. CAN BE RAISED AT ANY TIME. Even though no objections were interposed in the trial court. PEOPLE V. NEAL (1993) 19. CAL. APP. 4th. 1114. 1126.),

The imposition of an authorized Penal Code Section 1202.45. Fine constitutes an authorized sentence and jurisdiction error. It is therefore reviewable despite the absence of an objection below.

In re SHEENA. K. (2007) 55. CAL. Rptr. 3d. 716. A sentence is an "unauthorized sentence" if it cannot lawfully be imposed under any circumstance, in the particular case and therefore is reviewable regardless of whether an objection or argument was raised in the trial court. PEOPLE V. ANDRADE. (APP. 1 DIST. 2002) 121. CAL. Rptr. 2d 923. .... SEE. PEOPLE V. JENKINS. (APP. 2. DIST 2006) 44 CAL Rptr. 3d. 788. A parole revocation fine may not be imposed for a term of life in prison without the possibility of parole [1] In Mr. SCHOPPE-case of petitioners is therefore the court should consider, he has 57 to life sentence. A life sentence of 57-years. About time he is eligible for parole he will be (76) years old. At this age. Living in prison poverty. It's impossible when he gets out he'll be able to pay this fine [2].

The court of appeals held in these cases that even though the defendant did not raise this issue below. He would be allowed to raise them. Successfully as it turned out on appeal. The court likened to the order imposing the fine to an authorize sentence which was reviewable at any time. Discovered under the principles announced in SERRATO SUPRA, and in PEOPLE. V. ROWLAND. (APP. 1st DIST. 1997) 60 CAL. Rptr. 2d. 231.__ PEOPLE V. SAINT-AMAS. SUPRA. and similar cases herein mentioned. Therefore petitioner may raise this issue in this instant case despite his counselors failure to raise it on appeal and in the trial courts. In re: PEOPLE V. LE. SUPRA. (APP DIST. 6. 2006.) 136 CAL. APP 4th 925.

A PRESUMPTION THAT THE MINIMUM RESTITUTION FINE WILL BE ($200.00)" SUBJECT TO THE DEFENDANTS ABILITY TO PAY ".... IN OTHER WORDS: THE MINIMUM FINE WILL BE AT LEASE ($200.00) OR ($100.00) UNLESS THE COURT HAS NO EVIDENCE BEFORE IT THAT THE DEFENDANT HAS THE ABILITY TO PAY EVEN THAT SMALL AMOUNT. IN WHICH EVENT THE COURT SHOULD NOT IMPOSE A RESTITUTION FINE EVEN THE ($200.00) TWO HUNDRED." BUT RATHER SOMETHING ELSE LESS PENAL CODE SECTION UNDER SECTION 1202.4. IS NOT INCONSISTENT WITH THE ABOVE INTERPRETATION OF THE GOVERMENT CODES SECTION AND PENAL CODES. UNDER SECTION 1202.4. THE COURT IS COMPELLED TO IMPOSE " A RESTITUTION FINE REGARDLESS OF THE DEFENDANTS ABILITY TO PAY. HOW-EVER A COURT MAY FOREGO IMPOSING ANY RESTITUTION FINE IF THERE ARE COMPELLING AND EXTRAORDINARY REASONS FOR DOING SO. IN OTHER WORDS , THE COURT MUST IMPOSE SOME RESTITUTION FINE, EVEN IF THE DEFENDANT DOES NOT HAVE THE ABILITY TO PAY THE ($200.00) MINIMUM, HOWEVER THE COURT MAY FOREGO IMPOSING ANY FINE ONLY IF IT FINDS THAT THERE ARE COMPELLING AND EXTRAORDINARY REASONS. " (OTHER THAN THE DEFENDANTS IMPECUNIOSITY). WHICH JUSTIFIES THE DECISION. IN THE INSTANT CASE .... THE TRIAL COURT IMPOSES A $6,295.00 ( SIX THOUSAND TWO HUNDRED NINTY FIVE. DOLLAR FINE.) BASED ON THE ERRONEOUS ASSUMPTION THAT THIS PETITIONER COULD PAY THE FINE OUT OF HIS EARNINGS WHILE INCARCERATED IN THE STATE PRISON. THE RATES OF PAY FOR WORK PERFORMED BY PRISON INMATES ARE SET IN THE" CALIFORNIA. DEPARTMENT OF CORRECTIONS OPERATIONS MANUEL SECTION 51120.7," THOSE RATES RANGE. FROM $12.00 PER MONTH TO $56.00. DOLLARS PER MONTH. MORE /OR LESS AND ARE SUBJECT TO A STATUTORY MAXIMUM OF ONE HALF THE MINIMUM OF ONE HALF THE MINIMUM WAGE . ( PENAL CODE 2811.) SECTION. FURTHERMORE NOT ALL INSTITUTIONS STRICTLY FOLLOW. O.O.M.#. 51120.7. SOME INSTITUTIONS MAKE "FEW "OR "NO" PAY NUMBERS AVAILABLE TO A MAJORITY OF THE INMATES POPULATION. PENAL CODE SECTION 2085.5 DIRECTS THE DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS TO DEDUCT A REASONABLE AMOUNT NOT TO EXCEED. 55% FROM THE PRISONERS WAGES FOR CREDIT AGAINST THE PRISONERS RESTITUTION FINE. UNDER CURRENT REGULATIONS THE AMOUNT DEDUCTED BY THE DIRECTOR FOR THIS PURPOSE IS 55% (FIFTY FIVE PERCENT). [ CALIFORNIA CODE OF REGULATIONS TITLE 15. SECTION 3097.] THUS EVEN ASSUMING THAT A PRISONER COULD EARN THE RATE OF $34.00 PER MONTH FOR WORK PERFORMED IN STATE PRISON IF EVEN EVER ASSIGNED A JOB ASSIGNMENT WERE IN PRISONS SUCH AS PELICAN BAY STATE PRISON HARDLY MAKE ANY PAY NUMBERS AVAILABLE TO AT LEASE (1%) ONE PERCENT OF IT'S FIVE THOUSAND APPROXIMATELY PRISON POPULATION SHU OR ADM. SEG INMATES RECEIVE NO JOBS. AND ONLY A FEW (G.P.) GENERAL POPULATION DOES IF QUALIFIED AFTER A COUPLE YEARS. HOWEVER THE AMOUNT DEDUCTED FOR CREDIT AGAINST HIS RESTITUTION FINE WILL BE ($18.00) PER MONTH . IF HE SERVED THE MINIMUM TIME FOR EXAMPLE (16) YEARS. (8) MONTHS ON A 25. YEAR TO LIFE SENTENCE BEFORE BEING PAROLED. THE RESTITUTION FINE WILL NOT EXCEED ($3500.00) THUS IT IS ABSOLUTELY IMPOSSIBLE FOR A PRISONER TO PAY THE FINE OUT OF HIS WAGES, ESPECIALLY AT A PRISON LIKE PELICAN BAY STATE PRISON THAT'S LOCKED DOWN 27.5 days OUT THE YEAR .

MOREOVER THE COURT COULD NOT HAVE JUSTIFIABLY ALBEIT TACTICALLY ASSUMED THAT A PRISONER WOULD BE ABLE TO PAY A FINE FROM EARNINGS FROM AFTER HIS RELEASE......THE PROBATION REPORT IN THIS CASE INDICATES THAT PETITIONER ONLY WORKED OCCASIONALLY, HAS NO ASSETS, STOCKS, OR BONDS, PROPERTIES. ECT. IT IS EXCEEDINGLY DOUBTFUL WHETHER THIS PETITIONER WILL BE ABLE TO PAY EARN MUCH. AFTER BEING AWAY FROM THE TRADE SO LONG, ALSO BEING AN EX-CON ON PAROLE, WOULD NOT BE CONDUCIVE TO BE STEADILY EMPLOYED AFTER HE IS EVENTUALLY RELEASED FROM PRISON. IF EVER WITH A LIFE SENTENCE OF 5T TO LIFE. PETITIONER WOULD ACTUALLY (76.) YEARS OLD WHEN ELIGIBLE FOR PAROLE, ALSO NO EVIDENCE WERE EVER PRESENTED OR SHOWN OF ANY VICTUM FURNEAL EXPENSES OR MENTAL HEALTH TREATMENT EXPENSES.

FOR THESE REASONS THE ( $ 6,295.⁰⁰ ) DOLLARS FINE ASPECT OF THE SENTENCE CAN NOT STAND.

### C. THE APPROPRIATE REMEDY IS TO REDUCE THE AMOUNT OF THE FINE TO $200.⁰⁰

THE REMAINING QUESTION IS THE APPROPRIATE REMEDY. IT IS CERTAINLY POSSIBLE TO ENVISION CASES IN WHICH IT MIGHT BE APPROPRIATE TO REMAND FOR THE TRIAL COURT TO DETERMINE, RE-DETER-MINE THE DEFENDANTS ABILITY TO PAY ISSUE AND IMPOSE A RESTITUTION FINE CONSISTED WITH THAT DETERMINATION..... IN THIS CASE HOWEVER THE ONLY LIKELY SOURCE OF INCOME APPARENT ON THE RECORD FROM WHICH PETITIONER COULD PAY ANY FINE WOULD BE IMPOSSIBLE WITH HIS POSSIBLE FUTURE WAGES FROM MISCELLANEOUS ASSIGNMENTS AND LABOR IN THE FUTURE, WHILE INCARCERATED AT THE STATE PRISON, THAT WILL RESPECT AND FOLLOW THE LAWS AS STIPULATED IN THE D.O.M. AND THE CALIFORNIA PENAL CODE AND THAT WILL PROVIDE PAY NUMBERS FOR EACH AND EVERY PRISONER THAT HAS TO PAY RESTITUTION FINE IT IS ENTIRELY SPECULATIVE HOW MUCH INCOME THAT WOULD BE. "REMANDING" IN A CASE LIKE THIS COULD EASILY RESULT IN THE "ANOMALY OF RESTITUTION FINES COSTING MORE MONEY THAT THEY GENERATE AND CAUSING MORE THAN BENEFIT TO THE VICTUMS. PEOPLE V. JOHNSON (APP. 4 DIST) (2003). 7. CAL. RPTR. 3d. 492. PEOPLE V. WALKER (1991) CAL. 3d 1013. 1029, PEOPLE V. ROMERO..- APP 3.DIST. 1996.) 51. CAL.RPTR. 2d. 26. HOWEVER UNDER STATUTORY ANALYSIS THE TRIAL COURT IS REQUIRED TO IMPOSE SOME FINE.. THE ONLY ANSWER WOULD THEREFORE APPEAR TO BE A REDUCTION IN THE FINE TO A NOMINAL $200.⁰⁰ AND A MODIFICATION OF THE JUDGEMENT ACCORDINGLY PENAL CODE SECTION § 1260.

### CONCLUSION

FOR THE REASONS STATED ABOVE. THE SENTENCE SHOULD BE MODIFIED BY STRIKING THE RESTITUTION FINE AND BY REDUCING SAID FINE TO $200.⁰⁰. I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

DATED. 7-3-08

JOHN MOSES SCHEPPE-RICO
IN PRO-PER

## STATEMENT OF CASE.

PETITIONER WAS HELD ON A COMPLAINT FILED OCTOBER. 19, 2000, FIRST AMENDED COMPLAINT WAS FILED ON NOVEMBER 2, ND 2000. TRANSCRIPTS OF PRELIMINARY HEARING PAGES (1 - 2). SCHOPPE-RICO WAS CHARGED BY AN INFORMATION FILED SEPTEMBER. 26, 2001. (CT. 461)²/ THERE WAS A SECTION PENAL CODE 995 MOTION NOTICE FILED TO DISMISS THE INFORMATION FILED, IT WAS PREJUDICIALLY DENIED THEN THERE WAS A SECTION 1368. REFERRAL FOR A COMPETENCY EVALUATION ON MAY 16, 2002. (CT.730) PETITIONER WAS FOUND SUFFERING FROM DEPRESSION AND CRIMINAL PROCEEDINGS WERE REINSTATED ON SEPTEMBER, 16, 2002. (CT. 741).

ON FEBRUARY 21, 2003. THE DEFENSE FILED A MOTION TO EXCLUDE THE DOG SCENT IDENTIFICATION EVIDENCE. (CT. 810) AND BEFORE ON JANUARY 23, 2003, MOTION TO COMPEL DISCLOSE OF CONFIDENTIAL INFORMANT MS. CONWAY. (PG.762,767.) MOTION TO SUPPRESS EVIDENCE (CT. 766.) MOTION TO SEVER (CT. 914.) MOTION TO EXCLUDE DOG SCENT EVIDENCE LINE UP (CT. 993.) MOTION TO EXCLUDE STATEMENT (CT. 980) AND ALL WERE DENIED AND UNSUCCESSFULLY GRANTED FOR COUNSEL AT TRIAL . . . . . I.E. ON APPEAL APPELLATE COUNSEL K. MC GEE FAILED TO EXHAUST AN RAISE THESE CLAIMS IN HIS WRIT.

ON FEBRUARY 26, 27, AND 28, 2003 (CT: 1003) THE FIRST EVIDENCE WAS PRESENTED ON MARCH 16TH 2003, AND THE JURY HEARD INSTRUCTIONS AND ARGUEMENTS. ON MARCH 16TH 2003, DELIBERATIONS BEGAN THAT AFTERNOON (CT: 1034.). THE VERDICT AN FINDINGS WERE RETURNED THE FOLLOWING AFTERNOON (CT: 1036) . . . . . . ON APRIL. 18, 2003, A MARSDEN MOTION WAS PRESENTED AN DENIED AFTER WHICH A FARRETTA MOTION WAS MADE (CT: 1393.), A MARSDEN DECLARATION WAS MADE (CT: 2602-2603.) ITS NOT CLEAR FROM THE RECORD IF WHETHER THE COURT NEW OF THE MARSDEN DECLARATION MISSED PLACED, THE FARRETTA MOTION WAS MADE GRANTED ON APRIL 23, 2003. (CT: 1394.) ON MAY. 19, 2003 MR. SCHOPPE-RICOS MOTIONS FOR TRANSCRIPTS OF TRIAL AND APPOINTMENT OF CO-COUNSEL WERE DENIED (CT: 1395.). PETIT-IONERS DECLARATION SPECIFIES MARSDEN VIOLATIONS AT (CT: 1456-1452.). IN MAY AND JUNE 2003 SCHOPPE-RICO FILED A SET OF PRO-PER DOCUMENTS IN RESPECT TO MARSDEN HEARING. (CT: 1456-1468), AN MOTIONS FOR NEW TRIAL AND APPOINTMENT OF COUNSEL (CT 1466.) . . . . . EVENTUALLY TRIAL COUNSEL WAS RE-APPOINTED ON JULY 29, 2003. (CT: 1585.). FURTHERMORE TRIAL COUNSEL INCOMPETENCE WAS ALLOWED TO BREW/RESUME IN AUGUST 2003, THEN A MOTION FOR NEW TRIAL WAS FILED (CT: 1586) OPPOSITION FILED WITHIN DAYS (CT: 1602.). . . . . SEPTEMBER 2003 SUPPLEMENTAL FOR NEW TRIAL WAS FILED, WHICH WAS OPPOSED (CT: 1620) BOTH MOTIONS WERE DENIED SEPTEMBER. 26, 2003. MR. SCHOPPE-RICO WAS SENTENCED ON TO STATE PRISON (CT: 1630) THE HEARING ON THE PROBATION REPORT AND SENTENCE WAS HELD OCTOBER. 23, 2003. HE WAS SENTENCED TO A DETERMINATE TERM OF TWENTY FIVE YEARS TO LIFE ENHANCED BY TWENTY FIVE YEARS TO LIFE FOR MURDER AN FIREARM USE UNDER SECTION 12022.5, SUBD (8) CREDITS WERE ALLOWED, A FINE WAS ERRONEOUSLY IMPOSED AND ACTUAL RESTITUTION WAS ORDERED (C.T: 1660, 1662, 1664.). APPELLATE COUNSEL NOTICE OF APPEAL WAS TIMELY FILED THE SAME DAY. (CT: 1666.).

IN DECEMBER OF 2003. COURT APPOINTED APPELLATE COUNSEL K. MC GEE WAS ASSIGNED TO THE CASE BY THE FIRST APPELLATE PROJECT . . . . ON JUNE 29, 2006, FIRST APPELLATE DISTRICT DIVISION FOUR COURT AFFIRMED CONVICTION, AND DENIED OPENING BRIEF AN ATTACKS ON CLAIMS TEN, ELEVEN, TWELVE AND THIRTEEN HEREIN . . . . ON OCTOBER. 18, 2006 PETITION FOR REVIEW IN THE CALIFORNIA SUPREME COURT WAS DENIED. THEREAFTER, PETITIONER FILED UNSUCCESSFUL COLLATERAL HABEAS ATTACKS. (ONE) IN THE SUPERIOR COURT OF CONTRA COSTA COUNTY ON NOVEMBER. 17, 2006, THAT WAS DENIED JANUARY 5TH 2007, THEN REFILED AGAIN IN C.C.C. SUPERIOR COURT JAN. 15, 2007, THAT WAS DENIED, FEB. 20TH 2007 . . . . . THE SECOND HABEAS WAS FILED IN THE FIRST APPELLATE DISTRICT COURT OF CALIFORNIA, MARCH. 23, 2007 AND DENIED OCTOBER. 18, 2006. . . . THE THIRD ONE WAS FILED IN THE SUPREME COURT OF CALIFORNIA. ON APRIL 12TH 2007. RELIEF DENIED SEPTEMBER 19, 2007 . . . . . PETITIONER THEN FILED HABEAS IN THE FEDERAL COURT NORTHERN DISTRICT. ON OCTOBER. 17TH, 2007 . . . , APRIL 2 ND 2008. A ORDER TO SHOW CAUSE WAS RECEIVED AND GRANTED LEAVE TO PROCEED IN PRO-PER ON APRIL 12, TH 2008

PETITIONER FILED REPLY MOTIONS FOR EXTENSION OF TIME. DENIED. AN WITH REQUEST OF APPOINTMENT OF COUNSEL. DECLARATION OF IDEGENCY. ON JUNE 13ᵗʰ 2008 FIRST AMENDED PETITION WAS FILED WITH POINTS AND AUTHORITIES THEREWITH EXHIBIT Z.

## STANDARD OF REVIEW.

THIS COURT MAY ENTERTAIN A PETITION FOR A WRIT OF HABEAS CORPUS. IN BEHALF OF A PERSON IN CUSTODY PURSUANT TO THE JUDGEMENT OF A STATE COURT ONLY ON THE GROUND AS CONTENDED MR. SCHOPPE-RICO IS IN CUSTODY IN VIOLATION OF THE CONSTITUTION OR LAW AN/OR TREATIES OF THE UNITED STATES 28 : U.S.C. 2254.(a) THEN IT SHALL AWARD THE WRIT OF ISSUE AND ORDER DIRECTING THE RESPONDENTS TO SHOW CAUSE WHY THE WRIT SHOULD NOT BE GRANTED UNLESS IT APPEARS PETITIONER SHOULD BE AWARDED THE WRIT DIRECTING THE CASE TO BE DROPT, REVERSED OR REMAND FOR TRIAL. OR SENTENCE REDUCED.

## STATEMENT OF FACTS.

1. ON SEPTEMBER. 4. 2000. CAR WASH INCIDENT ( CT: 402 ) PATRICK CERRUTI. A CONTRA COSTA COUNTY DETECTIVE ARRIVED AT THE CAR WASH AT 2845. WILLOW PASS RD. HE HAD CONTACT WITH SHARON FAWCETT. AND HER CAR. (CT: 405.) AT THE CAR WASH MS. FAUCET ALLEGED SHE GOT A PHONE CALL FROM JENNIFER SMITH. SHE ARRIVED TEN MINUTES LATER (CT: 405 ) ALLEGING MS. SMITH GOT INTO HER CAR AND THEY HAD A CONVERSATION. SHE HERD POPING NOISES. THEN SAW DEFENDANT WITH A RIFLE POINTING IT AT HER CAR TIRES (CT: 407.) MR. PATRICK CERRUTI. THEN SAID FAUCET SAID MS. FAUCET GOT MS. SMITH GOT OUT OF FAUCETS CAR. GOT INTO HER OWN VEHICLE THEY ARRIVED IN AND DROVE OFF. DETECTIVE CERRUTI. WAS ASKED WHILE HE WAS STANDING THERE TALKING TO MS. FAUCET. IF HE SEEN ANY SHELL CASING. IN THE AREA AROUND MS. FAUCETS VEHICLE. "DETECTIVE CERRUTI. SAID." NOT WHERE HE SAW IT". ' IT HAD BEEN MOVED. ( CT: 408.) NOW (I.E.) THERE WAS NO EVIDENCE INDICATING THE CAR WAS MOVED OR NOT AND MS. FAUCET POINTED OUT CASINGS. WHERE HER CAR WAS NEVER STATIONED AT. ( CT: 409.) HE THEN COLLECTED THE CASINGS AND SUBM-ITTED THEM INTO EVIDENCE UNDER EVIDENCE NO. 00-25-45-8. (CT: 410.) THESE CASING WERE LOCATED WERE JENNIFER SMITHS CAR WAS AT. WHILE SHE CLEANED IT OUT. (CT: 4.3/6 ) MR. CERRUTI REPORTED. MS FAUCET. SAID. IT WAS NOT. NO VIOLENT ACT. NO THREATS WERE MADE. NO ONE YELLED OUT AND SHE DIDN'T SEE WHERE THE GUN HAD ORIGINALLY CAME FROM. THE CAR WAS MOVED THIRTY TO FORTY FEET OUT OF ANY STALLS (CT: 411.) HE ALSO DID NOT SEE OR FOUND FRESH MARKS IN THE STALLS ASPHALT THAT WOULD SHOW A RESCENT GOUGING, "A. FRESH GOUGE IN IT." IN THE AREA WHERE THE ROUNDS WAS ALLEGED SHOT OFF AT THAT WOULD REFLECT A SLUG PENETRATING OR MISSING IT ALSO MISSED TIRE MARKS. HE DIDNT FIND NONE. ( CT: 413. ) DUE TO THE ( I.E ) EMPHASIS MINE. THE CAR WAS NEVER STATIONED THERE NOR HER TIRES 'EVER SHOT. 'OR GOT SHOT AT.

    FURTHERMORE WHEN SMITH. JENNIFER WAS QUESTIONED THE FIRST TIME AND HAD NO MOTIVE THEN TO LIE ON PETITIONER OR HELP THE PROSECUTION OUT. SHE HAD NO KNOWLEDGE OR INFORMATION ON THE CASE OR INCIDENT. HOWEVER MS. SMITH WAS FORCED TO TESTIFY AGAINST HER FIFTH AMENDMENT CONSTITUTIONAL RIGHTS BY THE COURT. PROSECUTION AND REPORTERS, BY ACCUSSING HER OF THE NICK TAYLOR MURDER. "THIS EVIDENCE AT THE TIME AUTOMATICALLY EXONERATED PETITIONER • (CT: 340 ; 341, 342, 343, 344, 345, 346, 347 + 348.) ALSO MS SMITH NAME WAS BEING PUBLISHED IN THE CONTRA COSTA TIMES NEWS PAPER. BEING CONSENTLY I.D.ᵉᵈ IDENTIFIED AS BEING THE SHOOTER ON OCTOBER. 17. 2000. ( CT: 415.) DUE TO MS. SMITH AN DAN BEING DISCOVERED RESPONSIBLE OF THE MURDER. BY THE COURT. LAWYERS. AND THE PROSECUTION ARGUEING THESE FACTS BEFORE HER AT COURT. INDICATING HER AS THE RESPONSIBLE. (CT: 415.) DUE TO THESE THREATS. SHE WAS GIVEN THE DISCOVERY AND FORCED TO TESTIFY ON THE CAR WASH ALLEGED INCIDENT. TO TURN THE SPOTLIGHT ON MR. SCHOPPE-RICO. TO WRONGLY CONVICT HIM OF THE CHARGE. AND TO DISTRACT THE ATTENTION FROM HER WRONGS AND CRIMES. . . . . .

*( CT.) REFERS TO COURT TRANSCRIPT.

THE EXONERATING EVIDENCE OF DETECTIVE CERRUTI COLLABORATES AS FOLLOWS, "ON SEPTEMBER. 4th 2000. MS. SMITH VAGUELY REMEMBERS THE INCIDENT. ( CT: 427.) SHE SAID. "HERE". I DONT REMEMBER WHY I WAS GOING TO SHARON FAUCETS. "I JUST REMEMBER VAGUELY PARTS OF THE DAY. "- I DONT REMEMBER WHY I WAS SUPPOSE TO MEET HER.". (THEN SHE SAID.) THAT, "NO - NOT "THE REASON WHY FAUCET AND HER WERE TO MEET.... THAT FAUCETS ALLEGATIONS WERE UNTRUE, MS. SMITH THEN SAYS. "NO SHE DIDN'T SAY TO FAUCET SHE WAS AFFRAID OF THE DEFENDANT AND WANTED TO LEAVE HIM ( CT: 429.) SMITH SAYS. "I'M SURE I'VE TOLD HER THAT LOTS OF TIMES."- "I DONT RECALL EVER THAT BEING THE REASON WHY ON THAT DAY ( CT: 430 ) SMITH WAS ASKED. - HAD YOU AND THE DEFENDANT BEEN ARGUEING PRIOR TO YOU GOING TO THE CAR WASH? SMITH SAYS. "I DON'T RECALL". UM "I DON'T KNOW."- "I DON'T RECALL"- WE ARGUE EVERYDAY. SO I DON'T SPECIFICALLY REMEMBER THAT DAY WITH US FIGHTING. ( CT: 431.) SMITH WAS ASKED "REASONS OF GOING TO THE CARWASH"? SMITH SAID- "TO WASH HER CAR" ( CT: 431) THAT SHE HAD ALWAYS ALOT OF STUFF IN HER CAR ECT". . . .

NOW ON OCTOBER 13rd 2000, MS. SMITH WAS INTERVIEWED BY DETECTIVES OF CONTRA COSTA CO. ( CT: 433.) SMITH HAD NO INFO TO DIVULGE INCRIMINATING SCHOPPE-RICO. BESIDES LATER ON AFTER GIVEN FULL DISCOVERY OF THE CASE. ( CT: 434.) . . . NOW BACK TO SEPTEMBER. 4th 2000, INCIDENT. MS. SMITH SAID. HER AND THE DEFENDANT ARRIVED AT THE CARWASH AND STARTED TO WASH HER CAR ( CT: 436.) SMITH WAS ASKED- "DID YOU GET IN MS. FAUCETS CAR? SMITH SAID, "I DONT RECALL". I KNOW SHE WAS THERE ( CT: 437.) SMITH SAYS. THE DEFENDANT AND "HER WERE WIPEN THE WINDOWS AND CLEANING OUT THE CAR. GARBAGE AND STUFF IN IT."- SMITH THEN SAYS "THERE WAS A BUNCH OF COMMOTION SOME YELLING OR SOMETHING AND WE LEFT. ME AND JUNIOR - LEFT ( CT: 438 ) MS. SMITH SAID. SHE NEVER SAW A GUN AT THE CARWASH WITH HER EYES OR NOTHING. AS MS. FAUCET ALLEGES ( CT: 439 ) SMITH SAYS. ON OCTOBER 13rd SHE NEVER SAID WHAT POLICE SAID OR ALLEGES WHAT SHE SAID. "THAT SHE SAW PETITIONER SHOOT THE TIRES, AND IF SO SHE MADE IT UP. ( CT: 439.) AND SHE WOULDNT LIE ABOUT THAT ( CT: 439.) SMITH THEN ASSUIRES SHE WAS NEVER IN MS. FAUCETS CAR WHEN THE SHOTS. THE TIRES WERE SHOT OUT. ( CT: 440) SMITH FURTHER CONTENDED. SEPTEMBER. 4th 2000. SHE NEVER SAW PETITIONER WITH A GUN, SHE WAS POSITIVE OF IT. ( CT: 443.) . . . . AFTER SMITH WAS COERCED. ACCUSSED OF MURDER. ECT. THREATEN GIVEN DISCOVERY AND JAILED. BY THE PROSECUTOR ILLEGAL DEALINGS. SHE DELIVERS THE FOLLOWING COACHED. TAUGHT TESTIMONY STILL. . . . . . SMITH SAYS. "I NEVER SAW HIM SHOOT OUT THE TIRES ( CT: 445 ) SHE WAS CLEANING OUT HER CAR. WHEN SHE HERD SHOTS. VACCUMING ( CT: 446.) MS. FAUCET ALSO WAS AT THE TIME CLEANING OUT HER CAR. AND DEFENDANT WAS "SOMEWHERE A" AROUND THE CARWASH WHEN SHE HERD SHOTS. SHE CONTINUED TO CLEAN OUT HER CAR". SHE DIDN'T LOOK ( CT: 447.) . . . . SMITH WASN'T SURE HOW MANY SHOTS WERE FIRED ( CT: 448 ) SHE SAW "ALOT OF PEOPLE" THERE AT THE CARWASH THAT DAY. WHEN SHE FINALLY LOOKED TO SEE WHAT THE COMMOTION WAS ABOUT ( CT: 449 ). I.E. THE MISSING WITNESSES AT ( 449 ), - AGAIN THE COURT AND PROSECUTOR AT THIS POINT BEING ARGUEMENTATIVE. THREATEN SMITH AT THESE POINT ( CT: 451.)

2. ON THE SEPTEMBER 4th 2000 INCIDENT NO CHARGES WERE FILED FOLLOWING THIS INCIDENT, LINKING PETITIONER TO IT. AN PETITIONER/DEFENDANT HAD MANY POLICE CONTACTS THROUGH DURATION AND WAS IN CUSTODY. THEN RELEASED AND WAS NEVER CHARGED OR ACCUSSED OR GIVEN DISCOVERY. AFTER ALL POTENTIAL EXONERATING EVIDENCE WAS LOST. A YEAR AFTERWARDS PETITIONER WAS HELD AN CHARGE ON THE CARWASH INCIDENT. WITHOUT DUE PROCESS OF THE LAW, NO EVIDENCE WAS GIVEN FOR THE DEFENSE. SUCH AS SECURITY VIDEO FOOTAGE. WITNESSES. ECT. OF EXCULPATORY VALUE. SUCH AS FORENSIC EVIDENCE PROVING THE TIRES WERE SHOT OR NOT. . . . . . ( SCHOPPE-RICO CONTENDS MS. SMITH MAY OF SWEPT THE CASINGS OUT OF HER CAR THERE OR ANYONE ELSE. WHILE SHE VACCUMED OUT HER CAR AND CLEANING IT. WHILE PETITIONER WAS GONE AROUND THE CARWASH. AND THE TIRES GOT FLAT ON FAUCETS CAR BY OTHER MEANS.) THE FORENSIC EVIDENCE CRIMINALIST EXAMINER OF CONTRA COSTA COUNTY. CIR. FUJII. CONCLUDED AT TRIAL THAT ONLY "ALL SIX "PROBABLY "OR "COULD OF" HAD BEEN FIRED FROM THE GUN IN QUESTION. THE MARKS IN THE DAMAGE CHAMBER "WERE NOT PRESENT" ON THE SIX CARTRIDGE CASINGS ( RT: 2220.) AS FOR THE SLUGS RECOVERED AT OCTOBER. 17, 2000. SCENE AN AT ITS AUTOPSY. MR. FUJII DEEMED •22 CALIBER SLUGS DIFFICULT TO MATCH. SO "HE WAS ONLY". ABLE TO OPINE. THAT THE SLUG COULD HAVE BEEN FIRED BY THE RIFLE ( RT: 2230 - 2235.) BUT DIDN'T MAKE A POSITIVE IDENTIFICATION MATCH OR TO THE ONE'S ILLEGALLY SEIZED AT 180 SHORE RD. . . . IN ADDITION, MR. FUJII EXAMINED THE CARTLEGES AND TWO CARTRIDGES CASES FROM

_____

1)., R.T. REFERS TO REPORTER TRANSCRIPTS, AND (CT.) REFERS TO COURT TRANSCRIPTS

180 SHORE RD. (R.T. 2235.) HIS CONCLUSION WERE, THE CARTRIDGE CASE AND ONE OF THE CARTRIDGE HAD" PROBABLY BEEN CYCLED THROUGH THE RIFLE (R.T. 2237-2240) HOWEVER THESE DID NOT HAVE THE MARKS MADE BY THE SCRATCHES INSIDE THE FIRING CHAMBER AS DID THE OTHER CARTRIDGES CASINGS (R.T. 2243.)

2. HAND INJURY, SEPTEMBER 20th 2000, INCIDENT .... AROUND 2:00 A.M. DEPUTY SHERIFF KEN SIMPSON OF CONTRA COSTA COUNTY. RECEIVED A DISPATCH THAT ADVISED OF A MAN SHOT IN FRONT OF THE BANK CLUB (R.T. 2281-2282.) HE ARRIVED AT THE LOCATION AND FOUND. SCHOPPE-RICO AND A FEMALE. HE BELEIVED WAS HIS GIRLFRIEND MS. SMITH. HE NOTICED INJURIES TO THE DEFENDANT, HE STATED IN ADDITION: "HE HAD WHAT APPEARED TO BE A SMALL-CALIBER GUNSHOT WOUND TO HIS RIGHT HAND IN THE/HIS PALM PRIMARILY. (R.T. 2283.) HE DIDN'T SEE NO EXIT WOUNDS IT APPEARED THAT THE BULLET HAD TRAVELED UP INTO HIS ARM. UP NEAR HIS WRIST AREA ..... AND ,, HE DIDN'T FIND NO GUN IN THE AREA ON SEPTEMBER 20th 2000, (R.T. 2284.) (SEE EXHIBIT: A.) ..... DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL THEY ALL FAILED TO ESTABLISH A BLAYLOCK INTRA - HAND/ARM INJURY DEFENSE ON THIS ISSUE IN THE OCTOBER 17. 2000. ISSUE. HOWEVER ON SEPTEMBER 20th 2000. SCHOPPE-RICO WAS AT MT. DIABLOS JOHN MUIR MEDICAL HOSPITAL EMERGENCY ROOM BEING OPERATED ON BY DR. SOCCO, WHO DID THE SERGERY OF INSTILLING A FIXATION SCREW POSITION IN THE RADIAL STYLOID BONE SCREWED INTO THE SCAPHOID WRIST BONE. FIXING SHATTERED BONES, NO SLUG WAS RECOVERED AND WRIST HAND STILL REMAINS FRACTURED TO THIS DAY .....

3. OCTOBER 17th 2000 INCIDENT. IN REGARDS TO THIS DATE. MR. SCHOPPE-RICO WAS STOPED FOR A INVESTIGATORY STOP BY DEPUTY WHIDDEN AND SERGEANT BRYAN (R.T. 1571-1573.) ON KEVIN DRIVE. THEN CONCLUDED,, TRANSPORTED SCHOPPE-RICO TO MARTINEZ POLICE STATION INTERROGATION ROOM. DETECTIVE COSTA AND GRUENHELED WERE AWARE OF ALSO OF PETITIONERS DISABILITY OF HAND INJURY. NOT ONLY THIS HE WAS NEVER READ HIS MIRAND RIGHTS (SEE EXHIBIT: A.) AND COURT-TRIAL EXHIBIT #7. (011510-5-LOGED.) ON TRANSCRIPT PAGE (2.) THE DETECTIVES ARE REAL CAREFUL UN HAND CUFFING PETITIONERS DEFENDANT TO TEST HIS HANDS WITH A GUNSHOT RESIDUE KIT, DETECTIVES THEN DABS HIS HANDS REAL QUICK. THEN ASK TO FLIP IT AROUND,, SPREAD HIS HAND.? THUMB, PETITIONER COULDN'T FORCE TO A LITTLE BIT. AN DETECTIVES ASKED IF THAT THE SCREWED UP HAND? DEFENDANT SCHOPPE-RICO REPLIED. "YEAH"! THAT IT HURTS (T. PG. 3.) SCHOPPE-RICO IS RIGHTHANDED AND DETECTIVES STILL DABS RIGHT INJURED HAND. THEY CUFF HIM (T. PG. 4.) MR. SCHOPPE-RICO PROTEST. "HE CAN'T KNOCK ON THE DOOR"./ THEN DETECTIVES ADVISES HIM HE'LL GET BAND UP IF HE OPENS THE DOOR. SCHOPPE-RICO REPLIES.- "I GOT A MESSED UP HAND WRIST", "SO I CAN'T KNOCK" - THE DETECTIVE ACKNOWLEDGES HE HAD BEEN SHOT AND SEES STITCHES (T. PG. 54.) ..... AT 1:00 O'CLOCK P.M. A NURSE IS TO COME TO TAKE D.N.A. BLOOD SAMPLES FOR DETECTIVES THEY STATE THEY TAKE BLOOD OUT IN ALL CASES. "IT COULD HELP YOU IN THE LONG RUN". IT COULD CLEAR YOU". IT TELLS US IF YOU'RE ON ANYTHING",... SCHOPPE-RICO REPLIED. "AS LONG AS THEY DON'T TAKE A LOT OUT". - "I HAD LOST A LOT OF BLOOD TO MY ARM"- AND LOST A LOT OF WEIGHT". .... THE DETECTIVE. POINTS TO THE HAND AN' STATE, "ON THIS THING" - ! YEAH"- (T. PG. 55.) SCHOPPE-RICO ASSURES THERE IS NO-WAY HE'D SHOOT HIMSELF AND TELLS THEM HOW IT HAPPENED (SEE PG. 56-57.) AT 1:00 P.M. A REGISTERED NURSE, NAMED VICKI ARRIVED AN TOOK THE BLOOD SAMPLES AND SAW THE INJURY (T. PG. 54.) AFTER THIS DETECTIVE COSTA STATES. "OOH-WEE"- "YOU REALLY MESSED UP THAT ARM THERE", DIDN'T YOU? WHILE CUFFING PETITIONER.

4. OCTOBER 17th 2000. PENAL CODE 187 INCIDENT. ON OCTOBER 17th 2000, MS. RITA TAYLOR AND NICK TAYLOR LIVED AT 60. DRIVE BAY DRIVE IN BAY POINT. SHORE ACRES. (R.T. 1265.) THATS TWO AND HALF BLOCKS AWAY FROM THE CORNER OF PORT CHICAGO HIGHWAY AN PACIFICA AT APPROXIMATELY 9:00 AM. THEY LEFT TOGETHER AN IS HE WENT TO THE DRY CLEANERS (R.T. 1266.) THERE OCCUPATION. (I.E THEY BOTH WERE BOUNCERS AT THE CROSS ROADS CAFE & BAR IN PITTSBURG WHERE THERE WAS A OUT BREAK INCIDENT. NOT SURE IF GANG RELATED. BUT IT WAS BETWEEN AFRO-AMERICAN AND MEXICANS AT THE TIME (R.T. 1266.) THIS ABOUT TWO WEEKS TO A MONTH BEFORE OCTOBER 17. 2000 INCIDENT. (R.T. 1266.)

WHEN RITA AND NICK TAYLOR APPROACHED THE SHOPPING CENTER THEY "SPLIT UP". HE WENT TO THE BENCH AREA (R.T. 1268.) SHE WAS IN THE CLEANERS FOR FIVE TO TEN MINUTES (R.T. 1268-1269.) (I.E. SO FOR FIVE TO TEN MINUTES TAYLOR ALONE WAS AT THE BENCH AREA WITH A SUSPECT. ) ... WHEN SHE EXITED THE CLEANERS, SHE SAW HIM SITTING DOWN (R.T. 1269.) SHE ALSO SAID "NO I ACTUALLY DIDN'T SEE THE SHOOTER (R.T. 1272.) WHILE NICK TAYLOR WAS IN THE AREA. MELTON THEN APPEARS HEADING TO THE RECYCLE PLACE WITH TWO CARTS. HE SAW NICK NEAR THE INTERSECTION AT THE BUS STOP. (C.T. 302.) AN HE SAW PEOPLE GOING INTO THE STORE AND PEOPLE AT THE OTHER END OF THE BUS STOP. ACROSS THE STREET FROM WHERE THE SHOOTING HAPPENED, THERE WERE ONE OTHER PERSON AT THE BUS STOP BE SIDES NICK AND MELTON (C.T. 315.)

N.B.: ALL EXHIBITS IN FIRST AMENDED PETITION FILED. REFERS WITH SECOND AMENDED PETITION IN JUCTION

MELTON DIDN'T TELL THE POLICE THIS. "WHILE THEY WERE SITTING AT THE BENCH, TAYLOR TOLD MELTON," SOMETHING ABOUT A GUN", MELTON STARRED. THEN LOOKED AROUND THEN GOT UP OFF THE BENCH (CT: 317. ) HE DIDN'T SEE NO GUN AT THAT TIME AND ALLEGED HE RAN AND TWO SHOTS WERE SHOT (CT: 318. ) (CT: 272 ) .... EVIDENCE AT TRIAL ESTABLISHED THAT MR. TAYLOR WAS SHOT TWICE, TWO SHOTS WERE SHOT, TWO PEOPLE TESTIFIED AS BEING PRESENT AND SAW THE SHOOTING OUT OF EVERYONE THERE. WAS PAUL LANCASTER AND ALBERT MELTON. (1.d.) MR. LANCASTER PROVIDED A DESCRIPTION OF THE SHOOTER TO POLICE IMMEDIATELY FOLLOWING THE SHOOTING. (CT: 133:17 — 135 - 24.) HE WAS TRANSPORTED TO A LOCATION WERE MR. SCHOPPE -RICO WAS DETAINED AND AFTER LOOKING AT MR. SCHOPPE-RICO, SAID THAT "MR. SCHOPPE-RICO WAS NOT THE PERSON WHO HAD SHOT MR. TAYLOR, (SEE EXHIBIT: B. ) OF TRANSCRIPT OF INTERVIEW. ) . . . . .

SIX MONTHS LATER LANCASTER IS NOW UNABLE TO IDENTIFY THE SHOOTER (CT: 58-17 - 66 : 18 ) AND AT TRIAL WASN'T ASKED TO IDENTIFY THE SHOOTER. OR ASKED IF THE DEFENDANT WAS WHO HE SAW (2) AN HALF YEARS LATER .... AT THE PRELIMINARY HEARING LANCASTER, SAID, "HE KNEW WHO THE SHOOTER WAS BEFORE HAND", "YES SIR", HE LIVED AROUND THE CORNER FROM ME, TWO HOUSES .... MY GRANDDAUGHTER USE TO BABY SIT HIM AND HIS BROTHER (CT: 60.) ON OCTOBER. 18. 2000 LANCASTER WAS CALLED BY A DETECTIVE. (WITNESS TAMPERING. )"WHO TOLD HIM" TO CHANGE HIS STORY", THE DETECTIVE TOLD HIM THEY GOT THE SUSPECT IN CUSTODY AND THEY'VE RECOVERED THE GUN AND CHANGE OF CLOTHING (CT: 78) LANCASTER ALSO SAID A FRIEND OF HIS WHO LIVED IN THE NEIGHBORHOOD KINDA A "TOWN CRIER." [PAUL REVERE] WAS AT THE SCENE AND CAME OVER, WAS TAPED OFF AND "HE COULDN'T HARDLY TALK TO HIM. (CT: 79-80 ) (I.E. SUSPECTS LIKE PAUL REVERE ARE KNOWN TO RETURN TO THE CRIME SCENE TO BLEND IN.).

THE ONLY WITNESS PRESENTED AT TRIAL AND THE PRELIMINARY HEARING WHO MISTAKENLY I DENTIFIED MR. SCHOPPE-RICO AS THE PERSON WHO SHOT TAYLOR WAS ALBERT MELTON. MELTON ALSO PROVIDED A DESCRIPTION OF THE SHOOTER TO POLICE (CT: 134:22 — 135: 24.) MELTON WHEN INITIALLY WAS TAKEN TO MR. SCHOPPE-RICOS LOCATION IMMEDIATELY FOLLOWING THE SHOOTING (CT: 152:13 — 153: 4.) UPON SEEING SCHOPPE-RICO HIS STATEMENT WAS THAT MR. SCHOPPE-RICO" WAS DRESSED DIFFERENTLY "THAN THE SHOOTER HAD BEEN (CT: 153:27-24.) .... MELTON SAID. MR. SCHOPPE-RICO "COULDBE" THE SHOOTER, NOTE'ING NEITHER PETITIONER NOR THE SHOOTER HAD ANY FACIAL HAIR, (CT: 155:25 - 154 -12.) IN A STATEMENT GIVEN AT THE POLICE STATION (OCT.17. 2000 ) AND WAS CONFIRMED IN COURT. MELTON DESCRIBED THE PERSON WHO SHOT TAYLOR AS HAVING LONG HAIR, SPECIFICALLY STATING THAT HIS HAIR "WAS LONGER THAN MELTONS OWN", WHICH WAS SHOULDER LENGTH, CT: 144:24 -200:16 — 295:2:17.), MR. SCHOPPE-RICO HAIR DID NOT EXTEND PAST HIS SHOULDER LENGTH CT: 199:24 - 200:20 - 201:4) ON OCTOBER. 17. 2000 .... IN COURT AT THE HEARINGS MELTON CONFIRMED THIS ."THE PERSON THAT HE IDENTIFIED IN THE PHOTOGRAPHIC LINEUP WAS THE SHOOTER," SAYING HE "WAS JUST AS SURE OF HIS IDENTIFICATION OF THAT PHOTOGRAPH AS HE WAS OF THE IDENTIFICATION OF SCHOPPE-RICO, (CT: 297:3 -298:16.), DURING CROSS EXAMINATION AT THE PRELIMINARY HEARING OF MELTON. DEFENSE COUNSEL ATTEMPTED TO QUESTION HIM REGARDING HIS INGESTION OF DRUGS AND ALCOHOL. (CT: 320:14-22.) THIS LINE OF QUESTIONING WAS ILLEGALLY PROHIBITED BY THE MAGISTRATE ON RELEVANCE GROUNDS DESPITE AN OFFER OF PROOF THAT SUCH QUESTIONING WAS INTENDED TO CAST DOUBT ON MELTON'S ASSERTION THAT HIS MEMORY WAS JUST AS CLEAR IN COURT ON MAY. 16TH 2001. AS IT HAD BEEN IMMEDIATELY AFTER THE SHOOTING ON OCTOBER. 17. 2000 AND AN OFFER TO PRESENT EXPERT TESTIMONY ON THE EFFECTS OF CHRONIC ALCOHOL USE ON MEMORY, CCT. (CT: 320:19 — 321:18). DEFENSE COUNSEL ALSO ATTEMPTED TO ESTABLISH THAT MELTON HAD COME ACTUALLY DRUNK TO COURT, WHEN PREVIOUSLY SUBPOENAED TO TESTIFY IN THIS CASE (CT: 322:14- 7. )(THE QUESTIONING WAS PROHIBITED BY THE MAGISTRATE DENYING PETITIONER A SUBSTANTIAL FEDERAL CONSTITUTIONAL AMENDMENT RIGHT.) EXCLUDING PROSECUTORS AND HIS INSPECTORS SAM SANCHEZ TOLD MELTON NOT TO TALK TO THE PUBLIC DEFENDERS (CT: 325.) THIS WITNESS TAMPERING IS A VIOLATION AS WELL OF LAW .. .. .

FIRST ON SCENE OCTOBER. 17. 2000, WAS JESSICA FREDRICKSON HAD BEEN A STUDENT WORKER FOR THE SHERIFF DEPARTMENT. (RT: 1470.). AT 9:30 A.M. SHE WAS DRIVING NORT ON PORT CHICAGO HIGHWAY. WHEN SHE SAW SOMEONE ON THE GROUND AND CALLED DISPATCH. SHE DID'NT SEE NO ONE RUNNING OUT OF THE AREA OR SHE DID'NT SEE NO-ONE SPEEDING. (RT: 1471-1472.) PEOPLE WERE HYSTERICAL. YELLING PEOPLE WERE ALL AROUND THE BODY. FREDRICKSON ATTEMPTED TO GET A DESCRIPTION OF THE PERSON RESPONSIBLE (RT: 1473-1474.) EVENTUALLY OFFICERS ARRIVED. OFFICER DELUNA AND WHIDDON (RT: 1476.) BASED ON WHAT SHE RECORDED. DESCRIPTION OF A HISPANIC MALE, WEARING KHAKI PANTS AND A DARK SHIRT (RT: 1481.) SEE EXHIBIT: B. ) THE PEOPLE AROUND THE BODY AN BENCH AREA. . . . .

DEPUTY WHIDDON, TESTIFIED THAT HE'D AND DEPUTY BRYAN HAD REACHED THE SCENE AT APPROXIMATELY THE SAME TIME (RT: 1504.). THE DESCRIPTION HE WAS GIVEN WAS OF A HISPANIC MAN WEARING KHAKI PANTS, A DARK SHIRT AND A HAT (RT: 1505T. ) DEPUTY WHIDDON DROVE SOUTH ON PORT CHICAGO HIGHWAY AND TURNED AT THE SECOND LEFT WHICH WOULD HAVE BEEN LYNBROOK (RT: - 1504.).

NUMBER (3.) IF SHE DIDN'T HAVE THE DOG (RT: 2033 - 2036.) SCHETTLER TESTIFIED THAT IT WAS A POSITIVE IDENTIFICATION (RT: 2033 - 2036.) ¶ (RT: 2034, 2041, 2042.) AFTER SHE CORRECTED HER DOG." TO TURN LEFT AND GO TO NUMBER (2) AND SNIFFED HIS LEGS (RT: 2033 - 2036.) NUMBER (2.) WAS BAREFOOT AND SEEN BY K-9 AN HANDLER BEING ESCORTED HANDCUFFED. HOWEVER THE DOG HEADED BACK TO NUMBER (3.) AND STOPPED AGAIN (RT: 2033 - 2034 - 2036.) FINALLY HER DOG WAS PROMPT ON NUMBER (2) AND IT PUT A PAW AN JUMP TWICE. (RT: 2034) 2036 - 2037 - 2042.) SHE DECLARED IT PICKED NUMBER 2. SCHOPPE-RICO. WHEN AT FIRST IT PICKED NUMBER (3.) WHICH WOULD BE A FAILED TEST. . . . WHEN MR. SCHOPPE-RICO HAIRS WERE COMPARED BY CRIMINALIST ALEX TAFLYA OF CONTRA COSTA COUNTY, EXAMINOR TO THE HAIRS FOUND AT 40 SHARON DRIVES SWEATSHIRT AN BLACK PANTS NOT KAYAKI AND ELIMINATED SCHOPPE-RICO AS A POSSIBLE SOURCE FOR THOSE HAIRS ON THE CLOTHING (RT: 2329 - 2333 & 2336.) THAT WAS USED IN THE SCENT DISCRIMINATION LINE UP, HOWEVER/ (EMPHASIS MINE THROUGHOUT.) . . . . THE VIDEO OF THE SCENT DISCRIMINATION LINE UP. (SEE COURT TRIAL EXHIBIT NO.) 61.) IS ILLUMINATING. IT SHOWS DEPUTY GRUENHEID CARRYING THE PAPER BAG CONTAINING THE SWEATSHIRT BY THE TOP CENTER. IT ALSO SHOWS THAT THE DOG DID NOT PUT HER NOSE " IN THE BAG. INSTEAD PLACING HER NOSE AT THE TOP BAG AT THE PLACE IT HAD BEEN HELD BY DEPUTY GRUENHEID . . . ," IT ALSO SHOWS THE DOG MEANDERING AMONG THE SUBJECTS IN THE LINEUP AND IT SHOWS THAT WHATEVER THE DOG DID IN". . . "IT NEVER "TRACKED "FROM THE CENTER LIGHTSTICK TO SCHOPPE-RICO POSITION SEE ALSO (EXHIBIT: D.)

OTHER EVIDENCE SEIZED WITHOUT A SEARCH WARRANT. ON OCTOBER. 17. 18 AND 19. 2000.  LATE ON THE AFTERNOON OF OCTOBER. 17. 2000 PASS 5:30 PM. DETECTIVE COSTA WENT TO 180 SHORE RD. WHERE SCHOPPE-RICO LIVED (RT: 1627) WHILE HE WAS WALKING UP TO THE DOOR. AND SOMETHING ATTRACTED HIS ATTENTION ON THE PATIO DRIVE AREA ON THE SIDE OF THE HOUSE. HE FOUND. GRAY SWEAT PANTS IN THE FRONT YARD. (SEE EXHIBIT: 30. OF TRIAL COURTS.,) WHICH WERE SAME COLOR AND APPEARED CONDITION AS THE SWEATSHIRT FOUND AT 40 SHARON DRIVE AND BEARING THE BRAND NAME PRO-SPORT LRT 1631 - 1633.) HE FOUND THESE LOCATED BEHIND A FENCE OF PATIOS AN ENTERTAINMENT CENTER AND NOT IN FRONT YARD IN OPEN AS LED TO BELIEVE". . .  (I.E.) . . . AGAIN ON OCTOBER. 18. 2000. SERGEANT BRYAN WENT TO 180 SHORE RD. IN BAY POINT (RT: 1591 - 1592.) WITHOUT A SEARCH WARRANT. HE COLLECTED A SHELL CASING. A CARTRIDGE AND A DEFORMED SLUG (RT: 1592 - 1593.) . . . ON OCTOBER. 19. 2000. DETECTIVE COSTA RETURNED TO 180. SHORE ROAD (RT: 1634.) HE FOUND A. 22 CALIBER CARTRIDGE CASING ON THE KITCHEN FLOOR (RT: 1635.) IT'S CLEAR THESE CASING WERE NOT MATCH TO THE CRIME SCENE ONES . . . .  HOWEVER ACCORDING TO THE CONFIDENTIAL INFORMANT HIS. CONWAY WITNESSED ON THE DAY OCTOBER 17. 2000 MURDER JENNIFER SMITH AND THIS DAY WERE AT 180. SHORE ROAD. ON THAT MORNING. AND ALSO ON THE 18TH 19TH OF OCTOBER. 2000 THERE WERE NUMEROUS OF UNKNOWN INDIVIDUALS AT 180 SHORE ROAD AND AGAIN ON OCTOBER 24TH 2000. MOVING THINGS AND LOOTERING THERE (RT: 564. 566. 569.) THERE WAS A WAITING SEARCH WARRANT ISSUE ON 180 SHORE ROAD DETECTIVES HAD TO BE SITING ON THE HOUSE (RT: 570 - 571.) DUE TO UNKNOWN INDIVIDUALS HAVING BULLET CASINGS ON THEM. THEY MAY OF LEFT THERE OR DROPT. OBVIOUSLY THERE WERE AT THERE BEFORE ON OCT. 17. 2000 . . . . " IN ADDITION. MR. FUJII EXAMINES THE CARTRIDGE CASINGS AND TWO CARTRIDGE CASINGS RECOVERED AT 180 SHORE. ROAD (RT: 2235.) MR FUJII'S CCC. CRIMINALISTIC CONCLUSION WERE THAT THE CARTRIDGE CASE HAD "PROBABLY "BEEN CYCLED THROUGH THE RIFLE. (RT: 2237 - 2240.) HOWEVER THESE CASINGS "DIDN'T HAVE "THE MARKS MADE BY THE SCRATCHES INSIDE THE FIRING CHAMBER. AS DID THE OTHER CARTRIDGES CASES (RT: 2243.) . . . . . . .

THE GANG EVIDENCE . ~ INSPECTOR RON HUPPERT WAS ASSIGNED TO THE GANG INTELLIGENCE UNIT (RT: 2109.) HE DESCRIBED THE "EAST BAY LOCOS "(EBL) AS A SUBSET OF THE NORTENOS. BOTH OF WHICH WERE CRIMINAL STREET GANGS WHICH IDENTIFIED WITH THE COLOR RED AND THE NUMBER. "14". (RT: 2118, 2121, 2122.) THE PRIMARY ACTIVITIES OF BOTH GANGS WERE ASSAULTS WITH FIREARMS AND ASSAULTS CAUSING "GROSS BODILY HARM (RT: 2123.) HE DEEMED MATTHEW SPURLING, HENRY GRENADOS AND DAVID STOKES "VALIDATED "MEMBERS OF THE NORTENOS AND EAST BAY LOCOS AND THOSE THREE MEN HAS BEEN CONVICTED OF FELONY ASSAULT (RT: 2123 - 2124.) . . . INSPECTOR HUPPERT ALSO IDENTIFIED SCHOPPE-RICO AS A VALIDATED "EAST BAY LOCO" GANG MEMBER BASED ON A "46" SELF-ADMISSION, A TATOO AND PRIOR ASSOCIATION WITH A KNOWING GANG MEMBER. (RT: 2126-2127 - 2129 - 2131 - 2134.) IT WAS INSPECTOR HUPPERT OPINION THAT IN 2002, SCHOPPE-RICO HAD STILL BEEN AN ACTIVE NORTENO. (RT: 2170.) HE ADMITTED THOUGHT BETWEEN 1996 AND 2000. HE HAD NO CONTACTS WITH SCHOPPE-RICO, AND HIS "CARD" HAD NOT BEEN UP DATED WITH GANG RELATED CONTACTS (RT: 2181.) IN 1996. SCHOPPE-RICOS AGE WAS 15 YEARS OLD. AN THERE IS NO LEGAL MEANS DISCOVERY HOW THE PITTSBURG P.D. OFFICER LODGED THE CARD OR DETERMINE THIS (RT: 516, 517, 518 - 519.) COURT TRIAL EXHIBITS: 55'D, 55 E, AND 55. F. WERE PORTIONS OF LETTERS. SCHOPPE-RICO HAD SENT FROM JAIL TO HIS BROTHER CARL SCHOPPE. (RT: 2161.) IN ONE LETTER. HE ALLEGEDLY COMPLAINED OF HAVING SEEN A TELEVISION SHOW IN WHICH THE SURENOS WERE FEATURED. BUT WHICH THE NORTENOS AINT BEING REPRESENTED (RT: 2165 - 2166.) IN ANOTHER LETTER (ALLEGEDLY.) SCHOPPE-RICO SEEMED TO ASK VIOLENCE BE COMMITTED AGAINST HIS FORMER GIRL-FRIEND. WERE WITNESS INTIMIDATION WAS "TYPICAL "WITH GANGS (RT: 2166.) THE AUTHOR SIGNED THE LETTER." NV "AND" EBL "(RT: 2169.)

_____

1.) INSPECTOR RON HUPPERT TESTIFIED IN VIOLATION OF " IN RE: FRANKS, SUPRA. (2006) 141. C13. APP. 1142, 1146, 46. CAL. RPTR. 3.D. 834"
   EVIDENCE WAS INSUFFICIENT TO SUPPORT OPINION POSSESSION OF WEAPON WAS FOR THE BENEFIT OF A GANG.

INSPECTOR HUPPERT DESCRIBED VIOLENCE AS A "KEY ELEMENT OF THE NORTENO GANG SUBCULTURE, SINCE IT ELEVATES THE STATUS OF THE GANG MEMBER. (RT: 2471.) HE NOTED THAT THE DECEDENT HAD BEEN WEARING BLUE AND THAT SCHOPPE-RICO HAD BEEN FOUND WITH A RED BANDANNA. (RT: 2472-2473.) HE FAILED TO NOTE THE DECEDENT HAD GREEN ON

IN REGARDS TO THE LETTER, WROTE TO CARL SCHOPPE (EXHIBIT: 55 D, 55 E, 55, F.) RT: 2161 THROUGH 2162) MAY OF NOT BEEN WROTE BY PETITIONER AT THE TIME HE WAS IN THE MENTAL HEALTH UNIT ON DEPRESSION MEDICATION AND ECT FOR FEELING SUICIDAL ECT. IN SOLITARY CONFINEMENT. (SEE EXHIBIT: E.) OF CURRENT MENTAL HEALTH DOCUMENTS....

OTHER EVIDENCE SEIZED AFTER. OCTOBER. 17. 2000. TWO WEEKS AFTER THE SHOOTING POLICE RETURNED TO 180 SHORE ROAD, WHERE SCHOPPE-RICO STAYED WITH ROBERT EAGLE (RT: 1671.-1672.-2074-2091.) THE HOUSE WAS UNKEMPT, EVERYTHING WERE BAGGED. THE OFFICERS SAW GANG GRAFFITI AND BULLET HOLES IN THE REAR BEDROOM, WHICH DID NOT HAVE A BED (RT: 1674, 2080, 2047.) THEY FOUND IN A BOX PHOTOGRAPHS OF PERSONS FLASHING GANG SIGNS AS WELL AS "GANG TYPE" "WRITING SUCH AS "14" AND "EBL (RT: 2081-2085, 14) IN THE DECEDENT ROOM OF ROBERT EAGLE, WHICH WAS EXCLUDED BUT WASN'T. THEY FOUND IN ANOTHER BEDROOM HAD "INDICIAS "FOR ROBERT EAGLE IN THAT ROOM, OFFICERS FOR "14" GUN CLEANING KITS. BOXES OF A .22 CALIBER CARTRIDGES AND A .22 CALIBER WINCHESTER RIFLE (RT: 2091-2092.) NONE OF THIS WAS PETITIONERS OR IN EVER HIS POSSESSION, THERE WERE NO EVIDENCE OF BULLETS MISSING OUT THE BOX OR FINGER PRINTS.

MS. SMITH TESTIFIED. ON AN OCCASION IN AGUST/AUGUST 2000, SCHOPPE-RICO HAD RUN INTO THE HOUSE ASKING MS. SMITH FOR HER CAR KEYS, AFTER WHICH HE LEFT IN HER CAR. LATER AS THEY WERE WALKING TO HER CAR, SHE SAW A LARGE MAN WEARING BLUE AND WHITE JERSEY APPROACHED SCHOPPE-RICO, "HE SAID". "HE WAS FRIEND. I WENT TO SCHOOL WITH HIM". HOWEVER SCHOPPE-RICO AND THE MAN HAD A VERBAL ALTERCATION (RT: 1814-1818.) A FEW DAYS LATER. A CAR PULLED UP AND STRANGERS GOT OUT AND TALKED TO SCHOPPE-RICO AFTER THE MEN LEFT ALLEGEDLY. SCHOPPE-RICO RAN INSIDE, PUT ON HIS RED SLIPPERS, GRABBED HIS HAT AND SHOTGUN AND WENT UP THE STREET, MINUTES LATER. HE CAME RUNNING BACK WITH FIVE OR SIX MEN CHASING HIM, ONE WHOM WAS WEARING BLUE, WHEN SCHOPPE-RICO TURNED, AND POINTED THE SHOTGUN AT THEM, THE MEN STOPPED RUNNING. SCHOPPE-RICO THEN FIRED THE SHOTGUN INTO THE AIR AND THEN MEN RAN THE OTHER WAY (RT: 1820-1824.) THERE IS NO DOUBT HERE SCHOPPE-RICO PROPERLY WAS TRESSPASSED AND HIS LIFE WAS THREATEN (LIE.) ALSO NONE OF THESE ALLEGED WITNESSES WERE SUBPOENAED OR IF NICK TAYLOR WAS AMONG THEM WAS PRESENTED.

JENNIFER SMITH'S BACKGROUND TESTIMONY - . MS. SMITHS CREDIBILITY WAS SUSPECT AT WORST, SHE HAD SEVERAL THEFT-RELATED CONVICTIONS, INCLUDING FELONIES. (RT: 1880.) WITH REGARDS TO "BENEFITS" SHE HAD RECEIVED FOR HER TESTIMONY, SMITH CONCEDED, SHE HAD BEEN ARRESTED BETWEEN OCTOBER. 23RD AND THE TIME OF SCHOPPE-RICO'S PRELIMINARY HEARING AND SHE HAD CALLED THE PROSECUTOR FROM JAIL (RT: 1410-1411.) SHE TOLD THE PROSECUTOR SHE WOULD HELP HIM IF HE GOT HER OUT OF CUSTODY (RT 1911.) THE (PROSECUTORS RECORDING.) "TALKING TO THE PROSECUTOR." SHE'S SAYING "_ I JUST WANT TO GET OUT "_ I WANT TO GET OUT "_ THIS CAN BENEFIT THE BOTH OF US "_ "_ I JUST WANT TO GET OUT "_ SMITH NOT ASKING FOR ANY INN, ASSURANCE, REGARDING OUTCOME OF THE CASE AT THE END OF THE CONVERSATION PROSECUTOR GRAVES, SAYING "_ IF YOU GET OUT OF CUSTODY, WILL YOU COME TO US? SHE'S SAYING YES. "I WILL GO DIRECTLY TO YOUR OFFICE UPON MY RELEASE "_ SHE'S "_ RELEASED AT THE NEXT RELEASE WINDOW AT THE JAIL AND THE PROSECUTORS INVESTIGATOR SAM SANCHEZ IS WAITING FOR HER. PICKS HER UP AND TAKES HER FROM THE JAIL TO THE PROSECUTORS OFFICE (RT: 1643-644.) THIS (I.E.) WAS AFTER THEY GAVE HER "ALL" THE DISCOVERY IN SCHOPPE-RICO'S CASE AND IN IT. MS. SMITH WAS RELEASED TO GO TO THE PROSECUTOR OFFICE (RT: 1415.) ...... SUBSEQUENTLY THE PROSECUTOR ACCOMPANIED MS. SMITH TO COURT IN WALNUT CREEK WHERE SHE FACED A $35,000. WARRANT FOR A FELONY (RT 1415.) THE PROSECUTOR ASKED THE JUDGE NOT TO REMAND HER INTO CUSTODY AND THE JUDGE AGREED (RT: 1416.) SMITH LATER WROTE THE PROSECUTOR ASKING GRAVES TO HELP HER OBTAIN O' ADMISSION INTO A DRUG PROGRAM (RT: 1916-1917-1934.) AT THE TIME SHE HAD FIVE PENDING CASES AND WAS ON FELONY PROBATION (RT: 1917.) WITH THE PROSECUTORS HELP. SHE WAS SENTENCED TO A DRUG PROGRAM AND NOT PRISON (RT: 1418-1421.)

"THE SCENT DISCRIMINATION LINEUP". JUDY SCHETTLER WAS A VETERINARY TECHNICIAN (RT: 1443.) WHOS DOG ONLY HAD APPROXIMATELY "NINETY" HOURS OF TRAINING (RT: 1449 (VARY MORE THEN 60% TO 80% THE TIME THE DOG FAILED TRAINING.) HER BLOODHOUND DOG WAS NAMED "KALLIROH" (RT: 1469.) SCHETTLER DESCRIBED A SCENT LINEUP AS THREE TO FIVE PEOPLE WHO WALK OUT THIRTY FEET IN MULTIPLE DIRECTIONS FROM A POINT, WHICH WOULD RESULT IN THE PEOPLE BEING THIRTY FEET IN MULTIPLE FROM THE STARTING POINT, AND AT LEAST THIRTY FEET FROM ONE ANOTHER, THE DOG IS EXPOSED TO SCENT MATERIAL AT THE STARTING POINT AND THE DOG THEN SELECTS THE PERSON WHO

DEPUTY WHIDDO THEN WENDED THROUGH A RESIDENTIAL TRACT AND WENDED UP AT THE INTERSECTION OF SHARON DRIVE AND BRADFORD STREET (RT: 1516 - 1515 - 1516.) . . . . . DEPUTY WHIDDEN THEN SAW A HISPANIC ON GREGORY DRIVE TO KEVIN DRIVE. HE DREW HIS HANDGUN AND ORDERED THE MAN TO HIS KNEES WITH HIS HANDS RAISED (RT: 1519 - 1520) SERGEANT BRYAN ARRIVED, HANDCUFFED THE MAN AND PLACED THE MAN IN THE REAR OF HIS PATROL CAR (RT: 1521.) NO WEAPONS OR BULLETS WERE FOUND ON MR. SCHOPPE-RICO (RT: 1545.).

WITNESS LYDIA WILLIAMS: LIVED AT 516. BRADFORD ST. IN BAY POINT (RT: 1394.) SHE TESTIFIED THAT SHE HAD BEEN BACKING OUT OF HER DRIVE WAY. WHEN A HISPANIC MAN IN A WHITE T-SHIRT AND BLACK SHORTS APPROACHED AND ASKED FOR A RIDE OR SOMETHING (RT: 1315 - 1398.) (WIRE'S CLERK TRANSCRIPTS). MS. WILLIAMS DROVE OFF GOING TO BONFARE STORE A FEW BLOCKS AWAY ON HER WAY TO THE STORE. SHE DIDN'T SEE NO OFFICERS (CT: 111) WHEN SHE CAME BACK TO HER HOUSE AFTER TURNING AROUND TO CHECK HER GARAGE DOOR. THAT'S WHEN SHE SAW A OFFICER (CT: 112.) WILLIAMS THEN SAID WHEN ASKED. "IF THE PERSON THAT DEPUTY WHIDDEN CONTACTED, HAD APPROACHED HER IN HER DRIVEWAY. THAT IF SHE WOULD BE ABLE TO IDENTIFY HIM. IF SHE SAW HIM AGAIN, SHE SAID, "NO". "I DIDN'T SEE HIS FACE", AND ALL SHE REMEMBERED SAYING WAS SOMETHING ABOUT A "WHITE T-SHIRT." SHE DENIED EVER TELLING WHIDDEN, WHAT WHIDDEN CLAIMS / SAID . . . THAT SHE SAID, "THAT THE PERSON HE STOPPED WAS THE PERSON WHO APPROACHED HER CAR". SHE SAID WHIDDEN NEVER ASKED HER THAT AFTER SHE TOLD HIM WHAT THE GUY HAD ON" WAS A WHITE T-SHIRT.". SHE SAID. ". SHE NEVER POINTED HIM OUT TO DEPUTY WHIDDON". SHE EXPLAINED HOW HER AND WHIDDON - ' BOTH GOT TO THE CORNER'. ". WHIDDON LOOKED OVER AT HER". WHIDDON THEN GOT OUT OF HIS CAR SO FAST. " HE DIDN'T ASK HER NOTHING". SHE DROVE OFF AND HE STAYED THERE WITH THE MAN (CT: 114 - 115.) SHE "DENIES EVER POINTING SCHOPPE-RICO OUT". AN SHE WAS BLOCKED OFF IN THE OF MIDDLE OF THE ROAD BY WHIDDON. (CT: 119.) SHE SAID THE. OFFICER HAD SAID SOMETHING TO HER THEN. BUT SHE COULDN'T REALLY HEAR HIM. BECAUSE WHIDDON WAS ON HER PASSENGER SIDE (CT: 122.) ALSO WILLIAMS NEVER "TOLD WHIDDON SHE SEEN ANYONE JUMPING FENCES (RT: 123.) . (WITNESS TAMPERING)" DEPUTY WHIDDON SAW LYDIA WILLIAMS AGAIN LATER THAT DAY AND SHE HAD BEEN UPSET AND FEARFUL OF RETALIATION (RT: 1531 - 1534.) DUE TO WHIDDON TRYING TO MAKE HER SAY. " SHE SAW A MAN JUMPING FENCES (RT: 1535) - (IN RE. EXHIBIT: C.) OF GEOGRAPHICAL AREA OF YAHOO NAV - TEG OF AREA

THE DISCOVERY OF A RIFLE AND CLOTHING AT 40 SHARON DRIVE. DEPUTY WHIDDON HAD ASSISTED TWO K-9 OFFICERS IN A SEARCH OF THE AREA LOOKING FOR A GUN AND DISCARDED CLOTHING (RT: 1527.) WHIDDON SAID "THEM IN THE K-9's WALKED UP AND DOWN 40 SHARON DRIVE (RT: 1519.) HE ASSERTED THAT THEY HAD SEARCHED 40 SHARON DRIVE (RT: 1529.) BACKYARD (RT: 1531). . . . . LINDA KALEKI LIVED AT 40. SHARON DRIVE (RT: 1650, 1651, 1655.) AFTER THEY RETURNED HOME IN MID-AFTERNOON AFTER 3:30 P.M. THE DAUGHTER AND SON WENT OUTSIDE BUT RETURNED SAYING THERE WAS A GUN IN THE YARD (RT: 1656 - 1657.) AND MS. KALEKI CALLED 911 (RT: 1657 - 1658), DEPUTY HUNTINGTON WAS SENT TO 40. SHARON DRIVE (RT: 1608 - 1609.) HE SAW CLOTHING UNDER BUSHES ON THE SIDE OF THE HOUSE AND A FIREARM WAS LEANING AGAINST A FENCE (RT: 1609 - 1611.)

CRIMINALIST JOHN NELSON WENT TO 40. SHARON DRIVE TO EXAMINE THE RIFLE FINDING NO ROUND IN THE CHAMBER BUT TWELVE CARTRIDGES IN THE MAGAZINE (RT: 1755 - 1756.) ACCORDING NELTON HANDLED THE CLOTHING WHICH WAS ON THE OPPOSITE SIDE OF THE FENCE FROM THE RIFLE (RT: 1758.) HE FOUND IN THE PANTS POCKET A SCRAP OF PAPER WITH THE NUMBERS "382" AND "939 - 3000" AS WELL AS A 22 CALIBER CARTRIDGES. (RT: 1762) . . . . MR. QUINTIN NERIDA. CONTRA COSTA'S COUNTY LEAD FINGER PRINT EXAMINER WHO FUSED THE 22 RIFLE FOUND AT 40 SHARON, DR. (RT: 2187.) "MR. NERIDA. DIDN'T FIND ANY PRINTS, FINGER PRINTS TO MATCH OF VALUE ON THE RIFLE AND (12.) BULLET CARTRIDGES CASINGS. (RT: 2188 - 2189 - 2190 - 2191.) AS BEING LINKED TO PETITIONER". ALSO THE HAIRS WERE OBTAINED FROM THE SWEATSHIRT AND BLACK PANTS FOUND AT 40. SHARON DRIVE (RT: 1780.) "CRIMINALIST ALEX TAFLIA COMPARED MS. SMITH'S AND MR. SCHOPPE-RICO'S HAIR WITH THE HAIRS FOUND ON THE SWEATSHIRT AND WARM UP PANTS AND BOTH WERE ELIMINATED AS A POSSIBLE SOURCE FOR THOSE HAIRS (RT: 2334 - 2335. 2336.).

JUDY SCHETTLER A (UNEXPERIENCED.) VERTERINARIAN TECHNICIAN (RT: 1963.) HER (2) YEAR OLD DOG WAS NAMED KALIROH (RT: 1964.) MS. SCHETTLER UNQUALIFIED TESTIFIED THAT THE SCENT LINE UP IN THIS CASE. HAD BEEN ON THE NIGHT OF OCTOBER. 17. 2000. AT THE SHERIFF'S DEPARTMENT IN MARTINEZ (RT: 2028 - 2029) IT INVOLVED FOUR PERSONS (RT: 2029) . . . . . DEPUTY GRUENHEID TESTIFIED THE BAG CONTAINING THE SWEATSHIRT FROM 40 SHARON DR. HAD BEEN LEFT ON HER DESK. SINCE THEY WERE BROUGHT TO HER BY SERGEANT HALE AND DETECTIVE COSTA. (RT: 2515 - 2076.) IT WAS DEPUTY EIRUE NHIED WHO CARRIED THE BAG AND PRESENTED IT TO THE DOG (RT: 2077.). "ACCORDING" TO MS. SCHETTLER. KALIROH PUT HER NOSE". IN ". THE BAG WITH THE SCENT MATERIAL AND WAS GIVEN A SEARCH COMMAND (RT: 2033.) THE DOG WENT APPROXIMATELY TEN FEET FORWARD TOWARD PERSON (4). BEFORE RETURNING TO SNIFF THE BAG AGAIN. 1810 THE DOG THEN RAN BETWEEN (2) AND (3) BEFORE GOING TO NUMBER (3). SNIFFING AND JUMPING "TOWARDS HIM" - WHICH SHOULD OF HAVE BEEN A "POSITIVE" ON

BELONGS TO THE SCENT MATARIAL RT : 1466. ) AS OF OCTOBER. 17, 2000 . MS. SCHETTLER AND KALINOH HAD PARTICIPATED IN SIXTEEN SCENT LINEUP TRAINING ( RT : 1486 - 1487. ) TRAINING LINEUPS ARE IN A CONTROLLED ENVIRONMENT. IN WHICH SOMEONE KNOWS THE CORRECT PERSON (RT : 1488 - 1489 ) OUT OF THE 90 HOUR "TRAINING." IN ONE OF THE LINEUPS IN APRIL 1999. KALIROH HAD GONE TO AN INCORRECT PERSON AND JUMPED ON THEM ". BEFORE BEING TAKEN DOWN THE LINE OF ALL THE SUBJECTS UNTIL SHE JUMPED ON THE CORRECT PERSON (RT : 2002 - 2003 ) IN ANOTHER TRAINING LINEUP IN DECEMBER 2000 . KALIROH HAD NOT TAKEN A TRAIL ( RT : 2026. ) IN TRAINING LINE UPS WERE CONSIDERED BY SCHETTLER TO BE A SUCCESS IF HER DOG JUMPED ON THE WRONG PERSON." WAS CORRECTED "BY HER" TO THEN JUMPED ON THE RIGHT PERSON ( RT : 2058 ) AS SHE PROMPT HER DOG ON SCHOPPE-RICO . . . .    MS . SCHETTLER TESTIFIED . THE SCENT LINEUPS IN THIS CASE HAD BEEN ON THE NIGHT OF OCTOBER. 17, 2000 . AT THE SHERIFFS DEPARTMENT IN MARTINEZ ( RT : 2028 - 2029 .) IT INVOLVED FOUR PERSON ( RT : 2029 . ) A DEPUTY AND TWO RESERVE DEPUTY. ACCORDING TO SCHETTLER. KALIROH PUT HER NOSE IN THE BAG WITH THE SCENT MATERIAL AND WAS GIVEN A SEARCH COMMAND (RT : 2033. ) THE VIDEO PROVES OTHERWISE THAN THIS ) . THE DOG WENT APPROXIMATELY TEN FEET TOWARD PERSON # 4 . BEFORE RETURNING TO SNIFF THE TOP OF BAG AGAIN . IBID . THE DOG THEN RAN BETWEEN NUMBER " 2 " AND " 3 ". BEFORE GOING TO NUMBER " 3 ". "SNIFFING AND JUMPING "TOWARDS HIM" WHICH WOULD HAVE BEEN A "POSITIVE" ON NUMBER " 3 ." A DEPUTY , . . . . . MS. SCHETTLER ALLEGEDLY DID NOT MOVE HER DOG OR CORRECTED IT. HOWEVER THE DOG THEN TURNED AND WENT TO NUMBER 2 . AND SNIFFED HIS LEGS ( RT : 2033 - 2036 ) THEN RETURNED HEADED BACK TO NUMBER 3 . AND STOPPED AGAIN ( RT : 2033 , 2034 - 2036 . ) FINALLY SCHETTLER COMMANDED HER DOG , RETURNING IT TO NUMBER. 2 . PUTTING UP A PAW AND JUMPING TWICE ( RT : 2034 - 2036 2637 ) AS IT DONE TO NUMBER . 3 . A FEW TIMES . HOWEVER . SCHETTLER TESTIFIED THAT THIS WAS A POSITIVE IDENTIFICATION ON NUMBER 2 . (RT : 2034 - 2042 . ) AND TOLD DEPUTY GRUENHEID THIS ( RT : 2017 - 2078 . ) , . . . .

THE VIDEO HOWEVER OF THE SCENT DISCRIMINATION IDENTIFICAT LINEUP (TRIAL COURT EXHIBIT : 61 . ) IS ILLUMINATING . MEANING THERE IS NO SOUNDS OF THE SOUGHTS OF COMMANDS , ITS DARK . AND IT DOESN'T SHOW VIDEO FOOTAGE PROOF . OF PETITIONER BEING ESCORTED TO THE LINEUP FIELD FROM THE BUILDING NOR DOES IT SHOW THE DOG , BEING ESCORTED THERE THERE IS NO PROOF OF EVERYTHING THESE OFFICIALS DESCRIBE AS OCCURRING AS THEY CLAIM THE SCENT LINEUP WAS CONDUCTED . . . . IT SHOWS DEPUTY GRUENHEID CARRYING THE PAPER BAG CONTAINING THE SWEAT SHIRT BY THE TOP CENTER . IT ALSO SHOWS THAT THE DOG DID NOT PUT HER NOSE IN THE BAG . INSTEAD PLACING HER NOSE AT THE TOP OF THE BAG " AT THE PLACE IT HAD BEEN HELD BY DEPUTY GRUENHEID . WHO ESCORTED MR . SCHOPPE-RICO THERE . AND INTERVIEWED HIM ". IT ALSO SHOWS THE DOG MEANDERING AMONG THE SUBJECTS IN THE LINEUPS ON A 2 TO 3 . FEET LENGTH LEASH . AND IT SHOWS THAT WHATEVER THE DOG DID IN THE VIDEO "! IT NEVER "TRACKED" FROM THE CENTER LIGHT- STICK TO SCHOPPE-RICOS POSITION AT LEASE 13 TIMES . UNTIL SCHETTLER SAW SCHOPPE-RICO WITH NO SHOES ON AND SAW HIM HAND CUFFED BEING ESCORTED . FROM THE PARKING LOT WHILE GETTING HER DOG OUT . ( SEE EXHIBIT : D . )

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO AMEND SECOND AMENDED PETITION .

PURSUANT TO THE POLICY RULE IN (# 15 . ) OF EXTREME LIBERALITY . IN ALLOWING AMENDMENTS THE COURT SHOULD GRANT LEAVE TO "SECOND TIME TO AMEND" AND THE "ABEYANCE TO STAY" MOTION . . . AFTER THE OPPOSING PARTY HAS ANSWERED RULE ( 15 . OF THE FEDERAL RULES OF CIVIL PROCEDURE FRAP . CFRCP . PLACE LEAVE TO AMEND WITHIN THE SOUND DISCRETION OF THE TRIAL COURT . SEE E.G. UNITED STATES VS . WEBB 665 . F. 2 d . 977 , 979 ( 9th CIR . 1981 ) . HOWEVER IN EXERCISING THAT DISCRET- ION ." A COURT MUST BE GUIDED BY THE UNDERLYING PURPOSE OF RULE ( 15 ) . TO FACILITATE DECISION ON THE MERITS . . IBID . CITING . SEE : CONSLEY V. GIBBON 355 . U.S . 41 , 47 . - 49 . ( 1457 . ) ACCORDINGLY RULE ( 15 ) . POLICY OF FAVORING AMENDMENTS TO PLEADINGS SHOULD BE APPLIED WITH . " EXTREME LIBERALITY " . WEBB . SUPRA . AT 979 . CITING ROSENBURG BROTHERS & CO . VS . ARNOLD 283 . F. 3 d . 708 , 712 . ( 4th CIR . 2001 . ) . [ LEAVE TO AMEND TO FREELY BE GIVEN WHEN JUSTICE SO REQUIRES ." AND POLICY FAVORING AMENDMENT . "TO BE APPLIED WITH EXTREME LIBERALITY . ] . . . . IN FORMAN V. DAVIS . 371 . U.S . 178 . 182 . 1162 ) THE UNITED STATES COURT SUPREME CONSIDER IDENTIFIED THE FOLLOWING FACTOR THAT A DISTRICT COURT SHOULD CONSIDER IN DECIDING WHETHER TO GRANT LEAVE TO AMEND .

IN THE ABSENCE OF ANY APPARENT OR DECLARED REASON, SUCH AS UNDUE DELAY, BAD FAITH OR DILATORY MOTIVE ON THE PART OF THE MOVANT REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENT PREVIOUSLY ALLOWED, UNDUE PREJUDICE TO THE OPPOSING PARTY BY VIRTUE OF ALLOWANCE OF THE AMENDMENT, FUTILITY OF AMENDMENT, etc.., THE LEAVE SOUGHT SHOULD, AS THE RULES REQUIRE, BE FREELY GIVEN..., Id. AT 182, ¶3. S. Ct. 227.

FURTHER, MR. SCHOPPE-RICO CONTENDS IN ALL THREE LEVELS OF THE CALIFORNIA STATE COURTS. HE WAS DENIED RELIEF. IN CALIFORNIA, PETITIONER CHALLENGE HIS CRIMINAL CONVICTION AND SENTENCE AND EXHAUSTED HIS STATE REMEDIES BY A DIRECT APPEAL TO THE STATE COURT OF APPEAL FOLLOWED BY A HABEAS CORPUS FILED IN THE CALIFORNIA STATE SUPREME COURT. AS THE FOLLOWING CASES ESTABLISHED. IN ROMAN V. ESTELLE (9TH CIR. 1946.)917 F.2d.1505. SEE ALSO. O'SULLIVAN V. BOERCKEL (1999) 526 U.S. 838, [119 S. Ct. 1728, 144. L. Ed. 2d. 1.] THIS WILL USUALLY EXHAUST STATE COURT REMEDIES. THE PETITIONER GENERALLY NEED NOT PRESENT THE SAME CLAIM TO STATE COURTS AGAIN VIA STATE HABEAS CORPUS PROCEEDINGS. BROWN, VS. ALLEN, (1953) 344. U.S. 443. [73.S.Ct.397, 47. L.Ed.469.] LOPEZ. V. SCHRIRO (2007) 491.F.3d.1029. PETITIONER PRESENTED STATE COURTS WITH "SUBSTANTIAL EQUIVALENT" OF CLAIMS PRESENTED IN FEDERAL COURT... NOR DOES THE PETITIONER NEED TO FILE A PETITION FOR CERTIORARI TO THE U.S. SUPREME COURT. FAY. V. NOIA. (1963) 372. U.S. 391 [83.S. ct 822, 9. L. Ed, 2d. 837.], CARROTHERS V. RHAY. (9TH CIR. 1979.)594. F.2d. 225....

IT IS APPARENT CLAIMS HEREIN SUBMITTED CLAIM FOUR AND EIGHT, THE FOURTH AMENDMENT FEDERAL AND STATE CONSTI- TUTION WERE COGNIZED. SEE. STONE V. POWELL. 96.S.Ct.428, U.S.(1976.) CALIFORNIA STATE COURT PROCEDURES PROVID PETIT- IONERS A FULL OPPORTUNITY. FOR FULL FAIR LITIGATION OF ANY 4TH AMENDMENT CLAIM. STONE SUPRA. HELD IN THESE CASES THIS COURT HAS HELD THE EFFECUATION OF THE 4TH AMENDMENT AS APPLIED TO THE STATES THE 14TH AMENDMENT REQUIRES THE GRANTING OF HABEAS CORPUS RELIEF OBTAINED IN AN ILLEGAL SEARCH AND SEIZURE. WHEN A PRISONER HAS BEEN CONVICTED IN STATE COURT ON THE BASIS OF EVIDENCE OBTAINED ILLEGALLY. SINCE THESE AMENDMENTS WERE HELD IN: MAPP V. OHIO. 367. U.S. 643. 81.S.Ct. 1684.6.L.Ed 2.d.168. REQUIRES THIS COURT AND STATE COURT TO EXCLUDE EVIDENCE AT TRIAL OBTAINED IN SUCH AN ILLEGAL BASIS, AND A REVERSAL OF CONVICTION UPON DIRECT REVIEW OF CLAIMS FOUR AND EIGHT ATTACHED HEREIN, ( INFRA. ).

TRIAL COUNSEL WAS INEFFECTIVE IN PRESENTING CLAIMS. FOUR AND EIGHT. UNDER EVITTS VS. LUCEY'S. INFRA. - GORDON VS. DURAN. INFRA AND STRICKLAND'S INFRA ..., QUOTING KAUFMAN V. UNITED STATES. 394. U.S. 217. 277. 89. S. Ct. 1068, 1é TH. L. Ed. 2d. 277. (1969.) HELD THEY REJECT THE RATIONAL NOTING THAT THE FEDERAL HABEAS REMEDY'S EXTEND TO STATE PRISONERS ALLEGING UNCONST- ITUTIONALITY OBTAINED EVIDENCE THAT WAS ADMITTED AGAINST THEM AT TRIAL. ILLEGALLY ARE COGNIZED AN COGNIZABLE. SEARCH AND SEIZURE CLAIMS IN HABEAS PROCEEDINGS. AS PETITIONERS. CITING: MANCUSI V. DEFORTE. 392. [872]8. U.S. 480] U.S. 364. 88. S. Ct. 2120. 20. L.Ed.2.d. 1154 (1968.) CARAFAS V. LAVALLES. 391.U.S. 234. 85: THE FOURTH AMENDMENT FEDERAL AND STATE ASSURES THE RIGHTS OF THE PEOPLE TO BE SECURED IN THEIR PERSONS. HOUSES. PAPERS AND EFFECTS. AGAINST UNREASONABLE SEARCHES AND SEIZURES THE AMENDMENT WAS PRIMARILY A REACTION TO THE EVILS ASSOCIATED WITH THE USE OF THE GENERAL WARRANT IN ENGLAND AND WRIT OF ASSISTANCE IN THE COLONIES. STANDFORD V. TEXAS. 379.U.S. 476, 481, 48, S. Ct. 85, S. Ct. 506, 504, 511, 13. L.Ed. 2.d. 431. (1965.), FRANK V. MARYLAND. SUPRA. AND WAS INTENDED "TO PROTECT" THE SANCTITY OF A MANS. HOME AND THE PRIVELEGES OF LIFE. BOYD V. UNITED STATES. 116. U.S. 616. 630, 105. Ct. 524, 532. 29. L.Ed. 746. 1886.

DUE TO COUNSELS UNPROFFESSIONAL ERRORS. SCHOPPE-RICO WOULD HAVE PREVAILED ON APPEAL OR TRIAL. MILLER V. LUCEY ( INFRA) THEY ALL FAILED TO LITIGATE CLAIMS ∽ . SEE IN RE: HARRIS (1993) 5. CAL. 4TH. 813. E.21. CAL. RPTR. 2d. 373. WERE NOW SCHOPPE-RICO PRESENTS NEW FACTS. HEREIN THAT "ARISES" OF NEW LAW AND EVIDENCE BEING LITIGATED THAT WAS NOT PREVIOUSLY AVAILABLE OR NOT IN THE RECORD ON APPEAL THESE NEW FACTS. LAW AND EVIDENCE MAY BE NOW ALLOWED FOR PETITIONER TO LITIGATE THOSE ISSUES IN RE. GAY. (1998) CAL. 4TH 771. [80 CAL. APR. 2d. 765.] THESE NEW ISSUES BEING NOW LITIGATED ARE ISSUES. CLAIMS PREVIOUSLY NOT PRESENT ON THE RECORD.

FURTHER MORE PETITIONER CONTENDS. GROUNDS /CLAIMS. NINE, TEN, ELEVEN, TWELVE AND THIRTEEN, WERE RAISED ON DIRECT APPEAL. AND WERE EXHAUSTED IN ALL THREE STATE COURT LEVELS. APPELLATE COUNSEL PRESENTED THESE CLAIMS TO THE SUPERIOR COURT. APPEALS COURT AND STATE SUPREME COURTS. SO DID PETITIONER ON HABEAS CORPUS AFTER COUNSEL WAS

KYLE GEE WAS DENIED RELIEF OCTOBER 18, 2006. HE ALSO MAILED ME A LETTER TELLING ME WHAT HABEAS STEPS TO TAKE NEXT. SEE LETTER (EXHIBIT: F. PG. 15) I FOLLOWED HIS ADVISE AND FILED MY COLLATERAL ATTACKS IN STATE COURTS ON HABEAS, SO THE SUBSTANCE OF THESE FEDERAL CLAIMS. HEREIN ONE THROUGH THIRTEEN, WERE "FAIRLY PRESENTED" TO THE STATE COURTS AS REQUIRED. PICARD V. CONNER. (1971) 404.U.S. 270, 275, 277, 278. THESE ISSUES WERE PRESENTED IN AN ENSURED MANNER AND HAVE BEEN "FEDERALIZED".

THIS MEANS THAT THE STATE COURT AND FEDERAL ACTIONS SHOULD EXPLICITLY SET FORTH ALL POTENTIAL FEDERAL CLAIMS AND THE SPECIFIC FACTS UPON WHICH THEY ARE BASED. DUNCAN V. HENRY (1995) 513 U.S. 364, 366 [115. S.Ct. 887, 130 L.Ed. 2d. 865.] ALSO PETITIONER TOOK EXTRA PRECAUTIONS TO AVOID THE POSSIBILITY OF FAILING TO FULLY EXHAUST A CLAIM, BY DIRECTLY STATING THAT THE CLAIMS ARE FEDERAL IN ALL THE STATE COURT BRIEFING. ( PETERSON V. LAMPERT (9th CIR. 2002 ) 277. F.3d 1073. SCHOPPE-RICO HAS MADE IT CLEAR THAT ALL HIS CLAIMS ARE FEDERAL. NOT JUST BY CITING STATE COURT OPINIONS THAT APPLY FEDERAL LAW. BUT BY RELYING ON FEDERAL COURT CASES ANALYZING THE PERTINENT CONSTITUTIONAL ISSUES ;

• RELYING ON STATE COURT CASES ANALYZING THE CONSTITUTIONAL ISSUES IN SIMILAR FACT SITUATIONS;

• ASSERT CLAIMS IN THE PARTICULAR TERMS RELEVANT TO A SPECIFIC CONSTITUTIONAL RIGHT AND BY CITING THE GOVERNING FEDERAL CONSTITUTIONAL OR STATUTORY PROVISIONS ; AND

• ALLEGING A PATTERN OF FACTS THAT IS WELL WITHIN THE MAINSTREAM OF CONSTITUTIONAL LITIGATION. DAVE V. ATTORNEY GENERAL OF STATE OF NEW YORK (1982) 696 F.2d. 186, 194.

SO THE FACTUAL BASIS FOR ALL THE CLAIMS HEREIN SHOULD BEEN FAIRLY PRESENTED IN THE STATE COURTS. NOW IF THE FEDERAL HABEAS PETITION CONTAINS FACTS DIFFERENT FROM THOSE PRESENTED IN STATE COURT. THE FEDERAL COURT SHOULD THEN GRANT AN/THE "ABEYANCE AND STAY" MOTION AND UNDER RHINE V. WEBBER SUPRA -TO CURE THE DIFFICIES. IN THE EXHAUSTION REQUIREMENT. HOWEVER THE COURTS ON HIGH HAVE HELD, A PETITIONER MAY PROVIDE FURTHER FACTS TO SUPPORT A CLAIM ALREADY CONSIDERED BY THE STATE COURTS. VASQUEZ. V. HILLERY. (1986.) 474. U.S. 254. [106 S.Ct. 617, 88. L.Ed. 2d. 598.] ... AS WELL THE STATE CAN WAIVE THE EXHAUSTION REQUIREMENT BY EXPRESSLY CONSENTING TO A HEARING OF THE CASE WITHOUT EXHAUSTION 28. U.S.C. § 2254. (b)(2) AND (3) ALSO THE COURT CAN NOT DENY THE CLAIM ON THE MERITS UNLESS IT IS PERFECTLY CLEAR THAT THE CLAIM IS FRIVOLOUS. CASSAT V. STEWART ( 9th CIR. 2005 ) 406. F.3d. 614.

THE FEDERAL BASIS OF ALL THIRTEEN CLAIMS HEREIN, ARE IN ACCORDANCE WITH STATE AND FEDERAL LAW. AMENDMENTS AND CONSTITUTIONAL VIOLATIONS. OF PETITIONERS RIGHT. THERE IS MULTIPLE OF PREJUDICAL ERRORS AND OTHER ERRORS THAT DENIES PETITIONER LIBERAL RIGHTS TO A FAIR TRIAL ... COUNSELS UNPROSSENAL PERFORMANCE IS THE REASON PETITIONERS SUBSTANTIAL RIGHT WAS DENIED. BOTH TRIAL AND APPELLATE COUNSEL AS FAILED TO PROVIDE AN INTELLECTABLE RECORD. THEREFORE PETITIONERS MOVE THE COURT TO RULE IN HIS FAVOR TO RELITIGATE ALL THESE ISSUES. ROSE V. HODGES. SUPRA.

MR. SCHOPPE-RICO HAS FINALLY RECOGNIZED. THE COURTS IMPOSITION ON THESE CLAIMS. TO CLEAR-IF-THESE ISSUES ON THESE CLAIMS. AS TO CLAIMS FOUR AND EIGHT. UNDER THE FOURTH AMENDMENT, "IF THE COURT DOESN'T FIND IN THE "FIRST AMENDED PETITION" THE COGNIZABLE BASIS FOR RELIEF FOR THOSE CLAIMS", THEN THEY WILL BE DISMISSED. WITHDRAWN. SO THIS HONORABLE COURT MAY PROCEED ON CLAIMS. ONE, TWO, THREE, FIVE, SIX AND SEVEN IN THE PETITION. THE ONLY WAY TO CURE THIS COGNIZABLE ISSUE IS TO RE-EXAMINE THE RECORD ON CLAIMS FOUR AND EIGHT. AND IF PETITIONER HAS, "COGNIZED CLAIMS FOUR AND EIGHT." THEN HE'LL WISH TO PROCEED ACTION ALSO ON THESE CLAIMS. IF THE COURT FINDS THEY WEREN'T COGNIZED THEY ARE TO BE DISMISSED AND WITHDRAWN SO WE MAY PROCEED ON CLAIMS ONE THROUGH SEVEN. ALSO FEDERAL COURTS MAY GRANT REQUEST FOR STAY AND ABEYANCE OLIVERA V. GIURBINO ( 9th CIR. 2004) 371 F.3d. 569, TO CURE ISSUES OF THE EXHAUSTION REQUIREMENTS TO BE MEET. AND NOT MIS-INTERPRET PETITIONER. "SECONDLY, IF THE HONORABLE COURT DISMISSES CLAIMS NINE THROUGH THIRTEEN FOR ANY REASON UPON RE-EXAMINATION OF THEM, ALSO THEY ARE TO BE WITHDRAWN AND THIS ACTION MAY, WILL SIMPLY PROCEED BASED ON CLAIMS ONE THROUGH SEVEN. AS WELL THE SAME GOES FOR CLAIM FOURTEEN IF MOTION "NOT GRANTED" ITS WITHDRAWN.
— SO WE MAY PROCEED —

GROUND ONE:

DEFENSE COUNSEL MUST AVOID CONFLICT OF INTEREST THAT INFRINGES OR
DENIES PETITIONER CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

MR. SCHOPPE-RICO CONTENDS THAT HIS SIX AMENDMENT CONSTITUTIONAL RIGHTS BOTH OF STATE
AND FEDERAL WERE VIOLATED, DUE TO ACTUAL CONFLICTS OF INTEREST WICH AFFECTED
COUNSELS PERFORMANCE AND REVERSAL IS REQUIRED UPON REPORTING THIS, COUNSEL MIS REPRE-
SENTATION OF DEFENDANT'S CULPABILITY INORDER TO PROTECT OTHERS, THIS VIOLATING SCHOPPE-RICO'S
RIGHTS. UNDER PEOPLE V. ALLEN, 831, F.2d. 1487, (9TH CIR. 1987), CITING STRICKLAND V. WASHING-
TON 466, U.S. 668, 692 (1984). WHICH DENIED SCHOPPE-RICO TO A FAIR AND IMPARTIAL
TRIAL GUARANTEED UNDER THE STATE AND FEDERAL CONSTITUTION AT SENTENCING, DISPOSITION
FOR A TRIAL. SCHOPPE-RICO FILED A MARSDEN MOTION (RT: 2536) ON RECORD WITH AN
MARSDEN DECLARATION AT: (C.T: 1456-1457.) AT SENTENCING COUNSEL ADMITTED TO THE
FOLLOWING FOR RECORD: COLLOQUY AS FLLOWS. ___ [DEFENSE COUNSEL] "I MEAN BEFORE APRIL 11TH.
THROUGH THE PENDENCY OF THE CASE. HE'S GIVEN ME INFORMATION ABOUT FINDING CERTAIN WITNESSES
THAT WE HAVEN'T FOUND. ▢ . SPECIFIC PEOPLE [YES], I HAD FIRST NAMES. (ATTEMPTS MADE)
[DEFENSE COUNSEL] I HAD AN INVESTIGATOR GO TO THE HOUSE THAT THE PERSON WAS SUPPOSE TO
LIVE AT MANY OF TIMES. KNOCK ON THE DOOR, WAIT OUTSIDE. GO THERE WITH JENNIFER
SMITH. ACTUALLY WHO AT THE TIME WAS TRYING TO HELP US LOCATE THE PERSON AND WE WERE
NEVER ABLE TO FIND HIM..... (NOW THE FOLLOWING STATEMENT IS WERE CONFLICT OF INTEREST
ARISES WITH COUNSEL AN SCHOPPE-RICO.) SHE STATES THIS PERSON WAS TO TESTIFY HE HAD
SCHOPPE-RICOS GUN. (RT: 2544). THIS STATEMENT IS A MIS-REPRESENTATION OF SCHOPPE-RICO'S
CULPABILITY. BY HER CLAIMING ITS PETITIONER GUN AT (RT: 2544) I NEVER TOLD THAT. AND SHE
DOING IT INORDER TO PROTECT OTHERS IN VIOLATION OF SCHOPPE-RICO'S SIXTH AMENDMENT CONSTI-
TUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. COUNSEL WAS WELL AWARE OF SCHOPPE-RICO'S
GANG ENHANCEMENTS AND GANG EVIDENCE PROSECUTION WAS USING. PLUS WITH INFORMATION SHE
OBTAINED FROM PETITIONER THAT THERE'S OTHER AFFILIATES OR MEMBER OF THIS GANG EQUALLY RESPONSIBLE
THE RON HUPPERT FAILED THOUROUGHLY TO EXPLAIN (RT: 2109) HOWEVER HE DEEMED MATTHEW SPURLING,
HENRY GRENADOS, AND DAVID STOKES. VALIDATED MEMBERS OF THE NORTENOS AND EASTBAY LOCOS
AND THAT THE THREE MEN HAD BEEN CONVICTED OF FELONY ASSUALT (RT: 2123 -2124.) AS IN U.S. VS.
ALLEN SUPRA. COUNSEL FELL SHORT OF EFFECTIVE ASSISTANCE OF COUNSEL. WITH THE CONFLICT OF
INTEREST IN PROTECTING THE "DRUG RING" [GENERALS] SMUGLING OPERATION. THE DEFENDANT
ALLEN, WAS ORIGINALLY THOUGHT ALLEN WAS ONE OF THE THREE PRINCIPALS OF THE OPERATION AN
IT WAS CONCEDED ALLEN ACTED AS "ONLY "AN "CARTAKER." OF THE RANCH. AND TOOK HIS ORDER
S. FROM CO-DEFENDANTS (U.S. 1496). CHARLES MINNIG, WERE THE CODEFENDANTS WHO HAD
INSTRUCTED HIM BEFORE THE OPERATION TO CONTACT OTERI & WEINBERG. IF CAUGHT, ONCE
NOTIFIED ATTORNEY JAMES LAWSON OF THE FIRM FLEW TO OREGON, LAWSON TOLD THE GROUP

OF (IT) NOT TO TALK TO ANYONE AND THAT YOUR FRIENDS ARE TAKING CARE OF YOU [AND] WILL BE PROVIDING FOR YOU. ITS A KNOWN FACT THE MEN WHO WOULD NOT BE INDICTED AS THE PRINCIPAL GENERALS OF THE SMUGGLING OPERATION DELIVERED LARGE SUMS OF CASH TO THE OFFICES OF OTERI & WEINBERG, AND IN RETURN HE PROTECTED THEM AND USED ALLEN AS AN SCAPEGOAT. . . . . . _____ IN MR. SCHOPPE-RICO'S CASE THE SITUATION IS SIMILAR. BASED ON HOW THE EAST BAY LOCOS. NORTENO GANG OPERATE. AS THE ALIEN SMUGGLING OPERATION IN ALLENS SUPRA: WERE THE PRINCIPAL (3) OF THAT GANG USED PETITIONER AS THERE SCAPEGOAT. THE NORTENO GANG ASSOCIATES AND MEMBERS, TAKE ORDERS AND ARE ORGANIZED BY NUESTRA RAZA. DISRUPTIVE GROUP AND NORTHERN STRUCTURE PRISON GANG, WHO WORK IN CONCERT WITH AND ARE SUBSERVIENT TO THE NUESTRA FAMILIA. LEADERS AND GENERALS, DAVID STOKE, MATTHEW SPURLING AND GRENADOS HAVING BEEN CONVICTED OF FELONY ASSUALT [RT: 2123-2124] ARE ASSOCIATES OR MEMBERS. RESPONSIBLE. COUNSEL DEFENDING THEM WITH DAN . . . . ALSO COUNSEL WAS INEFFECTIVE IN PRESENTING EVIDENCE THAT MR. SCHOPPE-RICO WAS. UNDER THE INFLUENCE OF METHAMPETAMINES AND ALCOHOL. THAT CAME BACK IN HIS BLOOD TEST. (HIGH DOSAGES). THAT WERE PERFORMED ON HIM AFTER HIS ARREST ON OCT. 17. 2000 BY NURSE VICKI. SHE ALSO INEFFECTIVELY EXCLUDED IT A TRIAL (RT: 587) AN FAILED TO USE THE REQUESTED INTOXICATION DEFENSE. OF DEFENDANTS MENTAL CAPACITY GRAVELY DISABLED. WELF & I.IC. 85150. §5170 INTENT IF THE DEFENDANT SHOWS AS EVIDENCE AT (R.T: 587) OF MENTAL ILLNESS THAT HE LACKED THE INTENT TO KILL. PUBLIC DEFENDER SHOULD OF TRY TO GET THE CRIME REDUCED TO INVOLUNTARY MANSLAUGHTER. PEOPLE V. SAILLE. (1991) 54. L. ED. 1103. Z. CR. 2. D. 364. SIMILAR EVIDENCE OF VOLUNTARY INTOXICATION CAN NEGATE THE INTENT TO KILL. PEOPLE V. WEBBER (1991) 228. CA. 3. D. 1146. 1162. 279. CR. 437. 445. (SECOND DEGREE MURDER REVERSED BECAUSE TRIAL COURT REFUSED REQUESTED INVOLUNTARY MANSLAUGHTER INSTRUCTIONS.) BASED ON SUBSTANTIAL EVIDENCE. OBJECTIVE STANDARD OF PENAL CODE § 192. OR IMPERFECT. SELF-DEFENSE DOCTRINE, OF PEOPLE V. FLANNEL (1979) 25. CAL. 2. 3D. 660. 160. CR. 84. THE FLANNEL. DIMINISHED CAPACITY, OR UNDER. IN RE: CHRISTIAN, S. (1994) 7. C. 4TH. 768. 774. 30. CR. 2D. 23. PER. PEN. C. §220. SUCH EVIDENCE IS ADMISSIBLE THE DEFENDANTS UNCONSCIOUSNESS THE CRIMINAL NEGLIGENCE REQUISITE TO A FINDING OF INVOLUNTARY MANSLAUGHTER IS ESTABLISHED BY HIS ACT OF VOLUNTARY INTOXICATION . . . . AN/OR PEN. C. 226 ) . . . . PEOPLE V. OCHOA SUPRA/INFRA. SUCH EVIDENCE IS ADMISSIBLE AT ISSUE OF DEFENDANTS PREMEDITATED. DELIBERATE OR HARBORED EXPRESS MALICE AFORE THOUGHT. . . . . . HOWEVER MR. SCHOPPE-RICO, CONTENDS. UNDER. STRICKLAND SUPRA PRINCIPLES. CITED RE. UNITED STATES V. JOHNSON. 327. U.S. 106. 112. 66. S. CT. 464. 466. 90. L. ED. 562. (1946) AN INEFFECTIVE ASSISTANCE CLAIM ASSERTS THE ABSENCE OF ASSURANCE THE PROCEEDING IS RELIABLE SO FINALITY CONCERNS ARE WEAKER AN APPROPIATE STANDARD, OF PREJUDICE THE RESULT OF THE PROCEEDING CAN BE RENDERED UNRELIABLE AND

23.

HENCE THE PROCEEDING ITSELF UNFAIR. EVEN IF THE ERRORS OF COUNSEL CAN'T BE SHOWN BY PREPONDANCE OF EVIDENCE TO DETERMINE OUTCOME, THE APPROPRIATE TEST FOR PREJUDICE, FINDS ITS ROOTS IN THE TEST FOR MATERIALITY, OF EXCULPATORY EVIDENCE/INFORMATION NOT DISCLOSED TO DEFENSE BY PROSECUTOR. UNITED STATES V. AGURS. 427. U.S. AT 104.112.113, 96. S. C.t. 2397- 2401- 2402. IN THE TEST FOR MATERIALITY OF TESTIMONY MADE UNAVAILABLE TO THE DEFENSE BY GOVERMENT.   IN RE RILEY V. PAYNE. 352. F.3d, 1313, (CA.9 WASH. 2001) HELD IT WAS "UNREASONABLE OF COUNSEL TO NOT TO INTERVIEW DEFENDANTS ASSOCIATE, IN PROSECUTION FOR ASSUALT. UNDER (THE STRICKLAND TEST") ASSAULT WITH A DEADLY WEAPON WHO WOULD OF BEEN A MATERIAL WITNESS TO HIS/RILEY DEFENSE OF SELF DEFENSE . . . . . . DEFENDANTS ASSOCIATES NEVER CAME FORWARD DUE TO HIS REPUTATION AND WARRANTS THE COURT REVERSED UPON SEEING AFFADAVITS, AND HELD IT WAS ERROR OF COUNSEL NOT TO INVESTIGATE PETITIS/MATERIAL WITNESSES . . . . . THE SAME IS IN SCHOPPE-RICOS CASE, SHE FAILED TO INTERVIEW DAN. OWNER OF RED CRYSLER, ALSO COUNSEL FAILED TO INTERVIEW NORTENO EAST BAY LOCOS MEMBERS OF MATERIAL WITNESSES, WHO WOULD OF SUPPORTED PETITIONERS ARGUEMENTS, STRICKLAND SUPRA - HELD, ITS COUNSEL DUTY TO MAKE REASON- ABLE INVESTIGATIONS OR TO MAKE A REASONABLE DECISION THAT MAKE INVESTIGATIONS UN- NECESSARY, ITS HELD THAT A LAWYER WHO FAILS TO INVESTIGATE AND TO INTRODUCE INTO EVIDENCE EVIDENCE THAT DEMONSTRATES HIS CLIENTS FACTUAL INNOCENCE OR THAT RAISES SUFFICIENT DOUBT, AS TO THE QUESTION TO UNDERMINE CONFIDENCE IN THE VERDICT, RENDERS DIFFICIENT PERFORMANCE. I.D. AT 318. - A -(3).(4)(5) (314),   COUNSEL FAILURE IN SCHOPPE-RICOS CASE PRESENTING EVIDENCE HAND/ARM INJURIES IS DIFICIENT PERFORMANCE. INVESTIGATING DAN, AND JENNIFER. SMITH. IS DIFICIENT, PLUS. PETITIONER ALLEGES HIS LAWYER ENDEAVORED TO PREVENT HIM FROM DISCLOSING THE IDENTITY OF THE TRUE EAST BAY LOCOS NORTENOS GENERALS, OF THE CONSPIRACY AND TO PROTECT THEM CERTAIN DEFENDANTS, 2) FAILED TO CORRECT THE ERRONEOUS CULPABILITY ASSESSMENT BY DEFENSE COUNSEL THAT INACCURATELY INFLATED SCHOPPE-RICOS CULPABILITY AND DEFLATED THAT OF DAN. DAVID STOKE. M. SPURLING AND GRENADOS, AND 3) INSISTED, UPON IMPLIED THREAT OF FORCE HE NEVER REPORTS COUNSEL TO COURT. TO TESTIFY OR AND TO CONFRONT- ATION 4.) SUBORNED PERJURY, TO HIS DETRIMENT. AND 5.) PREVENTED HIM FROM TAKING AN DEAL. AN IN SHORT MADE ME TAKE A FALL FOR JENNIFER SMITH. AND DAN AND OTHER EAST BAY LOCOS MEMBERS/ASSOCIATES, NO ONE SHOULD BE REPRESENTED BY AN ATTORNEY WHO IS MAKING PETITIONER THE FALL GUY BY DESIGN, UNITED STATES V. DE BERRY, 487. F. 2d. 448. 454, (2ND CIR. 1973) COUNSEL WAS ENFFECTIVE ALL LONG, DISAGREEING WITH ME, MAKING PROMISES. NEVER FILED MOTIONS ECT. (SEE CT! 1456-1457) OF ALL SHORT COMMINGS,

GROUND TWO:

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN SHE INTENTIONALLY FAILED TO PROPERLY PRESENT A DEFENSE ON PETITIONERS HANDS, INJURIES, OR HIS DISABILITIES. (IIE) INCLUDING ON FAILING TO ASK OR GET ANY DEALS OR PLEA BARGAINS.

MR. SCHOPPE-RICO CONTENDS THAT THIS UNDER THE FEDERAL AND STATE AMENDMENT SIX, U.S. CONSTITUTION VIOLATED HIS RIGHT UNDER U.S. V. BLAYLOCK, 20, F. 3d, 1458, (CA. 9. CAL. 1994.). PUBLIC DEFENDERS HAS A SIXTH AMENDMENT DUTY AND RESPONSIBILITY TO PROPERLY INVESTIGATE POSSIBLE MITIGATING AND EXONERATING EVIDENCE. IN RE: STRICKLAND -466, U.S. AT 688. 104. S. Ct. 2052 COUNSEL HAS DUTY TO MAKE REASONABLE INVESTIGATIONS OR TO MAKE A REASONABLE DECISION THAT MAKES PARTICULAR INVESTIGATIONS UNNECESSARY, Id AT. 691, 104, S. Ct. 2052. WE HAVE HELD THAT A LAWYER WHO FAILS TO ADEQUATELY TO INVESTIGATE AND TO INTRODUCE INTO EVIDENCE, EVIDENCE THAT DEMONSTRATES HIS CLIENTS FACTUAL INNOCENCE OR THAT RAISES SUFFICIENT DOUBTS AS TO THE QUESTION TO UNDERMINE CONFIDENCE IN THE VERDICT, RENDERS DEFICIENT PERFORMANCE." AVILA. V. GALAZA, 297. F. 3d. 911, 919, (9th CIR. 2002) (QUOTING) HART V. GOMEZ. 174. F. 3d 1067. 1070, (9th CIR. 1999). SEE LORD V, WOOD -184, F. 3d, 1083, 1096, (9th CIR. 1999) (COUNSELS PERFORMANCE WAS DEFICIENT, WHERE COUNSEL FAILED TO INTERVIEW THREE WITNESSES WHO HAD MATERIAL EVIDENCE AS TO THERE CLIENTS INNOCENCE.) IN RILEY V. PAYNE. 352. F. 3d 1313, (C.A. 9 WASH. 2003). THUS THE RULE OF STRICKLAND BEFORE LIMITING INVESTIGATION, REQUIRES A "REASONABLE PROFESSIONAL JUDGEMENT, THE GOVERMENT HAS PROVIDED NO TESTIMONY OF COUNSELS AS TO WHY HE DID NOT CONTACT WITNESSES, PUBLIC DEFENDER, NEVER HAVING INTERVIEWED WITNESS, PUBLIC DEFENDER COULD NOT HAVE DETERMINED WHAT WITNESS PETITIS. WOULD HAVE SAID.") . . . . . . . . . PETITIONER CONTENDS HIS RIGHTS WERE VIOLATED WHEN ANY EVIDENCE DEMONSTRATING PROOF OF HAND / ARM INJURIES AND FINGERS, OF PHYSICAL IMPAIRMENT WERE NOT USED IN MR. SCHOPPE-RICOS DEFENSE. DENIED HIM HIS SIXTH AMENDMENT FEDERAL AND STATE CONSTITUTIONAL RIGHT. PROOF AS FOLLOWS, . . . . . . . ON OCTOBER. 17, 2000, SCHOPPE-RICO WAS PHYSICALLY DISABLED. SEE COURT EXHIBIT # 7. PAGES, 1, 2, 3, FROM TRIAL.) ON SEPTEMBER, 20th 2000. SCHOPPE-RICO WAS SHOT, (RT's 2281-2282.) DEPUTY SIMPSON SAW, SCHOPPE-RICO, INJURIES. HE SAID, HE HAD SUSTAINED A SMALL. CALIBER. GUN SHOT WOUND TO HIS RIGHT PALM PRIMARILY, THAT TRAVELED UP INTO HIS ARM AND WRIST, NO EXIT POINT WAS SEEN (RT, 2283.) THIS WAS SEP. 20th. 00 (RT, 2284.), SCHOPPE-RICO. WAS TAKEN TO CONCORDS, MT. DIABIC JOHN MUIR HOSPITAL, WERE EMERGENCY ROOM ON CALL, DOCTOR. M.D. SOCCO, OPERATED ON. SCHOPPE-RICO HE IMPLANTED A FIXATION SCREW REPLACING THE WRIST SHATTERED BONE. THE FIXATION SCREW WAS POSITION IN THE RADIAL STYLOID BONE. INSERTED INTO THE SCAPHOID WRIST JOINTS BONE, THIS WAS APPROXIMATELY TWO AND HALF WEEKS, BEFORE SCHOPPE-RICOS ARREST WERE UPON LAWYERS, PROSECUTORS AND POLICE AND DETECTIVES KNEW THAT ON OCTOBER. 17, 2000, HE WAS DISABLED AND PHYSICALY IMPAIRED (SEE EXHIBIT. _A_. ) TYPE OF INJURIES AND REPORTS. . . . THE EXCLUSION OF THIS EVIDENCE DEMONSTRATING PHYSICAL IMPAIRMENT IS OF GRAVE ERROR. AND PREJUDICAL. WHERE PROSECUTORS VERSION OF EVENTS RELIED ON DEFENDANTS PHYSICAL

ABILITY TO PERFORM CERTAIN ACTS. THAT AT THE TIME, MR. SCHOPPE-RICO, WAS VERY UNABLE TO PERFORM. THESE ACTS WILL CONSIST OF SCHOPPE-RICO, 1.) WRONGLY ACCUSSED OF PUNCHING HIS GIRLFRIEND WITH INJURED HAND/ARM. 2.) OF MAKING THREATS OF GETTING HIS GUN AND CARRYING IT, WITH HIS DISABLED HAND/ARM, 3.) AND, AS ALBERT MELTON AND DISTRICT ATTORNEY ALLEGES, PULLING THIS RIFLE OUT IN ANY EVENT AND FIRING THIS, ODD RIFLE THAT ONLY WORKS IN A CERTAIN WAY. THEN CLIMING OVER A RETAINING WALL UNDRESSING, THEN JUMPING OVER FENCES. IF COURT FINDS MEDICAL RECORDS AND INJURY HAS FOUNDATION AND RELEVANT EVIDENCE, THAT COUNSEL WAS INEFFECTIVE IN PRESENTING IT, "THEN REVERSE CONVICTION, OR REMAND IT.". BECAUSE MEDICAL RECORDS, DOCTOR REPORTS AND DOCTOR AN NURSES TESTIMONY, WILL CONTRADICT THE OFFICERS STORY, WITNESSES AND DISTRICT ATTORNEYS VERSION OF EVENTS OF OCTOBER 17, 2000, WHEN PRESENTED, THIS PROOF OF GUNSHOT INJURY WILL ESTABLISH IN COURT. THIS EVIDENCE OF SCHOPPE-RICOS HAND/ARM INJURY WOULD OF HAVE MADE IT IMPOSSIBLE, DIFFICULT FOR HIM TO HAVE RUN AND PUNCHED JENNIFER SMITH, AND DRAGED HER, AS ANITA THOMPSON AND HER TESTIFIED AT (RT: 1880 THROUGH 1920), AND AT (RT: 1427-1429, ), TO 1450 ). IT WOULD ALSO WOULD OF BUTTERSS COUNSELS ARGUEMENT THAT MS. SMITH ONLY SAID THOSE LIES TO HELP THE PROSECUTOR OUT IN EXCHANGE FOR HER RELEASE. AND DAMIAN URIBE. TESTIFIED. SHE NEVER WAS HIT OR THREATEN (RT: 2103). AND THAT WAS REASONING ON THE ELEMENT OF OVER EXCESSIVE CHARGE OF 1ST DEGREE, AND RELEVANT TESTIMONY OF ALL DEFENDANTS FORENSIC EVIDENCE EXONERATING HIM. WITNESSES AND POLICE OFFICERS TESTIFIED THEY LINKED SOME DISCARDED CLOTHING NEXT TO THE GUN TO SCHOPPE-RICO, THROUGH A ILLEGAL SEARCH AND SEIZURE. AN A SCENT-DOG DESCRIMINATION LINE UP,,,,, PER FEDERAL RULE EVID, RULE 401, 2.8, U.S, C.A, MR. SCHOPPE-RICO, HAS TRIED TO HAVE COUNSEL INTRODUCE THIS EVIDENCE OF MEDICAL RECORDS, SHOWING THAT SCHOPPE-RICO WAS RECEIVING TREATMENT FOR HAND/ARM INJURY AT THE TIME OF HIS ARREST AND WAS ON PAIN, VICODIN MEDICATION. SCHOPPE-RICO CONTENDS THAT THE MEDICAL RECORDS, AND INJURY EVIDENCE WOULD OF HAVE UNDERMINED, THE CREDIBILITY OF THE OFFICERS, AND BIAS WITNESSES AND CAST DOUBTS ON THEIR VERSION OF THE EVENTS, BECAUSE THE RECORDS SHOWS THAT HE COULD NOT HAVE RUN AFTER MS. SMITH, PUNCH HER, GRABED AND CARRIED A GUN/RIFLE AND SHOT NICK TAYLOR THEN JUMPED OVER RETAINING WALLS, FENCES, AN DISCARDING WEAPON AND CLOTHING AS THE OFFICERS, AND DISTRICT ATTORNEY ALLEGES, AND COERCED WITNESSES TO,,,,,, THE COURT, LAWYERS AND PROSECUTOR ILLEGALLY WITHHELD OR EXCLUDED THESE MEDICAL RECORDS AND FACTS TO GAIN TACTICAL ADVANTAGE TO WRONGLY CONVICT PETITIONER, IN VIOLATION OF HIS RIGHTS,

THE MEDICAL RECORDS IN QUESTION IF OBTAINED BY ENEFFECTIVE ASSISTANCE OF COUNSEL OR HANDED OVER IN DISCOVERY BY THE PROSECUTOR, WOULD OF CONTAINED A REPORT BY, SCHOPPE-RICOS DOCTOR, MD, MR. SOCCO, OF CONCORDS MT. DIABLO HOSPITAL THAT AFTER SURGERY ON SEPTEMBER 20TH 2000 JUST WEEKS, BEFORE SCHOPPE-RICOS ARREST. THE RECORD SHOWS, MR. SCHOPPE-RICO, RIGHT HAND FINGERS, WRIST UP TO ELBOW OF ARM, WAS WEAKEN PARLYZED, NUMB SWOLLEN, AND BONES SHATTERED WITH FIXATION SCREW IMPLANTED IN WRIST, FROM FOREARM, BONE TO HAND BONES. AS A RESULT OF A GUN SHOT WOUND ON SEPTEMBER, 20TH, THAT AFTER THE OPERATION, THE DOCTOR PRESCRIBED, VICODIN, MOTRIN MEDICATION FOR 60 DAYS FOR PAIN

ASSOCIATED WITH GUN SHOT INJURY. WHICH A FULL HAND TO ELBOW ARM CAST, WITH SPLINT FOR STABILITY WAS PRESCRIBED. IT ALSO WOULD OF REFERENCE TO THE FACT. SCHOPPE-RICO, LOST WIEGHT WAS INACTIVE ( SCHOPPE-RICO ALSO REPORTED TO DOCTORS IN JAIL, LAWYERS, AND DETECTIVES OF THIS) AN SO WOULD OF HIS DOCTOR WOULD OF REFERENCE HE WAS UNABLE TO PARTICIPATE IN ATHLETIC ACTIVITIES; THAT HE HAD DIFFICULTY PERFORMING A RANGE OF MOTIONS, TASK. THUS INCLUDING HOLDING, GRIPING, HITING, CARRYING, DRESSING AND WASHING HIMSELF AND HAVING SEXAOL INTERCOURSE. THUS ALL UNABLE TO WITH RIGHT ARM AS ALLEGED. AND PETITIONER IS RIGHT HANDED. ( SEE EXHIBIT: A ) ENGAGE IN SUCH A EXTREME EVENT .....

UNDER. IN RE: BLAYLOCK SUPRA. RELEVANCE OF MEDICAL INJURY DOCUMENTS. UNDER. THE BUSINESS RECORDS "ARE EXCEPTION TO HEARSAY UNDER FEDERAL. RULE. EVIDENCE. 803.(6)", THAT THEY HAVE FOUNDATION AND RELEVANCE "..... BEFORE A DOCUMENT CAN BE FOUND RELEVANT THE COURT MUST FIND IT HAS FOUNDATION. SEE (FED. R. EVID. 901(a).). AND ADVISORY COMMITTEE NOTE ( AUTHENTICATION AND IDENTIFICATION REPRESENTS. A SPECIAL ASPECT OF RELEVANCY.)"THE NEED FOR AUTHENTICATION [IS] AN INHERENT LOGICAL NECESSITY OF RELEVANCE",... MOREOVER THE PROSECUSOR IN BRADY VIOLATION WITHHELD MEDICAL DOCUMENTS OF THIS. AND TRIAL COUNSEL WAS INEFFECTIVE IN OBTAINING SUCH RECORD'S AND USING THEM AT TRIAL CONSTITUTED, VIOLATIONS UNDER STRICKLAND SUPRA. STANDARDS, IN BLAYLOCK SUPRA: PETITIONER MEETS THE PREQUIS- ITES. FOR ADMITTING THE DOCUMENTS IN RE: UNITED STATE. V. BELLUCCI .995.F.2d. 157.160.(9th. CIR 1993.)( PROPONENT OF DOCUMENTS MUST SHOW AUTHENTICATION, BEST EVIDENCE AND LACK OF HEAR. SAY.) THE EVIDENCE IS RELEVANT WHEN IT HAS TENDENCY TO MAKE THE EXISTANCE OF ANY FACT THAT IS OF CONSEQUENCE TO THE DETERMINATION OF THE ACTION MORE OR LESS PROBABLE. FED. R. EVID. 401. UNITED STATES V. WES. 609. F. 2d. 930. 933.(9th CIR. 1979.) CERT DENIED. 445. U.S. 919. 100. S. Ct. 1283. 63. L. Ed. 2d. 605.(1980)...... THE MEDICAL RECORDS, THE NURSE VIKII. DOCTOR. SOCCO AND ARGUEMENTS ON THIS IS RELEVANT TO BOTH. THE CREDIBILITY OF THE FORENSIC EVIDENCE CLEARING PETITIONER. THE DOG HANDLER JUDY SHETLER, JENNIFER SMITH. ANITA THOMPSON. ALBERT. MELTON. PAUL LANCASTER. LYDIA WILLIAMS. AND THE POLICE OFFICERS TESTIMONY AND TO THE PLAUSIBILITY OF MR. SCHOPPE-RICOS, DEFENSE JUSTIFICATION. THE MEDICAL RECORDS, CONSTITU- TE EVIDENCE THAT SCHOPPE-RICO WOULD HAVE DIFFICULTY, INABILITY, CARRYING, HOLDING, PULLING, PUNCHING, GRIPING UNDRESSING AND CLEANING HISSELF ON THE DAY IN QUESTION. ACCORDING TO SCHOPPE-RICOS MEDICAL RECORDS, (SEE EXHIBIT. A ) AN THE WITH. THE WITHHELD RECORDS OF. SEPTEMBER. 20th AND OCTOBER. COURT CAN REVIEW, SCHOPPE-RICOS MEDICAL DOCUMENTS AND WHAT PROOF IS ON RECORD. BY NURSES. POLICE OFFICERS. REPORTING MR. SCHOPPE-RICO GUN SHOT INJURY. PHYSICAL IMPAIRMENT, A CAST, SPLINT AND PAIN MEDICATION PRESCRIBED TO HIM ON SEPTEMBER 20th 2000. THROUGH DURATION PAST OCTOBER, 17. 2000, THAT HE WAS DISABLED. THE VERY DAY THE ARREST TOOK PLACE....... THE RECORDS ATTACHED AS ( EXHIBITS: # A ). AND THE REST WAITING TO OBTAIN. STATE IN PLAIN LAUNGUAGE THAT. MR. SCHOPPE-RICO HAD A SERIOUS HAND, ARM, INJURY. THAT HE NEEDED A CAST WITH SPLINT TO STABILIZE LIMB. AND. THAT HE WAS UNABLE TO PARTICIPATE IN A RANGE OF PHYSICAL ACTIVITIES. IN RE: BLAYLOCK SUPRA. THE COURT REFUSED TO APPROVE THE WITNESS FEES.

FOR MEDICAL EXPERT TESTIMONY TO INTERPET. HIS MEDICAL RECORDS, BUT BECAUSE THE MEDICAL RECORDS WERE WRITTEN IN PLAIN LAUNGAGE. IT WAS UNNECESSARY THAT A DOCTOR EXPLAIN TO THE JURY THE REASONABLE INFERENCES IT WOULD DRAW FROM IT, WHILE THE TREATING DOCOTORS, NURSES, MIGHT OF HAVE ELABORATED MORE FULLY IN HIS REPORT A REASONABLE JURY WOULD NOT HAVE BEEN MISLED BY ITS CONTENTS, . . . . . . . . TO REVERSE A CONVICTION BASED ON ERRONEOUS EXCLUSION OF A DOCUMENT IT MUST BE MORE PROBABLE THAN NOT THE ERROR AFFECTED THE VERDICT. UNITED STATES V. McCALLISTER, 747 F.2d, 1273, 1277. (9th CIR. 1984.) CITING. UNITED STATES V. BAILLEAUX. L685. F.2d. 1105, 1115. (9th CIR. 1982.) — UNITED STATES V. VALLE-VALDEZ. 554. F.2d. 911. 916. (9th CIR. 1977). THE OUTCOME OF THIS CASE TURNED ON THE JURYS ASSESSMENT OF TWO COMPELLING FACTUAL ACCOUNTS AND THE MEDICAL RECORDS WOULD HAVE SIGNIFICANTLY BUTRESSED THE ACCOUNT THE JURY ULTIMATELY REJECTED, FURTHERMORE ALTHOUGH BROWN TESTIMONY CRUCIAL TO BLAYLOCKS JUSTIFICATION DEFENSE. (IE JUST AS IN SCHOPPE-RICOS, CASE.). THE MEDICAL WOULD WOULD LIKELY TIPPED THE SCALES IN FAVOR OF BROWN ACCOUNTS OF THE EVENT. THE JURY WOULD OF HAVE INFERRED HIM FROM THE MEDICAL RECORDS ALONE ON APRIL. 1. 1991. BLAYLOCK, COULD NOT RUN . . . . . . .   IN  CONCLUSION HAD THE JURY SEEN SCHOPPE-RICOS. MEDICAL RECORDS IT MORE PROBABLY THAN NOT WOULD HAVE CONCLUDED THE EVIDENCE WAS CREDIBLE CLEARING PETITIONER AND THUS. THAT JUSTIFICATION DEFENSE WAS VALID AN SUPPORTED. . . . . .

. WHEN THERES. EVIDENCE ON RECORD COUNSEL MUST BE IMCOMPETENT ENOUGH TO INVESTIGATE IT AND USE IT. ESPECIALLY IF PROOF IS IN PLAIN VIEW AND LAUNGAGE. ON THE RECORD (SEE TRIAL, COURT EXHIBIT. # 7. INTERROGATION TRANSCRIPT OR VIDEOS). (PAGE .C.T : 58, lines 20 + 2L) AT 1:09PM MARTINEZ POLICE DEPARTMENT REGIRSTER NURSE ENTERS INTERROGATION ROOM. NURSE VIKCI. SHE IS THE LADY WHO TOOK SCHOPPE-RICOS. BLOODOUT. (AT PAGE 59.) PETITIONER ASK WHAT ARM SHE WANTS TO TAKE BLOOD OUT. THE NURSE ACKNOWLEDGES AN SEES INJURED RIGHT HAND/ARM, AND ADVISES, TO USE OTHER ARM SINCE PETITIONER HAD SURGERY, SOMETHING HERE . NURSE . VICKI. STATES, SCHOPPE-RICOS RIGHT HAND ARM LOOKED SWOLLEN (PG. 60), PETITIONER TELLS OFFICERS HE WAS SHOT AND HIS WRIST BONES ARE SHATTERED, AND SAYS IT HURTS (PG. 61). AT (PG. 2 OF TRANSCRIPT EXHIBIT. 7.) DURING GUN SHOT RESIDUE KIT, DETECTIVES SEE INJURED HAND AN DABB IT, GENTLY. (T. PG. 3) THEY CUFF HIM AND WARN HIM TO NOT TO LEAVE . MR. SCHOPPE-RICO . STATES HE CANT KNOCK ON THE DOOR THAT HE GOTS A MESSED UP WRIST HAND. DETECTIVES SEES, HE GOTS STITCHES AND BEEN SHOT, (PG. 4) . . . . . .      PETITIONER CONTENDS HIS DENIAL OF HIS SIX AMENDMENT RIGHTS, WERE VIOLATED, UNDER. STRICKLAND SUPRA. PRINCIPLES . WHEN COUNSEL FAILED TO USE THIS EVIDENCE AND WITH HELD IT. IN MR. SCHOPPE-RICO STRIAL, IN STRICKLAND, THE COURT AGREED THE SIXTH AMENDMENT IMPOSES ON COUNSEL DUTY TO INVESTIGATE REASONSONBLY EFFECTIVE ASSISTANCE BASED ON PROFESSIONAL DECISIONS AND INFORMED LEGAL CHOICES CAN ONLY BE MADE AFTER INVES. TIGATING OF OPTIONS. (I.d.2061.) REPRESENTATION OF CRIMINAL DEFENDANTS ENTAILS CERTAIN BASIC DUTIES, COUNSEL FUNCTIONS AS ASSISTANCE TO ASSIST THE DEFENDANT AND HENCE COUNSEL OWES THE CLIENT A DUTY TO AVOID CONFLICT OF INTEREST. SEE. CUYLER V. SULLIVAN SUPRA, 466. U.S. AT 346. 90. S. Ct. AT 1717. FROM COUNSEL FUNCTIONS AS ASSISTANCE TO THE DEFENDANT DERIVE THE OVERARCHING DUTY TO ADVOCATE THE DEFENDANTS, CAUSE.

AND THE MORE PARTICULAR DUTIES TO CONSULT WITH THE DEFENDANT ON IMPORTANT, DESCISIONS KEEP HIM INFORMED ON THEM, AND DEVELOPMENTS IN THE COURSE OF THE PROSECUTION, COUNSEL HAS THE DUTY TO BRING TO BEAR SUCH SKILL AND KNOWLEDGE AS WILL RENDER THE TRIAL RELIABLE ADVERSARIAL TESTING PROCESS. POWELL V. ALIAMBA, 287. U.S. 68, 69, 53, S.Ct, AT 64. L3 ... A PROCEEDING IN WHICH THE DEFENDANT DOES NOT RECEIVE MEAN-INGFUL ASSISTANCE IN MEETING THE FORCES OF THE STATE DOES NOT IN ANY WAY CONSTITUTE, DUE PROCESS. IN CALIFORNIA V. CHAPMAN. 386. U.S. 18, 23, 87. S.Ct. 824, 827. LT. L.Ed. 2d. 705. (1967) WE ACKNOWLEDGED THAT CERTAIN CONSTITUTIONAL RIGHTS ARE "SO BASIC TO A FAIR TRIAL THAT THEIR INFRACTION CAN NEVER BE TREATED AS HARMLESS ERROR." AMONG THESE RIGHTS TO THE ASSISTANCE OF COUNSEL AT TRIAL, I.d. AT 23, N. 8, 87. S.Ct, AT 827. N. 8, SEE. GIDEON V. WAINWRIGHT 372. U.S. 335, 83. S. Ct. 792, 9, L.Ed. 2d. 799. (1963) IN MY VIEW (466.U.S. 712) TO EFFECTIVE ASSISTANCE OF COUNSEL IS ENTAILED BY THE RIGHT TO COUNSEL, AND ABRIDGMENT OF THE FORMER IS EQUIVALENT TO ABRIDGEMENT OF THE LATTER, THUS HOLD THAT A SHOWING THE PERFORMANCE OF DEFENDANTS LAWYER DEPARTED FROM CONSTITUTIONALLY PRESCRIBED STANDA-RDS. REQUIRES A NEW TRIAL REGARDLESS OF WHETHER DEFENDANT SUFFERED DEMONSTRATABLE PREJUDICE.

NOW THE OTHER DEFICIENT PERFORMANCE OF COUNSEL PETITIONER RECEIVED INEFFECTIVE ASSISTAN-CE OF COUNSEL WHEN HIS ATTORNEY FAILED TO INFORM HIM THAT THE GOVERMENT HAD MADE A PLEA OFFER. OR ASK FOR ONE. NINTH CIRCUIT ADDRESSED THE QUESTION IN U.S. V. BLAYLOCK SUPRA. AN SEVERAL OTHER CIRCUITS HELD FAILURE CONSTITUTES UNREASONABLE PERFORMANCE UNDER PROFESSIONAL PREVAILING STANDARDS, ... IN UNITED STATES ex. rel. CARUSO V. ZELINSKY, 689, F. 2d. 435, (3RD CIR.1982) THE DEFENDANT ALLEGED THAT COUNSEL HAD FAILED TO COMMUNICATE TO HIM A PLEA OFFER. THE CARUSO COURT HELD THAT, THE DECISION TO REJECT A PLEA BARGIN OFFER.... IS A DECISION FOR THE ACCUSED TO MAKE. ... A FAILURE OF COUNSEL TO ADVISE CLIENT OF PLEA BARGIN CONSTITUTES A GROSS DEVIATION FROM PROFESSIONAL ACCEPTED STANDARDS......... THE ATTORNEY HAS THE DUTY TO ADVISE THE DEFENDANT OF THE AVAI-LABLE OPTIONS AND POSSIBLE CONSEQUENCES" AND FAILURE TO DO SO CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL..... ON OCTOBER. 19. 2000. A COMPLAINT WAS FILED AGAINST MR. SCHOPPE-RICO. BETWEEN THEN TILL THE FIRST AMENDED COMPLAINT WAS FILED NOVEMBER. 2ND. 2000, TRANSCRIPT OF PRELIMINARY HEARING PAGES 1-294), WAS THE TIME PETITIONER BELIEVES PLEA OFFER WAS MADE TO COUNSEL OR/AND SHE FAILED TO INFORM. MS. SCHOPPE-RICO OF ONE OR OBTAINED ONE. IN RE. BLAYLOCK SUPRA. HAD BLAYLOCK BEEN INFORMED OF AND ACCEPT-ED THE PLEA OFFER. THE GOVERMENT WOULD HAVE BEEN PRECLUDED FROM FILING ENHANCE PENALTY CHARGES. ON NOVEMBER 2.ND 2000, JUST AS IN BLAYLOCK, MR. SCHOPPE-RICO, CONTENDS THE SAME IF HE WOULD OF KNEW OF PLEA OFFER HE MIGHT OF TOOK IT. AND RECIEVED A POINT REDUCTION IN HIS BASE OFFENSE LEVEL. FOR ACCEPTANCE OF RESPONSIBLTY. AND WOULD OF HAD NOT BEEN SENTENCED 5T TO LIFE. AS AN GANG MEMBER ARMED CAREER CRIMINAL WHO COMMITTED A MURDER. SEE BLAYLOCK SUPRA. COURT ERRED IN DENYING HIS ENEFFECTIVE ASSISTANCE CLAIM WITHOUT AN EVIDENTIARY HEARING.

APPROPRIATE REMEDY IF SCHOPPE-RICO PREVAILS ON INEFFECTIVE ASSISTANCE OF COUNSEL. THE DISTRICT COURT WILL HAVE TO FASHION A REMEDY THAT IS TAILORED TO THE INJURY SUFFERED, AND [DOES] NOT UNNECESSARY INFRINGE ON COMPETING INTERESTS." UNITED STATES V. MORRISON. 449. U.S. 361. 364. 101. S. Ct. 665, 668. 46. L. Ed. 2d. 564 (1981) SINCE THE REMEDY FOR COUNSELS INEFFECTIVE ASSISTANCE SHOULD PUT DEFENDANT BACK IN POSITION HAVE THE SIXTH AMENDMENT VIOLATION NOT OCCURRED BEFORE TRIAL. REQUIRING THE GOVERMENT TO REINSTATE ITS ORIGINAL PLEA OFFER IS CONSTITUTIONALY PERMISSIBLE SEE. MABRY V. JOHNSON 467. U.S. 504. 510. N. 11. 104. S. Ct. 2543, 2548. 11. 81. L. Ed. 2d. 437. (1984) SANTO BELLO V. NEW YOURK. INFRA.


## GROUND THREE:

PROSECUTOR MIS CONDUCT RENDERED THE TRIAL FUNDAMENTALLY UNFAIR WHEN THE PROSECUTOR WITH HELD EXCULPATORY EVIDENCE.

MR. SCHOPPE-RICO CONTENDS THE PROSECUTOR WITHHELD EXCULPATORY EVIDENCE FROM THE DEFENSE AN SUPPRESSION OF THIS EVIDENCE WAS A VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT. THE NON-DISCLOSER OF EVIDENCE IS A PROHIBITED UNDER, BRADY V. MARYLAND, 83. S. Ct. 11. 1444. 373. U.S. 83. (U.S MD. 1963). ARIZONA. V. YOUNG BLOOD. 109. S. Ct. 333, 488. U.S. 51. (U.S. ARIZ. 1988) AND THE FAILURE OF THE POLICE PERSERVING EVIDENCE OF PETITIONER: HAND INJURY SUCH AS TAKEN PHOTOS OF INJURED LIMB, CONDUCTING TEST, FOLLOWING UP ON MEDICAL RECORDS AND SO FORTH THAT WAS INTENTIONALLY WITH HELD DUE TO IT DEMONSTRATED PHYSICAL IMPAIRMENT ON OCT. 17. 2000, THE PROSECUTION HAS AN AFFIRMATIVE DUTY TO DISCLOSE TO THE DEFENDANT ANY EVIDENCE FAVORABLE TO HIM. INCLUDING ANY EVIDENCE REFLECTING ON THE CREDIBILITY OF MATERIAL WITNESSES. BRADY SUPRA. FAILURE TO DO SO CONSTITUTES VIOLATION OF DUE PROCESS CLAUSE OF THE (14th) AMENDMENT. PROSECUTION HAS THE DUTY TO DISCLOSE EXCULPATORY EVIDENCE WHETHER OR NOT THE DEFENDANT REQUEST IT. UNITED STATES V. BAGLEY. (1485) 473. U.S. 667. KYLES. V. WHITLEY (1995) 514. U.S. 419. 131. L. Ed. 2. d. 490. 505.

MOREOVER PROSECUTORS HAVE AN AFFIRMATIVE OBLIGATION TO LEARN OF ANY FAVORABLE EVIDENCE KNOWN TO OTHERS ACTING ON BEHALF OF THE GOVERMENT. INCLUDING POLICE OFFICER, KYLES SUPRA AT 508. SECONDLY PROSECUTOR WITH HOLDING INFORMATION, ALBERT MELTON HAS. BY SAM SANCHEZ. TELLING HIM NOT TO TALK TO PUBLIC DEFENDERS. (C.T. 325) IS DEPRIVING PETITIONER RIGHT TO QUESTION WITNESSES AND CONFRUNT THEIR CREDIBILITY OF EXONERATING INFORMATION, ALSO HE DIDN'T WANT TO DISCLOSE THE CONFIDENTAIL INFORMANT, THEN HE FOLLOWS UP ALLEGEDLY THE OTHER SUSPECT DAN, WHO OWNS A RED CHRYSLER WHO SHOT NICK TAYLOR OR SAW JENNIFER SMITH. DAN WAS NEVER PUT IN A PHOTO LINE UP. FOR WITNESSES OR BROUGHT INTO COURT. HIS HAIRS WERE NEVER COMPARED TO THE HAIRS FOUND ON THE CLOTHING AT. 40 SHARON DR. TO SEE IF IT WAS A MATCH (RT. 1780) OR TESTED BY CRIMINALIST ALEX TAFLYA. WHO COMPARED

HIS ARM AN WRIST. ( RT : 2283.) THE ONLY REASON THIS ADMITTED BY THE BAD FAITH ACTING PROSECUTOR IN COURT. WASN'T TO ACT IN GOOD FAITH AN SHOW PETITIONERS PHYSICAL IMPAIRMENT BUT SHOW PRIOR FAULTY POSSESSION, BASED ON UNRELIABLE INFORMATION THATS VAGUE AND OVERBOARD. ( SEE PETITIONER CLAIM NO. 2. )(AND EXHIBIT ___A___ )

ON OCTOBER, IT'S ALSO SEE INTERROGATION ROOM TRANSCRIPT OF VIDEO 1 THRU 4, AND PAGES #2 AND #3, MR. SCHOPPE-RICOS PHYSICAL IMPAIRMENT ON OCT, 17, 2000, EVEN PREVENTED HIM KNOCKING ON THE DOOR. WITH HIS HAND AND TELLS DETECTIVES HE GOTS A MESSED UP HAND ( TRANSCRIPT 1, 2, 3. ) ALSO DETECTIVES HAVE REGISTER NURSE VICKI, ARRIVES TO TAKE BLOOD. ( TRANSCRIP . 54 ) SHE WAS NEVER LISTED AS WITNESS BY PROSECUTOR THE NURSES INFORMATION WAS WITH-HELD & AND NURSE VICKI SEE'S INJURED HAND/ARM AND STATES IT WAS SWOLLEN, AND SCHOPPE-RICO EXPLAINS HE JUST HAD SURGERY TO USE TO OTHER ARM, FOR BLOOD DRAW ( TRANSCRIP . 57, 58 ) ALL THESE FACTS OF MISCONDUCT OR INFO WITH HELD IS AN BLANTANT VIOLATION OF DUE PROCESS UNDER BRADY SUPRA. IN BRADYS CASE. PRIOR TO BRADY' TRIAL. BRADYS COUNSEL HAD REQUESTED THE PROSECUTION TO ALLOW HIM TO EXAMINE HIS CO-DEFENDANT BOBLITS STATEMENTS. SEVERAL OF THESE STATEMENTS WERE SHOWN TO HIM, BUT ONE WASN'T WHICH BOBLIT ADMITTED THE ACTUAL HOMICIDE. THAT WAS WITHHELD BY THE PROSECUTION WHICH DID NOT COME TO PETITIONERS NOTICE UNTIL AFTER HE WAS TRIED, CONVICTED, SENTENCED AND CONVICTION AFFIRMED .

IN MR. SCHOPPE-RICOS CASE. SUPRA EXPLAINED IS SIMILAR TO THE BRADY VIOLATIONS IN BRADY SUPRA. THAT THE PROSECUTOR HAS DONE TO FAVORABLE EVIDENCE IN SCHOPPE-RICOS CASE OF WITHHOLD-ING IT OR SUPPRESSING IT /EVIDENCE IN BAD FAITH . IN BRADY SUPRA. THEY HELD THIS RULING IS IN EXTENSION OF MOONEY V, HOLOHAN 294. U.S. 103, 112 55. S. Ct. 346, 347. 79, L. Ed, 791, WHERE THE COURT RULED. NON DISCLOSER BY A PROSECUTOR VIOLATE DUE PROCESS...... [IT IS A REQUIRE-MENT THAT CANNOT BE DEEMED TO BE SATISFIED BY MERE NOTICE AND HEARING] ," IF STATE CONTRIEVED A CONVICTION THROUGH THE PRETENSES OF A TRIAL", [ "WHICH IN TRUTH IS BUT USED AS A MEANS OF DEPRIVING A DEFENDANT OF LIBERTY THROUGH A DELIBERATE DECEPTION OF COURT AND JURY . ] ..." BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED".... SUCH A CONTRIVANCE BY A STATE TO PROCURE. THE CONVICTION AND IMPRISONMENT OF A DEFENDANT IS AS INCONSISTENT WITH THE RUDIMENTARY DEMANDS OF JUSTICE AS IS THE OBTAINING OF A LIKE RESULT BY INTIMIDATION ..... IN PYLE V, KANSA . 317. U.S. 213 , 215, 216, 63, THE THE RULE IS PHRASED IN BETTER TERMS PETITIONERS PAPERS ARE INEXPERTLY DRAWN, BUT THEY DO SET FORTH ALLEGATIONS THAT HIS IMPRISONMENT RESULTED FROM PERJURED TESTIMONY KNOWINGLY USED BY THE STATE AUTHORITIES, OF EVIDENCE FAVORABLE TO HIM. THESE ALLEGATIONS SUFFICIENTLY CHARGE A DEPRIVATION OF RIGHT GUARANTEED BY THE FEDERAL CONSTITUTION IF PROVEN WOULD ENTITLE PETITIONER RELEASE FROM HIS PRESENT CUSTODY. MOONEY, V. HOLOHAN SUPRA

MR. SCHOPPE-RICOS HAIR WITH THE HAIR FOUND ON THE SWEATSHIRT AND WARM UP PANTS ELIMINATING SCHOPPE-RICO AS A POSSIBLE SOURCE FOR THOSE HAIRS (R.T: 2329-2333, 2336) (C.T: 393, 394). PROSECUTION WITHHOLDING THESE FACTS (ALSO OTHER INFORMATION HE IS WITHHOLDING AT (R.T. 507-508.) NO: #7. HE NEVER HANDED OVER COMPLIED WITH A SINGLE TRAINING MANUAL PUBLICATION OR REPORT ON RON HUPPERTS ON GANG ACTIVITY OR FIELD CARDS (R.T: 516.) (SEE CLAIM ONE) (.d. ALSO HUPPERT NEVER COMPLIED WITH DISCOVERY NO: 8: ORDER OF NORTENOS, GUIDELINES, HISTORY, MEMBERS, CONFIDENTIAL INFORMANTS, ECT. HE RELIES ON HE ALSO NEVER GENERATED COPS ISSUE ON CARDS F.I CARDS CRETRIA. THEY USE TO VALIDATE MINORS ECT. (R.T) 516, 517, 518.) HE ALSO REFUSED TO (. NO: 20 GR NO: 21, WASN'T COMPLIED WITH OF POLICE OR COUNTY COUNSEL OR CITY ATTORNEY HAVE CREDIBILITY OF OFFICERS (R.T: 525, 526.) AT THIS LEVEL OF WITHHELD INFORMATION AT TRIAL IS GOVERMENTS INTERFERENCE OF COUNSEL'S PERFORMANCE AND DUTIES OF PRESENTING A GANG DEFENSE AT LEASE IN THE NORTENO'S GENERALS CULPABILITY IN THE (E,B,L) OPERATION RING, NOT ONLY THIS OFFICERS AN DISTRICT ATTORNEY WITHHOLDING FACTS OF THEIR OUTRAGEOUS MISCONDUCT. AND ARE IN DENIAL OF ILLEGALLY ELLICITING AN UNRELIABLE INFORMANT/WITNESS OF JENNIFER SMITHS. TESTIMONY SHE GAVE AFTER READING DISCOVERY IN CASE OF, HER DESPERATION IN WANTING TO GET OUT OF JAIL AND PROSECUTORS DESPERATION TO GET HER TO HELP HIM FOR HER. COERCED, BIAS TESTIMONY TO HELP HIM WRONGLY CONVICT SCHOPPE-RICO. (R.T: 642, 643, 644, 645, 646. 647.) MS. SMITH A DRUG ADDICT CHARGED WITH POSSESSION OF DRUG NEEDLES, SEVERAL RECEIVING STOLEN PROPERTY (R.T: 641.) TWO CASES OF FELONY PROBATION FOR STOLEN PROPERTY (R.T 641) TWO OF FELONY PROBATION SHE WAS ON ON OCT. 2000, ALSO ARRESSTED FOR FOUR SEPERATE OFFENSES AFTER. OCT. 17. 2006 SHE'S EVENTUALLY IN CUSTODY. (THIS GO'S FOR MORAL TURPITUDE, AND IN TERMS OF HER CHANGING HER TESTIMONY TO HELP THE PROSECUTOR.) WHILE SHE'S IN CUSTODY AN SHE CALLS THE PROSECUTORS OFFICE, THEY HAVE A CONVERSATION, WHERE MS. SMITH IN EXCHANGE WILL GO TO THE PROSECUTION OFFICE, IF HE GETS/ARRANGES HER RELEASE AN HE DID. (R.T: 642) SHE'S IN CUSTODY ON THE CASE DEPUTY BRYAN ARRESTED HER FOR (SHE HAS WARRANTS OUT (R.T: 643). MS. SMITH RECORDING TALKING TO PROSECUTOR IN CUSTODY SHE SAYING "I JUST WANT TO GET OUT", I WANT TO GET OUT. THIS CAN BENEFIT THE BOTH OF US. I JUST WANT TO GET. SHE'S NOT ASKING FOR ANY ASSURANCE REGARDING OUTCOME OF CASE AT THE END OF THE CONVERSATION THE PROSECUTOR SAYING " IF YOU GET OUT OF CUSTODY WILL YOU COME TALK TO US, ? SHE SAYING YES, I WILL GO TO YOUR OFFICE DIRECTLY UPON MY RELEASE. ,,,, SHE'S RELEASED AT THE NEXT WINDOW AT THE JAIL, PROSECUTORS INVESTIGATOR GO'S TO THE JAIL, SAM SANCHEZ. AND TAKES HER TO THE PROSECUTOR OFFICE. (R.T: 644) SUPPRESSION OF THIS EVIDENCE IS CRITICIAL. AND ALLEGEDLY BRYAN RELEASED HER (R.T: 645-646) THIS WITNESSES TESTIMONY SHOULD OF BEEN EXCLUDED DUE TO IT'S PERJURED ELLICIT EVIDENCE AND THE PROSECUTOR IS TRYING TO HIDE THAT.

,,,, NOW THE OTHER EVIDENCE AT ISSUE HERE IN " SUPRA " THE OTHER EVIDENCE ON RECORD ALL PETITIONER HAS TO WORK WITH OF HIS HAND INJURIES IS WERE DEPUTY SIMPSON TESTIFIES ON SEPTEMBER 20th 2000 (R.T: 2281, 2282) HE SAW MR. SCHOPPE-RICO WAS SHOT, HE SAID HE SUSTAINED A SMALL CALIBER GUN SHOT WOUND TO HIS RIGHT PALM PRIMARILY, THAT TRAVELED UP INTO

PRINCIPLES IS NOT PUNISHMENT OF SOCIETY FOR MISDEEDS OF A PROSECUTOR BUT AVOIDANCE OF AN UNFAIR TRIAL, TO THE ACCUSSED, SOCIETY WINS NOT ONLY WHEN THEY GUILTY ARE CONVICTED "BUT", [WHEN CRIMINAL TRIALS ARE FAIR,]" OUR SYSTEM OF THE ADMINISTRATION OF JUSTICE SUFFERS WHEN ANY ACCUSSED IS TREATED UNFAIRLY.

UNDER ARIZONA V. YOUNGBLOOD, 109, S.CT. 333.488. U.S. 51 (U.S. ARIZ 1988), HELD THE FOURTEENTH AMENDMENT REQUIRES THE STATE TO PRESERVE EVIDENTIARY MATERIAL, THAT MIGHT BE USEFUL TO A CRIMINAL DEFENDANT, TO AGAIN CONSIDER WHAT MIGHT LOSELY/LOOSELY BE CALLED THE AREA OF CONSTITUTIONALLY GUARANTEED ACCESS TO EVIDENCE UNITED STATES V. VALENZUELA-BERNAL. 458 U.S. 858. 867. 102. S.CT. 3440.73, L.ED. 2d. 1193 (1983) HELD THAT THE SUPPRESSION BY THE PROSECU-TION OF EVIDENCE FAVORABLE TO THE ACCUSSED UPON REQUEST VIOLATES DUE PROCESS WHERE THE EVIDENCE IS MATERIAL, EITHER TO GUILT OR TO PUNISHMENT, IRRESPECTIVE OF THE GOOD FAITH OR BAD FAITH OF THE PROSECUTION - BRADY AND AGURS SUPRA, THE CASE IN THIS AREA, ESTABLISHES POLICE ACTION'S TAKEN IN BAD FAITH ARE NOT THE ONLY SPECIES OF POLICE CONDUCT VIOLATIVE OF DUE PROCESS ..... NOW MR. SCHOPPE- RICO CONTENDS REVERSAL REQUIRED FOR ONE, CRIMINALIST JASON KWASKI SHOULD OF BEEN ALLOWED TO DO HAIR SAMPLES AND COMPARE DANS HAIRS, WITH THE HAIRS FOUND ON THE CLOTHING AT 40 - SHARON DR. (RT. 1780), FOR ONE WE KNOW THE HAIRS/DNA ON THE CLOTHING UNDOUBTEDLY CAME FROM THE ASSAILANT, SECOND THE SAMPLES COULD OF HAD BEEN USED TESTED. USING TECHNOLOGY AVAILABLE AND IN USE AT THE POLICE DEPARTMENT, TO SHOW EITHER BLOOD TYPE, MARKER, HAIR COLOR MATCH. OR MARKER INTO OTHER BODY DNA, BLOOD TYPE. THIRD THE EVIDENCE WAS CLEARLY IMPORTANT OF TESTING DANS OR ANY (E. RL. EB) ASSOCIATE OF THE NORTENO GANG. (CT. 392-393) JUST AS A SEMEN SAMPLE IN A RAPE CASE WHERE IDENTITY IS QUESTIONED IS ALWAYS SIGNIFICANT HILLARD V. SPALDING, 719. F. 2d. 1443. 1446. 1446. 47. ) C.A. 9. 148) PEOPLE V. NATION 26. CAL. 3d. 169. 176-177. 161. CAL. R. PTR. 299. 302. 304. 604. P. 2d. (1980). THE SOCIETAL INTEREST IN SEEING CRIMIN-ALS PUNISHED RIGHTLY REQUIRES THAT INDICTMENTS BE DISMISSED ONLY WHEN THE UNAVAILABILITY OF THE EVIDENCE PREVENT THE DEFENDANT FROM RECEIVING A FAIR TRIAL. FOR THESE REASON IN HERE. MR. SCHOPPE- RICO REQUEST YOU RULE IN HIS FAVOR. ON THIS GROUNDS LISTED HERE IN.

GROUND FOUR.

PETITIONERS FOURTH AND FOURTEENTH AMENDMENTS RIGHTS WERE VIOLATED WHEN POLICE ARRESTED PETITIONER WITHOUT PROBABLE CAUSE.

1.) POLICE DETAINED PETITIONER WITHOUT A WARRANT: THE COMPLAINED ABOUT SEARCH AND SEIZURE VIOLATES DEFENDANTS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES, CONSTITION IN WONGSUN V. UNITED STATES (1963) 371. U.S. 471. 484. MR. SCHOPPE-RICO WAS ALSO SEARCHED AND SEIZED WITHOUT THE BENEFITS OF WARRANT AS WONGSON AND TOY SUPRA. HERE THE THRESHOLD QUESTION THEREFORE IS WHETHER A OFFICER COULD ON THE INFORMATION WHICH IMPELLED THEM TO ACT COULD OF HAD PERCURRED A WARRANT FOR THE ARREST OF MR. SCHOPPE-RICO /PETITIONER. LIKE IN WONGSON /TOY. WE THINK THAT NO WARRANT WOULD HAVE ISSUED ON EVIDENCE THEN AVAILABLE. IN WONG SUN SUPRA. THE COURT HELD THE ARREST OF BOTH PETITIONERS WERE ILLEGAL. NOT BASED ON PROBABLE CAUSE WITHIN THE 4TH AMENDMENT NOR REASONABLE GROUNDS WITHIN THE MEANING OF THE NARCOTICS (371. U.S. 478) CONTROAL ACT OF 1956. THE COURT SAID OF TOY AN WONGSON ARREST THERE WERE NO SHOWING THAT AGENT KNEW "HOM-WAY" TO BE RELIABLE. IN THIS CASE OF MR. SCHOPPE-RICOS. THERES NO EVIDENCE INDICATING THERE WITNESSES, MELTON OR MS. SMITH WERE RELIABLE OR ANYONE ELSE. . . . . . . MR. SCHOPPE-RICO HOWEVER WAS ARRESTED AND DETAINED. AT GUN POINT. (RT: 1519-1520) AND THEN AFTER A LINEUP WAS TAKEN TO THE MARTINEZ POLICE STATION. AND HIS ARREST WAS COMPLETELY UNJUSTICIFIED. BY THE INFORMATION KNOWN TO OFFICERS. AT THE TIME. (C.T. 114, 115. 118;) LYDIA WILLIAMS DENIED EVER TELLING THE OFFICER ANY OF DEPUTY WHIDDONS ALLEGATIONS. THAT SHE POINTED PETITIONER OUT. THATS WHAT HE HOPE FOR. SHE ALSO DENIED SEEING ANYONE JUMPING OVER FENCES (RT: 1535.) AT THE LINEUP. WITNESS DESCRIPTIONS. OF THE SHOOTER VARIED NONE OF THE WITNESSES SAID OR IDENTIFIED PETITIONER NOR IN PHOTO LINE UPS. IN RE (CT 133:17. - 135:24.) SEE COURT TRIAL EXHIBIT. B ) SEE (1) (CT: 152:22 - 153:4.) (CT: 199:24 - 200:6 - 295.). PAUL LACANSTER AND MELTON WERE THEIR WITNESSES. LANCASTER SAID NO-WAY HE COULD BE THE SHOOTER AND COULDNT IDENTIFY SCHOPPERICO AS THE SHOOTER. (CT: 133:17 - 135:24). THIS EXONERATING PETITIONER. FURTHERMORE WERE SUSPECT STOOD IN DIRT AREA. SHOE IMPRESSIONS WERE PHOTOGRAPHED AND CAST IN THE DIRT AREA NEAR THE CARTRIDGE CASINGS (RT: - 1783 - 1874 - 1787.) THE PATTERN TYPE DID NOT MATCH THE PATTERN ON MR. SCHOPPE-RICOS SHOES. (RT: 1789-1792.). ALSO ALLEGED BLOOD SPOT ON SHIRT WAS EXCLUDED AND NEVER TESTED (RT:649.) ALEX TAFLYA. ELIMINATED PETITIONER AS A SOURCE TO THE HAIRS FOUND ON THEIR EVIDENCE SWEAT PANTS AND SWEAT SHIRT, (RT: 2324 - 2333 - 2336.) MR. QUINTIN NERIDA. FINGER PRINT EXAMINER. EXAMINED THE RIFLE AND (12) BULLET CARTRIDGE CASINGS. NONE HAD FINGER PRINTS TO MATCH, RT: 2188 - 2189 - 2190 - 2191.), THIS FURTHER EXONERATING . . . . . . . A.). MR. SCHOPPE-

(1) REFERING TO PG 41. AUTHORITIES ON FAULTY IDENTIFICATION

RICO WAS ARRESTED WHEN OFFICERS HAVING DETAINED HIM AT GUN POINT AND HAND CUFFED HIM. PUT HIM IN THE BACK OF A POLICE CAR. AND TRANSPORTED HIM TO THE POLICE MARTINEZ DEPARTMENT OFFICERS VIOLATED HIS FOURTH AND FOURTEENTH AMENDMENTS. WITHOUT PROBABLE CAUSE, THEY SEIZED PETITIONER. THEN TRANSPORTED TO INTERROGATE. IN RE: DUNAWAY V. NEW YORK 19.79. 442. U.S. 200, AN __ U.S. V. BIZIER, 111. F.3d. 214, 1ST (CIR. 1997) MALTBY V. WINSTON, 34. F.3d. 548. (7TH CIR. 1994) EVIDENCE RECOVERED AFTER ARREST MAY NOT FORM BASIS OF PROBABLE CAUSE FOR THE ARREST. AND ANY TAINTED EVIDENCE OBTAINED AFTER THAT SHOULD BE EXCLUDED. SO THEREFORE, THE OFFICERS DID TO ARREST SCHOPPE-RICO WITHOUT PROBABLE CAUSE. TO HAVE PROBABLE CAUSE TO ARREST, EXISTS WHEN THE FACTS KNOWN TO THE ARRESTING OFFICERS EXIST AND LEAD A PERSON OF ORDINARY CARE AND PRUDENCE TO ENTERTAIN A HONEST AND STRONG SUSPICION THAT THE PERSON ARRESTED IS GUILTY OF A CRIME. PEOPLE V. PRICE. (1991) 1.Cal. 4TH, 324, 410 ). POLICE CANNOT ARREST SUSPECTS WITHOUT PROBABLE CAUSE IN ORDER TO INVESTIGATE A CRIME CONDUCT A LINE UP OR INTERVIEW A SUSPECT. IN RE DUNA-WAY SUPRA. FLORIDA V. ROYER. 103. S. Ct. 1319, 460 (U.S. FIA 1983) EXCEPTIONS TO THE GENERAL RULE THAT SEIZURES OF THE PERSON OR OF HIS AUTOMOBILE OR "OTHER EFFECTS". NOR MAY DETENTIONS MAY NOT BE "INVESTIGATIVE YET, VIO- LATIVE OF THE FOURTH AMENDMENT ABSENT PROBABLE CAUSE. IN THE NAME OF INVESTIGAT- ING A PERSON MORE THAN SUSPECTED OF CRIMINAL ACTIVITY THE POLICE MAY NOT CARRY OUT FULL SEARCH, NOR MAY THE POLICE SEEK TO VERIFY THEIR SUSPICION BY MEANS THAT APPROACH THE CONDITIONS OF ARREST. DUNAWAY V. NEW YORK, SUPRA, MADE CLEAR THERE THE SUSPECT WAS TAKEN TO POLICE STATION FROM HIS HOME AND WITHOUT BEING FORMALLY ARRESTED, INTERROGATED, FOR AN HOUR, THE RESULTING INCRIMINATING HIMSELF STATEMENTS WERE HELD INADMISSIBLE. REASONABLE SUSPICION OF A CRIME IS INSUFFICIENT TO JUSTIFY CUSTODIAL INTERROGATION EVEN THOUGH THE INTERROGATION IS INVESTIGATIVE. Icd. 442. U.S. AT. 211-212. 99 S. Ct. AT 2255 2256. BROWN V. ILLINOIS. 422 U.S. 590. 95. S. Ct. 2254. 45, L. Ed. 2. d. 416, 1975, AND DAVIS V. MISSISSIPI. 394. u.S 721. 89. S. Ct. 1394. 22. L. Ed 2d. 676. 1969, ARE TO THE SAME EFFECT. 460. U.S. 501. DUNWAY AND BROWN HELD THAT STATEMENT GIVING DURING A PERIOD OF ILEGAL DETENTION ARE INADMISSIBLE EVEN THOUGH. VOLUNTARILY GIVEN IF THEY ARE THE PRODUCT OF THE ILLEGAL DETENTION AND NOT THE RESULTS OF AN INDEPENDENT ACT OF FREE WILL. BROWN V. ILLINOIS . SUPRA . . . . . B.) BECAUSE THE DEFENDANT WAS SEIZED AND SEARCHED ILLEGALLY ALL EVIDENCE OBTAINED AS A RESULT OF THE ILLEGAL SEIZURE MUST BE SUPPRESSED / EXCLUDED . . . . . . THE ARREST OF MR. SCHOPPE-RICO VIOLATED STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES CONSEQUENTLY ALL EVIDENCE OBTAINED DURING AND AS A DIRECT RESULT. OF THIS SEIZURE MUST BE EXCLUDED / SUPRESS IT WELL SETTLED UNDER BOTH FEDERAL AND CALIFORNIA LAW THAT ALL EVIDENCE OBTAINED THROUGH ILLEGAL POLICE CONDUCT AND ITS FRUITS, MUST BE EXCLUDED FROM EVIDENCE MAPP V. OHIO. (1961) 367. U.S. 643. 1.) IF THE COURT FINDS THAT MS. WILLIAMS NEVER MADE THE STATEMENT THAT MR. SCHOPPE-RICO WAS JUMPING FENCES DEFENDANT CONTENDS THAT THE POLICE EVEN LACKED REASONABLE SUSPICION

TO DETAIN MR. SCHOPPE-RICO. AND MOVES TO EXCLUDE/SUPPRESS ALL EVIDENCE FLOWING FROM HIS ILLEGAL DETENTION NOT LIMITED TO THE EVIDENCE WHICH RESULTED FROM HIS ARREST, ...2.) THIS INCLUDES ANY EVIDENCE RECOVERED FROM 180 SHORE. RD. AS WELL AS THE STATEMENTS OF ALL WITNESSES WHOSE IDENTITES THE POLICE ONLY ASCERTAINS AS A RESULT OF STOPPING AND IDENTIFYING PETITIONER. (TRIAL COUNSEL, WAS INEFFECTIVE IN REQUESTING THIS. AND APPELLATE COUNSEL REFUSED TO RAISE THIS GROUND ON HIS OWN. IIE)

IN WONGSON SUPRA. (II)(12)(13) IT WAS CONCEDED THAT TOY'S DECLARATIONS IN HIS BEDROOM. ARE TO BE EXCLUDED, IF THEY ARE HELD TO BE FRUITS OF THE AGENTS UNLAWFUL ACTIONS. IN ORDER TO MAKE EFFECTIVE THE FUNDAMENTAL CONSTITUTIONAL GUARANTEES OF SANCTITY OF HOME AND INVIOLABILITY OF THE PERSON. BOYD V. UNITED STATES. 116. U.S. 616, 6. S. Ct. 524, 29. L. Ed. 746. THIS COURT HELD NEARLY HALF A CENTRURY AGO THAT EVIDENCE SEIZED DURING AN UNLAWFUL SEARCH COULD NOT CONSTITUTE PROOF AGAINST THE VICTUM OF THE SEARCH. WEEKS V. UNITED STATES. 232. U.S. 383. 34. S. Ct. 341. 58. L. Ed. 652. THE EXCLUSION RULE PROHIBITION EXTENDS AS WELL TO THE INDIRECT AS THE DIRECT PRODUCTS OF SUCH INVASION'S. SILVERTHORNE LUMBER CO V. UNITED STATES. 251. 371. U.S. 485. U.S. 385. 40. S. Ct. 182. 64 L. Ed. 319. MR. JUSTICE HOLMES SPEAKING FOR THE COURT IN THAT CASE IN HOLDING THAT GOVERMENT MIGHT NOT BE MAKE USE OF INFORMATION OBTAINED DURING AN UNLAWFUL SEARCH. TO SUBPOENA FROM THE VICTUM THE VERY DOCUMENTS ILLEGALLY VIEWED EXPRESSED SUCCINCTLY THE POLICY OF THE BROAD.

THE EXCLUSIONARY RULE HAS TRADITIONALLY BARRED FROM PHYSICAL MATERIALS OBTAINED EITHER DURING OR AS A DIRECT RESULT OF AN UNLAWFUL INVASION IT FOLLOWS FROM THE HOLDING IN SILVERMAN V. UNITED STATES. 365 U.S. 505. 51. S. Ct. 679 S. L. Ed. 2d. 734. THAT THE FOURTH AMENDMENT MAY PROTECT AGAINST THE OVER-HEARING OF VERBAL STATEMENTS. AS WELL AS AGAINST THE MORE TRADITIONAL SEIZURE OF PAPERS ANY EFFECTS SIMILARLY TESTIMONY AS TO MATTER OBSERVED DURING AN UNLAWFUL INVASION HAS BEEN EXCLUED IN ORDER TO ENFORCE THE BASIC CONSTITUTIONAL POLICIES MCGINNIS V. UNITED STATES. I. CIR. 227. F. 2d. 598. ALSO JENNIFER SMITHS ILLEGAL ELLICIT TESTIMONY AFTER HER OBTAINING THE DISCOVERY IN SCHOPPE-RICOS. CASE. IS LIKE A OVER-HEARING VERBAL STATEMENT, AND THE D.A. PROSECUTOR ELLICITING TAINTED TESTIMONY AND SAM SANCHEZ PROSECUTORS INSPECTOR PICKING UP M.S. SMITH. OUT OF JAIL AND TOOK HER TO THE DISTRICT ATTORNEY OFFICE (RT.'645.) SHOULD BE EXCLUDED HER FULL PREPARED TESTIMONY GIVEN AFTER THAT AS WELL IN THIS CASE AND DEFENSE

## GROUND FIVE

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL FAILED TO PRESENT A DEFENSE.

---

(1) IN RE. EYEWITNESS TESTIMONY BY. ELIZABETH LOFTUS   L72 M'S BOOK. FROM JUSTICE DENIED ONE LEADING AUTHORITY ON HIS IDENTIFICATIONS L. IN AZ. NO CRUELER TYRANNIES ACCUSATIONS, FALSE WITHOUT 3 OTHER TERRORS OF OUR TIMES, BY DOROTHY ROBINWITZ. | 36 | IN RE. ACTUAL INNOCENCE. BY BARRY SCHECK.

EVIDENCE THAT MR. SCHOPPE-RICO WAS HIGHLY UNDER THE INFLUENCE OF METHADMHTETMINE, ALCOHOL AND VICODIN, THAT CAME BACK IN HIS BLOOD TEST, THAT WERE PERFORMED ON HIM AFTER HE WAS ARRESTED "(R.T. 587)" TRIAL COUNSEL DIFICIENT PERFORMANCE REPRESENTATION WAS PREJUDICIAL WHEN SHE NEGLECTED AND FAILED TO ESTABLISH DUE TO CONFLICTS OF INTER- EST, THAT MR. SCHOPPE-RICO MENTAL STATE AND MENTAL DISORDER AT THE TIME WAS SEVER. AFTER ALL THE EVIDENCE AND TESTIMONY ABOUT MR. SCHOPPE-RICOS DRUG USE RESULTED IN AN DIMINISHED CAPACITY TO THINK OF MENTAL STATE OF DISORDER WAS USED AT TRIAL. PETITIONER WAS UNDER THE INFLUENCE, SUCH AS EVIDENCE MS. SMITH SAID, TESTIFIED TO A FEW INCIDENTS OF MEN WEARING BLUE AND BEING BLACK GETING INTO CONFONTATIONS OR VERBAL ALTERCATIONS (RT. 1814-1818) AND DAYS LATER CARS PULLING UP TO HIS HOUSE AND MEN IN BLUE FIVE TO SIX MEN CHASING HIM IN FRONT OF HIS HOUSE (RT. 1820-1824) SHE EVEN SAW PETITIONER ON THE GROUND. (C.T. 575.) WHERE AT TIMES, HE WAS THREATEN HIS LIFE ENDANGERED WITHOUT HIM PROVOKING IT. MS. SMITH EVEN TESTIFIED THAT ALL SUMMER LONG SHE WAS USING METHAMPHETAMINES ALOT AND DOESN'T REMEBER ALOT OF THINGS DUE TO IT. (CT. 543.). SHE WAS SALING DRUGS DOING DRUGS. (C.T. 537.) AND PROVIDING THEM TO PETITIONER, MR. SCHOPPE-RICOS LAB REPORTS TEST FOUND HIGH CONSENTRATION AMOUNTS OF METHAMPHETAMINES AN ALCOHOL IN HIS BLOOD. (RT. 587) ITS DEFENSE WAS WITH HELD. JURORS WOULD OF EASILY UNDERSTOOD AND ACQUITTED OR REDUCED DEGREE OF THE CRIME CHARGE TO MANSLAUGHTER INVOLUNTARY, IF COUNSEL DID NOT FAIL TO INTRODUCE THE LAW AN FACTS IN REGARDS TO IT, AND FULLY INSTRUCT THE JURY ON DEFENSE ISSUES OF INTOXICATION. IMPERFECT SELF-DEFENSE. NON STATUTORY MANSLAUGHTER AND INSTRUCTON INVOLUNTARY MANSLAUGHTER INTOXICATION AND UNCONSCIOUSNESS, REGARDING PETITIONERS DRUG INTOXICATION AND PSYCHOTIC PARANOIA WITH HALLUCINATIONS.... MR. SCHOPPE-RICO CONTENDS VIOLATIONS HIS CONSTITUTIONAL RIGHT AMENDMENTS TO EFFECTIVE ASSISTANCE OF COUNSEL OCCURRED AND THERE IS CURE FOR IT, COUNSEL FAILED TO ESTABLISH AND ARGUE, MR. SCHOPPE-RICO WAS'NT EVEN AWARE CONSCIOUS OF WHAT, WAY OR WHERE OR WHEN WHY HE WAS IN THE LYNBROOK AREA WHEN HE WAS INVESTIGATORLY STOPED AT GUN POINT AFTER VISITING ASSOCIATES, DUE TO HE WAS HIGHLY INTOXICATED UNDER THE INFLUENCE OF NARCOTICS. COUNSEL FAILED TO ESTABLISH THIS DIMINISHED MENTAL STATE CAPACITY OF BEING ABLE TO THINK OR KNOW WHATS GOING ON OR THAT OCCURED. IN RE: PEOPLE V. WEBBER. 279. CAL. R.PET. 437. 228. CAL. APP. 3d. 1146, CITING RAY INFRA. HELD THAT WHEN THERE IS EVIDENCE OF TWO FACTORS A SORT OF CAUSE AND EFFECT RELATIONSHIP BETWEEN INTOXICATION AND LACK OF INTENT TO KILL OR KNOW. IN WEBBER SUPRA. THE COURT NOTED THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE AFORETHOUGHT IS MURDER § 187. SUBD(3) PENAL CODE. "[IF.] BECAUSE OF "DIMINISHED CAPACITY" THE PREPETRATOR IS UNABLE TO ENTERTAIN MALICE OR HEAT IN/OF THE PASSION, BUT NEVERTHELESS

Is found to be able to form the intent to kill. The crime is voluntary manslaughter if because of diminished capacity, he additionally did not intend to kill. His crime is involuntary manslaughter. Finding defendant had both diminished capacity also unconsciousness or lack of intent to kill . . . . . . . . . . . In Webber supra, expert testimony was received on the effects of appellants long term drug use. Dr. Siegel stated that the amount of methamphetamine found in defendants blood samples was a high concentration of methamphetamines . . . . . about (10) to (15) times the amount normally used for therapeutic purpose. In Dr. Siegels opinion appellant was intoxicated with methamphetamines on the night of the shooting(s." experiencing a paranoid psychotic episode and hallucinating that he was about to be the victim of a drive by shooting. The court reversed 2ND degree murder and remand for new trial with proper jury intoxication involuntary manslaughter instruction. As in Mr. Schoppe-Rico's case should do the same . . . . . . . . . . Mr. Schoppe-Rico contends the following evidence is proof and supports his request for reversal and said petition to be granted. See, detective Michael Costa's testimony when Gruenwald was in same interview with Mr. Schoppe-Rico, asked if he was on drugs, and he said, "yes." (R.T. 248), he was way out there. Also Mr. Schoppe-Rico told them he was cold and didn't get much sleep last night . Detective Costa persisted in asking what type of drugs, he was on. Mr. Schoppe-Rico told him he ingested extasy (R.T. 249.) with all of this and more intoxication diminished capacity mental state an disorder evidence, at trial, including lab reports, were sufficient evidence, with associates and witness testimony that petitioner was not clearly thinking, but effected and druged. Upon Mr. Schoppe-Rico's demands counsel promised to present this evidence then failed to (R.T. 587.) based on her assumption ineffectively. As far as she was concern it wasn't part of her defense strategy, which she never had one. She failed to realize it. Say she argued that Mr. Schoppe-Rico was never identified by the witnesses and had reasons to be in the area because him and his associates lived in the area. However counsel Ms. Leonida still failed to argue and establish, ladies and gentlemen and if you, they had reasons to believe he was the shooter. Then at the time he was highly intoxicated at the time and still wouldn't have the intent to kill. An instruct the jury on involuntary manslaughter intoxication self-imperfect defense. So counsel was also ineffective in demonstrating that he nor there were sufficient evidence to support a 1st degree or 2nd degree murder conviction. Counsel prejudicially failed to present a defense to his alibi and intoxication and failed to get a jury instruction on this of intoxicated involuntary manslaughter. Trial court even prejudicially denied manslaughter instructions on other basis. (See counsels ineffectiveness at)(R.T. 2362 through R.T. 2365.) in Webber supra: held where there is substantial evidence that defendant was unable to entertain intent to kill, court has sua sponte duty to instruct on involuntary manslaughter

Question of defendants intent to kill was not resolved by jury because it did not have full range of applicable lesser included offenses offered to it. Ineffective assistance of counsel is reviewable under Rose v. Lundy, cited in Strickland v. Washington, 104. S.Ct. 2052, 466. U.S. 668. (U.S. Fla. 1984) held petitioners in a long line of cases including Powell v. Alabama, 287. U.S. 45, 55, S.Ct. 55, 77. L.ed. 158. (1932) Johnson v. Zerbst 304. U.S. 458. 58. S.Ct. 1019. 82. L.Ed. 1461. (1938) and Gideon v. Wainwright 372. U.S. 335. 83. S.Ct. 792. 9. L.Ed. 2d. 799. (1963) this court has recognized the sixth amendment right to counsel exist and is needed in order to protect the fundamental right to a fair trial the constitution guarantees a fair trial through [466. U.S. 685] due process clause. It defines the basic elements of a fair trial largely through the several provisions of the sixth amendment including "the counsel clause". . . . . . . . . which held a person who happen to be a lawyer present at trial alongside the accused, is not just a enough to satisfy the constitutional command. The sixth amendment recognizes the right to effective assistance of counsel it envisions counsels playing a role that is critical to the ability of the adversial system to produce a just "result". An accused is entitled to be assisted by an attorney, retained or whether appointed who plays a effective role necessary to ensure a fair trial. . . . . . . [2] the governing legal standard plays a critical role in defining the question in assessing prejudice for counsels error. When a defendant challenges a conviction, the question is whether there is a reasonable probability absent the error, the fact finder would had a reasonable doubt, when a defendant challenges a first degree sentence on murder with enhancement and joinder. Such as the one at issue in this case the question is whether there is a reasonable probability that absent errors. Sentencer including courts can re independently reweigh the evidence wouldhave concluded that the balance of aggravating, mitigating circumstances did not warrant life sentence. . . . . . . . in Riley's supra, under Strickland test determined counsels performance fell below an objective standard of reasonableness, 466. U.S. at 688, 104. S.Ct. 2052. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary Id. at 691. 104. S.Ct. 2052. We have held that a lawyer, who fails adequately to investigate and introduce into evidence, evidence that demonstrates his clients factual innocence or that raises sufficient doubt as to that question to undermine confidence in the verdict renders deficient performance. Avila v. Galaza, 297. F.3d. 911, 919. (9th Cir. 2002.) quoting: Hart v. Gomez, 174. F.3d. 1067. 1070. (9th Cir. 1999.) see also Lord v. Wood, 184. F.3d. 1083. 1096. see also Lord v. Wood. 184. F.3d. 1083. 1096. (9th Cir. 1999.) counsels performance was difficient where counsel failed to interview three witnesses who had material evidence as to their clients innocence. In LeGrand v. Stewart (9th Cir. 1998.). As here a lawyer who does not put a witness on the stand, his decision will be entitled to less deference than if he interviews the witness. The reason for this is simple a lawyer who interviews the witness can rely on his assessment of there articulateness and demeanor factor we are not in position to secondly guess.

GROUND SIX:

## JURY MISCONDUCT.

PETITIONER CONTENDS HIS RIGHTS TO A IMPARTIAL JURY WAS VIOLATED, WHEN JURY PANEL WAS EXPOSED TO POTENTIAL JUROR EXPERT LIKE STATEMENTS REGARDING, CIRCUMST-ANTIAL EVIDENCE INTRUSTION DEFINED BY PROSECUTION BIASLY, GANG ASSOCIATION EVIDENCE, CLAIMS POLICE OFFICERS ARE ALWAYS PERFECT, INFALLABLE, AND SCENT DISCRIMINATION DOGS ARE PERFECT AND INFALLIBLE. AND STATEMENTS ON BATTER WOMAN. WERE ALL TALKED ABOUT ISSUES DURING VOIR DIRE. AND SCHOPPE-RICO'S CASE WAS BASED ON THESE FACTS OF DEPENDING ON A PARTIAL JURY TO FOLLOW THE CIRCUMSTANCIAL EVIDENCE INSTRUCTIONS, WIEGH THE GANG AFFILATION EVIDENCE AND THE DOGS AND OF POLICE OFFICERS. SECONDLY MOST OF THEM SERVED ON POSSIBLY PREVIOUS TAINTED JURYS OR BECAME BIAS. ALSO NONE WERE OF THE SAME PEER GROUP OR SOCIAL AND POLITICAL CLASS OR AGE AS SCHOPPE-RICO ALL OF PETITIONERS RACE OF MEXICAN-AMERICANS WERE EXCLUDED LEAVING NOTHING BUT RETIRED MILITARY SERVICE MEN - M.P'S. COPS. AND SONS OF POLICE. TO SERVE ON THE JURY. WHO'S BELIEFS OR MORAL UNDERSTANDING AUTOMATICALLY IS BIASED. PETITIONER THIRDLY CONTENDS HIS STATE AND FEDERAL SIXTH AND FOURTEENTH. AMENDMENTS CONSTITUTIONAL RIGHTS WERE VIOLATED. AND DUE THESE SUBSTANTIAL EFFECTS, OR INFLUENCE ON THE VERDICT WARRANTS A REVERSAL. UNDER. MACH. V. STEWART. 157. F.3d. 630. (CA.9. ARIZ. 1997.). AND UNDER. BATSON V. KENTUCKY. (U.S. KY. 1986,) 106. S.CT. 1712. 476. U.S. 79. PETITIONER FURTHER CONTENDS JURORS WHEN THEY DISCUSS INFORMATION ABOUT THEIR DELIBERATIONS TO NEWS PAPER REPORTER IS PROOF OF A BIAS. JUROR. IN SCHOPPE-RICO'S CASE. ONE TOLD THE REPORTER THAT JENNIFER SMITH'S TESTIMONY DIDN'T PLAY A ROLE IN THEIR VERDICT. WHEN IT DID. SEE EXHIBIT.____ PUBLISHED ARTICLE ON THAT. THE FOLLOWING IS OFF OF THE RECORD IN SCHOPPE-RICO'S. VOIR DIRE. TRIAL. AT 9:05 AM, MARCH 5. 2005, THE CONTRA COSTA COUNTY CLERK. SWEARS IN THE FOLLOWING JURORS, TO RENDER A VERDICT # 118, 18, 72, 77, 8, 9, 119, 22, 59, 15, 94, AND 92 ........ ALL THESE JURORS STATEMENTS ARE AS FOLLOWS, AND INFORMATIONS: ALL JURORS OF SPANISH NAMES WERE DISMISSED, AT, (RT. 784.) ALL THREEN LISTED SPANISH NAMES WERE EXCLUDED. THEN THE PROSECUTOR. PEREMPTORILY CHALLENGE TO DISMISS MS. ONTIVEROS (R.T. 765.) FOR BEING MEXICAN-AMERICAN NOW ALL JURORS WHO REMAINED CAME FROM A CROSS SELECTION OF POLICE OFFICERS, RETIRED-MILITARY MEN AND CHILDREN OF POLICE OFFICERS OR RELATIVES. THAT AUTOM-ATICALLY PUTS A MEXICAN-AMERICAN PETITIONER AT DISADVANTAGE. ESPECIALLY WHEN BEING ACCUSSED OF BEING ASSOCIATE WITH A MEXICAN-AMERICAN NORTENO GANG. DURING VOIR DOIRE, PETITIONER KNOWS OF NO COPS OUR WAS RELATED TO ONE OR LITTLE LESS SOMEONE WHO SERVED IN THE MILITARY

ALL PUT IN THEIR JUROR QUESTIONAIRES, THEY WILL BELIEVE A OFFICERS TESTIMONY OVER ANY EVIDENCE PRESENTED, SO THIS ONLY MEANS THEM BEING RAISED OR TAUGHT, EVERY PERSON ARRESTED, ARE GUILTY, TIL PROVEN INNOCENT. THAT OFFICERS ARE PERFECT AN INFALLIBLE. THE SIXTH AMENDMENT RIGHT TO A JURY TRIAL GUARANTEES TO THE CRIMINALLY ACCUSSED, FAIR TRIAL BY PANEL OF IMPARTIAL INDIFFERENT JURORS, EVEN IF ONLY ONE JUROR IS UNDULY BIASED OR PREJUDICED DEFENDANT IS DENIED HIS CONSTITUTION-AL RIGHT TO IMPARTIAL JURY. U.S.C.A. CONST. AMGND 6, . . . . ., ALL SWORN IN JURORS STATEMENTS AS FOLLOWS.

JUROR NO. #77. HIS UNCLE WAS A F.B.I. AGENT RETIRED OUT OF CHICAGO, HE WENT DISBELIEVE OFFICERS, (RT. 967.) ALSO HE KNOWS OF GANG ACTIVITY IN CONCORD CA. OF TWO GANGS (R.T. 968.) HE IS FAMILIAR WITH BAYPOINT, (RT. 964.)   I.E, WE'RE ALSO SURE HE'S JUST AS AWARE OF NORTENOS, JUST AS MR. MICHAEL GOLVIN AT (R.T. 814.) WHOS OF CONCORD,

JUROR NO. # 118. WAS IN THE AIRFORCE AND WORKS NOW AS A COMPUTER SPECIALIST AT CALIFORNIA STATE BOARD OF EQUALIZATION (RT. 1133.) HE SERVED ON A JURY TWICE BEFORE, HIS FARTHER IS A RETIRED POLICE CHIEF AND OFFICER OF COMPTON AND MODESTO CALIFORNIA, HE WAS AWARE OF HIS FATHERS WORK. (RT. 1136.) HE BELIEVES CRIME IS SERIOUS (RT. 1136.) AND CONTRIBUTES DONATIONS THROUGH WORK TO BATTER WOMENS AND CHILDREN CRISIS CENTERS. (RT. 1136)   SUPRA.

JUROR NO. # 18. IS A TRAUMA NURSE AT JOHN MUIR'S HOSPITAL IN CONCORD, HER WORK INVOLVES KNOWLEDGE OF GANG ACTIVITY, (RT. 758-760.) SHE THINKS CRIME IS SERIOUS ISSUE TO HER (RT. 822.) SHE HER SELF WAS VICTUM OF GUNSHOT AND WORKED WITH VICTUMS OF GUN SHOTS. THIS HAVING MEDICAL EXPERENCE, COURT ADVISED HER IF SHE COULD INFLUENCE JURY POOL. (RT. 867) SHE EVEN BAGED UP HANDS ON GANG ALLEGED MEMBERS AT TRAUMA HOSPITAL, FOR GUN POWDER CHECKS (R.T. 867.) THIS AUTOMATICALLY WAS HER TO TAINT THE JURY ON RESIDUE POWDER ISSUES IN PETITIONER TRIAL, SUPRA.

JUROR NO. #72. A PRINCIPLE OWNER FOR ZENAITH INCOPORATED THEY PROVIDE COURT ROOM RE-ENACTMENTS, CONSTRUCTION DEFECTS CASES, AND DO SHOWS TO HELP EDUCATE JURORS. HE KNOWS ALOT OF ATTORNEYS, (RT. 953.) WAS IN MILITARY, (RT. 954-955.) IN HIS QUESTIONAIRE HE STATED HE WOULDNT BE ABLE TO FOLLOW COURT RULES. TO ACQUITT IF PETITIONER, EXCERCISED HIS RIGHT NOT TO TESTIFY, HE'LL HOLD IT AGAINST HIM (C.T. 1105.),

JUROR NO. # 8. A AIRFORCE SERVICEMEN: HE SERVED ON A JURY BEFORE, IN A RAPE CASE 25 YEARS AGO IN SAN FRANCISCO, HIS DAUGHTER IS AN ATTURNEY, IN D.C. FOR NAACP, HE APPLIED IN 1975 FOR POLICE JOBS, PRISON GUARD JOBS, ECT. HE IS A CLOSE ASSOCIATE WITH POLICEMEN AT CHURCH HE ATTENDS. HE TAKES CRIME VERY SERIOUS PROBLEM. (RT. 769, 770, 771, 772, 773.) HIS POLICE BUDDY'S AT CHURCH MAY OF INFLUENCED HIM TO BE BIAS-

JUROR NO. #9.   VARIES RECORD AINT CLEAR AT (R.T. 774-775)
SEAT NO. 6. HIS DAD WAS GAMEWARDEN ASSOCIATE TO COPS, HE NEITHER, SERVED OR DID, MR. REBICHAUD WAS EXCUSED #9, FOR UNKNOWN REASONS BY D.A.

JUROR NO. #119, TALKED TO ATTORNEY AT WORK. A MANAGER FOR DELTA DENTAL (RT. 1138) HE ALSO PUT POSSIBLY BIASED AGAINST DEFENDANT BEING CHARGED, ARRESTED FOR THE CRIME. HE SAID TO THE EXTENT IF HE IS ARRESTED FOR IT, THERE'S A PREETY GOOD REASON TO ARREST HIM. AS FAR AS GOES POSSIBLY, HE ALSO THINKS, HE'LL BELIEVE OFFICER TESTIMONY OVER. ANYTHING. (RT. 1138, 1139.) (HE WAS BIAS)

JUROR NO. #22. SERVED ON JURY BEFORE IN PITTSBURG. A BATTERY CASE. A YEAR BEFORE HIS WIFE WAS HELD UP AT GUN POINT (RT. 785-786-787). HE CHECKED YES ON A LOT OF BIAS ANSWERS THAN CHANGED THEM TO SERVE JURY DUTY. (RT. 821) AND HE'S FAMILIAR WITH THE AREA AN CRIME SCENE. . (HE WAS BIAS)

JUROR NO #59, UNCLEAR ON RECORD.

JUROR NO. #44, WAS BIAS BECAUSE HIS COUNSINE WAS SHERIFF AT RICHMOND COURT HOUSE. A BALIFF NAMED CLIFFORD DAVIS. AND HE DID SPEAK OF HIS WORK WITH HIM (RT 899) HE PUT POSSIBLY A ISSUE IF HE DOESN'T TESTIFY ON QUESTIONAIRE (R.T. 900). HE ALSO BELIEVES HISPANICS MORE LIKELY TO COMMIT CRIME THAN WHITES. BASE ON T.V. SHOWS, (RT. 901.) AND HE'S BEEN TO BAY POINT, (RT. 904) AND PETITIONER BELIEVES HE'S BIAS.

JUROR NO #13. IS CLOSE FRIENDS TO PITTSBURG POLICE DISPATCHER. (RT 803) HE IS FAMILIAR WITH CRIME SCENE AREA. (DT. 820). HE'S AWARE OF GANG ACTIVITY, 15 YEARS AGO. HIS WIFE COUSINES FRIEND WAS SHOT FOR WEARING A 49ERS JACKET. (RT 881.).

PETITIONER CONTENDS TESTIMONY PROOF IS HERE OF JURY MIS CONDUCT. OF A TAINTED JURY AND ABUSE OF THE PEREMPTORILY CHALLENGES TO EXCLUDE MINORITY GROUP JURORS OF MEXICAN AMERICANS AND LEAVE POLICE OFFICERS ASSOCIATES OR OF THERE CLASS. PETITIONER. IS OF A LOW BUDGET COMMUNITY, WHO ALL ARE ON WELFARE. AND HAVE NO POLITICIAL TIES. TO POLICE OFFICERS OR RELATED TO ANY. HE'LL FURTHER CONTEND HIS RIGHTS WERE VIOLATED UNDER. MACH V. STEWART. 1 ST. F. 3d. 636. CA (9TH CIR. ARIZ. 1997) SUPRA IN IT'S FINDING WAS FINGING PREJUDICE WHEN EXTRINSIC INFORMATION WAS BOTH DIRECTLY RELATED TO A MATERIAL ISSUE IN THE CASE AND HIGHLY INFIAMATORY, THE RESULT OF THE TRIAL IN THIS CASE WAS PRINCIPIALLY DEPENDENT ON WHETHER THE JURY CHOSE TO BELIEVE THE CHILD OR DEFENDENT. THERE CAN BE NO DOUBT THAT BODKINS STATEMENTS HAD TO HAVE A TREMENDOUS IMPACT ON THE JURY. VERDICT. THE EXTRINSIC EVIDENCE WAS HIGHLY INFIAMANTORY AND DIRECTLY CONNECTED TO MACHS GUILT. BODKIN REPEATEDY STATED THAT IN HER WORK EXPIERENCE AS A SOCIAL WORKER CHILDREN NEVER LIE. ABOUT SEXUAL ASSUALT. THE BULK IN OF THE PROSECUTION CASE CONSISTED OF A CHILDS TESTIMONY THAT MACH SEXUALLY ABUSED HER. WE FIND THUS BODKIN STATEMENTS TO HAVE SUBSTANTIALLY AFFECTED INFLUENCED THE VERDICT AND THERE FORE REVERSE THE CONVICTION.

HOWEVER JUST AS IN MACH V. STEWART SUPRA. SCHOPPE-RICO WAS FOUND GUILTY ON THESE JURORS STATEMENTS, SO THE COURTS DESICISON TO GRANT OR DENY THIS HABEAS PETITION IS REVIEWED DE NOVO. MARTINEZ-VILLAREAL V. LEWIS. 80. F. 3d. 1301. 1305. (9TH CIR.) CERT. THE EXISTANCE OF DEFECTS. DEPRIVATION OF THE RIGHT TO COUNSEL IS HEREIN. FOR EXAMPLE, REQUIRES AUTOMATIC REVERSAL OF THE CONVICTION BECAUSE THEY INFECT THE ENTIRE TRIAL PROCESS. BRECHT V. ABRAHAMSON. 507. U.S. 619. 629.

42.

30, 113, S. Ct. 1710, 1717, 123, L. Ed. 2d. 353,

THE TAINT THE JURORS, BEGAN WHEN THE PROSECUTOR STARTED DEFINING, WHAT THE JURY INSTRUCTION MEANT TO HIM ON CIRCUMSTANTIAL EVIDENCE, BY USING A COOKIE JAR STORY. (R.T.) 835-836,) INTERPRETATION TAINTED JURY (R.T. 846-847,) SEE JEFFREY HARDIN, HAS A HARD TIME BELIEVING OFFICERS ARRESTING INNOCENCE PEOPLE, (RT. 728) RT. 754) DAWN SURGGS AS WELL, (RT. 756,) STEPHEN O'NIEL, (RT. 762) AS WELL, MORA MEADOWS AFRAID OF GANGS (RT. 791) MS. CORL BIAS IF HE DOESN'T TESTIFY(RT.796), DOSMETIC ISSUE (RT. 869) MONICA DEMAIRS TILLEY, (RT 882) IS BIASED TO GUN OWNERS WHO ARE NEGLECTFUL WITH THEM, (RT. 884) AS SO FORTH,

MR. SCHOPPE-RICO CONTENDS WITH THIS AMOUNT OF EXPOSURE DURING VOIRDIRE IS MORE PROOF HE WAS DENIED A FAIR TRIAL THE SIXTH AMENDMENT RIGHT TO JURY TRIAL "GUIARANTEES," TO THE CRIMINALLY ACCUSSED A FAIR TRIAL BY A PANEL OF IMPARTIAL INDIFFERENT JURORS, IRVIN V. DOWD 366, U.S. 717, 722, 81, S. Ct. 1639, 1642, 6, L. Ed. 2d. 751, (1961), EVEN IF ONLY ONE JUROR IS UNDULY BIASED OR PREJUDICED, THE DEFENDANT IS DENIED HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY, UNITED STATES, V. EUBANKI, 591. F. 2d. 513, 517, 9TH CIR (1979), SEE UNITED STATES V. ALLSUP, 566, F. 2d. 68, 71, (9TH CIR. 1977) DUE PROCESS REQUIRES THAT THE DEFENDANT BE TRIED BY A JURY CAPABLE AND WILLING TO DECIDE A CASE, SOLELY ON THE EVIDENCE BEFORE IT, SMITH V. PHILLIPS, 455, U.S. 209, 217, 102, S. Ct. 940, 945, 46, L. Ed., 2d, 75, (1982) (IE), (PETITIONER TRYED TO HAVE JURY INVESTIGATED, COUNSEL WAS INEFFECTIVE AT (CT, 1456-1468,)

ONE OF THE ERRORS IN THIS CASE OF SCHOPPE-RICO, IS JUST AS IN MACH V. STEW-ART, SUPRA ARGUEABLY RISES TO THE LEVEL OF STRUCTURAL ERROR, WHILE TRIAL ERROR OCCURES DURING THE PRESENTATION OF THE CASE, TO THE JURY AND THUS CAN BE "ASSESSED" IN THE CONTEXT OF OTHER EVIDENCE PRESENTED, ARIZONA V. FULMINANTE, 499, U.S. 279, 307-08, 111, S. Ct. 1246, 1264, 113, L. Ed. 2d. 302 (1991) STRUCTURAL ERRORS "INFECT THE ENTIRE TRIAL PROCESS, BRETHCH, V. ABRAHAMSON, 507, U.S. 619, 630, 113, S. Ct. 1710, 1777, 123, L.Ed. 2d, 352, (1993) THOMPSON V. BORG, 74, F. 3rd, 1571, 1574, (9TH CIR) THE ERROR IN THIS CASE IS THE JURY EXPOZURE THAT SEVERLY INEFFECTED THE PROCESS FROM THE BEGINING, BEFORE SUCH A JURY WHEN AN UNBIASED JURY CAN BE IMPANNELLED WITHOUT ANY SUBSTANTIAL LOSS SERVES NO LEGITIMATE INTEREST, NOR WOULD IT CORRECT APPROACH ......... IN CONTEXT OF THE OF THE EVIDENCE PRESENTED DURING THE CASE WAS RECEIVED BY A JURY THAT WAS BIASED FROM THE OUTSET BRECHt SUPRA, PREJUDICALL STATEMENTS MADE BEFORE A JURY WAS SWORN, THE STATEMENTS DOESN'T RESEMBLE THE ERRONEOUS INTRODUCTION OF EVIDENCE THAT CAN BE WIEGHED AGAINST THE OTHER EVIDENCE, YOU ARE TO SEE AND DESCRIBE THE ERROR, AS "TRIAL ERROR" SEE ARIZONA, V. FULMINATE, 499, U.S. 279, 111, S.Ct. 1246, 113, L. Ed. 2d. 302 (1991) THESE STRUCTURAL DEFECTS IN THE CONSTITUTION OF THE TRIAL MECHANISM, WHICH DEFY ANALYSIS BY HARMLESS ERROR STANDARDS, THE ENTIRE CONDUCT OF THE TRIAL, FROM BEGINNING TO END IS OBVIOUSLY AFFECTED BY THE PRESENCE ON THE BENCH OF A JUDGE WHO IS NOT IMPARTIAL ID. AT 309- 10- 111, S. Ct. AT, 1264-65, IN CONCLUSION ONE MUST REMAND() AND REVERSE.

IN KENTUCKY - BATSON V. KENTUCKY, 706, S. Ct, 1712, 476, U.S. 79, U.S. Ky 1986, SUPRA, THE EQUAL PROTECTION CLAUSE PROHIBITS A STATE FROM TAKING ANY ACTION BASED ON CRUDE IN ACCURATE RACIAL STEREOTYPES, EVEN AN EXCLUSION OF BLACKS (I.E. MEXICANS-AMERICANS TO,) FROM A JURY SOLELY BECAUSE OF RACE, CAN NO MORE BE JUSTIFIED BY A BELIEF THAT BLACKS,

ARE LESS LIKELY THAN WHITES TO CONSIDER FAIRLY OR SYMPATHETICALLY THE STATE CASE AGAINST A BLACK. PROSECUTORS USING HIS PEREMPTORY CHALLENGES TO EXCLUDE A RACIAL GROUP BASED ON THEM BEING OF THE DEFENDANTS RACE. IS IMPROPER, SO THE PROPER RESOLUTION OF THIS CASE REQUIRES MORE THAN A NODDING REFERENCE TO THE CHALLENGE. MR. SCHOPPE-RICO IN SUPRA, ALREADY ESTABLISH A PRIMA FACIE CASE. HOWEVER UNDER CONVENTIAL EQUAL PROTECTIONS PRINCIPLES APPLY. THAT A DEFENDANT/PETITIONER CAN OBJECT TO EXCLUSION ON THE BASIS OF NOT ONLY RACE, BUT ALSO SEX. CRAIG V. BORGEN 429. U.S. 190, 97. S.CT. 451. 50, L.ED. 2.d. 397. (1976) "AGE". MASSACHUSETTS. Bd. OF RETIREMENT. V. MURGIA, 427. U.S. 307. 96. S.CT. 2562. 49. L.ED.2d. 520. (1976) "RELIGIOUS" OR POLITICAL AFFILIATION. KARCHER. V. DAGGET. 462. U.S. 725. 748. 103. S.CT. 2653. 2668. 2664. 77. L.ED. 2.d. 133. (1983) STEVEN J. CONCURRING "MENTAL CAPACITY" CLEBURNE. V. CLEBURNE LIVING CENTERS INC. 473 U.S. 432. 105 S.CT. 3244. 87. L.ED. 2d. 313. (1985) NUMBER OF CHILDREN. DANDRIDGE V. WILLIAMS. 397. U.S. 471. 90 S.CT. 1153. 25. L.ED. 2d. 491. (1970) LIVING ARRANGEMENTS DEPARTMENT OF AGRICULTURE V. MORENO. 413. U.S. 528. 93. S.CT. 2821. 37. L.Ed. 2.d. 782 (1973) AND EMPLOYMENT IN A PARTICULAR INDUSTRY. MINNESOTA. V. CLOVER LEAF. CREAMRY CO. 449. U.S. 456. 101. S.CT. 715. 66. L.ED. 2.d. 659. 1981. OR. "PROFESSION." WILLIAM V. LEE OPTICAL CO 348. U.S. 483. 75. S.CT. 461. 99. L.Ed. 563. (1955), SO MR. SCHOPPE-RICO HAVE'S GOOD ENOUGH REASON TO OBJECT HEREIN. ( SEE EXHIBIT: H ) OF JURY STATEMENTS IN ARTICLE. MISUSE OF THE PEREMPTORY CHALLENGE TO EXCLUDE BLACK JURORS HAS BECOME BOTH COMMON AND FLAGRANT BLACK DEFENDANTS HAVE RARELY BEEN ABLE TO SECURE A COMPILE STATISTICS SHOWING THE EXTENT OF THAT PRACTICE BUT FEW CASE SETING OUT SUCH FIGURES ARE INSTRUCTIONS/INSTRUCTIVE. UNITED STATES V. CARTER 528. F.2d. 844. 848 (CA. 8. 1975) IN (15) CRIMINAL CASES IN 1974. IN MISSOURI INVOLVING BLACK DEFENDANTS PROSECUTORS PREMPTORY CHALLENGES 81% OF BLACK JURORS. SEE STATE V. WASHINGTON. 375. S0. 2.d. 1162. 1163. 1164. (LA. 79.) IN LOU. SANA. INVOLVING BLACK JURORS DEFENDANT FEDERAL PROSECUTORS USED 68.4% OF THEIR PEREMPTORY CHALLENGES AGAINST BLACK JURORS. ALSO AN INSTRUCTION BOOK USED BY PROSECUTORS OFFICE IN DALLAS COUNTY TEXAS. EXPLICITY ADVISED PROSECUTORS THAT THEY CONDUCT JURY SELECTION SO AS TO ELIMINATE "ANY MEMBER OF A MINORITY GROUP IN A (100 FELONY TRIALS IN DALLAS COUNTY IN 1983-1984 PROSECUTORS PREREMPTORY STRUCK 405 OUT OF 467. ELIGIBLE BLACK JUROR'S THE CHANCES OF A QUALIFIED BLACK SITTING ON A JURY WAS 1 IN 10 (COMPARE TO 1 IN 2. FOR WHITES. AND SCHOPPE-RICO CONTENDS IT (C) AND (C) FOR MEXICAN-AMERICANS. OR PEOPLE WHO DON'T HAVE MILITARY, OR POLICEMEN BACKGROUND OR WHO HAS NEVER SERVED ON A JURY BEFORE. IN CONCLUSION FOR THESE REASONS ALL ABOVE COURT SHOULD ISSUE A REMAND AND REVERSE CONVICTION. CITING CASTANEDA 430. U.S. AT 494-95. 97. S.CT. AT 1280-81. THE DEFENDANT PRESENTED EVIDENCE THAT SHOWED THAT OVER AN ELEVEN YEAR PERIOD MEXICAN-AMERICANS HAD BEEN UNREPRESENTED ON GRAND JURYS BY FORTY PERCENT. Id. AT 495. 97. S. CT. AT 1280 THUS CASTANEDA STANDS FOR THE PRINCIPLE THAT AN EQUAL PROTECTION VIOLATION IN JURY SELECTION MAY BE ESTABLISHED BY THIS SHOWING THAT A DISTINCTIVE GROUP HAS BEEN SUBSTANTIALLY UNDERREPRESENTED ON THE VENIRE OVER A PERIOD OF TIME. SEE BATSON SUPRA. EXPLAINING CASTENADA. SUPRA. ELEMENTS OF PRIMA FACIE OF MEXICAN-AMERICAN BEING EXCLUDED NOT ONCE BUT OVER ELEVEN YEAR PERIOD TIME.

GROUND SEVEN:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO ARGUE OR OBJECT TO THE PENAL CODE § 246. CHARGE OF DISCHARGING A FIREARM ON AN OCCUPIED VEHICLE.

MR. SCHOPPE-RICO, CONTENDS IN STRICKLAND V. WASHINGTON, 466, U.S. 668, 688-693. 104, S.Ct. 2052, 2064. 68. 80 L.ed. 2.d. 674 (1984.) SETS THE STANDARDS TO ANALYZE INEFFECTIVE ASSISTANCE OF COUNSEL AS WELL BE SHOWN, MR. SCHOPPE-RICO FURTHER CONTENDS HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHTS. FEDERAL AND STATE WERE VIOLATED AT THE PRELIMINARY HEARING, TRIAL AND ON APPEAL IN VIOLATION OF CRUTES. V. SMITH. CA .9. CAL. 1996. PEOPLE V. VALENZUELA. 156. CAL. RPTR. 314, 86. CAL. APP, 3.d. 427, (CA. APP. 2. DIST) COUNSEL WAS ENEFFECTIVE AS TO THE SEVERENCE OF BOTH OF THESE CASES, ENTWINED THE § 187 PEN CODE. AND § 246. PEN CODE. ON HOW THE SUSPICIOUS LURED NATURE OF HOW SCHOPPE-RICO WAS FILED ON FOR IT, WITHOUT A TIMELY DISCOVERY GIVEN. OR DEFENDANT NEVER BROUGHT BEFORE A MAGISTRATE ON TIME,,,,,, COUNSELS FAILURE TO OBJECT, TO THE HIGHLY PREJUDICIAL TESTIMONY INTRODUCED BY THE PROSECUTION DENIED MR. SCHOPPE-RICO HIS RIGHT AMEND AND CONST. TO EFFECTIVE ASSISTANCE OF COUNSEL THE PRESENTATION OF THE HIGHLY PREJUDICIAL TESTIMONY ARE TWO, SO FAR. THE COURT EXCLUDED HEARSAY STATEMENTS MADE MR. EAGLE WHO IS THE OTHER PERSON WHO LIVED AT MR. SCHOPPE-RICOS HOUSE (R.T. 587) AFTER IT WAS EXCLUDED IT WAS STILL INTRO- DUCED TO THE JURY, WHO HEARD OR READ HIS HEARSAY STATEMENT, ON COURT SUBMITTED EXHIBIT. NO # 7, TRANSCRIPT OF INTERROGATION PAGES 1 + 65, ) THAT THE JURY HERD OR READ, AFTER IT WAS EXCLUDED. (RT. 586. 588), THE OTHER STATEMENTS COUNSEL. WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PRESENTATION OF THE HIGHLY PREJUDI- CIAL "BLOOD ON HIS T-SHIRT" EVIDENCE WHEN STOPED, THAT OFFICERS USED IN THEIR TESTIMONY AFTER IT WAS EXCLUDED. SUCH A WHLDON MENTIONING BLOOD SPOTS ON SCHOPPE-RICOS T-SHIRT WHEN DESCRIBING THE ARREST. (RT. 118-119) SO DID DEPUTY BRYAN AT (CT. 197) (RT. 699) AFTER THE COURT EXCLUDED IT AT (RT. 636.) UNDER THE CRUTES V. SMITH SUPRA COURT RULING ON PREJUDICIAL TESTIMONY, REVERSED,

ALSO HOWEVER COUNSEL FAILED TO SUPPRESS PEN. CODE § 246. CHARGE OR FILE ANY MOTIONS SUCH AS THE PEN. CODE § 1429. (8) MOTION TO DISMISS BECAUSE OF FAILURE TO BRING CASE P.C. 8246. TO TRIAL WITHIN PENAL CODE § 1382. DEADLINE WAIVER IN RE: PEOPLE V. VALENZUELA. SUPRA. COUNSELS WRITS WERE INADEQUATTE, HALF DONE. IN LIMINE. ON JANUARY 18. 2002 IN COURT. COUNSEL FILED MOTIONS; BUT ON OCTOBER, 19. 2000 A COMPLAINT WAS FILED IN THE CONTRA COSTA, COUNTY SUPERIOR

1.) NOTE ALL. P.C. / PEN CODE IS REFERRED TO IN RE: PENAL CODE BOOK SECTIONS.

COURT PITTSBURG DIVISION (DOCKET NO. 4-123353-5) CHARGING PETITIONER WITH MURDER "ONLY" AND NO ENHANCEMENTS OR ADDITIONAL COUNTS, ON NOVEMBER, 2, 2000, IN VIOLATION OF PETITIONERS CONSTITUTIONAL AMENDED RIGHTS BOTH STATE AND FEDERAL AND IN VIOLATION OF PENAL CODE § 825, IN PREJUDICE, PROSECUTOR AMENDED COMPLAINT FILED IN COURT CHARGING PETITIONER WITH MURDER AND BEING A STREET GANG MEMBER IN POSSESSION OF FIREARM, THEN IN VIOLATION OF PENAL CODE, § 849, § 825 CODE OF CIVIC PROCEDURE § 134, 135. GOVT CODE § § 6700, 6706, 71345, CODE OF CIVIL PROCEDURE § 134 AND PENAL CODE § 1385, ON SEPTEMBER 12, 2000, AT THE CONCLUSION OF THESE PRELIMINARY HEARING. MR. SCHOPPE-RICO WAS HELD TO ANSWER TO ALL CHARGES AN ENHANCEMENTS IN THE NEW AMENDED PETITION COMPLAINT, COUNSEL OBJECTED TO THE PEN C. § 187. BUT NOT THE PEN.C, § 246, ON SEPTEMBER 26, 2001, AN INFORMATION FILED IN COURT (DOCKET NO. 5-011510-5.), CHARGING PETITIONER ILLEGALLY WITH THE OFFENSES CHARGED IN FIRST AMENDED COMPLAINT AN THREE ADDITIONAL COUNTS. DEFENDANT WAS ACQUITTED FOR AN NEVER BROUGHT BEFORE A MAGISTRATE WITHIN PENAL CODE TIME LIMITS THIS CHARGE WOULD BE VIOLATION OF P.C. SEC. § 246.1 12031.(A)(2)(C) AND 12025.(B)(B)(3), ALL ALLEGED TO OCCURRED "SEPTEMBER 4, 2000. BEFORE MR. SCHOPPE-RICO'S HAND INJURIES SEE PRELIMINARY COURT, TRANSCRIPTS, PG(1-300))...... STANDARD REVIEW OF LAW, THIS HERE IS CONSTITUTING A DISMISSAL ON THESE AFOREMENTION LURED CHARGES, DUE TO THEY VIOLATED MR. SCHOPPE-RICO: CONSTITUTIONAL RIGHTS. SIXTH AMENDMENT THATS APPLICABLE THROUGH THE FOURTEENTH AMENDMENT FEDERAL AND STATE RIGHTS .... THE REMEDY OF AN UNLAWFUL SERVICE OF AN ARREST WARRANT IS THE SAME AS THAT FOR AN UNLAWFUL SERVICE OF SEARCH WARRANT UNDER THE FOURTH AMENDMENT WONGSON SUPRA – DUNAWAY SUPRAS. IT DOES NOT DIRECTLY RESULT IN A DISMISSAL BUT COULD "BUT IS A FACTOR". IN DETERMINING WHETHER TO SUPPRESS ANY EVIDENCE OR A CONFESSION OBTAINED AS A RESULT OF ILLEGAL SERVICE OF A WARRANT UNDER MIRANDA SUPRA. IN RE: LARRY.C. 1982 134. C.D. 3d. 62.167. 184. CR 505 PEN. C. § 3.20 TIME LIMITS ON SERVICE OF WARRANT, UNLESS AN ARREST WARRANT IS SERVED WITHIN REASONABLE TIME AFTER ARREST, INCIDENT OR THE COMPLAINT FILED. THE DEFENDANT MR. SCHOPPE-RICO MAY BE ENTITLED TO A DISMISSAL ON THE GROUND: THAT HE HAS BEEN DENIED/DEPRIVED OF THE RIGHT TO A FAIR SPEEDY TRIAL. 14TH AMEND. U.S. CONST. FED AN STATE. IN RE: JUNES V. SUPERIOR COURT. (1970) 3. L.ED. 734. 91. CR. 578 – STABIO V. SUPERIOR COURT (1994) 21. CD. 4TH. 1488, 26. CR. 2d. 615. [RIGHT TO SPEEDY TRIAL] CH.H. IT STATES THE OFFICERS AND MAGISTRATE WHO ENTERED SCHOPPE-RICO'S RESIDENCE. SEPTEMBER 2ND 2000 IN RE: CONTRA COSTA DETECTIVE PATRICK CERRUTI (C.T. 404 THROUGH, 418.) AND PETITIONER WAS IN CUSTODY. (R.T: _____ ). THEY HAD 48 HOURS TO FILE THOSE AMENDED CHARGES ON

ON SEPTEMBER 6TH AND 2ND OF 2000, THEY ALSO COUNT OF A FEW OCCUSIONS BEFORE OCT. 17. 2000
CONTRA COSTA COUNTY, DISTRICT ATTORNEY AN SHERIFFS DEPARTMENT DIDNT DO THIS AN RELEASED
MR. SCHOPPE-RICO, FREE FROM ANY CHARGES, MR. SCHOPPE-RICO CONTENDS PRESUMABLY A YEAR
LATER WITHOUT DISCOVERY, DUE PROCESS OF THE LAW IN VIOLATION OF HIS CONSTITUTIONAL AMEN
DMENT RIGHTS, THEY NEVER ISSUED A WARRANT OR CHARGED PETITIONER, BASICALLY ACQUITTED
HIM OF THE 82416, PEN. CODE VIOLATION. NOT MERELY NO DISCOVERY OR EVIDENCE WAS PRE-
SERVE. WITNESSES NOT OF BIAS INTEREST WERENT PRESERVED. SECURITY VIDEO FOOTAGE AND SO FORTH,
PROSECUTER FANCIFUL SCENARIO OF ARGUEMENT WILL BE PETITIONER WAS LINKED THE SHELL
BULLET CASING FROM SEPTEMBER 2ND 2000. TO THE ONES FROM OCTOBER. 17. 2000, COUNSEL
WAS INEFFECTIVE AND MUCH OF THE EVIDENCE IS FABRICATED AND WITNESSES COERCED. ALSO
EVIDENCE OF THE SEP. 2ND 2000 INCIDENT WAS WITHHELD THAT WAS EXONERATING. EXCUL-
PATORY AND FAVORABLE TO HIS DEFENSE, THUS RESULTING IN THE WRONGFUL CONVICTION OF
PETITIONER TO CONVIENCE JURORS, ON UNLAWFUL PERJURED TESTIMONY..... THE STATE
LAW AND FEDERAL. REQUIRE A FIRST APPEARANCE BEFORE A MAGISTRATE, A ARRESTED
PERSON MUST BE TAKEN BEFORE A MAGISTRATE. THE APPLICABLE RULE IS THAT STATED IN
PEOPLE V. COMBES. (1961)(56) CAL 2.A. 135, 142.14. CAL. RPTR. 4. 7. 363, P.2d. 7. 4. CITED
IN VALENZUELA. SUPRA. ..   MR. SCHOPPE-RICO CONTENDS HE WAS NEVER ARRAIGNED,
OR TAKEN BEFORE A MAGISTRATE. NOR ARRESTED ON SEPTEMBER. 6. 2000. UNTIL OCT 116. 2000
IT STATES WITHOUT NECESSARY UNNECESSARY "DELAYS", IN ANY EVENT, WITHIN (48) HOURS
AFTER ARREST. THE 48. HOURS EXPIRE WHEN MAGISTRATE COURT IS NOT IN SESSION PENAL
CODE 8 825. SEC. 825. PROVIDES THAT AN ARREST REQUIRES ARRAIGMENT AND A
" PROBABLE CAUSE" DETERMINATION CONCERNING A PERSON ARRESTED WITHOUT A WARRANT
MUST BE MADE WITHIN (48) HOURS OF ARREST. COUNTY OF RIVERSIDE V. MC LAUGHLIN
(1991). 500. U.S. 44. 144. L. Ed. 2d. 99. 63. 111. S GL. 1661. COUNTY OF RIVERSIDE DISSCUSSED PENAL
CODE & 6.26, 88.25. IN 8 P.C. 3 611. P.C 814. 14. TIME FOR ARRAIGMENTS TIME REQUIRE-
MENTS. FOR ARRAIGMENTS ARE PRIMARILY DISSCUSSED IN P.C. 8 611, THE BASIC ARRAIGMENT
TIME REQUIREMENTS IN CRIMINAL CASES IS THAT THE PETITIONER MUST BE BROUGHT BEFORE A MAGIST-
RATE FOR ARRAIGMENT, BAIL SETING AND "WITHOUT ANY UNNECESSARY DELAY". AND IN ANY EVENT
WITHIN TWO DAYS OF ARREST. EXCLUDING NO-JUDICIAL DAYS PEN CODE 88 849.(3) ARREST WITH-
OUT A WARRANT.(P.C. 8825.) ARRESTING WITHOUT A WARRANT. PEOPLE V. THOMPSON (1980) 27 C. 3d. 303
324. 165 CR. 289. 203. PEOPLE V. HANDEL 1147412. C. 3d. 140. 199. 115 CR. 314. 398. EVEN IF THE
DEFENDANT WAS BROUGHT TO COURT WITHIN TWO DAY. THE ARRAIGNMENT HAD BEEN ILLEGALY DELAYED
IF THE TWO DELAY WAS NOT NECESSARY. PEOPLE. V. POWELL (1967.) 67. C. 2d. 32. 59. CR. 817. DRAGNA V.
WHITE. (1955) 45. C. 2d. 469. 289. P. 2d. 428. THE "ONLY" DELAY WHICH MAY BE DEEMED "NECESSARY"
ARE THOSE NEEDED TO COMPLETE THE ADMINISTRATIVE TASK FOR FILING FORMAL PLEADING & NOTHING ELSE.
1) IN HOLE PAGE REFERING TO PENAL CODE BOOK SECTIONS, P.C.B. PEN CODE'S.

GROUND EIGHT:

PETITIONERS FOURTH AND FOURTEENTH AMENDMENTS RIGHT WERE VIOLATED, WHEN DETECTIVES ILLEGALLY SEARCH AND SEIZED PETITIONERS ALLEGED PROPERTY.

IN BROWN V. ILLINOIS, 95. S. CT. 2254, 422. U.S. 590( U.S. ILL. 1975.) CONCLUDED, THE TESTIMONY OF BROWNS, FAILED TO SHOW THAT AT THE TIME OF HIS APPREHENSION THERE WERE PROBABLE CAUSE FOR DEFENDANTS ARREST. BUT THAT HIS ARREST WAS UNLAW. I.D AT. 305,315, 307, N.E. 2.d. 422. U.S. 597 AT 357. (SEE SCHOPPE-RICO'S CLAIM FOUR HEREIN")

PETITIONER CONTENDS, OFFICERS WHILDDON, BRYAN AND CONTRA COSTAS COUNTY DETECTIVES COSTA AND GRUENHIED FAILED TO GIVE, SCHOPPE-RICO OR INTENTIONALLY TACTICLY TO GET PETITIONER TO DIVULGE INFORMATION. FAILED TO READ HIM, HIS MIRANDA RIGHTS . . . . IN THE FIRST INSTANCE POLICE OFFICERS WHILDDON AND BRYAN VIOLATED SCHOPPE-RICO'S MIRANDA RIGHTS UPON THE APPREHENSION OF HIM. THEN THERE AFTER THE DETECTIVES LONG HOURS OF BRUTAL INTERROGATION AND COERCION . . . SECONDLY, TRIAL AND APPELLATE COUNSEL, INEFFECTIVELY FAILED TO SERVE TO BREAK THE CAUSUAL CONNECTION BETWEEN THE ILLEGAL ARREST AND THE GIVING OF ANY STATEMENTS, "TO CAUSE" A ILLEGAL SEARCH AT 180 SHORE ROAD ON OCTOBER, 17TH 18TH 19TH OF 2000 WITHOUT AN WARRANT . . . " IT WAS NOT THE DEFENDANTS ACT OF FREE WILL TO PURGE THE PRIMARY TAINT OF THE UNLAWFUL INVASION OF THIS FORCING PETITIONER TO DIVULGE ADDRESSES OR STATEMENTS, IN RE: WONGSON VS. UNITED STATES, SUPRA. HELD THE COURT ONCE ERRED IN ADMITTING EVIDENCE SUCH AS IN THIS CASE, LIKE ( SWEATPANTS, BULLET CARTRIDGES, AND ECT, SEIZED AT 180 SHORE ROAD.) WONGSON GUIDES THIS COURT TO NOT ALLOW OR ERRE IN ADMITTING SUCH EVIDENCE . . . THE EVIDENCE SEIZED ON OCTOBER 17.2000. AS FOLLOWS: OCTOBER. 17. 2000. SCHOPPE-RICO WAS STOPED FOR A INVESTIGATORY STOP, BY POLICE, HE WAS INTERROGATED AND COERCED UPON THREATS (RT: 488.) OF BEING RESPONSIBLE OF THE CRIME. PETITIONER INDICATED THAT HE DOESN'T WISH/WANT TO TALK WITH POLICE OFFICERS, "YET" THEY CONTINUE (RT: 489.) "IN VIOLATION OF MIRANDA SUPRA". . . .

LATER ON THAT AFTERNOON, THE ILLEGAL EVIDENCE SEIZED ON OCTOBER 17TH 18TH AND 14TH OF 2000, IS AS FOLLOWS. DETECTIVE COSTA WENT TO 180 SHORE ROAD ON (OCT. 17. 2000) WHERE ALLEGED SCHOPPE-RICO LIVED (RT: 1627) HE WENT WITHOUT A WARRANT AND UNLAWFULLY ENTERED, AND FOUND A PAIR OF GRAY SWEAT PANTS IN THE FRONT YARD, WHICH WERE SAME COLOR AND APPARENT CONDITION AS THE SWEAT SHIRT FOUND AT 40, SHARON DRIVE AND BEARING THE BRAND NAME, PRO SPIRIT ( RT: 1631-1633.) THERE WAS . (I.E.) NO VIDEO PHOTOS OR FOOTAGE OR DIAGRAMS ECT. OF WHERE OR HOW THEY WERE FOUND? UPON ENTRY. (SEE EXHIBIT: I ) IN SUPPORT OF—HE WAS SNOOPYING AROUND . . . SERGEANT HALE TESTIFIED, HE NOTICED THE PAIR OF PANTS LAYING ON THE FRONT YARD TOWARD A WALKWAY. (RT: 1631.) . . . OTHER SEIZED ITEMS ON OCTOBER 18TH 2000, BY SERGEANT BRYAN WENT TO 180 SHORE ROAD (RT: 1591- 1592.) HE COLLECTED A SHELLCASING, A CARTRIDGE AND A DEFORMED SLUG (RT: 1592- 1593.) HE FOUND THEM WITHOUT A WARRANT ALSO UPON ENTRY OF PROPERTY. THERE WASN'T NO PROOF THESE ALSO WEREN'T LAWFULLY FOUND UNDER . BROWN V. ILLINOIS' SUPRA: HELD THE EXCLUSIONARY RULE IS UTILIZED AS IT SHOULD HAVE BEEN USED IN SCHOPPE-RICO'S CASE. ITS TO EFFECTUATE THE FOURTH AMENDMENT. BOTH STATE AND FEDERAL SERVES INTEREST AND POLICIE THAT ARE DISTINCT FROM THOSE IT SERVES UNDER THE FIFTH AMENDMENT. SINCE IT IS DIRECTED AT ALL UNLAWFUL "SEARCHES AND SEIZURES" AND NOT MERELY THOSE THAT HAPPEN TO PRODUCE INCRIMINATING MATERIAL OR TESTIMONY, AS FRUITS OF, U.S, C.A. CONST AMEND, 4, 5 . . . . A SEARCH WARRANT WAS NOT ISSUED UNTIL OCTOBER 30TH, 31, OF 2000 (RT: 2079.) IN THIS CASE .

THE COMPLAINED ABOUT SEARCH AND SEIZURE VIOLATED PETITIONERS RIGHTS. UNDER THE FOURTH AND FOURTEENTH AMENDMENT FEDERAL AN STATE TO THE UNITED STATE CONSTITUTION, WONGSON V. UNITED STATES, 1968, 171. U.S. 471. 484, POLICE CONDUCT IS SO VAGUE AS IN WONGSONS. HOLDING. HERE WOULD MEAN THAT A VAGUE SUSPICION COULD BE "TRANSFORMED" INTO PROBABLE CAUSE FOR ARREST BY REASON OF AMBIGOUS CONDUCT WHICH THE OFFICERS THEMSELVES HAVE PROVOKED. AT. HENRY V. UNITED STATES, 361. U.S. 98, 104, 80. S.CT. 168, 172. 4. L.Ed. 2.d, 134. THE RESULT WOULD HAVE THE SAME ESSENTIAL VICE AS A PROPOSITION WE HAVE CONSISTENTLY REJECTED THAT A SEARCH UNLAW, ITS P. INCEPTION MAY BE VALIDATED BY WHAT IT TURNS UP. BY MRS. V. UNITED STATE 273. U.S. 28, 47. S. Ct. 248. 71. L.Ed. THUS THEY HELD THE OFFICERS UNINVITED ENTRY TO TOYS LIVING QUARTERS IN WONGSON'S WAS UNLAWFUL. THE COURT RULED THAT TOYS DECLARATION AND THE CONTRABAND TAKEN FROM YEE. WERE THE FRUITS OF THE AGENTS ILLEGAL ACTION AND SHOULD NOT HAVE BEEN ADMITTED AS EVIDENCE AGAINST TOY. I.d. AT. 484, 485, 83. S.CT. AT 4116 .

48

THE SITUATION IN THIS CASE IS VIRTUALLY A EQUAL REPLICA OF THE SITUATION IN BROWNS SUPRA. AT ITS RULING, BEARING ON THIS ISSUE... "PETITIONER WAS ADMITTEDLY SEIZED WITHOUT PROBABLE CAUSE IN THE HOPE THAT SOMETHING MIGHT TURN UP AND CONFESSED TO A EXTENT OF WERE HE LIVED AND MADE UP STUFF, WITHOUT ANY INTERVAINING EVENT, THE TRIAL COURT ..." THE TRIAL COURT RULED ON HIS MIRANDA MOTION ERRED ON PETITIONERS MOTION. THE MOTION WAS PARTIALLY DENIED AND PURPORTED TO DISTINGUISH AS IN "BROWN" SUPRA. "ON THE GROUND THAT THE POLICE DID NOT THREATEN OR ABUSED PETITION AT (RT. 3UL. THROUGH RT. 500) AT LEAST NOT PSYCHALY, BUT PSYCHOLOGYLY DID SO. HOWEVER "THE COURT PRESUMBLY PUTS IN THE ILLEGAL SEIZURE AND DETENTION AND ERRED IN THAT THE POLICE, (442. U.S. 214) CONDUCT WAS HIGHLY PROTECTIVE OF DEFENDANTS FIFTH AND SIXTH AMENDMENT RIGHTS. 61. A.O. 2d. AT 303. 402. N.Y. S. 2d. AT 443. THIS BETRAYS A LINGERING CONFUSION BETWEEN VOLUNTARINESS FOR PURPOSES OF THE FIFTH AMENDMENT AND THE CAUSUAL CONNECTION TEST ESTABLISH IN "BROWNS SUPRA. SATISFYING THE FIFTH AMENDMENT IS ONLY THE THRESHOLD CONDITION OF THE FOURTH AMENDMENT BOTH STATE AND FEDERAL ANALYSIS REQUIRED BY BROWN. NO INTERVENING EVENTS BROKE THE CONNECTION BETWEEN PETITIONERS ILLEGAL DETENTION AND HIS STATEMENTS. TO ADMITT PETITIONERS. STATEMENTS OR CONFESSIONS, IN SUCH A CASE WOULD ALLOW "LAW ENFORCEMENT OFFICERS TO VIOLATE THE FOURTH AMENDMENT FEDERAL AND STATE WITH IMPUNITY. SAFE IN THE KNOWLEDGE THAT THEY COULD WASH THEIR HANDS IN THE PROCEDURAL SAFEGUARDS OF THE FIFTH AMEND: DUNAWAY V. NEW YORK. SUPRA. FEDERAL COURT HOLDING.

NOW IN SCHOPPE-RICOS CASE. ITS THE SEARCH AND SIEZEMENT OF ITEMS AT PETITIONERS RESIDENCE THAT'S OF ISSUE HERE AND NOT JUST THE STATEMENTS, HE MADE IN COURT (EXHIBIT: SEVEN) OF COURT TRIAL TRANSCRIPT OF INTERROGATION AT MARTINEZ POLICE STATION.... AS IN, BROWNS SUPRA. THE ISSUE PRESENTED IN THIS CASE TURNS ON PROPER APPLICATION OF THE POLICE UNDERLYING THE FOURTH AMENDMENT EXCLUSIONARY RULE NOT ON THE FIFTH AMENDMENT OR THE PROPHYLAXIS ADDED THAT GUARANTEE BY MIRANDA - V. ARIZONA. 384. U.S. 436. 46. S. Ct. 1602. 16. L. Ed. 2d. 694 1966. .... THE COURTS RECOGNIZED IN WONGSON. SUPRA. THE FOURTH AMENDMENT EXCLUSIONARY RULES APPLIES TO "ANY" STATEMENTS OBTAINED FOLLOWING AN ILLEGAL ARREST. "JUST AS IT DOES TO TANGIBLE EVIDENCE SEIZED IN A SIMILAR MANNER. I.d. (412. U.S. NOT) "AS IN SCHOPPE-RICOS SITUATION"... OR EVIDENCE OBTAINED PURSUANT TO AN OTHERWISE ILLEGAL SEARCH AND SEIZURE. WONGSON SQUARELY REJECTED. HOWEVER THE SUGGESTION THAT THE ADMISSIBILITY OF STATEMENT SO OBTAINED, SHOULD BE GOVERNED BY A SIMPLE. "BUT FOR TEST THAT WOULD RENDER INADMISSIBLE ALL STATEMENTS GIVEN SUBSEQUENT TO AN ILLEGAL ARREST I.d. AT 467. 448. 83. S. Ct AT 417. ... IN A SIMILAR MANNER, THE COURT REFRAINS FROM ACCORDING DISPOSITIVE WEIGHT TO THE SINGLE FACTOR OF MIRANDA WARNINGS. EACH HOLDING NEITHER OF THE REJECTED EXTREMES ADEQUATELY RECOGNIZES THE COMPETING CONSIDERATIONS INVOLVED IN A DETERMINATION TO EXCLUDE EVIDENCE AFTER FINDING THAT OFFICIAL POSSESSION OF THAT EVIDENCE WAS TO SOME DEGREE CAUSED BY A VIOLATION OF THE FOURTH AMENDMENT. .... THE COURT HELD THIS TYPE OF STATEMENTS AT ISSUE HERE IN PETITIONERS CASE, AS IN WONGSONS' WERE ON THE TEMPORAL EXTREME IN RELATION TO THE ILLEGAL ARREST. CP. COLLINS V. BETO. 348. F. 2d. 823. 832. 834. (836. CA. 5. 1445. (4465) TOYS STATEMENT WAS OBTAINED IMMEDIATELY AFTER HIS ARREST BY SIX AGENTS, IT APPEARS TO HAVE BEEN A SPONTANEOUS RESPONSE TO A QUESTION PUT TO HIM IN THE FRENZY OF THAT EVENT AND THERE IS NO INDICATION THAT THE AGENTS MADE ANY ATTEMPT TO INFORM HIM OF HIS RIGHTS TO REMAIN SILENT. THIS AS WELL OCCURRED TO SCHOPPE-RICO, THE PHYSICAL CIRCUMSTANCES OF THE ARREST UNNECESSARY "INTRUSIVE" ON PERSONALY PRIVACY, WOULD CONSIDER THE EQUALIZATION POTENTIAL OF MIRANDA WARNINGS RARELY SUFFICIENT TO DISSIPATE THE TAINT IN SUCH CASES AS THIS ONE. THE DETERRENT VALUE OF THE EXCLUSIONARY RULE IS MORE LIKELY TO BE EFFECTIVE AND CORRESPONDING MANDATE TO PRESERVE JUDICIAL INTEGRITY. UNITED STATES V. PELTIER. 422. U.S. 531. 45. S. Ct. 2313. 45. L. Ed. 2d. 374. 1975. MICHIGAN V. TUCKER. 417. U.S. 433. 450. N. 25. 44. S. Ct. 2357. 2367. 41. L. Ed. 2d. 182. (1474). MOST CLEARLY DEMANDS THAT THE FRUITS OF OFFICIAL MISCONDUCT BLOOMED UNDER BROWN SUPRA. FEDERAL... 1.) THIS COURT SHOULD FIND AND RULE THE POLICE UNLAWFULLY SEARCHED AND SEIZED SCHOPPE-RICOS ALLEGED PROPERTY AT 180 SHORE RD WITHOUT A WARRANT THE SWEATSHIRT AND CASINGS WERE UNLAWFULLY OBTAINED THEN USED AGAIN'T HIM. TO SCENT DISCRIMINATE IN A SCENT LINEUP." HE CONTENDS ALL THESE INCRIMINATING ITEMS THAT WAS OBTAINED AS A RESULT OF TAINT MUST BE EXCLUDED / SUPPRESS. 2.) THIS ALSO SHOULD EXCLUDE TO EXTEND TO NOT ONLY THE ILLEGALLY SEIZED ITEMS AT. 180 SHORE ROAD. BUT THE ILLEGALLY OBTAINED STATEMENTS FROM SCHOPPE-RICO, DURING THE INVESTIGATORY STOP ON KEVIN DRIVE" AND IN THE INTERROGATION ROOM AT MARTINEZ POLICE STATIONS. ? RECOVERED ON OCTOBER 17. 2000. .... THIS IS THE ONLY WAY REMEDIE AVAILABLE AND HOW THE COURT SHOULD RULE AND CURE THE CONVICTION...

IN WONGSONS SUPRA. IT WAS CONCEDED THAT TOYS DECLARATION IN HIS BEDROOM ARE TO BE EXCLUDED IF THEY HELD TO BE FRUITS OF THE AGENTS UNLAWFUL ACTIONS. IN ORDER TO MAKE THE EFFECTIVE. THE FUNDAMENTAL CONSTITUTIONAL GUARANTEES OF SANCTITY OF HOME AND INVIOLABILITY OF THE

OF THE PERSON. BOYD V. UNITED STATES. 116. U.S. 616. 6.S. Ct. 524. 29. L. Ed. 746. THIS COURT HELD NEARLY HALF CENTURY AGO THAT EVIDENCE SEIZED DURING AN UNLAWFUL SEARCH COULD NOT CONSTITUTE PROOF AGAINST THE VICTIM OF THE SEARCH. WEEKS. V. UNITED STATES (116. U.S.) 232. U.S. 383. 34. S. Ct. 341. 58. L. Ed. 652. THE EXCLUSION RULE PROHIBITION EXTENDS AS WELL TO THE INDIRECT AS THE DIRECT PRODUCTS OF SUCH INVASION. SILVERMAN V. UNITED STATES. 365. U.S. 505. 81. S. Ct. 674. 5. L. Ed. 2d. 734. THE EXCLUSIONARY RULE HAS TRADITIONALLY BARRED FROM PHYSICAL MATERIALS OBTAINED DURING OR AS A RESULT OF AN UNLAWFUL INVASION. THAT THE FOURTH AMENDMENT MAY PROTECT AGAINST THE OVERHEARING OF VERBAL STATEMENTS AS WELL AGAINST THE MORE TRADITIONAL SEIZURES OF PAPERS ANY EFFECTS SIMILARILY TESTIMONY AS TO MATTER OBSERVED DURING A UNLAWFUL INVASION HAS BEEN EXCLUDED IN ORDER TO ENFORCE THE BASIC CONSTITUTION- AL POLICIE. BOTH STATE AND FEDERAL. MCGINNIS V. UNITED STATES. 1. CIR 227. F.2d 598'

IN COURT TRANSCRIPT. (CT: 610. P9 AND 610 P9) GRUENHEID STATES A FENCE WAS UPON THE SIDE OF THE COURT PORT ( SEE EXHIBIT: I. ) AN ACCURATE DIAGRAM OF THE SECURED FENCE AREA. THAT WAS BREACH BY DETECTIVES SWOOPING AROUND AND WHERE THEY UNLAWFULLY OBTAIN THE SWEATSHIRT THEY USED IN THE SCENT DISCRIMINATION LINE UP TO INCRIMINATE PETITIONER. WHICH WERE ON OTHER SIDE OF THAT FENCE ON PROPERTY. THIS UNLAWFUL INVASION VIOLATES PETITIONERS CONSTITUTIONAL RIGHTS. BOTH FEDERAL AND STATE . . . .

## GROUND NINE:

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON APPEAL:

(MR. SCHOPPE-RICO CONTENDS UNDER. EVITTS V. LUCEY. 105. S. Ct. 830. 469. U.S. 387. (U.S. KY. 1985) FEDERAL COURTS HELD CRIMINAL DEFENDANTS ARE ENTITLED TO EFFECTIVE ASSISTANCE OF COUNSEL ON FIRST APPEALS OF RIGHT. (I.E) AND SCHOPPE-RICO WAS DENIED THIS SUBSTANTIAL RIGHT. APPELLATE COUNSEL MUST ASSIST IN PRE-PARING AND SUBMITTING BRIEFS TO THE APPELLATE COURTS AND MUST PLAY THE ROLE OF A ACTIVE ADVOCATE RATHER THAN MERE FRIEND OF THE COURT ASSISTING IN DETACHED EVALUATION OF ALL OF APPELIA- NTS CLAIMS. U.S. C.A. CONSTITUTIONAL AMENDMENTS. SIX AND FOURTEEN . . . . THIS SHOULD OF FAR BEYOND RAISING A COUPLE CLAIMS, "ONLY", AS APPELLATE COUNSEL DONE IN THIS CASE, AND FAILED TO LITIGATED MOST ADDITIONAL CLAIMS. THIS COUNSEL AT THE TIME HAD BEEN REPRESENTEING "FIVE TO NINE" OTHER INDIGENT CLIENTS AT ONCE AND MUST OF BEEN OVERWHELMED AND NEVER FOCUSED ON PETITIONERS CLAIMS . . . THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT STATE AND FEDERAL GUARANTEES A CRIMINAL DEFENDANT THE EFFECTIVE ASSISTANCE OF COUNSEL. KYLE GEE. COUNSEL ON APPEAL WAS INEFFECTIVE ON DIRECT APPEAL IN THIS CASE ON DIRECT APPEAL . . . SCHOPPE-RICO CONTENDS THE APPELLATE COUNSEL FAILED TO RAISE THE CLAIMS TRIAL COUNSEL RAISED AT TRIAL THAT WERE DENIED THAT WERE IN RECORD. SUCH AS MOTIONS OF SEVERANCE. MIRANDA ISSUES. PROBABLE CAUSE MOTIONS. AND SUPPRESSION OF EVIDENCE. ALL THIS RENDERING INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL . . . PETITIONER HAD WROTE THE COUNSEL NUMEROUS OF TIMES. REQUESTING AND ORDERING, "COUNSEL" TO CHALLENGE THESE PREJUDICALLY DENIED MOTIONS EFFECTIVELY . . .

THE ONLY CLAIMS HE LITIGATED WERE CLAIM "TEN". ELEVEN. TWELVE AND THIRTEEN. IN HIS OPENING BRIEF HOWEVER HE RAISED A CLAIM ON APPEAL WITH CLAIMS TEN. ELEVEN. TWELVE AND THIRTEEN HERE IN . . . "THIS CLAIM WAS THE "COURT ERRED IN DENYING THE MARSDEN MOTION OF PETITIONERS IN INJUCTION WITH MOTION FOR A NEW TRIAL". HOWEVER EVEN THOUGH APPELLATE COURT DENIED THIS MOTION AN CLAIM. WHEN APPELLATE COUNSEL WENT TO THE CALIFORNIA SUPREME COURT TO PETITION FOR REVIEW. HE FAILED TO SUBMITT THAT CLAIM IN HIS PETITION FOR REVIEW ON PETITIONERS BEHALF. (THERE WERE/WAS NO MENTIONING OF IT IN THIS PETITION FOR REVIEW AFTER APPEAL TO THE SUPREME COURT OF CALIFORNIA. COUNSEL DROP THIS CLAIM OF THE MARSDEN MOTION ISSUE. AFTER HE ALREADY'D PERSUED IT. IF COUNSEL WOULD OF PRESENTED THIS ISSUE. THERE WOULD OF BEEN A CHANCE THE CALIFORNIA SUPREME COURT WOULD OF RULED IN PETITIONERS FAVOR ON IT. HOWEVER SINCE COUNSEL FAILED TO LITIGATE THE MARSDEN ISSUE. WE'LL NEVER KNOW AND THIS RENDERING INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL. SEE APPELIANTS OPENING BRIEF. (AOB) THAT WAS FILED IN THE FIRST APPELLATE DISTRICT OF CALIFORNIA. THEN SEE APPELLANT PETITION FOR REVIEW FILED IN THE SUPREME COURT. NO WHERE IN IT IS THE CLAIM MENTIONED ON THE IN-TRIAL MARSDEN ISSUE. THIS ALSO PROOF OF COUNSEL'S LAZINESS AND FAILURE TO LITIGATE THE ABOVE PREJUDICAL DENIED MOTIONS OF AT TRIAL OF THE SEVERANCE MOTION. MIRANDA MOTION ISSUES. PROBABLE CAUSE MOTION AND SUPPRESION OF EVIDENCE MOTION AND NOW THE MARSDEN MOTION ISSUE. THERE IS NO DOUBT COUNSEL WAS RENDERED INCOMPETENCE. UNDER. EVITTS V. LUCEY SUPRA: