THE EVITTS COURT. THE DEFENDANT EVITTS FILED A HABEAS CHALLENGING THE CONSTITUTIONALITY OF THE COMMONWEALTH AS DISMISSAL OF HIS APPEAL BECAUSE OF HIS LAWYERS FAILURE TO FILE THE STATEMENT OF APPEAL ON THE GROUNDS. THE DISMISSAL DENIED HIM AND DEPRIVED HIM OF INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL. AS A RIGHT GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION. HIS WRIT WAS GRANTED TO SEE IF HE HAD A CLAIM UNDER THE "EQUAL PROTECTION CLAUSE." LUCEY V. SEABOLD 645. F. 2d. 547 (1981)

SCHOPPE-RICO MOVES THE COURT TO GRANT THE CLAIM ON THAT BASIS. OF WHETHER THE STATE COURTS DISMISSED THE APPEAL IN VIOLATION OF OF THE DUE PROCESS CLAUSE OF THE 14th AMENDMENT. "SO SCHOPPE-RICO'S CLAIM ARISEN BETWEEN TWO LINES OF CASES. IN LINE THE COURT HELD IN "EVITTS SUPRA. ... THE 14th AMENDMENT GUARANTEES A CRIMINAL APPELLANT PERSUING A FIRST APPEAL AS OF RIGHT. CERTAIN MINIMUM SAFEGUARDS NECESSARY TO MAKE THE APPEAL "ADEQUATE AND EFFECTIVE". GRIFFIN V. ILLINOIS 351 U.S. 12 CO. 76. S. Ct. 585. 541. 106. L. Ed. 891. (1956) AMONG THOSE SAFEGUARDS IS THE RIGHT TO COUNSEL. SEE DOUGLAS V. CALIFORNIA. 372. U.S. 353. 83. S. ct. 814. 9. L. 2d. Ld. 811. (1403.) IN THE SECOND LINE WE HAVE HELD THAT THE TRIAL LEVEL RIGHT TO COUNSEL CREATED BY THE SIXTH AMENDMENT AND APPLIED TO THE STATE AND FEDERALS THROUGH THE 14th AMENDMENT. GIDEON V. WAINWRIGHT. 372. U.S. 335. 344. 83. S. Ct. 792. 796. 9. L. Ed. 2d. 799 (1963) COMPREHENDS THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. Id. [ENG. U.S. 348] THE ATTORNEY MUST BE AVAILABLE TO ASSIST IN PREPARING AND SUBMITTING A BRIEF TO THE APPELLATE COURTS. SWENSON V. BOSLER. AND MUST PLAY ROLE OF ACTIVE ADVOCATE FURTHER THAN MERE FRIEND OF THE COURT ASSITING IN A DETACHED EVALUATION OF THE APPELLATE CLAIMS. SEE ANDERS VS. CALIFORNIA "SUPRA, AND EVITTS". AS THE QUOTATION FROM STRICKLAND SUPRAS". MAKES CLEAR THE CONSTITUTION GUARANTEE OF EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL APPLIES TO EVERY CRIMINAL PROSECUTION WITHOUT REGARD TO WHETHER COUNSEL IS RETAINED OR APPOINTED CUYLER. V. SU 446 U.S. 306. [Ed.] SULLIVAN SUPRA. CITED IN EVITTS ...

THE CONSTITUTIONAL MANDATE IS ADDRESSED TO THE ACTION OF THE STATE OBTAINING A CRIMINAL CONVICTION THROUGH A PROCEDURE THAT FAILS TO MEET DUE PROCESS OF THE LAW STANDARDS. UNLESS A DEFENDANT CHANGED CHARGE WITH A OFFENSE. HAS COUNSEL INVOKE PROCEDURAL SAFEGUARDS THAT DISTINGUISHES OUR SYSTEM OF JUSTICE. A SERIOUS RISK OF INJUSTICE INFECTS ITS TRIAL ITSELF. WHEN A STATE OBTAINS A CRIMINAL CONVICTION THROUGH SUCH A TRIAL. ITS THE STATE THAT UNCONSTITUTIONALLY DEPRIVE THE DEFENDANT OF LIBERTY. CUYLER V. SULLIVAN AT 343. 100 S. Ct. 1715. ... MR. THE LESSON OF OUR CASE AS WE POINTED OUT IN ROSS. SUPRA. 417. U.S. AT 609. 94. S. Ct. AT 244). IS THAT EACH CLAUSE TRIGGERS A DISTINCT INQUIRY. DUE PROCESS EMPHASIZES FAIRNESS BETWEEN STATE AND INDIVIDUAL. DEALING WITH STATE REGARDLESS OF HOW OTHER INDIVIDUALS IN THE SAME SITUATION MAY BE TREATED. "EQUAL PROTECTION" ON THE HAND EMPHASIZE DISPARITY IN TREATMENT BY STATE. BETWEEN CLASSES OF INDIVIDUALS, WHOSE SITUATIONS ARE ARGUABLY INDISTINGUISHABLE IN CASES LIKE GRIFFIN AND DOUGLAS. DUE PROCESS CONCERNS ARISE. BECAUSE STATES HAD SET UP A SYSTEM OF APPEAL AS RIGHT BUT REFUSED TO OFFER EACH DEFENDANT A FAIR OPPORTUNITY TO OBTAIN ADJUDICATION ON THE MERITS OF HIS APPEAL. EQUAL PROTECTION CONCERNS ARISE BECAUSE STATE TREATED A CLASS OF DEFENDANTS INDIGENT ONES DIFFERENTLY FOR PURPOSE OF OFFERING THEM MEANINGFUL APPEAL. BOTH CLAUSES SUPPORTED THIS DIVISION BY THE COURT. DOUGLAS V. CALIFORNIA. 372. U.S. 353, 357. 83. S. Ct. 814 814.) STATED THAT ADDITIONAL OBSTACLES PLACED IN THE PATH OF INDIGENTS AS SCHOPPE-RICO. SEEKING TO APPEAL A CONVICTION DID NOT COMPART WITH FAIR PROCEDURE. "BUT IT EXPLAINED UNFAIRNESS ENTIRELY IN TERMS OF INEQUITY." "THERE IS LACKING THE EQUALITY DEMANDED BY THE FOURTEENTH AMENDMENT WERE A RICH MAN WHO APPEAL AS OF RIGHT, ENJOYS THE BENEFIT OF COUNSEL'S EXAMINATION INTO THE RECORD RESEARCH OF THE LAW AND MARSHALLING OF ARGUMENTS ON HIS BEHALF. WHILE THE INDIGENT IS ALREADY BURDENED BY A PRELIMINARY DETERMINATION THAT HIS CASE IS WITHOUT MERIT, IS FORCED TO SHIFT FOR HIMSELF. I.d. AT 357, 358, 83. S. Ct. 816. 17. SO THERE FORE COURT SHOULD RENDER APPELLATE COUNSEL WAS INEFFECTIVE ... (SEE ATTACHED EXHIBIT 'F'.) OF APPELLATE COUNSEL LETTERS THAT WROTE TO PETITIONER. AND PETITIONER TOOK HIS ADVISE/ADVISE. ON HABEAS. JUST AS IN MILLER V. KEENEY. 882. F. 2d. 1428. (CCA. 9th CIR. 1989). WAS. UNDER THE IMPRESSION TO TAKE HIS ADVISE AS LEAD COUNSEL ROLE ON WHAT STEPS TO TAKE AFTER THE CALIFORNIA SUPREME COURT DENIED PETITION FOR REVIEW AND THIS RESULTING IN INEFFECTIVE ASSISTANCE FURTHERMORE ON APPEAL ON GROUNDS OF APPELLATE COUNSEL INCORRECTLY ADVISE MR. SCHOPPE-RICO NOT TO FILE A CERTIORARI PETITION IN THE UNITED STATES SUPREME COURT AND WHAT CLAIMS TO RAISE. SEE (EXHIBIT 'F'. PG. 1. 112.) COUNSEL WAS ORDERED BY COURT AND PETITIONER TO CHALLENGE RESTITUTION FINE ERRORSLY IMPOSED PURSUANT TO PENAL CODE '1202.45 AND 1202.4'. AND FAILED TO DO IT ON COURT ORDER DEADLINE RESULTING IN IT BEING DISMISSED AND PETITIONER ORDERED TO PAY A FINE HE IS UNABLE TO. THIS IS THE CAUSE OF CLAIM FOURTEEN IS ISSUE IN. ... MR. SCHOPPE-RICO CONTENDS. BECAUSE HE IS AN INDIGENT DEFENDANT. HE HAS BEEN DEPRIVED OF HIS SUBSTANTIAL RIGHTS AND TREATED UNFAIRLY WITH GREAT INJUSTICE. ISUCH AS THE COURTS REFUSAL TO PROVIDE FUNDS FOR EXPERT WITNESSES, SUCH AS A DNA EXPERT OR EYE WITNESSES EXPERTS WASN'T ALLOWED BY THE MAGISTRATE OR COURT. THIS IS PROOF OF THE DOUGLAS SUPRA HOLDING IS TRUE OF INDIFFERENCE TREATMENT. BUT OF COURSE THE COURT IS UNDETECTED ABLE TO ERR IN HIRERING A GANG EXPERT FOR THE PROSECUTION TO VIOLATE PETITIONERS RIGHTS FEDERAL AND STATE. THE ONLY WAY TO CURE THIS ISSUE IS BY REVERSAL OF THE CONVICTION IS THE APPROPRIATE REMEDY.

GROUND TEN

THE TRIAL COURT ERRED PREJUDICIALLY IN ADMITTING "SCENT DISCRIMINATION LINE UP" EVIDENCE AS PROOF OF IDENTITY.

MR. SCHOPPE-RICO CONTENDS THE COURT ABUSED ITS DISCREATION BY EXCLUDING A QUALIFIED EXPERT UNDER THE KELLY-FRYE MOTION FILED BY THE DEFENSE, SEEKING TO EXCLUDE "SCENT DESCRIMINATION LINEUP EVIDENCE" OR EXCLUDING IT ENTIRELY IT HAD NO FOWNDATION. MR. SCHOPPE-RICO ARGUES THAT ADMISSION OF SCENT DESCRIMINATION LINEUP EVIDENCE REQUIRES PROOF THROUGH A DISINTERESTED VENTERINARY DOG HANDLER AND A QUALIFIED WITNESS, WITH OUT A "CONFLICT OF INTEREST. GENERALLY WHO'S ACCEPTED IN THE "RELEVANT SCIENTIFIC COMMUNITY WHO CAN EXPLAIN PROOF OF DOG'S ERROR. IN'MITCHELL SUPRA, 110. CAL. APP. 4th. 772.       " A SCENT IDENTIFICATION BY [THE DOG] APPEARS TO PROVIDE A DIFINATIVE TRUTH WITH [THE HANDLER] BEING ANALOGOUS TO A MACHINE THAT THE HANDLER CAND ONLY THE HANDLER CAN CALIBRATE AND READ, THUS WE CONCLUDE THAT KELLY SHOULD HAVE BEEN APPLIED TO THIS EVIDENCE.      I.d  AT 793.

STANDARD OF REVIEW, THE DISTRICT COURTS EVIDENTIARY RULING ARE REVIEWED FOR ABUSE OF DISCRETION. SEE   UNITED STATES  V. CRESPO DE LIANO 838. F. 2d. 1006. (9th CIR. 1987) FOR ANALYSTS . . . . . .   HOWEVER, CRAIG, SUPRA. 86. CAL. APP. 3d. 905. CONCLUDED THAT "DOG TRACKING " EVIDENCE IS NOT SUBJECT TO THE KELLY-FRYE PRINCIPLES, MORE. OVER THERE IS A GENERAL RULE SENSE THE DOGS AND SCENT ABILITY ARE MORE EASILY UNDERSTOOD " SCIENTIFICALLY" THAN POLYGRAPHS AND HYPNOSIS. YET IT TURNS OUT THERE IS A GREAT DEAL MORE TO DOGS SCENT ABILITY THAN KNOWN . . . .   DURING THE TRIAL PROCEEDINGS ON FEBRUARY 21, 2003, THE DEFENSE FILED A MOTION IN LIMINE TO EXCLUDE " SCENT DISCRIMINATION lineup" EVIDENCE ON KELLY-FRYE PRINCIPLES ( 3. CT: 180 ) THE PROSECUTION FILED OPPOSITION ( 3. CT: 932 ). THE DEFENSE MOTION SUMMARIZED THE "SCENT DISCRIMINATION lineup EVIDENCE FROM THE PRELIMINARY HEARING.

1). THE " HANDLER" OF THE DOG WAS A " VETERINARY" TECHNICIAN WHO VOLUNTEERED WITH CONTRA COSTA SEARCH AND RESCUE (3. CT: 814) HER TRAINING IN "SCENT DESCRIMINATION LINEUPS " HAD OCCURRED IN VARIOUS (UNKNOWN) SCHOOLS CONDUCTED BY VARIOUS BLOODHOUND (UNKNOWN ) GROUPS, IBID. HER SOLE " ACADAMIC TRAINING OF (40 ) HOURS IN THE VETERINARY FIELD STEMS FROM VETERINARY CONFERENCES SHE HAD BEEN SENT TO BY HER EMPLOYER." (3. CT: 815. 2.) THE LINEUP IN THIS CASE INVOLVED FOUR SUBJECTS, WHO WERE MR. SCHOPPE-RICO AND THREE POLICE OFFICERS. THE DEPUTIES WORE SHORTS AND SHOES AND MR. SCHOPPE-RICO WORE SHORTS "AND" [WAS BARE FOOT] " 3- CT. 815. AND. 3). IN THE LINEUP "THE DOG HAD BEEN "PRESENTED" WITH A BAG WITH SWEATSHIRT. AND HAD BEEN TOLD TO

SEARCH. THE DOG. TRACKED TO PERSON NUMBER FOUR A DEPUTY, HAD RETURNED TO THE
THE BAG WITH SWEATSHIRT, HAD GONE TO PERSON TWO, MR. SCHOPPE-RICO. AND THREE
A DEPUTY, [HAD RUN TO NUMBER THREE "AND JUMPED TOWARD" HIM]. HAD GONE TO
NUMBER TWO AND SNIFFED HIS LEGS." HAD GONE BACK TO THE HANDLER AND THEN TO NUMBER.
THREE ". . . AND THEN HAD GONE TO NUMBER TWO "AND JUMPED AT HIM." THIS WAS THE ALLEGEDLY
POSITIVE IDENTIFICATION OF MR. SCHOPPE-RICO (3-CT: 815-816), (I.E.

MR. SCHOPPE-RICO, CLAIMS THAT THE COURT ABUSED ITS DISCRETION WHEN EXCLUDED EXPERT
WITNESS, OR ADMITTED DOG HANDLERS "SCENT DISCRIMINATION LINE UP" AS EVIDENCE.
WITHOUT ISUFFICIENT EVIDENCE THE "SCENT DISCRIMINATION LINEUP" WAS BEING ADMITTED
ON A IMPROPER FOUNDATION RATHER THAN MERE BIAS TESTIMONY, EVIDENCE SHOWING
SCHOPPE-RICO'S HAIRS AND DNA. WERE NOT ON CLOTHING FOUND AT 40 SHARON DRIVE RT:
1780) WITH CRIMINALIST ALEX TAFLYA COMPARING SCHOPPE-RICO'S HAIR WITH THE HAIRS
FOUND ON THE SWEAT SHIRT AND WARM UP PANTS, HE WAS ELIMINATED AS A POSSIBLE SOURCE
FOR THOSE HAIRS. (RT: 2329, 2333, 2336.) WITH THIS EVIDENCE, AND EXPERT TESTIMONY
WOULD HAVE UNDERMINED THE CREDIBILITY OF JUDY SCHETTLERS AND OFFICER TESTIMONY THAT
SCHOPPE-RICO WAS IDENTIFIED OR LINKED TO THE CLOTHING THAT ALLEGEDLY HE DISCARDED
EXCLUSION OF THIS EVIDENCE. OR APPROVING EXPERT WITNESSES, WOULD HAVE BUTTERESSED THE
CREDIBILITY OF ALEX TAFYAS TESTIMONY WHICH SUPPORTED SCHOPPE-RICO'S DEFENSE, WHICH
THE COURT NOW SHOULD DO IS EXCLUDE THE INFORMATION AS IRRELEVANT. OR ALTERNATIVELY
UNDER FEDERAL RULE OF EVIDENCE 403. BECAUSE OF ITS PREJUDICIAL EFFECT SIGNIFICANTLY
EXCEEDED THEIR PROBATIVE VALUE. RULE 403, PROVIDES IN RELEVANT PART: ..... ALTHOUGH
RELEVANT. EVIDENCE MAY BE EXCLUDED IF ITS PROBATIVE VALUE IS SUBSTANTIALLY OVER WEIGHED
BY THE DANGER OF UNFAIR PREJUDICE ; CONFUSION OF THE ISSUES OR MISLEADING THE JURY.
DOG SCENT EVIDENCE WILL DO THAT. HOWEVER. (I.E.)

THE DEFENSE COUNSEL MOTION ALSO CITED AND DISCUSSED EXTRA JUDICIAL SOURCES, THESE
INCLUDED TASLITZ, (3-CT: 812-816-817-814.) WOJCIKIEWICZ. J., "DOG SCENT EVIDENCE"
IT IS SCIENTIFIC", PAPER PRESENTED TO THE INTERNATIONAL ACADEMY OF FORENSIC SCIENCE
(3-CT: 812-813) BRISBANE AND AUSTAD. "TESTING THE INDIVIDUAL ODOUR OF CANINE
OLFACTORY" 1990" ANIMAL BEHAVOIR 42 N3, (3-CT: 817), BUYTENDIJK. F. THE MIND
OF THE DOG (1973) (3-CT: 817-818.) AND SCHOON GERTRUDE. "A FIRST ASSESSMENT OF
THE RELIABILITY OF AN IMPOSED SCENT IDENTIFICATION LINE UP, JOURNAL OF FORENSIC.
SCIENCE, 43 (1): (1998) (3-CT: 820-823) ..... PROFESSOR TASLITZ'S ARTICLE WILL
BE DISCUSSED FURTHER. BELOW HOWEVER. A HIGHLIGHT IS THE FOLLOWING QUOTATION FROM
WIGMORE. J. EVIDENCE. (1983) §177. AT P. 1852)

IN ACTUAL USAGE, EVIDENCE OF THE CONDUCT OF ANIMALS IS APT. TO BE HIGHLY MISLEADING
..... MOREOVER. THE VERY LIMITED NATURE OF THE INFLUENCE POSSIBLE IS APT TO BE

BE DISTORTED .... IN SOME REGIONS OF OUR COUNTRY THE MYSTERIOUSLY ACCURATE OPERATION OF THE DOGS INERRANT INSPIRATION AND THIS GROSS POPULAR CREED MIGHT IN A JURY MISLEAD THEM INTO GIVING EXCESSIVE CREDIT TO THE EVIDENCE OF THE DOG'S INTINERARY." TASLITZ, SUPRA. AT 28; SEE. (3. CT. 812) 813. THROUGH. 836), THE CASE LAW. THRESHOLD QUESTION IS WHETHER " SCENT DISCRIMINATION LINEUPS ARE SUBJECT TO KELLY FRYE ANALYSIS, UNDER PEOPLE V. STOLL (1989) 49. CAL. 3d. 1136, 1155, 1156. THE TWO BASIC SUB-QUESTIONS ARE. IS THE TEST "NEW" "NOVEL" OR EXPERIMEN-TAL." ? AND DOES THE TEST " CONVEY A MISLEADING ARURA. OF CERTAINTY. THE ANSWER TO BOTH QUESTIONS IS "YES." ....    PROTECTING A JURY FROM MISLEADING AND UNVER IFIED TECHNIQUE REQUIRES A DUAL FOCUS. THE FIRST FOCUS IS ON THE PURPORTED INFALLA BILITY OF THE TEST. IBID. MOREOVER IT IS NOT ONLY "MACHINES "WHICH ARE SUBJECT TO KELLY-FRYE. SEE; PEOPLE V. LEAHY. (1994) 8. CAL. 4TH 587. (HEREINAFTER. "LEAHY" [KELLY FRYE. PRINCIPLE. APPLY TO THE "HORIZONTAL GAZE NYSTAGMUS". TEST. DESPITE LENGTHY USE BY LAW ENFORCEMENT TO HOLD THAT A SCIENTIFIC TECHNIQUE COULD BECOME IMMUNE FROM KELLY SCRUTINY MERELY BY REASON OF LONG STANDING AND PERSISTENT TEST. USE BY LAW ENFORCEM ENT OUTSIDE THE LABATORY OR THE COURTROOM SEEMS UNJUSTIFIED), WHERE THE TESTIFYING OFFICERS SOUGHT TO IMBUE HGN. WITH AN " AURA OF CERTAINTY, Id. AT 605-607]
THE LEADING AUTHORITY ON " SCENT DISCRIMINATION LINEUP" IS TASLITZ, 42 HASTINGS LAW JOURNAL 15. AUTHORED BY A FORMER ASSISTANT DISTRICT ATTORNEY AND ASSISTANCE PROFESSOR AT HOWARD UNIVERSITY SCHOOL OF LAW TAZLITZ URGES THAT SUCH LINEUPS BE SUBJECT TO KELLY - FRYE ANALYSIS... THE COURTS IRRATIONAL HANDLING OF SCENT LINEUP ..... REFLECTS THE JUDICIARYS FUNDAMENTAL FAILURE TO RECOGNIZE THE MYTHIC QUALITIES OF THE SUPPOSEDLY INFALLIBLE DOGS POWER AND TO UNDERSTAND THE ROLE SCIENCE PLAYS IN THE LAW OF EVIDENCE. IN A. 1968 STATEMENT, THE AMERICAN BAR ASSOCIATION RECOGNIZED THE RISK THAT A JURY WILL BE SWAYED BY A. SUPERSTITIOUS FAITH IN THE BLOODHOUNDS ACCURACY. Id. AT 27, NOTE 8, 34. 50. 51 OMITTED .... .    PROFESSOR TASLITZ CHALLENGES COURTS WHICH TREAT DOG TRACKING AND "NARCOTICS DETECTIONS." AS EQUIVALENT TO A SCENT DESCRIMINATION LINEUP. ( Id. AT 42-43.) ..... APPLICATION MR. SCHEPPE-RICO DEEMS THE MATTER STRAIGHTFORWARDED THE RANGE OF UNASWERED " SCIENTIFIC" QUESTIONS ABOUT HOW DOGS. DESCRIMINATE AMONG HUMAN SCENTS, WHAT FACTORS MAY INFLUENCE DISCRIMINATION THE ACCURACY OF SCENT DISCRIMINATION, PROCEDURES TO MAXIMIZE ACCURACY AND MINIMIZE THE DANGER OF MISLEADING AND UNRELIABLE EVIDENCE. .... WE KNOW INACCURACIES IN LINEUP'S AS SCHEPPE-RICOS. WHEN KNOW SCENTING ABILITIES OF DOGS HAVE AN AURA OF MYTHICAL INFALIBILITY. WE KNOW FROM PROFESSOR TASLITZ. SCIENTIFIC INVESTIGATI-ION OF AREA. REMAINS IN ITS INFANCY RENDERING THIS AREA OF SCIENTIFIC ANALYSIS "NEW TO SCIENCE AN LAW. PEOPLE V. STULL. SUPRA. AT 1156. IN SUM MITCHELLS ANALYSIS IS THE CORRECT ONE. KELLY FRYE PRINCIPLES SHOULD HAVE BEEN APPLIED AND IT WAS ERROR TO HAVE ADMITTED THIS EVIDENCE ON AN UNRELIABLE FOUNDATION.

GROUND ELEVEN

THE TRIAL COURT ERRED IN FAILING TO GRANT THE PENAL CODE SECTION MOTION 1118.1 MOTION AS TO THE "STREET GANG" FIREARM COUNTS.

INTRODUCTION - PETITIONER SCHOPPE-RICO CONTENDS HIS FIRST AMENDMENT RIGHT TO SPEECH ASSOCIATION AND EQUAL PROTECTION CLAUSE RIGHT TO ASSOCIATE WITH MEMBERS OF ONE'S RACIAL GROUP WERE VIOLATED BY PROMULGATED PROP 21. OFFICIAL ENFORCING AND IMPLEMENTING VAGUE OVERBOARD RULES AND/OR REGULATIONS THAT UNJUSTIFIA-BLY CURTAIL PETITIONERS CONSTITUTIONAL RIGHTS OF FREE SPEECH AND ASSOCIATION OF DUE PROCESS OF THE LAW. THE ISSUE SCHOPPE-RICO WAS WRONGLY CONVICTED OF, POSSESSION A LOADED AND/OR CONCEALED WEAPON, HE CONTENDS FOR ORDER IT TO QUALIFY AS FELONIES. THE PERSON ALLEGEDLY IN POSSESSION MUST AT THE TIME OF THE POSSESSION HAVE BEEN VIOLATING ALL ELEMENTS OF PENAL CODE SECTION 186.22 SUBDIV-ISION (a) PEOPLE V. ROBLES, SUPRA, 23 Cal. 4th AT 1115, IN RE: PEOPLE, V. FLORES, (2005) 129, Cal. APP. 4th, 174, 28, Cal. RPTR. 3d. 232 IN THE PRESENTATION OF THE DEFENSE SECTION 1118.1. MOTION AS TO COUNTS TWO, THREE, FIVE, SIX, DEFENSE COUNSEL EN EFF-ECTIVELY ARGUED THAT MR. SCHOPPE-RICO HAD NOT BEEN SHOWN TO HAVE BEEN VIOL-ATING SECTION 186.22. SUBDIVISION (a) AT THE TIME EITHER EVENT THOSE DATES, THOSE MOTION WAS DENIED. . . . .   STANDARD OF REVIEW. THE DISTRICT COURT ON IF THE EVIDENTIARY RULINGS REVIEWED FOR ABUSE OF DISCRETION SEE. UNITED STATES, vs. CRESPO DE LLANO 838, F.2d. 1006. (9th CIR. 1987.) FOR ANALYSTS . . . . . . BEFORE SCHOPPE-RICO'S PRELIMINARY TRIAL. PROSECUTOR HAD ISSUES WITH MULTIPLE OF THESE UNKNOWN ALLEGED GANG MEMBERS. WITHOUT PROOF, BEING AT THE RESIDENCE OF 180-SHORE RD. WHO WERE LOITERING OR CLEANING THE HOUSE (RT: 559, 566.569,) WHILE A SEARCH WARRANT WAS BEING ISSUED DETECTIVES HAD TO BE SITING ON THE HOUSE, BECAUSE THEY HADN'T SEARCHED THE HOUSE (RT: 570.571) TRAFFIC WAS IN AN OUT, WHEN POLICE ARRIVED TO SEARCH STUFF WAS IN BAGS AND TRASH BAGS. ALL OLD GARBAGE, (RT 571-572). WELL. THE OFFICER SAW GANG GRAFFITI AND BULLET HOLES IN THE REAR BEDROOM, WHICH DID NOT HAVE A BED (RT: 1674. 2080, 2097) AND FOUND PHOTOGRAPHS OF PERSONS FLASHING GANG SIGNS, AS WELL AS "GANG TYPE" WRITINGS SUCH AS "14" AND "EBL (RT: 2081, - 2085) WHICH PETITIONER DENIES IS HIS OR/AND WAS LEFT THERE PLACED THERE BY. UNKNOWNS ON PROPERTY GOING THROUGH BAGS (RT: 559. 566. 569) INSPECTOR. RON HUPPERT ASSIGNED TO THE GANG INTELLIGENCE UNIT (RT: 2109.) DESCRIBED THE EAST BAY LOCOS" (EBL) AS A SUBSET OF NORTEÑOS; BOTH WHICH WERE CRIMINAL STREET GANG. IDENTIFIED WITH COLOR RED AND 14, (RT: 2118. 2121. 2122.) HE DEEMED MATTHEW SPURLING, HENRY GRENADOS AND DAVID STOKES. "VALIDATED" MEMBERS OF THE NORTEÑOS EAST BAY LOCOS (RT: 2123-2124)

IN VIOLATION OF  IN RE FRANKS, SUPRA. 1006, 141. C.A. 4th 1142. 1196. 46 CIR. 3d. 839,

INSPECTOR HUPPERT IDENTIFIED MR. SCHOPPE-RICO AS A VALIDATED "EAST BAY LOCOS" GANG MEMBER. BASED ON 1996 SELF-ADMISSION, A TATTOO AND PRIOR ASSOCIATION WITH A KNOWN GANG MEMBER. (RT. 2126-2127, 2129,) 2131-2134.), IT WAS THE GANG EXPERT OPINION THAT IN 2002 MR. SCHOPPE-RICO HAD STILL BEEN AN ACTIVE NORTENO (RT: 2170.) HOWEVER HE ADMITTED BETWEEN 1996 AND 2000, HE HAD NO CONTACTS WITH SCHOPPE-RICO (RT 2181.) HE THEN NOTED THAT THE DECEDENT HAD BEEN WEARING BLUE [1] NO THAT, SCHOPPE-RICO, HAD BEEN FOUND WITH A RED BANDANNA. (RT: 2172-2173) AND THERE WAS LETTERS WRITTEN TO HIS BROTHER, (RT: 2161-2165-2166, 2168, 2109) RE: IN FRANKS. SUPRA. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING THAT MINOR POSSESSED KNIFE FOR BEN-EFIT OF AT DIRECTION OF OR IN ASSOCIATION WITH A CRIMINAL STREET GANG AS REQUIRED BY PENAL CODE 186, 22, 18) (1). EXPERTS OPINION THAT MINOR POSSES KNIFE FOR THE/THAT PURPOSE WAS IMPROPER, EVIDENCE THAT MINOR HAD AFFILIATION WITH GANG, DID NOT BY ITSELF PROVE SPECIFIC INTENT TO USE KNIFE TO PROMOTE FURTHER OR ASSIST IN CRIMINAL CONDUCT BY GANG MEMBERS, ... EVERYTHING FROM 96 TO 2000, SHOULD OF BEEN EXCLUDED WHEN SCHOPPE-RICO WAS A MINOR ... NOW VIOLATION OF SECTIONS 186, 22, SUBDIVISION (3) HAS THREE ELEMENTS [i] ACTIVE PARTICIPATION IN A STREET GANG [ii] KNOWLEDGE THAT THE GANG MEMBERS ENGAGED IN A PATTERN OF CRIMINAL GANG ACTIVITY. AND [iii] WILLFUL PROMOTION OR ASSISTANCE IN FELONIOUS CRIMINAL CONDUCT BY GANG MEMBERS, IN THIS ARGUEMENT MR. SCHOPPE-RICO ASSERTS, THE PHILOSOPHY AND LAGUAGE CONTAINED IN MUCH OF THE STREET TERRORISM ENFORCEMENT AND PREVENTION ACT (PENAL CODE SEC. 186.22) (3) DOES NOT REFRENCE PENAL CODE. 186, 28 (2) (1) (2) AND (3) (h) OR INCORPORATES THE RELATED PENAL CODE SEC. 186.24. AS THE LAW WITH REGARD TO "STREET GANG" FIREARM COUNTS, AND THE LEGISLATURES FINDING THEREIN (IT IS NOT THE INTENT OF THIS CHAPTER TO INTERFERE WITH THE EXERCISE OF THE CONSTITUTIONALLY PROTECTED RIGHTS OF FREEDOM OF EXPRESSION OR ASSOCIATION.) SEE ALSO ANNOTED PENAL CODE SEC. 186.22 NOTES OF DECISION 7. ACTIVE PARTICIPATION.) SEE ALSO ASSEMBLY CORN. ON PUBLIC SAFETY ANALYSIS OF ASSEMBLY BILL NO. 2013 (1987-1988 REG. SESS.) JUNE 8, 1987. p. 7, NOTING SCALES VS. U.S. 81, S. Ct. 1469, 367, U.S. 203. (U.S.N.C. 1961) THAT "MERE ASSO-CIATION WITH A GROUP CANNOT BE PUNISHED UNLESS THERE IS PROOF THAT THE DEFENDANT KNOWS OF AND INTENDS TO FURTHER ITS ILLEGAL AIMS."] Id AT p. 2. THE BILL AS WRITTEN WILL NOT APPLY TO THE SO-CALLED CAUSAL MEMBER TO BE HELD CRIMINALLY CULPABLE GANG MEMBERS MUST HAVE THE REQUISITE SPECIFIC INTENT AND KNOWLEDGE (AB 2013) IN FACT GOES BEYOND THE ACTIVE MEMBERSHIP TEST BY SCALES BY REQUIRING ACTIVE PARTICIPATION, RATHER THAN MERE MEMBER SHIP. CITING PEOPLE V. CASTENADA. 9T. Cal. 4TH 2d Qua. 23 Cal. 4TH FURTHER, STATE AND FEDERAL COURTS HAVE CLEARLY REJECTED GUILT BY ASSOCIATION AND GANG MEMBERSHIP AS EVIDENCE THAT A SPECIFIC CRIME WAS COMMITTED. IN U.S. V WEISWINKEL (1995) 44, F. 3d. 782. 787. (THE PROSECUTION MAY NOT PROVE A DEFENDANTS GUILT BY SHOWING HIS ASSOCIATION WITH UNSAVORY CHARACTERS, U.S. V. DICKENS (1985) 775, F. 2d 1056. 1058. (SAME) PEOPLE V. PEREZ (1981) 114 CAL. APP. 3d. 470, 477, EVIDENCE OF GANGMEMBERSHIP INADMISSIBLE INSOFAR AS IT DOES NOT "HAVE" TENDENCY" IN

[1] THE DECEDENT WAS WEARING "GREEN" NOT JUST BLUE ...

IN REASON TO PROVE A DISPUTED FACT I.E. THE IDENTITY OF THE PERSON WHO COMMITTED THE CHARGED OFFENSE.

FINALLY, MR. SCHOPPE-RICO WILL CONTEND THAT THE EXISTANCE OF COUNTS TWO, THREE, FIVE, AND SIX, WAS THE PREDICATE FOR ADMISSION OF THE PARADE OF EVIDENCE. IF THE SECTION 1118.1, MOTION HAD BEEN GRANTED, DEFENSE COULD MOVE TO EXCLUDE STRIKE THE GANG EVIDENCE, SEEKING AN INSTRUCTION TO THE JURY TO DISREGARD IT OR NOT ALLOW THE PROSECUTION TO INTRODUCE IT. FOR THIS REASON, THE ERROR UNDER SECTION 1118.1, WAS ALSO PREJUDICIAL AS TO COUNT ONE.

MOTION AN RULING. SCHOPPE-RICO MOVED FOR JUDGMENT OF ACQUITTAL IMMED-IATELY AFTER THE PROSECUTION RESTED. COUNSEL ARGUED AT (8-RT:2302) THEIR WAS NO EVIDENCE. THE PROSECUTION POSITION WAS NOWHERE IN CALJIC 12.47.1, "DOES IT SAY AT THE TIME OF POSSESSION. THE POSSESSION ITS SELF WILLFULLY PROMOTING FURTHERING OR ASSISTING A GANG, (8-RT:2312) PROSECUTION CONTINUE. (8, RT, 2313) SO DID THE COURT [8-RT:2315), . . . THE LAW WITH REGARD TO STREET GANG FIREARM COUNTS. CONFUSION ARISES BECAUSE SECTION 186.22, SUB.(3), DOES NOT DEFINE A PERSON "WHO" IS] IS AN ACTIVE PARTICIPANT IN A CRIMINAL STREET GANG AS SECTIONS. 12021, SUB.(B)(3), AND 12025, SUB (A)(2)(C) APPEAR TO ASSUME.  EB EXPLAINED IN PEOPLE V. ROBLES SUPRA.  " CONTRARY TO THE EXPRESS LANGUAGE OF SEC. 12031, @1(2) (C). HOWEVER SUBDIV. (3) OF SEC. 186.22  ( SEC. 186.22(3) DOES NOT AT ALL DEFINE THE STATURORY PHRASE. " AN ACTIVE PARTICIPANT IN A CRIMINAL STREET GANG, RATHER, SEC. 186.22 (3) SETS FORTH THE ELEMENTS OF A GANG OFFENSE THAT IS PUNISHABLE EITHER AS A FELONY OR A MISDEMEANOR.

MR. SCHOPPE-RICO APPLICATION OF THE LAW URGES THAT THE MOTION SHOULD HAVE BEEN GRANTED AS FOR COUNTS FIVE AND SIX, THE MATTER DOES NOT REQUIRE SERIOUS THOUGHT ONCE ITS RECOGNIZED THAT THE LURED CRIME, OF BEING THERE WHEN SHOOTING OCCURRED OF CARS TIRES, COULD NOT REASONABLY HAVE BEEN INTENDED TO BENEFIT A GANG, THAT ISSUE IS DISSCUSSED, IN OTHER CLAIMS OF MISSING DISCOVERY. . . .

TURNING TO COUNTS TWO AND THREE, RESPONDENTS CONTENTION WILL BE THAT MR. SCHOPPE-RICO BECAME ANGRY AT HIS GIRLFRIEND MS. SMITH'S MR. SCHOPPE-RICO THEN DECIDED IN RESPONSE TO HER AFFRONT TO WANDER OUT TO PORT CHICAGO AND PACIFI-CIA, AND SHOOT THE FIRST AFRICAN-AMERICAN STRANGER HE SAW WHO HAPPENED TO BE WEARING BLUE, IN ORDER TO BENEFIT THE NORTENOS, WITH DEFERENCE, THIS IS A FANCIFUL SCENARIO AT WORST. WHEN THERES EVIDENCE SCHOPPE-RICO WAS PHYSICALLY IMPAIRED ON THIS EVENT AND THERE EVIDENCE OF SCHOPPE-RICO BEING CHASED BY GUYS IN BLUE. IN HIS NIEGHBORHOOD AND FRONT OF HIS HOUSE . . . . . . . AS FOR THE TESTIMONY OF THE GANG EXPERT. HE DID NOTE THAT THE DECENDENT WORE BLUE, AND THAT SCHOPPE-RICO HAD A OLD RINKLED BANDANNA, AND HE DID NOTE GANG MEMBS. COMMIT VIOLENT FELONIES HE NEVER THOUGH OPINED THIS SHOOTING WAS FOR BENEFIT OF THE NORTENOS NOR COULD HAVE DONE SO SEE PEOPLE V. KILLEBREW (2000) 103 CAL. APP. 4TH 644.658 . . .

57

GROUND TWELVE :

THE INSTRUCTIONS GIVEN TO DEFINE THE STREET GANG" FIREARM POSSESSION
OFFENSES WERE FATALLY DEFICIENT.

MR. SCHOPPE-RICO CONTENDS HIS FEDERAL AND STATE. FOURTEENTH AMENDMENT CONSTITUT-
IONAL AMEND. WERE VIOLATED .WITH ALL A COMPANIONED ARGUEMENTS IN HABEAS. THAT THE
JURY WAS MIS-LED AND INSTRUCTED. THAT THERE WERE SUFFICIENT EVIDENCE ON ALL SEVEN GANG
ELEMENTS OF THE " FIREARM POSSESSION OFFENSES. TO CONVICT PETITIONER ON COUNTS. ONE, TWO,
THREE. FOUR. FIVE AND SIX. WHICH ALL OPPOSITION'S ARGUEMENT AND EVIDENCE OF ALLEGED
WERE PRESENTED THAT ALLEGEDLY. THE CRIME CHARGED WAS FOR THE BENEFIT OF, AT THE
DIRECTION OF, OR IN ASSOCIATION WITH A STREET GANG. HOWEVER THE JURY WAS NEVER INSTRUC-
TED THAT THE ELEMENTS OF " FOR THE BENEFIT OF, AT THE DIRECTION OF THE GANG", MUST BE PROVEN
BEYOND A REASONABLE IN ORDER TO CONVICT ON ALL OR ONE FIREARM POSSESSION OFFENSES. THEY
WERE ONLY ASKED AND INSTRUCTED ON. IF THEY HAD REASONS TO BELIEVE. HE WAS AN GANG MEMBER OR
ASSOCIATE. IN POSSESSION OF A FIREARM. FURTHERMORE THEY WERE NEVER INSTRUCTED THOUGH THAT
THE ELEMENT OF THE POSSESSION ITSELF WAS FOR THE BENEFIT OF AT THE DIRECTION OF THE GANG
THIS MIS-LED THE JURY TO CONCLUDE COUNT ONE. MURDER. PEN CODE § 187. WITH ENHANCEMENT
OF PERSONAL USE AND INTENTIONAL DISCHARGE OF A FIREARM CAUSING DEATH. PEN CODE § 12022. 53.
THE VERDICT ON COUNTS ONE TWO THREE FOUR. FIVE AND SIX MUST BE REVERSED ON THAT BASIS AS
WELL. FOR FAILURE TO INSTRUCT ON EVERY ELEMENT OF CRIME CHARGED.

         THE INSUFFICIENT EVIDENCE AT ISSUE IS. THERE IS NO SUBSTANTIAL EVIDENCE EXIST
BEYOND A  REASONABLE TRIER OF FACT TO FIND THE GANG COUNTS AGAINST MR. SCHOPPE-RICO TRUE BEYOND
A REASONABLE DOUBT AS WILL BE EXPLAINED THROUGH. IN RE: FRANKS. S. SUPRA. 46. CAL RPTR. 3d.
834. 141. CAL. APP. 4th .1142. ( 5. DIST. 2006.) HELD. THE EXPERT INFORMED THE JUDGE HER BELIEF ON THE
MINOR INTENT WITH POSSESSION OF KNIFE. AN ISSUE RESERVED TO THE TRIER OF FACT. SHE STATED
THE KNIFE BENEFITS THE NORTENOS. SINCE IT HELPS PROVIDE THEM PROTECTION SHOULD THEY BE ASSAULTED
BY RIVAL GANG MEMBERS. HOWEVER UNLIKE OTHER CASES THE PROSECUTION PRESENTED NO EVIDENCE. OTHER THAN
THE GANG EXPERTS OPINION. REGARDING GANGS IN GENERAL. AND EXPERT IMPROPERLY OPINION ON THE
ULTIMATE ISSUE THAT POSSESSION OF THE WEAPON WAS COMMITTED FOR THE BENEFIT OF, AT THE DIRECTION
OF OR IN ASSOCIATION WITH ANY CRIMINAL STREET GANG. P.C. §186. 22. SUBd.(B)(1). " THE PROSECUTION
DID NOT PRESENT ANY EVIDENCE. THAT THE MINOR WAS IN GANG TERRITORY. HAD GANG MEMBERS WITH HIM
OR HAD REASONS TO EXPECT TO USE THE KNIFE IN A GANG RELATED OFFENSE. IN FACT THE ONLY OTHER EVIDENCE
WAS THE MINORS STATEMENT TO ARRESTING OFFICER. THAT HE HAD BEEN JUMPED TWO DAYS PRIOR AND NEEDED
THE KNIFE FOR PROTECTION TO ALLOW THE EXPERT TO OPINION STATE THE MINORS SPECIFIC INTENT FOR THE
KNIFE WITHOUT ANY SUBSTANTIAL EVIDENCE OPENS THE DOOR FOR PROSECUTORS TO ENHANCE MANY
FELONIES AS GANG RELATED AND EXTENDS THE STATUE BEYOND WHAT THE LEGISLATURE INTENDED.

     MR. SCHOPPE-RICO CONTENDS BASE ON IN RE: FRANK SUPRA. COURT SHOULD OF INSTRUCTED
ON THE MISSING ELEMENTS IN INSTRUCTIONS. THE REASON THEY DIDN'T IS BECAUSE THERE WERE
INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION IN SCHOPPE-RICOS CASE. THE PROSECUTION NEVER
PRESENTED EVIDENCE OF ANY THAT MR. SCHOPPE-RICO .WAS IN GANG TERRITORY OR THE VICTIM.

" FOR THE BENEFIT OF, AT THE DIRECTION OF, OR IN ASSOCIATION WITH "A STREET GANG".
MARTINEZ SUPRA, AT PP. 761-762, 10, CAL, RPTR. 3d, 751)  WHILE EVIDENCE ESTABLISHED
THE MINOR HAS AN AFFILIATION WITH THE NORTENOS, MEMBERSHIP ALONE DOES NOT PROVE A
SPECIFIC INTENT TO USE THE KNIFE TO PROMOTE, FURTHER OR ASSIST IN CRIMINAL CONDUCT
BY GANG MEMBERS, (PEOPLE V. GARDELEY, SUPRA, 14, CAL, 4TH AT P. 633, 59, COL, RPTR, 2d,
360, 927, P, 2d, 713), THEREFORE WE FIND NO SUBSTANTIAL EVIDENCE SUPPORTING THE SPECIFIC
INTENT ELEMENT OF THE SPECIAL ALLEGATION, WE MUST REVERSE THE LOWER COURTS FINDING HAVING
NEGATED ONE OF THE REQUIRED ELEMENTS OF SECTION 186.22, SUBDIV. (B), (1) . . . . . .

MR. SCHOPPE-RICO CONTENDS THE PROBLEM OF THIS FROM THE ON START IAN IN GROUND ELEVEN
ARGUEMENT IS THE LOWER COURT AND OVERZELOUS PROSECUTORS OVERLOOKS THE DUE PROCESS
REQUIREMENTS, THAT THEY'VE NEGATED THE GANG STATUES AND CALJICS JURY INSTRUCTIONS
OF ITS REQUIRED ELEMENTS ON SPECIAL ALLEGATIONS AT (RT, 2302, THROUGH RT, 2315,), OF
THE DIFINATIONS OF THE PENAL CODE GOVERNING THE STATUE AND LAW HEREIN, THEY ARGUE THAT THE POSSESSION
IT SELF OF A FIREARM ON ANY GIVEN OCCUSION EVEN IF UNDER THE FIRST AMENDMENT TO PROTECT YOUR
HOME IS VIOLATION OF PENAL CODE, 186.22, AS DEFINED IN CALJICS § 12.47, CALJICS, § 3.30 AND
CALJICS, § 3.31, 5, 8, AT (RT, 2391-2392,) ON SUB UNDER SECTION § 12031, SUBDIV, (B), (2), (C) AT
(R.T. 2398,) THROUGH (RT, 2406,) WHICH JURY HERD EQUIVALENT INSTRUCTIONS AS TO SECTION § 12025,
SUBDIV. (B), (2), (RT, 2400-2402,) COURT AND PROSECUTOR SAID THEY DONT NEED EVIDENCE OR
PROOF OF EVERY ELEMENT BEYOND REASONABLE DOUBT IS ERROR THERE CONTENTIONS AND CONCLUSION
DUE TO THE LAW AND CONSTITUTIONAL AMENDMENTS REQUIRES "ALL AND EVERY" ELEMENT OF A
CRIME TO BE PROVEN BEYOND A REASONABLE DOUBT. RUBIES SUPRA, 23, COL, 4TH AT 115, SEE
PEOPLE, V. NGOUN SUPRA, 188, COL, APP. AT 436 & 437, (ORIGINAL EMPHASIS OMITTED), WHICH DEFINE
HEREIN INSTRUCTIONS GIVEN ON ANY FIREARM POSSESSION OFFENSE PER PENAL CODE OF STATUE UNDER
THOSE CHARGED ALLEGED MR. SCHOPPE-RICO VIOLATED. . . . . . . . . MR. SCHOPPE-RICO FURTHER CONTENDS
WHEN THE COURTS REFUSE TO INSTRUCT OR STRUCK THE WORDS OTHER THAN "FOR BENEFIT OF A GANG OR IN DIRECTION"
FROM CALJICS 12.47, (1), & 3.30, § 3.31. (5), (8), AND SO ON, WITHDREW FROM THE JURY THE OPPORTUNITY
TO CONSIDER WHETHER THE VICTUM WAS A VICTUM OF A GANG CRIME, GANG RELATED, AT THE DIRECTION OR
BENEFIT OF A GANG, CONDUCT OR ACTIVITY, TO DEFENDANTS DISCHARGE OF A FIREARM EITHER AS A GANG
MEMBER OR ASSOCIATE IN CONDUCT OR ACTIVITY OF GANG BANGING, RETALIATING OR GANG RELATED IN FOR
THE BENEFIT OR ASSOCIATION OF GANG CONDUCT OR ACTIVITY OF SHOOTING A GANG RIVAL MEMBER OR
ASSOCIATE OF A RIVAL GANG. "[IF]" EVEN MR. SCHOPPE-RICO COMMITTED THE ALLEGED CRIME FOR THE
BENEFIT OF, AT THE DIRECTION OF WITH "A STREET GANG", CONDUCT AN ACTIVITY AND THE VICTUM WAS
AN ALLEGED VICTUM OF SUCH GANG CONDUCT OF BEING A RIVAL MEMBER OR ASSOCIATE OF GANG, THEN
THE MISSING ELEMENT OF THAT SUCH CRIME MUST ALL BE PROVEN AN ALLOW THE JURY TO DECIDE, IT
WAS "FOR THE BENEFIT OF OR AT THE DIRECTION OF WITH "A STREET GANG" EXCEPTION MUST APPLY
TO GIVE MEANING TO THE STATUE, AND BECAUSE THE DEFENDANT HAS THE 14TH AMENDMENT RIGHT TO A
FAIR TRIAL, ALSO NOTING, MR. SCHOPPE-RICO WAS HIGHLY INVOLUNTARILY INTOXICATED WITH MENTAL
STATE DISORDER OF DIMINISHED CAPALITY AND UNCONCIOUSNESS, WITH GUN SHOT INJURIES OF PHYSICAL
IMPAIRMENT AND PRIOR INCIDENTS WERE HIS LIFE IS THREATEN BY ALLEGED GANG MEMBERS, SO
THEREFORE MR. SCHOPPE-RICO CANNOT BE SHOULD HAVE BEEN SENTENCED ON COUNT ONE OF

SECONDLY HAD GANGMEMBERS WITH HIM, OR HAD ANY REASONS TO EXPECT SCHOPPE-RICO WAS GOING TO USE A FIREARM IN A GANG RELATED OFFENSE. IN FACT THE ONLY EVIDENCE HE HAD WAS THE GANG EXPERTS IMPROPER OPINION ON THE ISSUE RESERVED TO THE TRIER OF FACT. HE STATED "BECAUSE THE DECEASED HAD "BLUE" SHIRT ON, THAT MR. SCHOPPE-RICO WAS STILL A ACTIVE PARTICIPANT GANG MEMBER. BUT HE FAILED TO REALIZE THE DECEASED HAD ON GREEN PANTS. HE ALSO OPINIONED AS THE PROSECUTION ARGUED, THAT POSSESSION ITSELF OF A FIREARM IS A STATE OF REDINESS AND PREPAREDNESS TO USE AND TAKE UP ARMS FOR THE GANG. WITH NO OTHER EVIDENCE. AND THUS THE EXPERT OPINIONED ON THE ULTIMATE ISSUE. IMPROPERLY, THAT SCHOPPE-RICOS POSSESSION AND DISCHARGE OF THE WEAPON. WAS BECAUSE PETITIONER WAS A ACTIVE NORTENO AND THE DECEASE HAD ON BLUE IS WHY IN HIS OPINION PETITIONER WAS A GANGMEMBER, IN RE: PEOPLE V. KILLEBREW. SUPRA, 103, CAL. APP. 4TH AT PP. 657-658, 126. CAL. RPTR. 2d. 876.) PEOPLE V. GARDELEY, SUPRA. STATES EXPERT OPINION TESTIMONY HAS NOT INCLUDED OPINION THAT A SPECIFIC INDIVIDUAL POSSESSED A SPECIFIC INTENT, MEANING THE OPINION IS IMPROPER. IN SCHOPPE-RICO'S CASE AN PREJUDICIAL. . . . . OTHER EXPERT TESTIMONY WAS ON, PETITIONER WHEN A MINOR WAS VALIDATED IN 1996 AS A NORTENO TATTOO, GRAFITII, AND PRIOR INCIDENT. AN A PHOTO, AND A OLD RED BANNDANA IN HIS POSSESSION THE MOST COMPELLING ARGUEMENT OF PROSECUTORS ON EXPERTS OPINION: TO THE ISSUE RESERVED TO THE TIER OF FACT. THEY CLAIM BECAUSE THE VICTUM HAD ON BLUE SHIRT AND "GREEN PANTS", IS INTENT AND PROOF THAT PETITIONER WAS A ACTIVE GANG MEMBER ON OCTOBER, 17. 2000. WAS IMPROPER OPINION OF EXPERT, AND INSUFFICIENT TO SUPPORT A CONVICTION ON ALL COUNTS. THAT A AFRICAN-AMER-YCAN MAN WEARING "GREEN" "MORE GREEN THEN "EVEN" BLUE", IS BEING MISTAKEN AS A NORTENO'S RIVAL A MEXICAN-AMERICAN MALE. WEARING CREASE BLUE SHIRT WITH CREASE BLUE PANTS AND HAT. ITS CONCLUSION IS VAGUE. IMPOSTOROUS AND OVERBOARD. THE OTHER TESTIMONY WITHOUT ANY EVIDENCE BUT ON HEARSAY WAS ABOUT FIVE TO SIX MEN CHASING MR. SCHOPPE-RICO IN FRONT OF HIS HOME WHO WERE WEARING BLUE MORE THAN ONCE. THE ONLY CONCLUSION AS IN RE: FRANK. S. SUPRA, IS THAT EVEN WHAT IF I MR. SCHOPPE-RICO POSSESSED A WEAPON. IT MOST LIKELY WILL BE FOR PROTECTION IF MR. SCHOPPE-RICOS. LIFE IS ENDANGER EVEN AT HIS OWN HOME, FOR ONE HE IS ALWAYS ALONE. AN AGAIN WITHOUT GANG MEMBERS AND SECONDLY HAD FIVE TO SIX MEN CHASING HIM WANTING TO DO HARM TO HIM AT THE TIME. THIRDLY ON THAT OCTOBER, 17th 2000 DATE MR. SCHOPPE-RICO WAS PYSHICALLY IMPARED DISABLED AND HIGHLY INTOXICATED ON METH AND ALCOHOL. AGAIN MR. SCHOPPE-RICO WILL NOTE BASED ON HIM EXERCISING HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT. THE PROSECUTOR WILL ARGUE WHAT HE'S BEEN. THE FANCY SCENARIO . . . . . IN RE FRANK. S. SUPRA. HELD A SIMILAR FINDING HERE JUST AS IN MR. SCHOPPE-RICO'S CASE. IN RE PEOPLE V. MARTINEZ INFRA. REGARDING THE GANG REGISTRATION REQUIREMENT CONTAINED IN SECTION § 186.30. PENAL CODE APPELLANTS CRIMINAL HISTORY AND GANG AFFILIATION CANNOT SOLELY SUPPORT A FINDING THAT A CRIME IS GANG RELATED UNDER P.C. SECTION § 186.22. . . . PEOPLE V. MARTINEZ (2004) 116. CAL. APP. 4TH. 753. 761. 10. CAL. RPTR. 3d. 751." "THE CRIME ITSELF MUST HAVE SOME CONNECTION WITH THE ACTIVITIES OF A GANG, WHICH WE CONCLUDE MEANS A CRIMINAL STREET GANG. AS DEFINED ELSEWHERE IN PROPOSITION 21. SECTION 186.22. SUBD, (E) AND (F). . . (IBID). BASED ON SECTION 186.22. A CRIME FAILS TO BE GANG RELATED "UNLESS" APPELLANT "COMMITTED IT" —

Violating P.C. § 12022.55, subdiv. (c), to the additional 25 years to life prison term. This error cannot be considered harmless under both. Chapman v. California (1967) 386 U.S. 18, 87 S.ct. 824, 17, L.Ed. 2d. 705. And People v. Watson (1956) 46. Cal. 2d. 818, 836, 299 P. 2d. 243. The imposition of the 25 years to life consective prison term imposed pursuant to section § 12022.55 subdivision (d). Must be stricken. The California Constitution requires the trial court to instruct on every element of an offense. (People v. Flood (1998) 18. Cal. 4th 470, 480. 76. Cal. Rptr. 2d. 180, 957. P. 2d. 869.). People v. Flores (28. Cal. Rptr. 3d. 232. 129. Cal. App. 4th 174. Held. the appropriate remedy of law is as Mr. Schoppe-Rico. Next contends in regards to counts two, three, five and six. Must also be reversed because they are a necessarily included offense of counts one. of §187. And §12022. un. (c) (d). and count four of §246. and §12022. (c) (1). and court failed to instruct on all elements. The California Supreme Court has recently said the "rule!" prohibiting convictions on included offenses (rather then simply barring multiple punishments.) is not clear, ... despite the absolute language of section § 954. (the defendent. may be convicted of any number of offenses. \). There is an exception to the general rule permitting multiple convictions although the reason of the rule is unclear. "this court has held that multiple convictions may not be based on necessarily included offenses". (citations omitted) The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense. the latter is a necessarily included offense. People v. Ortega (1998) 19 Cal. Rptr. 4th 686, 692, 80. Cal. Rptr. 2d. 489, 965. P. 2d. )

In regards to counts two and the three. the defendant was convicted of count two carrying a loaded firearm while an active street gang member on October. 17, 2000, P.C. § 12031. subd. (a) (2) (c) which refers to and is govern by section § 186. 22. (a) as charged in count two of the information ..... In count three, charged with carrying a concealed firearm while an active street gang member on October. 17, 2000. P.C. § 12025, subdiv. (b) (b) (3) in count three. Mr. Schoppe-Rico could not have committed count three without necessarily committing count two and count one at the same time. Mr. Schoppe-Rico cannot be convicted of both crimes according in re People vs. Flores supra. We must reverse his conviction on counts two and three and five and six , , , , , , , , ,        In regards to count one with enhancement, under section 654. held. whether a course of criminal conduct is divisible and therefore gives rise to more then one act within the meaning of section 654. depends on the intent and objective of actor if all the offenses were incidents to one objective. The defendant maybe punished for any one of the offenses " but not more than one. (Neal v. People, (1960) 55. Cal. 2d. 11, 19. 9. Cal. Rptr. 607. 357, P. 2d. 839. People v. Cleveland (2001) 87 Cal. App. 4th 263. 967. 10. 9 Cal. Rptr. 2d. 641. In this case. Mr. Schoppe-Rico was convicted of two additionally counts with counts one and four. thats barred by section 654, where defendant was punished twice of the weapon possession for the same crime.

punishments for count one and four. Defendant argues that punishment for both his conviction on counts on counts two, three, five and six, for carrying a loaded firearm while an active partici- ipant in criminal street gang in violation of section § 12031, subdiv. (a) (2) (c), then the other illegally imposed of carrying a concealed firearm while an active street gang member, in violation of section § 12025, subdiv. (b) (b) (3), and punishment of the enhancements to count one and

61

AND FOUR AS JOINDER. PERSONALLY USING A FIREARM DURING ITS COMMISSION WITHIN THE MEANING OF SECTION §12022.53 SUBDIVISION (d) VIOLATES SECTION 654. HE SAYS AS EXPLAINED IN RE: FRANK. S. SUPRA. HE NEVER CARRIED THE FIREARM, DISABLED PHYSICALLY IMPAIRED TO AND HIGHLY INVOLUNTARILY INTOXICATED ON OCTOBER. 17th 2000. AND ON OCTOBER. 17th 2000 WAS REASONS OF COUNT ONE. . . NOW COUNT FOUR. ALLEGED VIOLATION OCCURED ON SEPTEMBER 2nd. 2000 AND AGAIN THEIR WAS NO EVIDENCE THAT HE CONCEALED OR CARRIED A FIREARM, AS A CONSEQUENCE HE ARGUES THIS COURT MUST CORRECT THE JUDGEMENT TO THESE COUNTS . . . . DECISIONS HAVE HELD SECTION 654, DOES APPLY TO ENHANCEMENTS BECAUSE THE STATUE "PROSCRIBED MULTIPLE PUNISHMENTS FOR THE SAME ACT. PEOPLE V. MORINGLONE. (1982) 127. CAL. APP. 2d 811. 817 - 818. 179 CAL. RPTR 726. IN PEOPLE V. ARNDT (1994) 76 CAL. APP. 4th. 387. 90. COL. RPTR. 2d. 415. THE COURT HELD THAT (#24), SECTION 654 DID NOT PRECLUDE IMPOSITION OF PUNISHMENT ON MORE THAN ONE SENTENCE ENHANCEMENT FOR INJURIES TO MULTIPLE VICTIMS BY THE SAME ACT. BUT THE COURT FOUND TRIAL COURT ERRERED WHEN IT IMPOSED PUNISHMENTS FOR MORE THAN ONE ENHANCEMENTS FOR INJURIES TO THE SAME VICTIM (i.d.) AT PP. 396 - 397, 90. CAL. RPTR. 2.d. 415.).

MR. SCHOPPE-RICO CONTENDS THE TRIAL COURT WAS NOT AUTHORIZE OR APPELLATE COURT TO STAY PUNISHMENT ON ENHANCEMENTS ON COUNTS ONE AND FOUR AND THAT REMAND IS NECESSARY. THE JURY FOUND IT TO BE TRUE THAT DEFENDANT COMMITTED COUNTS ONE AND FOUR. BUT WERE NEVER PROPERLY INSTRUCTED THAT IT HAD TO FIND THE ELEMENTS OF COUNT TWO. THREE, FIVE. AND SIX. CHARGE. THAT THE CRIME WAS FOR "THE BENEFIT OF AT THE DIRECTION OF A CRIMINAL STREET GANG IN VIOLATION OF COUNTS ONE AND FOUR WITH THEIR INCLUDED OFFENSES. THE COURT STATED PUNISHMENT ON EACH. AS EXPLAINED IN PEOPLE V. SENGPODYLHITH. (2001) 26. CAL. 4th 316 AT 324. THE FEDERAL CONSTITUTION FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO JURY TRIAL, MADE APPLICABLE TO THE STATES THROUGH THE FOURTEENTH AMENDMENT, REQUIRE THE PROSECUTION TO PROVE TO A JURY BEYOND A REASONABLE DOUBT EVERY ELEMENT OF A CRIME. FOR THIS REASON "A TRIAL COURT FAILURE TO INSTRUCT ON AN ELEMENT OF A CRIME IS FEDERAL CONSTITUTIONAL ERROR. . . IN RE. FLORES SUPRA. [242. 129 CAL. APP. 4th 185 ] A STAY IS A TEMPORARY SUSPENSION OF A PROCEDURE IN A CASE UNTIL THE HAPPENING OF A DEFINED CONTINGENCY. IN CONTRAST A STRICKING IS AN UNCODITIONAL DELETION OF THE LEGAL EFFICACY OF THE STRICKEN ALLEGATION OR FACT OF PURPOSES OF A SPECIFIC PROCEEDING, IT IS TANTAMOUNT TO A DISMISSAL, IN PARTICULAR, THE STRICKING OF AN ENHANCEMENT IMPLIES THAT THE ENHANCEMENT IS LEGALLY INSUPPORTABLE AND MUST BE DISMISSED IN FURTHERANCE OF JUSTICE [CITATION]" PEOPLE V. CAPRILLO (2001). 87. CAL. APP. 4th 1416, 1421. 105. CAL. RPTR. 2d. 36, FN. OMITTED. PEOPLE V. CARRILLO SUPRA. . . . . . UNDER SECTION 1385 A TRIAL COURT HAS THE POWER TO DISMISS OR STRIKE AN ENHANCEMENT. ( PEOPLE V. RIVAS. (2004.) 119. CAL. APP. 4th 565. 571.14. COL. RPTR. 3d. 611. ) THE FAILURE TO IMPOSE OR STRIKE AN ENHANCEMENT IS A LEGALLY UNAUTHORIZE SENTENCE SUBJECT TO CORRECTION FOR THE FIRST TIME ON APPEAL [CITATIONS] ( PEOPLE V. BRADLEY (1998) 64. CAL. APP. 4th. 386. 391. 75. CAL. RPTR. 2d. 244. ). MOROVER AS TO COUNT ONE THE CALIFORNIA SUPREME COURT HAS NOW HELD THE ENHANCEMENTS IN SECTION 186.22. SUBDIVISION (b)(1)(C). MAY NOT BE IMPOSED ON AN UNDERLYING LIFE TERM. ( PEOPLE V. LOPEZ. (2005 ) 34. CAL. 4th 1002, 1007, 22. CAL. RPTR. 3d. 869, 103. P.3d. 270. ). THIS ENCLUDES THOSE GOVERNED BY SECTION 186. 22. SUCH AS IN SCHOPPE-RICOS CASE ON COUNTS TWO, THREE, FIVE AND SIX. THEREFORE THIS MATTER NEEDS TO BE REMANDED .

GROUND THIRTEEN :

THERE WAS NO SUBSTANTIAL EVIDENCE TO SUPPORT A VERDICT OF GUILTY OF PREMEDITATED AND DELIBERATE FIRST DEGREE MURDER.

MR. SCHOPPE-RICO CONTENDS AND MAKES THIS ARGUEMENT BECAUSE OF THE FOLLOWING THREE FACTORS, FIRST THERE WAS NO "PLANNING". EVIDENCE ESTABLISHED A DELIBERATE PLAN TO KILL. "CARRIED ON COOLLY AND STEADILY. ESPECIALLY ACCORDING TO A PRECONCEIVED DESIGN." PEOPLE V. CALDWELL (1955) 43, CAL. 2d, 864.869. FOR A MAN TO BE HIGHLY INVOLUNTARILY INTOXICATED OF ALCOHOL AND METHAMPHETAMINES (RT. 587) PHYSICALLY IMPAIRED DISABLED. WITH PAST THREATS AND ENDANGER OF HIS SAFETY AND SECURITY. THAT FOR A MAN TO DECIDE TO SHOOT A COMPLETE STRANGER, FOR EVER MOTIVE. IN FRONT OF MULTIPLE WITNESSES, SHOWS NO PLANNING . . . . . . . . . SECONDLY THE PRIOR RELATIONSHIP BETWEEN MR. SCHOPPE-RICO AND THE DECEDENT DID NOT SUGGEST A MOTIVE OF A TYPE SUPPORTING "AN INFERENCE THAT THE KILLING WAS THE RESULT OF A PRE-EXISTING REFLECTION AND CAREFUL THOUGHT AND WEIGHING OF CONSIDERATIONS. RATHER THAN : MERE UNCONSIDERED OR RASH IMPULSE HASTILY EXECUTED." (CITATIONS) PEOPLE V. ANDERSON (1968) 70 CAL. 2d. 15. 27. ALLEGED ANGER OVER ARGUEMENT OR DISAGREEMENT IS NOT A MOTIVE OF THE TYPE REQUIRED BY ANDERSON WHERE THE SHOOTING IS OF A STRANGER. WEARING RIVAL ALLEGED GANG COLORS. UPON PROVOKE-ATION. FOLLOWING A CONFRONTATION WITH ONES GIRLFRIEND. AFTER VICTUM AND ALLEGED SUSPECT WERE ALONE AT BUS STOP, THEN WITNESS MELTON APPEARED. WHO WAS ARMED WITH A KNIFE. (1).

FINALLY, THE NATURE OF THE KILLING WAS NOT SO "PARTICULAR. AND EXACTING" A MANNER. THAT THE DEFENDANT MUST HAVE INTENTIONALLY KILLED ACCORDING TO A PRECONCEIVED DESIGN TO TAKE THE VICTUMS LIFE IN A PARTICULAR WAY FOR A "REASON," WHICH THE JURY CAN REASONABLY INFER FACTS", RELATING TO PLANNING OR THE RELATIONSHIP WITH THE VICTUM. ONLY TWO SHOOTS WERE FIRED THAT STRUCK VICTUM, AFTER PROVOKATION, THE JUDGMENT SHOULD BE MODIFIED TO ONE OF CONVICTION OF SECOND DEGREE MURDER.

FURTHERMORE IF THE COURT FINDS ON FEDERAL HABEAS, THAT COUNSEL WAS INEFFECTIVE IN PRESENTING A DEFENSE OF INVOLUNTARY INTOXICATION AND THAT VICTUMS OR WITNESSES DID MORE THAN STARE TO CAUSE PROVOKATION. AND THAT THE ONLY THEORY EVIDENCE PRESENTED WAS THE PROSECUTIONS BECAUSE PETITIONER EXERCISED HIS CONSTITUTIONAL RIGHT TO REMAIN SILENT THEN THE DEGREE SHOULD BE MODIFIED TO THAT OF INVOLUNTARY MANSLAUGHTER, AND DIMINISHED MENTAL STATE. OF INVOLUNTARY UNCONSCIOUSNESS OR IMPERFECT SELF-DEFENSE INSTRUCTION ALSO SHOULD BE GIVEN, . . . . IN RE: PEOPLE V. WEBBER. 274 CAL. RPTR. 437. 228. CAL. APP. 3.d. 1146. THE COURT NOTED THAT, THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE AFORETHOUGHT IS MURDER IN 2ND DEGREE. IF BECAUSE OF DIMINISHED CAPACITY THE PREPETRATOR IS UNABLE TO ENTERTAIN MALICE BUT NEVERTHELESS IS FOUND TO BE ABLE TO FORM THE INTENT TO KILL THE CRIME IS VOLUNTARY MANSLAUGHTER. IF BECAUSE OF HIS DIMINISHED CAPACITY HE ADDITIONALLY DID NOT INTEND TO KILL, HIS CRIME, IF ANY, IS INVOLUNTARY MANSLAUGHTER [CITATION]. . . . ONCE FACTS ARE ADDUCED WHICH WOULD CONSTITUTE A BASIS FOR FINDING THAT DEFENDANT HAD BOTH DIMINISHED CAPACITY . . . . AND ALSO UNCONSCIOUSNESS OR LACK INTENT TO KILL. THE TRIAL COURT FAILS IN ITS DUTY TO INSTRUCT THE JURY AS TO ALL ISSUES OF LAW RAISED BY THE

(1.) IN REGARD TO MORAL INTURPUEE, NICK TAYLOR HAD IN HIS POSSESSION A SIX INCH KNIFE. A DRUG SYRINGE, LAFFY TAFFY CANDY. SOME COINS AND BUS TICKET. IN RE: POLICE REPORTS.

THAT THE KILLING WAS THE RESULT OF A PRE-EXISTING REFLECTION "AND CAREFUL THOUGHT AND WIEGHING OF CONSIDERATIONS" RATHER THAN "MERE UNCONSIDERED OR RASH IMPULSE HASTILY EXECUTED." [CITATIONS.] (3) FACTS ABOUT THE NATURE OF THE KILLING FROM WHICH THE JURY COULD INFER THAT THE MANNER OF KILLING WAS SO PARTICULAR AND EXACTING THAT THE DEFENDANT MUST HAVE INTENTIONALLY KILLED ACCORDING TO A "PRECONCEIVED DESIGN" TO TAKE THE VICTIMS LIFE IN A PARTICULAR WAY FOR A "REASON" WHICH THE JURY CAN REASONABLY INFER FROM FACTS OF TYPE (1) OR (2). (Id. AT 26, 27.)

THIS COURT HAS SUBSEQUENTLY MADE CLEAR THAT THE SO CALLED "ANDERSON" GUIDELINES ARE DESCRIPTIVE, NOT NORMATIVE. "PEOPLE v. PEREZ (1992) 2. Cal. 4th 1117, 1125. NONETHELESS, THE ANDERSON FACTORS EVEN IF "DESCRIPTIVE" SHOULD FOCUS AND GUIDE THIS COURTS ANALYSIS OF THE SUFFICIENCY OF THE EVIDENCE. UNDER THESE GUIDELINES THE EVIDENCE HERE IS INSUFFICIENT.

### APPLICATION OF THE LAW TO THIS CASE.

THE ANALYSIS MR. SCHOPPE-RICO ACKNOWLEDGES THE DIFFICULTY APPLYING FACTS CASE TO THE OTHER, THERE IS DOUBTLESS IN ANY ANDERSON ANALYSIS AN ELEMENT OF "KNOWING IT WHEN ONE SEES IT." HOWEVER THE ANALYSIS IN MR. SCHOPPE-RICO CASE IS RENDERED EASIER BY THE SIMILARITIES, -- AND DISSIMILARITIES. BETWEEN FACTS OF HIS CASE AND THOSE IN ANDERSON . . . . . . . . . . IN ANDERSON, THE DEFENDANT HAD LIVED FOR EIGHT MONTHS WITH THE TEN-YEAR OLD VICTIM, WHILE MR. SCHOPPE-RICO DID NOT EVEN KNOW THE DECEASED IN BOTH ANDERSON AND THIS CASE DENIED GUILT, IN ANDERSON, MULTIPLE STAB WOUNDS -- OVER 60 IN NUMBER -- WERE INFLICTED, WHILE THE DECEDENT IN THIS CASE SUSTAINED ONLY TWO GUNSHOT WOUNDS UNKNOWN IF FATAL FROM A .22 RIFLE. HERE AND IN ANDERSON THERE WAS ONLY SPECULATION AS TO A POSSIBLE MOTIVE . . . . . THE STATE MAY SUGGEST A SCENARIO IN WHICH MR. SCHOPPE-RICO HAD BECOME ANGRY AT HIS GIRLFRIEND, WHICH RAGE PROMPTED HIM TO SHOOT A STRANGER, WERE THIS SCENARIO WASN'T EVEN 100% GUARANTEED TRUE. FROM A IMPEACH. WITNESS, THE STATE MIGHT POSIT AN ALTERNATIVE SCENARIO OF MR. SCHOPPE-RICO.'S ALLEGED BEING ANGRY AT HIS GIRLFRIEND, AFTER WHICH HE CALMED DOWN HOURS WENT AND DECIDED TO THE ALLEGE SHOOT THE FIRST PERSON HE SAW WEARING THE COLORS OF A RIVAL GANG AS A SCENARIO FANCIFUL AN WORST AT BEST. THE OTHER SCENARIO COUNSEL WAS INEFFECTIVE IN PRESENTING WAS MR. SCHOPPE-RICO WAS SO INTOXICATED, PARANOID, HALLUCINATING, UNCONSCIOUS AT THE TIME. AND WAS PHYSICALLY IMPAIRED AT THE TIME . . . . . . WHILE THE FIRST SCENARIO MAKES SOME SENSE, IT IS NOT CONSISTENT WITH A FINDING OF PREMEDITATION AND DELIBERATION UNDER THE "DESCRIPTIVES," FROM ANDERSON FACTORS, AS FOR THE ALTERNATIVE SCENARIO, IT IS SO FAR REMOVED FROM PREDICTABLE HUMAN BEHAVIOR AS TO BE FANCIFUL . . . . . IF ANYTHING IS CLEAR IN THIS CASE IS THAT MR. SCHOPPE-RICO WAS NOT ANGRY THAT MORNING. IF HE WAS RESPONSIBLE FOR THIS HOMICIDE IT WAS NOT THE RESULT OF RAGE AN ACT OF RAGE AND NOT AN ACT OF "PRE-EXISTING REFLECTION AND WIEGHING OF CONSIDERATION RATHER THAN MERE UNCONSIDERED OR RASH IMPULSE. PEOPLE V. ANDERSON, SUPRA, 70. Cal. 2d. AT 27.

ALSO NOTING THAT THE UNLAWFUL KILLING OF A HUMAN BEING WITH MALICE AFORETHOUGHT IS MURDER IN THE 2ND DEGREE. AND IF BECAUSE OF DIMINISHED CAPACITY, THE PREPERATOR IS UNABLE TO ENTERTAIN MALICE. BUT NEVER THE LESS IS FOUND TO BE ABLE TO FORM INTENT TO KILL THE CRIME IS VOLUNTARILY MANSLAUGHTER. IF BECAUSE OF HIS DIMINISHED CAPACITY, HE ADDITIONALLY DID NOT INTEND TO KILL, HIS CRIME IS IF ANY IS INVOLUNTARY MANSLAUGHTER. [CITATION.] PEOPLE V. WEBBER SUPRA. 229. Col. 431. . . . . . CUTTING STRONGLY AGAINST SUCH A CONCLUSION IS THE CIRCUMSTANCE THAT EVERYTHING OCCURRED WHILE MR. SCHOPPE-RICO -- IF THE SHOOTER -- WOULD HAVE AWARE THAT THERE WERE MULTIPLE EYE WITNESSES -- THE VICTIM KNEW A UNKNOWN SUSPECT WAS ARMED, HIM AND MELTON WERE STILL STARING OUT UP OFF THE BENCH -- STARING CAN MEAN MADDOGGING, MUGGING, ECT. IN LIGHT OF WHOLE RECORD EVIDENCE OF PREMEDITATION AND DELIBERATION IS LACKING . . . . ESPECIALLY WHEN SOMEONE IS INTOXICATED.

EVIDENCE, IF IT DOES NOT SUPPLEMENT OR COUNSEL WAS INEFFECTIVE TO THE STATUTORY DEFINITION OF INVOLUNTARY MANSLAUGHTER. IT ALSO MUST INSTRUCT THAT IF, DUE TO DIMINISH CAPACITY THE DEFENDANT HAD NEITHER MALICE NOR INTENT TO KILL, THE OFFENSE COULD BE NO GREATER THAN INVOLUNTARY MANSLAUGHTER. Id, AT P. 28, 120 CAL. RPTR. 377, 533, P.2d, 1017.)

ON INVOLUNTARY MANSLAUGHTER IN THE CONTEXT OF DIMINISHED CAPACITY DUE TO DEFENDANTS VOLUNTARY INTOXICATION, BECAUSE OF THE WEIGHT OF IT, THE EVIDENCE THAT MR. SCHOPPE-RICO INTOXICATION WAS SUFFICIENT FOR A JURY TO HAVE BELIEVED THAT ALTHOUGH HE WAS CONSCIOUS, HE LACKED BOTH MALICE AND INTENT TO KILL. (Id) AT P. 31, 120 Cal. Rptr 377, 533, P.2d, 1017,) THEN THE CRIME SHOULD BE REDUCED TO INVOLUNTARY MANSLAUGHTER.

THE LEGAL FRAMEWORK GENERALLY. IN JACKSON V. VIRGINA (1969) 443. U.S. 307, THE UNITED STATES SUPREME COURT "ANNOUNCED A NEW CONSTITUTIONALLY MANDATED RULE FOR REVIEW OF THE SUFFICIENCY OF THE EVIDENCE SUPPORTING A STATE CRIMINAL CONVICTION CHALLENGED IN A FEDERAL HABEAS CORPUS PROCEEDING. PEOPLE V. JOHNSON (1980) 26. CAL. 3d. 557. 576".... THE CRITICAL INQUIRY ON REVIEW OF THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT A CRIMINAL CONVICTION.... [15] TO DETERMINE WHETHER THE RECORD EVIDENCE COULD REASONABLY SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT." JACKSON V. VIRGINA. SUPRA, 443. U.S. AT 318, THIS INQUIRY DOES NOT REQUIRE A COURT TO ASK ITSELF WHETHER IT BELIEVES THAT THE EVIDENCE AT THE TRIAL ESTABLISHED GUILT BEYOND A REASONABLE DOUBT." [CITATION.] INSTEAD THE RELEVANT QUESTION IS WHETHER, AFTER VIEWING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION, ANY TRIER OF FACT COULD HAVE FOUND THE ESSENTIAL ELEMENTS OF THE CRIME BEYOND A REASONBLE DOUBT." Id AT. 318-319. UNDER WINSHIP SUPRA ..... THE EVIDENCE MUST DO MORE THAN RAISE A SUSPICION OF GUILT....."EVIDENCE WHICH MERELY RAISES A STRONG SUSPICION OF THE DEFENDANTS GUILT IS NOT SUFFICIENT A POSSIBILITY TO SUPPORT A CONVICTION SUSPICION IS NOT EVIDENCE'. (I.E THE PROSECUTORS THEORY.) . IT MERELY RAISES A POSSIBILITY AND THIS IS NOT A SUFFICIENT BASIS FOR AN INFERENCE OF FACT." PEOPLE. V. REDMOND, (1969) 71. CAL. 2d. 745. FINALLY " SPECULATION" IS NO SUBSTITUTE FOR PROOF, PEOPLE V. MORRIS (1988) 46. CAL. 3d AT 1 AND 21,.....  THE LEGAL FRAMEWORK AS APPLIED TO FIRST DEGREE MURDER. MURDER IS PRESUMPTIVELY OF THE SECOND DEGREE, AND A FIRST DEGREE MURDER CONVICTION MUST BE REDUCED TO SECOND DEGREE, ABSENT SUBSTANTIAL EVIDENCE TO SUPPORT A FIRST DEGREE FINDING. PEOPLE V. FORD (1966) 65 CAL. 2d. 41. 51, THE PROPER APPROACH TO A "SUFFICIENTLY "ANALYSIS IN THIS CONTEXT WAS DEVELOPED IN THE NOW FAMILIAR CASE OF PEOPLE. V. ANDERSON SUPRA, 70. CAL. 2d. 15.....  THE TYPE OF EVIDENCE WHICH THIS COURT HAS FOUND SUFFICIENT TO SUSTAIN A FINDING OF PREMEDITATION AND DELIBERATION FALLS INTO THREE BASIC CATEGORIES. (1: FACTS ABOUT HOW AND WHAT DEFENDANT DID PRIOR TO THE ACTUAL KILLING, WHICH SHOW THAT THE DEFENDANT WAS ENGAGED IN ACTIVITY DIRECTED TOWARD AND EXPLICABLE AS INTENDED TO RESULT IN, THE KILLING - WHAT MAY BE CHARACTERIZED AS "PLANNING" ACTIVITY; (2) FACTS ABOUT THE DEFENDANT'S PRIOR RELATIONSHIP AND/OR CONDUCT WITH THE VICTIM FROM WHICH THE JURY COULD REASONABLY INFER A "MOTIVE "TO KILL THE VICTIM, WHICH INFERENCE OF MOTIVE TOGETHER WITH FACTS OF TYPE (1) AND (3). WOULD IN TURN SUPPORT AN INFERENCE

MR. SCHOPPE-RICO CANNOT "PROVE A NEGATIVE" THOUROUGHLY DUE TO COUNSEL WAS INEFFECTIVE. RIGHT NOW ALL HE CAN DO IS POINT TO THE LACK OF EVIDENCE OF PREMEDITATION AND DELIBERATION. AND IN THAT REGARD HE INCORPORATES HERE HIS FACTUAL SUMMARY, FROM PAGES, ___ THROUGH, ___. ABOVE. HE WILL AWAIT RESPONDENTS ATTEMPTS TO IDENTIFY THE EVIDENCE THAT ESTABLISHES PREMEDITATION AND DELIBERATION ON ILLEGALY TAINTED EVIDENCE, WITHOUT RESORT TO "SPECULATION" OR "CONJECTURE". HE IS CONFIDENT THAT NO SUCH SHOWING WILL BE FAIRLY MADE ON THIS RECORD.

THERE MAY BE NO RETRIAL IN THE EVENT OF REVERSAL. A DETERMINATION ON APPEAL THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION BARS A RETRIAL UNDER FEDERAL TWICE-IN JEOPARDY PRINCIPLES, UNITED STATES CONSTITUTION, AMENDMENT FIVE, BURKE. V. UNITED STATES. (1978), 437, U.S, 1; GREENE. V. MASSEY, (1978) 437, U.S, 19, IN RE: JOHNNY G. (1979) 25 CAL. 3d. 543. 546. AND PEOPLE V. PIERCE. (1979) 24 CAL. 3d. 1999, 209. 210.

AS WELL MR. SCHOPPE-RICO CONTENDS IN EVENT OF REVERSAL. UNDER CALIFORNIA DETERMINATE SENTENCING LAW, (DSL), THAT THIS OFFENSE IS PUNISHABLE BY ONE OF THREE PRECISE TERMS OF IMPRISONMENT: A LOWER TERM SENTENCE OF 10 YEARS, A MIDDLE TERM OF 15 YEARS AND AND OR AN UPPER TERM SENTENCE OF 25. YEARS TO LIFE. FOR FIRST DEGREE, AND THAT SECOND DEGREE MURDER HAS ITS THREE PRECISE TERMS OF IMPRISONMENT AND SO DOES MANSLAUGHTER. UNDER PEOPLE V. BLACK 38. CAL. 4th 1230. 113. P. 3d. 534. THAT COURT HELD THAT THE DSL, SURVIVES SIX AMENDMENT INSPECTION HELD. THE (DSL), BY PLACING SENTENCE ELEVATING FACTFINDING WITHIN THE JUDGES PROVINCE. VIOLATES A DEFENDANTS RIGHT TO TRIAL BY JURY SAFEGUARDED BY THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT, PP - 8-22. MR. SCHOPPE-RICO CONTENDS. THE JURY NEVER DECIDED THE UPPER OR LOWER TERMS UNDER (OSL) AND THIS VIOLATING HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT, WHEN JUDGE AND PROSECUTOR ENFORCED UPPER TERM SENTENCE. IN APPRENDI V. NEW JERSEY. THE COURT HELD THAT, UNDER THE SIXTH AMENDMENT, ANY FACTS (OTHER THAN PRIOR CONVICTION) THAT EXPOSES A DEFENDANT TO A SENTENCE IN EXCESS OF THE RELEVANT STATUTORY MAXIMUM MUST BE FOUND TRUE BY A JURY, NOT A JUDGE. AND ESTABLISH BEYOND A REASONABLE DOUBT NOT MERELY BY A PREPONDERANCE OF THE EVIDENCE. SEE : 530 U.S. 466. 490. THE COURT HAS APPLIED THE RULE APPRENDI. TO FACTS SUBJECTING A DEFENDANT TO THE DEATH PENALTY. RING V. ARIZONA. 536. U.S. 584. 602. 609. FACTS PERMITTING A SENTENCE IN EXCESS OF THE "STANDARD RANGE." UNDER WASHINGTONS SENTENCE REFORM ACT (REFORM ACT). BLAKELY V. WASHINGTON. 542. U.S. 296. 304-305. AND FACTS TRIGGERING A SENTENCE RANGE ELEVATION UNDER THE THEN - MANDATORY FEDERAL SENTENCE GUIDELINES. UNITED STATES V. BOOKER - 543. U.S. 220. 243. 244. BLAKELY AND BOOKER BEAR MOST CLOSELY ON THE QUESTION PRESENTED HERE . . . . . . . IN ALL MATERIAL RESPECTS. CALIFORNIAS (DSL). RESEMBLES THE SENTENCING SYSTEM INVALIDATED IN BLAKELY AND BOOKER. FOLLOWING THE REASONING IN THOSE CASES. THE MIDDLE TERM PERSCRIBED UNDER CALIFORNIA LAW. "NOT THE UPPER". IS THE RELEVANT STATUTORY MAXIMUM BECAUSE AGGRAVATING FACTS THAT AUTHORIZE THE UPPER TERM ARE FOUND BY THE JUDGE, AND NEED ONLY BE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE. THE DSL. VIOLATES THE RULE OF APPRENDI. WHICH BRIGHT LINE RULE WAS DESIGNED TO EXCLUDE A JUDGES DETERMINATION AND THAT THE FACT WAS SUBJECT TO THE SIXTH AMENDMENTS JURY TRIAL GUARANTEES. MR. SCHOPPE-RICO CONTENDS HIS SENTENCE IS IN OVER EXCESSES AND SHOULD BE ALSO PERSCRIBED THE MIDDLE TERM SENTENCE UNDER CALIFORNIA LAW. NOT THE UPPER TERM.

NOTE. POLICE REPORT STILL HAVE TO OBTAIN THROUGH DISCOVERY OFFICER
MUST HAVE THEM AT TIME. ON THE POSSESSION ISSUES.

66,

PREFACE

XHOPPE-RICO
VS.
ROBERT HOREL.

AFFADAVIT
CASE NO. C-07-5416-MJJ-PR.

NORTHERN DIST. COURT PAGE 67
OF CALIFORNIA.

TO: YOUR HONOR OF THE COURT, I HEREBY ASK THAT THIS LETTER/WRITING BE PUBLISHED SUBMITTED IN THIS ACTION TO THE COURT AT THIS TIME. ENCLUDING WITH EXHIBITS NO: **A - B** ATTACHED HEREIN TO BE SUBMITTED . . . . .   IN ACCORDANCE.

EVID C § 356, STATES WHENEVER A PART OF AN ACT, DECLARATION, CONVERSATION, OR WRITING IS GIVEN IN EVIDENCE, THE ADVERSE PARTY IS ENTITLED TO INQUIRE INTO THE REST OF THE ACT, DECLARATION, CONVERSATION, OR WRITING. THE PURPOSE OF THIS PROVISION IS TO KEEP EVIDENCE IN CONTEXT AND TO ENSURE THAT THE TRIER OF FACT IS NOT MISLED BY HEARING ONLY A PARTIAL ACCOUNT OF CERTAIN EVIDENCE, THIS IS REFFERRED TO AS THE "RULE OF COMPLETENESS" . . . . . . . . . .

THE DEFENDANT HEREIN WILL INTRODUCE AN ARGUE IN OBJECTION THE FOR ONE, THE TRIAL COURT AN (IN LIMINE) COURT DID TO ERRED PREJUDICIALLY IN ADMITTING "SCENT DISCRIMINATION LINE UP" EVIDENCE AS PROOF OF IDENTITY, (SECONDLY). THE TRIAL COURT ERRED IN FAILING TO GRANT THE PENAL CODE SECTION 1118.1 MOTION FOR JUDGEMENT OF ACQUITTAL, PRESENTED AS TO THE "STREET GANG" FIREARM COUNTS AT THE END OF THE PROSECUTION'S CASE AS TO THE "STREET GANG" FIREARM COUNTS. AS WILL BE EXPLAINED THIS ERROR WAS ALSO PREJUDICIAL AS TO ALL COUNTS (THIRDLY) THE INSTRUCTIONS GIVEN TO DEFINE THE "STREET GANG" FIREARM POSSESSION OFFENSES AN THE REST OF THEM WERE FATALLY DEFICIENT. (FOURTHLY) THERE WAS NO SUBSTANTIAL EVIDENCE TO SUPPORT A VERDICT OF GUILTY OF PREMEDITATED AND DELIBERATE FIRST DEGREE MURDER OR/AN ANY MURDER VERDICT. (FIFTHLY) THE LOWER COURT ERRED IN DENYING. MR. SCHOPPE-RICO'S POST-TRIAL MARSDEN MOTION WITHOUT SUFFICIENT INQUIRY OR INVESTIGATION TO RESOLVE THE ISSUE RAISED AN MISCONDUCT, (SIXTHLY) THE ABSTRACT AN CLERK MINUTES SHOULD BE MODIFIED TO SPECIFY THAT THE DETERMINATE SENTENCE WAS TO BE SERVED CONCURRENTLY WITH THE INDETERMINATE SENTENE OR IT DID NOT SAY BECAUSE ERROR OCCURRED AN DISSMISSAL IS REQUIRED.

**I •** APPOINTED COUNSEL AN THE TRIAL COURT ERRED PREJUDICIALLY IN ADMITTING SCENT DESCRIMINATION LINE UP AS PROOF IDENTITY IN/AND IN VIOLATION OF DEFENDANTS CONSTITUTIONAL RIGHTS AN AMENDMENTS.

A. INTRODUCTION AN OVERVIEW

IN THIS CASE, A *KELLY-FRYE* MOTION WAS FILED BY THE DEFENSE, SEEKING TO AMEND AN EXCLUDE, "SCENT-DISCRIMINATION LINE UP" EVIDENCE, FURTHERMORE COURT APPOINTED PUBLIC DEFENDER WAS INEFFECTIVE AND MADE PROMISES TO THE DEFENDANT THAT SHE HAD FILED MOTIONS TO SUPPRESS AN HAVE DOG SCENT DISCRIMINATION EXCLUDED FROM TRIAL AN/OR HAVE A EXPERT IN THE DOG OL'FACTORY SCENT FI-SCIENTIFIC FIELD HIRED FOR TRIAL HOWEVER OBJECTION WAS OVER RULED AN THE EVIDENCE WAS PREJUDICIALLY ADMITTED AN WITHOUT CAUTIC INSTRUCTION MR. SCHOPPE-RICO DEEMS THIS TO HAVE BEEN PREJUDICIAL ERROR IN REGARDS TO HIS WRONGFUL CONVICTION AS PROOF OF IDENTITY, DEFENDANTS DECLARES AN CLAIMS ON THE FOLLOWING SET FORTH GROUNDS DISMISSAL IS TOO REQUIRED............ FURTHERMORE DEFENDANT WILL PROVE AN ARGUE HERE IN THAT ADMISSION OF THE BIAS TESTIMONY OF A VETERINARY TECHNICIAN, "(W)HO" WAS ONLY A VOLUNTEERE WITH CONTRA COSTA SEARCH AND RESCUE ( CT. 814 ) WAS DEEMED ERROR. SHE'S A CRIMINALIST WHO CONDUCTED A SHORT TRAIL. SEARCH AN RESCUE "EXPERIMENT" TO REPRODUCE A SCENT TRAIL WITH NUMEROUS OF UNKNOWN SUBJECTS. AS/FOR PROOF OF IDENTITY, SIMILAR ALLEGEDLY TO THOSE IN HER ACADEMIC TRAINING IN THE VETERINARIAN FIELD FOR SEARCH AN RESCUE, IS ERROR AN NEEDS UPHOLDING, "BECAUSE" THE (D)OG AN VETERINARY TECHNICIAN WAS WAS UNQUALIFIED IN SHORT S TRAIL SCENT IDENTITY AN THE EXPERIENT WASN'T CONDUCTED UNDER A PROPER. FOUNDATION, CONDITION OR AN CONTAMINATED FREE ZONE AT THE TIME TO THOSE CONDITIONS IN THEIR TRAINING IN SEARCH AN RESCUE. VETERINARY ACADEMIC FIELD(S) ......   B. ANALYSIS OF THE DOG SCENT EXPERIMENT.

ON OCTOBER 17, 2000, DEPUTY WHIDDON HAD ASSISTED TWO K-9 OFFICERS IN A SEARCH OF THE "AREA" LOOKING FOR A GUN AN DISCARDED CLOTHING (RT. 1527 ) HOWEVER THEY "ASSERTED" THEY HAD NOT FOUND NOTHING AT 40 SHARON. DR THAT MORRNING, AN OFFICER WITH K-9'S SEARCHED THAT AREA.... "APPROX 9 HOURS OR MORE LATER, AN _ MS. KALEIKI CALLED 911 (RT. 1657-1658) LINDA KALEIKI LIVED AT 40 SHARON OR. (RT. 1650 1651-1655.) AFTER HER DAUGHTER RETURNED MID AFTERNOON THE DUAGHTER WENT OUTSIDE, BUT RETURNE SAYING THEIR WAS A GUN FOUND IN THE YARD. (RT 1656-1657.) AN THIS WAS MORE THAN 9 HOURS LATER, AFTER ALL LAW ENFORCEMENT WAS GONE FROM THE AREA ........   C. ANALYSIS OF THE EXPERIMENT, CONTAMINATIO AN MISHANDLING OF EVIDENCE.....  : CRIMINALIST "JOHN NELSON WENT TO 40 SHARON OR. TO EXAMINE THE RIFLE FINDING NO ROUND IN THE CHAMBER, BUT TWELVE CARTRIDGES IN THE MAGAZINE (RT. 1755-1756) ENCLUDIN NO-ONES FINGER PRINTS OR SHOE IMPRESSIONS WHERE FOUND ... MR. MELTON HANDLED THE CLOTHING (RT. 1758 HE FOUND IN THE PANTS POCKET A SCRAP OF PAPER WITH THE NUMBER 382-AN-939-3000 AS WELL AS.22 CALIBER CATRIDGES (RT 1762) (THE CLOTHS NEVER BELONG TO THE DEFENDANT, BUT ALLEGEDLY TO JENNIFER SMITH, I.E EMPHASIS MINE )

these were a issue after, defendant was allegedly arrested

ACCORDINGLY, TO DETECTIVE COSTA THE CLOTHING CONSISTED OF BLACK JOGGING TYPE PANTS AN A GRAY SWEAT-SHIRT

THAT SAID PRO-SPIRIT, (RT. 1620) THE RIFLE HAD NO STOCK AN A HOMEMADE GRIP (RT. 1621) (I.E. EMPHASIS MINE THRUOUT.

FROM THE MORNING OF OCTOBER 17, 2000 TIL MIDNIGHT OCTOBER 18, 2000, THE DEFENDANT WAS HELD AN INTERROGATED ALL DAY

FURIOUSLY, BY DETECTIVE COSTA AN GRUENHEID, EVENTUALLY THEY TOOK/COLLECTED DEFENDANTS PERSONAL CLOTHING OFF OF HIM, WHICH

WAS HIS SHOES, SHIRT AN SOCKS. AN THEY GAVE HIM DEPUTY O'BRIANS, T-SHIRT AN FINALLY FEED DEFENDANT AFTER 14 HOURS. AFTER.

THEY HANDLED DEFENDANTS PERSONAL CLOTHING "THAT HAD HIS OWN SCENT, THESE SAME DETECTIVES HANDLED THE SCENT EVIDENCE

USED "ALL AT THE SAME TIME, THUS CONTAMINATING ONE MULTIPLE OF THE SAME SCENT TO THE OTHER AS WELL DETECTIVE COSTA

AN GRUENHIED ESCORTED THE DEFENDANT HANDCUFFED TO THE MARTINEZ FIELD WHERE THIS SCENT LINE UP TOOK PLACE, AN THEY

PRIORLY TO THIS HAD DEFENDANTS BLOOD DRAWN (QUESTION WERE S THAT AT, RESERVED OR IS IT.) HOWEVER DEFENDANT ARGUES

THAT THE SAME DEPUTY'S AN DETECTIVES WHO HANDLED AN BAGED THE AFORETOP MENTION BLACK JOGGING TYPE PANTS AND

GRAY SWEATSHIRT SCENT DISCRIMINATION EVIDENCE ARE THE SAME ONES WHO HANDLED AN BAGED HAVING CONTACT WITH THE

DEFENDANTS SCENT, CONTAMINATED ONE SCENT TO THE OTHER. SEE COURT TRANSCRIPT OF STATEMENTS AN CONDUCT, . . . . . SERGEANT

HALE TESTIFIED THAT THE SWEATPANTS AN SWEATSHIRT WERE GIVEN BY MR. NELSON TO SERGEANT HALE AN "DETECTIVE COSTA," (RT 1671)

AN IT WAS "DEPUTY GRUENHEID" WHO CARRIED WHO CARRIED THE BAG AN PRESENTED IT TO THE DOG. . . . . JODY SCHETTLER WAS A VETERINARIAN

TECHNICIAN (RT 1963) WHO HANDLED BLOODHOUND FOR APPROXIMATELY FIVE YEARS (RT. 1965) (I.E. EMPHASIS MINE, HOWEVER SHE WAS NO

SCENT OL'FACTORY MULTIPLE SHORT TRAIL SCIENTIST EXPERT IN THE OL'FACTORY SCENT SCIENTIFIC EXPERT COMMUNITY) . . . HER TRAINING

LINE UPS WERE CONSIDERED BY MS. SCHETTLER TO BE A SUCCESS IF HER DOG JUMPED ON THE WRONG PERSON WAS CORRECTED AN THEN

JUMPED ON THE RIGHT PERSON (RT. 2058) . (I.E EMPHASIS MINE THIS CREATING A BIAS INTEREST AN PROOF SHE PROMPTS HER DOG ON PEOPLE

TOWARDS SUCCESS.) MS. SCHETTLER TESTIFIED THAT THE SCENT LINE UP IN THIS CASE HAD BEEN ON THE "NIGHT" OF OCTOBER 17, 2000, AT

THE SHERIFFS DEPARTMENT IN MARTINEZ (RT. 2028-2029) IT INVOLVED FOUR PERSONS (RT 2029) ACCORDING TO HER. (I.E, HOW

EVER IT INVOLVED MORE PERSONS THEN FOUR WHO HAD CONTACT THE SCENT MATERIALS AN BAG THAT WAS USED AN WITH THE DEFENDANT.

DURING THE COURSE . . . . FURTHERMORE WE WILL LIKE TO EXCLUDE AN RELY ON, IN ACCORDANCE ON PENAL CODE § 299 . IN THIS TYPE

I.E. COUNSEL INEFFECTIVE

OF SCENT KEITH-FRYE CASE, PENAL CODE § 299 REVERSAL OR AQUTTAL: REQUEST FOR EXPUNGEMENT OF INFORMATION IS

REQUIRED ON AN IN THESE GROUNDS DUE TO THE FACT IT WAS AN ERROR TO DENY DEFENDANTS MOTIONS WHEN HAIRS AN FIBERS

WERE COLLECTED/TESTED FROM THE SCENT DESCRIMINATION CLOTHING AN WHEN COMPARED TO DEFENDANTS WAS NOT A MATCH.

"CRIMINALIST ALEX TAFLYA COMPARED MS. SMITHS AN MR. SCHOPPE-RICO'S HAIRS WITH THE HAIRS FOUND ON THE SWEATSHIRT AN

JOGGING TYPE PANTS AN" BOTH WERE ELIMINATED "AS A POSSIBLE SOURCE FOR THOSE HAIRS (RT. 2329- 2333-2336) THUS

CLEARING THE DEFENDANT MR. SCHOPPE-RICO FROM EVEN WEARING OR HAVING CONTACT WITH THE AFOREMENTION

JOGGING TYPE PANT AN GRAY SWEATSHIRT. THIS IS ALSO MORE PROOF IN LIMINE THE COURT ABUSED ITS DESCRETION

IN DENYING APPELLANT RELIEF A/OR PROVIDING A CALTIC OR SAFE GUARDS FROM INJUSTICE, OF SCENT IDENTITY ISSUES, ON EXPERIMENTS, CONTANAMATION AN ECT..... THE WHOLE SCENT DISCRIMINATION IDENTITY ISSUE HAS BEEN AN MIS-REPRESENTATION ON THE OPPOSITIONS PART..... O. VIDEO ANALYSIS ; IN THE DOG SCENT DISCRIMINATION VIDEO, OF THE SCHETTLER AN KA'II'ROH SCENT DISCRIMINATION LINE UP LOGED IN AS (EXHIBIT 61) IS ILLUMINATING, IT SHOWS (AGAIN) DEPUTY GRUENHIED CARRYING THE PAPER BAG, CONTAINING THE SWEATSHIRT BY THE TOP CENTER, IT ALSO SHOWS THAT THE DOG, DID NOT PUT HER "NOSE" INSIDE THE BAG, INSTEAD ONLY SNIFFING PLACING HER NOSE AT THE TOP CENTER, WERE CONTANIMATED EVERYONE HELD IT AT. AT THE TOP OF THE BAG AT THE SAME PLACE IT HAD BEEN HELD BY DEPUTY GRUENHEID AN COSTA, IT ALSO SHOWS THE DOG MEANDERING AMONG THE SUBJECTS GUIDED BY A SHORT LESHED IN THE LINE UP AN IT HAS NO SOUND; THE VIDEO WAS RECORDED WITH NO SOUND, SO NO-ONE WAS ABLE TO HEAR OR LISTEN TO WHAT TOOK PLACE NEXT, HOWEVER IT SHOWS THAT-WHAT EVER, THE DOG DID- IT NEVER "TRACKED" FROM THE CENTER LIGHT STICK TO MR. SCHOPPE-RICO'S POSITION AN THERE WAS NO SOUND FOR, VERIFICATION OF THE WAY THE DOG HANDLER COMMANDED HER DOG THROUGHOUT THIS COURSE, LIKE SHE SAID IN TRAINING THEY ONLY KNOW THE SUBJECT OF INTEREST IN THE LINE UP, AN THE VIDEO NOT HAVING SOUND IS SUSPECT ON THE VIDEO SCENT DISCRIMINATION VIDEO (SEE EXHIBIT 61) MS. SCHETTLER GUIDING AN TALKING TO THE DOG INSTEAD OF LEAVING THE DOG ALONE IN THE COURSE. ALSO APPELLANT LIKE TO NOTE ; IN REGARDS TO (R.T. 2329-2333-2336) APPELLANT BEING ELIMINATED AS A POSSIBLE SOURCE FOR THOSE HAIRS FOUND ON THE SCENT DISCRIMINATION MATERIAL. CRIMINALIST ALEX TAFFYA ALSO STATED A PERSON SHEDS MORE THAN 300 OR 3000 HAIRS PER HOUR/DAY, (.I.E. AN THE APPELLANT A HAIRY PERSON.) WE LIKE TO NOTE.

   II • THE TRIAL COURT ERRED IN FAILING TO GRANT THE PENAL CODE SECTION 1118.1 MOTION FOR JUDGMENT OF ACQUITTAL, PRESENTED AS TO THE "STREET GANG" FIREARM COUNTS AT THE END OF THE PROSECUTION CASE AS TO THE "STREET GANG" FIREARM COUNTS, AS WILL BE EXPLAINED THIS ERROR WAS ALSO PREJUDICIAL AS TO ALL COUNTS, IN VIOLATION OF APPELLANTS AMENDMENTS AN CONSTITUTIONAL RIGHTS AS WELL •

• INTRODUCTION TO THE ISSUE ; MR. SCHOPPE- WAS/HAS BEEN ACCUSED OF BEING A VALIDATED STREET GANG MEMBER BY THE PITTSBURG POLICE DEPARTMENT GANG EXPERT RON HUPPERT, AN THIS WRONGLY ACCUSING HIM OF BEING A GANG MEMBER WITHOUT NO EVIDENCE AN IN→ BEING IN VIOLATION OF PENAL CODE SECTION 186.22 SUBDIVISION (b).... THUS HEREBY APPELLANT MOVES TO PROVE, HE IS NO GANG MEMBER AN THE INFORMATION THE TRIAL COURT HAS RELIED ON IS INSUFFICIENT TO SUPPORT ANY GANG ALLEGATIONS, AN IS INSUFFICIENT TO SUPPORT THE PEN CODE SECTION §186.22 CHARGE, AS WELL APPELLANT WILL MOVE TO PROVE, HE HAS BEEN WRONGLY ACCUSSED AN CONVICTED AN WAS WRONGLY VALIDATED AS A GANG MEMBER IN VIOLATION OF HIS OWN AMENDMENTS AN CONSTITUTIONAL RIGHTS.... • THE MOTION AN RULING , MR. SCHOPPE-RICO WILL CONTEND THAT THE EXISTENCE OF COUNTS TWO, THREE, FIVE AN SIX WAS THE PREDICATE FOR ADMISSION OF ALL GANG EVIDENCE

IF THE SECTION 1118.1 MOTION HAD BEEN GRANTED, DEFENSE COUNSEL COULD HAVE MOVED TO STRIKE THE GANG EVIDENCE, SEEKING QUALIFIED EXPERTS AN INSTRUCTIONS TO THE JURY TO DISREGARD IT, FOR THIS REASON, THE ERROR UNDER SECTION 1118.1. WAS ALSO PREJUDICIAL AS TO COUNTS ONE AN FOUR. IN THE COURSE OF THE INVESTIGATION AN TRIAL, THE TRIAL COURT, ENCLUDING THE (D.A) AN PUBLIC DEFENDER HAS RELIED ON OUTDATED DOCUMENTS AN WITHOUT PROOF OR ANY EXPLANATION ON THE FALSE EVIDENCE THEY'VE RELIED ON THAT DOSENT BELONG TO THE APPELLANT, AS A FOUNDATION TO BASE THEIR GANG ALLEGATION ON. THE TRIAL COURT ENCLUDING THOSE RESPONSIBLE HAS FAILED AND/OR REFUSED TO PROVIDE AN USE ADEQUATE PROCEDURAL PROTECTIONS OR FOLLOW THEIR OWN REGULATIONS AN OTHER APPLICABLE LAWS UNLESS AN UNTILL FOLLOWING LENGTHY AN COSTLY LITIGATIONS - A COURT OF LAW COMMANDS IT, TRIAL COURT TO DO SO , ,, ,, ,, FOR INSTANCE THE LAW REQUIRES THAT THERE MUST BE PROOF AN THAT ALL THREE ELEMENTS OF SECTION 186.22 SUBDIVISION (a) APPLICABLE THROUGHOUT THE STATE OF CALIFORNIA MUST BE LEGALLY PROMULGATED INTO SECTION 186.22 SUBDIVISION (a) OF THE PENAL CODE BOOK. SEE e.g . PENAL CODE SECTION 186.22. SUBDIVISION (a) AN CALJIC 12.54.1. WHICH DEFINES OFFENSE UNDER SECTION 12031, SUBDIVISION (a)(2)(c) HOWEVER REGARDING GANG ALLEGATIONS APPELLANT HAD NO NOTICE OF GANG LABLE PLACED ON HIM. FURTHER, THE PAST AN CURRENT GANG EXPERT POLICY WAS 1) ALLOWS FOR ARBITRARY AN/OR DISCRIMINATORY STREET VALIDATION OF A PERSON BASED ON UNRELIABLE, FALSE OR INSUFFICIENT INFORMATION, 2) DOES NOT PROVIDE YOUTH OR YOUNG ADULTS AS APPELLANT ADEQUATE NOTICE OF WHAT CONDUCT IS PROHIBITED AND 3) DOES NOT PROVIDE CLARITY FOR ENFORCEMENT OR MINIMAL AN UNIFORM STANDARDS IN GUIDENCE WHEN DETERMINING WHETHER A JUVENILE OR YOUNG ADULT IS TRULY A GANG AFFILATE AND/OR TO BE IN VIOLATION OF P.C. 186.22. SUBD. (a) WHEN ACCUSSED OF A CRIME. , , B. <u>STREET GANG VALIDATION ON WRONGFUL CONVICTION</u> THERE DID NOT EXIST ANY REGULATION IN THE PENAL CODE BOOK, REGARDING GANG VALIDATION UNTIL ——— NEVERTHELESS THE GANG EXPERT RON HUPPERT. PRACTICE OF REQUIRING THREE INDEPENDENT SOURCE ITEMS OF INFORMATION TO SUPPORT HIS OPINION TO LABLE APPELLANT AS A GANG AFFILIATE IS TOTALLY MISLED PURSUANT TO PEOPLE VS. ROBLES AT 23 CAL 4TH 1106 . HOWEVER THE MOST COMMON ITEM OF INFORMATION USED BY THE PROSECUTOR ER IS THE STATEMENT OF ANOTHER PERSON GENERALLY REFERRED TO AS A ,IMMUNITIZE ACCOMPLICE WITNESS , INFORMANT , OR DRUG ADDICT , SUCH STATEMENTS CONSIST PRIMARILY OF CONCLUSORY STATEMENTS ALLEGING NOTHING MORE THAN DEFENDANT IS A GANG MEMBER OR ASSOCIATE AN SUCH STATEMENTS/TESTIMONY GIVEN OR ILLEGALLY OBTAINED. ARE SUSPECT, SUCH STATEMENTS ARE GIVEN/PROVIDED BY DRUG ADDICTS, IMMUNITIZE WITNESS OR CRIMINALS, OR PEOPLE GETTING SOME-THING IN RETURN WITH SOME BIAS OR ULTERIOR MOTIVE (i.d.) A DESIRE TO ESCAPE THEIR OWN CRIMINAL CRIMES AN PRISON CONFINEMENT OR NEED TO OBTAIN MORE DRUGS. THE IMPENDING OF A FAMILY MEMBER OR MARRIAGE DISSOLUTION, REVENGE BY GETTING ANOTHER PERSON OF A DIFFERENT PEER GROUP WRONGLY CONVICTED OR REDUCTION IN THEIR PRISON SENTENCE, E.CT. SEE JENNIFER SMITHS BACKGROUND TESTIMONY . AT (RT 1880 ) (RT 1910 -1911), (RT 1915) , (RT 1916)(RT,1916-1917, 1934) ECT , , , . OTHER ITEMS OF INFORMA-TION CONSIST OF " HEARSAY " INNOCUOUS CONDUCT THAT HAS NOTHING TO DO WITH GANG ACTIVITY , I.E POSSESSION OF ALLEGEDLY

GANG SYMBOLS MATERIAL OR ART, WRITING ANOTHER PERSONS FAMILY; PERSONS ASSISTING EACH OTHER WITH LEGAL HELP. SIGNING IN LOVING MEMORY REST IN PEACE CARDS OR GET WELL CARDS TO VICTIMS OR THEIR FAMILIES; EXERCISING OR ANY OTHER INTERACTION WITH INDIVIDUALS -AND REGARDLESS IF THE PEOPLE ARE RELATED, HAVE KNOWN EACH OTHER SINCE CHILD HOOD, OR DIDN'T KNOW OF EACH OTHERS AFFILIATION LABLE IMPOSED BY THE POLICE DEPARTMENT (OR IF THAT LABLE (LABEL IS EVEN ACCURATE.) FURTHERMORE DURING TRIAL OR IN LIMINE, THE APPELLANT HASN'T BEEN GIVEN AN OPPORTUNITY TO PRESENT EVIDENCE OR WITNESSES IN HIS DEFENSE, THE APPELLANT WAS MERELY HELD /TAKEN BEFORE THE COURT, GIVEN A DOCUMENT SUMMARIZING INFORMA- TION RELIED ON TO SUPPORT THE EXPERT BIAS OPINION AN THE GANG ALLEGATIONS AN NEVER ASKED HIM ANYTHING, FOR INSTANCE, A READING, ART 1. § 24 CALIFORNIA'S CONSTITUTION. SEC. 24. CONSTITUTIONAL RIGHTS ~RIGHTS RESERVED. STATES, IN A CRIMINAL CASE, THE RIGHTS OF A DEFENDANT TO "EQUAL PROTECTIONS" OF THE LAW, TO DUE PROCESS OF THE LAW, TO THE ASSISTANCE OF COUNSEL, TO BE PERSONALLY PRESENT WITH COUNSEL, TO A SPEEDY AN PUBLIC TRIAL, TO COMPEL THE ATTENDANCE OF WITNESSES AGAINST HIM OR HER, TO BE FREE FROM UNREASON- ABLE SEARCHES AN SEIZURES, TO PRIVACY, TO NOT BE COMPELLED TO BE A WITNESS AGAINST HIMSELF OR TO NOT BE PLACED TWICE IN JEOPARDY FOR THE SAME OFFENSE AN NOT TO SUFFER THE IMPOSITION OF CRUEL OR UNUSUAL PUNISHMENT (S) ALL BE CONSTRUED BY THE COURTS OF THIS STATE IN A MANNER CONSISTANT WITH THE UNITED STATES CONSTITUTION, THE CONSTITUTION STATES THIS, HOWEVER THE TRIAL COURT DID NOT GRANT APPELLANTS SECTION 1118.1 MOTION BECAUSE FOR ONE THEY ERRED IN DOING SO, AN BY THE PROSECUTOR OR DETECTIVES INTRODUCE IN UNRELIABLE, FALSE OR INSUFFICIENT INFORMATION, THEY WOULD NOT BE ABLE TO MEET EVIDENTIARY STANDARDS OF PROOF AN THE COURT DENYING APPELLANT MOTION IS NOT WANTING TO PROVIDE THE PROPER PROCEDURAL PROTECTIONS THAT ARE REQUIRED UNDER THE CONSTITUTION AN LAW IN THIS PROCEEDING, i.e OPPORTUNITY FOR HEARING AN DEFENSE, PRESENTATION OF WITNESSES AN EVIDENCE ECT, THE FOLLOWING WILL CONSIST OF THE GANG EVIDENCE IN THIS ACTION THATS PRONE TO ATTACK ... <u>K. GANG EVIDENCE</u> : ...

"TWO WEEKS AFTER" THE SHOOTING POLICE RETURNED TO 180 SHOURE Rd, WHERE MR. SCHOPPE-RICO LIVED WITH ROBERT EAGLE (RT: 1671-1672, 2079, 2091) THE OFFICERS SAW GANG GRAFFITI AN BULLET HOLES IN THE REAR BEDROOM, WHICH DID NOT HAVE A BED (RT. 1674, 208, 2097.) (i.e EMPHASIS MINE APPELLANT LIKE TO NOTE, THE GANG GRAFFITI IS NOT APPELLANTS. AN HE NO LONGER OCCUPIED THAT ROOM. ~ OR EVER LIVED IN IT OR THEY ~ ).. IN ANOTHER BEDROOM "HAD INDICIA'S FOR ROBERT EAGLE IN THAT ROOM OFFICERS FOUND GUN CLEANING KITS, BOXES OF .22 CALIBER CARTRIDGES AN A .22 CALIBER WINCHESTER RIFLE (RT. 2091-2092)

INSPECTOR RON HUPPERT WAS ASSIGNED TO THE GANG INTELLIGENCE UNIT (RT 2109) HE DESCRIBED THE EAST BAY LOCOS (EBL) AS A SUBSET OF THE NORTENOS, BOTH OF WHICH WERE CRIMINAL STREET GANG WHICH IDENTIFIED WITH THE COLOR RED AN THE NUMBER 14 (RT 2118, 2121, 2122.) HE DEEMED MATTHEW SPURLING, HENRY GRENADOS AN DAVID STOKES', VALIDATED MEMBERS OF THE NORTENOS AND EAST BAY LOCOS AN THOSE THREE MEN HAD BEEN CONVICTED OF FELONY ASSUALT (RT. 2123-2124) (HOWEVER THEY WERE NEVER QUESTION OR SUBPOEN AD, WHAT SO EVER ON IF THE APPELLANT WAS A MEMBER DR COMMITTED CRIMES WITH THEM, HUNG OUT WITH THEM OR ANYTHING, i.e.) (HOWEVER GANG EXPERT RON HUPPERT STATED THAT THE.)

PRIMARY ACTIVITIES OF BOTH GANGS WERE ASSUALTS WITH FIREARMS AN ASSUALTS CAUSING GROSS BODILY HARM (RT. 2123), (I.E - APPELLANT DOESN'T HAVE ANY SUCH HISTORY OF THIS TYPE OF ALLEGATION NOR IS INVOLVED IN SUCH ACTIVITYs) INSPECTOR RON HUPPERT WAS ASSIGNED TO THE GANG INTELLIGENCE UNIT. (RT 2109) INSPECTOR HUPPERT ALSO IDENTIFIED MR. SCHOPPE-RICO AS A "VALIDATED" EAST BAY LOCO GANG MEMBER. BASED ON SELF-ADMISSION, A TATTOO AND PRIOR ASSOCIATION WITH A KNOWN GANG MEMBER. (RT 2126-2127-2129) (I.E EMPHASIS MINE THROUOUT, THE APPELLANT CLAIMS THAT THOSE THREE AFOREMENTIONED GROUNDS. (SEE RT. 2126-2127-2129) ARE illegaly/NOT CORRECT. THIS INFORMATION IS FALSE, UNRE-LIABLE AN INSUFFICIENT FOR THE FOLLOWING REASONS. ONE. Alleges INFORMATION, CONDUCT, SPEECH OR ASSOCIATION THAT HAS NOTHING TO DO WITH GANG ACTIVITY (e.g. BEING A GOOD SEMIRITAN, SAYING HELLO, SIGNING BIRTHDAY CARDS OR GET WELL CARDS ECT. ECT. DOESN'T SUPPORT A FOUNDATION TO VALIDATE A PERSON, SECOND. Alleges SELF-ADMISSION OF A 14 YEAR OLD JUVENILE, IN VIOLATION OF THE "MIRANDA RULE AN LAW" APPELLANT HAS NEVER BEEN ACCUSSED OR CONVICTED OF ANY TYPE OF FELONY. SEE IN JUVENILE DELIQUENCY PROCEEDING § 53.39 RULES OF EVIDENCE AN § 3.41. CONFESSIONS AN ADMISSION AN § 30.22. CORPUS DELICTI MUST BE PROVEN BEFORE STATEMENT CAN BE INTRODUCE (BOOK CALIFORNIA CRIMINAL LAW PROCEEDURE AN PRACTICE.). FURTHERMORE HOWEVER; HE ADMITTED THAT BETWEEN 1996 AN 2000, HE HAD NO CONTACT WITH MR. SCHOPPE-RICO AN MR. SCHOPPE-RICO'S "CARD "HAD NOT BEEN UPDATED WITH GANG RELATED CONTACTS. (RT. 2181.) IN LAST FOUR YEARS. FURTHERMORE, I.E (WHILE APPELLANT WENT PRO-PER. HE REQUESTED UNDER THE (KELLY TEST) FOR A • HANDWRITING COMPARISON TO BE DONE ON THE FOLLOWING MENTION DOCUMENTS, RE. IN PEOPLE V. STORKE (1900) 128. C. 486, 60 P, 1090) HANDWRITING COMPARISONS. HE CLAIMS THE AFOREMENTION IS NOT HIS)" ONE OF THE ITEMS FOUND IN APPELLANT'S RESIDENCE WAS A NOTEBOOK, THE NOTE BOOK WAS LACED WITH NUMEROUS GANG RELATED WRITINGS, MANY OF THE PAGES WERE ODORNED WITH THE NUMBER "14 OR "XIV" OR THE LETTERS "EBL". ON ONE PAGE, APPELLANT HAD WRITTEN "FUCK BLUE RIDERS" WITH THE INSCRIPTION "187" UNDERNEATH, THE EXPERT TESTIFIED THAT THIS WRITING REPRESENTED A CONCRETE DISIRE TO KILL ("187") SURENOS "BLUE RIDERS (RT 2152) (I.E HOWEVER AS Appellant SAID THESE DOCUMENTS WERE ALLOWED TO INCRIMINATE THE APPELLANT WITHOUT ANY INQUIRY IN CONDUCTING A HANDWRITING COMPARISON SEE PEOPLE V. STORKE SUPRA. AS WELL THEY WERE DISCOVERED IN A ROOM APPELLANT NO LONGER OCCUPIED, A BED NOT BEING IN THAT ROOM IS PROOF OF THAT.) I.E. EMPHASIS MINE. HOWEVER THE PROBLEM WITH THIS PRACTICE OF THE OPPOSITION (EXPERT AN D.A.) IS, FOR ONE. 1), THAT MOST Alleged STREET GANG VALIDATION ARE BASED ON CONCLUSORY STATEMENTS OF IMMINITY AD ACCOMPLISES OR DRUG ADDICTS AND. THE CURSORY NATURE OF THE INFORMATION," MAKES IT difficulT TO cHallenge"... 2) JUVENILES, MINORS. YOUTH OR YOUNG ADULTS ARE INDROPERLY STREET GANG VALIDATED, BY POLICE OFFICERS. EITHER ON CONCLUSORY STATEMENTS OF INFORMANTS, OR PEOPLE GETTING SOMETHING IN RETURN OR OTHER TYPES OF INNOCLIOUS CONDUCT/INFORMATION PREVIOUSLY MENTIONED, ABOVE, AN THE PROSECUTORER MAKING IMPOSTERGUS COMMENTS ON APPELLANT'S RIGHTS

TO REMAIN SILENT AN HIS OR ATTORNEYS ABILITY TO LOCATE THE PREPETATOR FOR HIM, WERE UNABLE TO TESTIFY OR PROVIDE STATEMENTS AN DEBRIEF, SINCE NEVER HAVING BEEN GANG MEMBERS OR THE SUSPECT. THEY WILL NOT HAVE ACQUIRED GANG INFORMATION THAT CAN BE DIVULGED, NOR WAS THE INEFFECTIVE ASSISTANCE OF COUNSEL LIKELY TO POSSESS ANY MEAN OF AFFIRMATIVELY PROVING THAT THE INFORMATION RELIED UPON IS FALSE, WHEN REQUESTED 1118's MOTION WAS DENIED; SEE e.g.

PROP. 21            ) THUS THERE IS LITTLE CHANCE OF RECTIFYING SUCH AN ERROR OR OTHERWISE OBTAINING A FAIR TRIAL OR ACQUITTAL. (I.d). (3) A, APPELLANT DOESN'T WANT TO BECOME AN INFORMANT OR WITNESS FOR THE SAME REASONS POLICE, DEPUTYS OR CORRECTIONAL STAFF DON'T WANT TO BE. (SEE e.g. LOS ANGELES POLICE DEPARTMENT SCANDAL; OAKLAND POLICE RIDERS SCANDAL, SEE, MADRID, 889. F. SUPP AT 1157, Fn. 4, ("EMPLOYEES.. WHO DEFY THE CODE OF SILENCE RISK RETALIATION AN HARRASSMENT", Id AT 1241, ("A NUMBER OF LAW ENFORCEMENT OR STAFF AGREE THAT INMATES OR DEFENDANTS OR WITNES S, ECT, WHO TESTIFY PROVIDE STATEMENTS OR INFORMATION OR DEBRIEF AND GAIN AN ACQUITTAL OR RELEASE. ARE CONSIDER ED. "SNITCHES" AN THUS FACE SERIOUS RISKS OF BEING ATTACKED OR EVEN KILLED BY OTHER GANG MEMBERS OR INMATES (EMPHASIS ADDED.) . THERE WERE PHOTOGRAPHS OF ALLEGEDLY PERSONS FLASHING GANG SIGNS AS WELL AS GANG TYPE WRITING SUCH AS 14 AN EBL. RT 2087. ALSO, ALSO THE PERSON THEY'VE RELIED ON THEIR ALLEGED HONEST LEGIT IMMUNITIZE WITNESS BACK GROUND TESTIMONY IS SUSPECT. SEE WRITEN TRANSCRIPT. (RT 1880) (RT 1911 ) (RT 1915) (RT 1916) (1934) AS WELL MS. SMITH LATER WROTE THE PROSECUTOR ASKING HIM TO HELP HER OBTAIN ADMISSION INTO A "DRUG PROGRAM" (RT. 1916, 1917, (1934) AT THE TIME, SHE HAD FIVE PENDING CASES AND WAS ON FELONY PROBATION (RT. 1917.) OBVIOUSLY SHE WAS A DRUG ADDICT. FACING THE FACTS STRONG DEFENSES AN A SENSE OF DENIAL ARE HALLMARKS OF THE SUBSTANCE ABUSERS PSYCHOLOGY "ADDICTS DON'T DENY THAT THEYR USING SAYS. BOB POZNANOVICH, CEO OF ADDICTION INTERVENTION RESOURCES, THEY DENY THEY HURTING OTHERS, PAIN AN CONSEQUENCE ARE MOTIVATORS FOR AN ADDICT SAYS POZNANOVICH, YOU THINK JAIL AN HOMELESSNESS WOULD BE BUT THERE NOT. ESPECIALLY IF THE ADDICT HAS BEEN BAILED OUT OF BAD SITUATIONS AGAIN AN AGAIN AN AGAIN, IMAGINE ALL THE PEOPLE RE-BEING HURT, SEE CALJIC § 47.13, AN CALTIC § 47.6. IV. DRUG ADDICTS, NEED TO BE VIEWED WITH GREAT CARE ● AFFILIATION VS CONDUCT IN THIS CASE INSPECTOR RON HUPPERT AN THE DISTRICT ATTORNEY REFERENCED AN INCORPORATES THE PHILOSPHY AND LANGUAGE CONTAINED IN MUCH OF THE STREET TERRORISM ENFORCEMENT AN PREVENTION ACT [PENAL CODE SEC 186.22 FOR CAUSE OF ENHANCEMENTS UNDER PEN C, 12075 AN 12031, COMPARE 186.22 "(a)", THE "PEOPLE'S PARTY" DOES NOT REFERENCE OR INCORPORATE THE RELATED PENAL CODE SEC. 186.22 "(a)"(1) AN (F) OR 186.21 AN THE LEGISLATURE'S FINDING THEREIN (IT IS NOT THE INTENT OF THIS CHAPTER TO INTERFERE WITH THE EXERCISE OF THE CONSTITUTIONALLY PROTECTED RIGHTS OF FREEDOM OF EXPRESSION OR ASSOCIATION) SEE ALSO, ANNOTATED PENAL CODE SEC. 186.22 NOTES OF DECISION NOTE, 7 "ACTIVE PARTICIPATIO SEE ALSO, ASSEMBLY COM. ON PUBLIC SAFETY ANALYSIS OF ASSEMBLY BILL NO 2013 (1987-1988.) REG SESS, JUNE 8, 1987 p 7 [NOTING SCALES            THAT MERE ASSOCIATION WITH A GROUP CANNOT BE PUNISH UNLESS THERES PROOF

THAT THE DEFENDANT KNOWS OF AN INTENDS TO FURTHER ITS ILLEGAL AIMS." Id AT p.2. ("THE BILL AS WRITTEN WILL NOT APPLY TO THE SO CALLED CASUAL MEMBER OR CASUAL PERSON. TO BE HELD CRIMINALLY CULPABLE GANG MEMBERS MUST HAVE THE REQUISITE SPECIFIC INTENT AND KNOWLEDGE. AB2013. IN FACT GOES BEYOND THE ACTIVE MEMBERSHIP TEST IN (SCALES) by REQUIRING ACTIVE PARTICIPATION, RATHER THAN MERE CASUALNESS OR MEMBERSHIP!") . . . . FUTHER, STATE AND FEDERAL COURTS HAVE CLEARLY REJECTED GUILT BY ASSOCIATION AND GANG MEMBERSHIP AS EVIDENCE THAT A SPECIFIC CRIME WAS COMMITTED, SEE. e.g. N.A.A.C.P. V. CLAIBORNE HARDWARE CO. (1982) 485 U.S. 886, 925 (REJECTING NOT ONLY GUILT BY ASSOCIATION, BUT ALSO GUILT FOR "ASSOCIATION" CHARACTIZING GUILT BY ASSOCIATION AS A "PHILOSOPHY ALIEN TO THE TRADITIONS OF A FREE SOCIETY . . AND THE FIRST AMENDMENT ITSELF."); U.S. V. ROBAL 389, U.S. 258. 264. (HOLDING UNCONSTITUTIONAL LAW ESTABLISHING GUILT BY ASSOCIATION ALONE.); KEYISHIAN V. BOARD OF REGENTS (1967) 385, U.S. 589, 607 (REJECTING LAW RESTING ON "THE doctrine OF GUILT BY ASSOCIATION WHICH HAS NO PLACE HERE.") up HAUS V. WYMAN (1989) 360 U.S. 72, 79. ("GUILT BY ASSOCIATION REMAINS A THOROUGHLY DESCREDITED DOCTRINE"); JOINT ANTI-FASCIST REFUGEE COMMITTEE V. MCGRATH (1951) 391. U.S. 123, 175 (Douglas J. CONCURING (REJECTING GUILT BY ASSOCIATION WHICH HAS NO PLACE HERE, REMAINS A THOROUGHLY discredited doctrine") AS ONE OF THE MOST odious INSTITUTIONS OF HISTORY") AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE V. RENO (9th CIRCUIT 1995) 70 F.3d 1045, 1063 ("GUILT BY ASSOCIATION ALONE VIOLATES THE FIRST AMENDMENT"); U.S. V. WELFSWINKEL (1995) 44 F.3d 782, 787. "(THE PROSECUTION MAY NOT PROVE A DEFENDANTS GUILT BY SHOWING HIS ASSOCIATION WITH UNSAVORY CHARACTERS); U.S. V. DICKENS (1985) 775. F 2d 1056, 1058 (SAME) PEOPLE V. PEREZ (1981) 114 CAL. APP. 3d 470, 477 (EVIDENCE OF GANG MEMBERSHIP INADMISSIBLE IN SOFAR IT DOES NOT HAVE ANY TENDENCY IN REASON TO PROVE A DISPUTED FACT, i.e THE IDENTITY OF THE PERSON WHO COMMITTED A CHARGED OFFENSE"). PEOPLE V. SOTO (1984) 1ST CAL. APP. 3d. 694, 712-713. ("MEMBERSHIP IN AN ORGANIZATION DOES NOT LEAD REASONABLY TO ANY INFERENCE AS TO THE CONDUCT OF A MEMBER ON A GIVEN OCCASSION.") PEOPLE V. GOMEZ (1991) 235 Call. App. 2d. 957. 971. (PENAL CODE SEC. 186.22. REGULATES CONDUCT, NOT SPEECH OR ASSOCIATION. AND THERE IS NO RIGHT OF ASSOCIATION TO ENGAGE IN CRIMINAL CONDUCT. . . . ONE IS FREE TO ASSOCIATE WITH WHOMEVER ONE WISHES UNDER THE STATUE. AS LONG AS THE PRIMARY PURPOSE OF ASSOCIATING ONESELF WITH THE GROUP IS NOT TO COMMIT CRIME. IT IS NOT THE ASSOCIATION WITH OTHERS ABOUT WHICH SECTION 186.22 DISSCUSESS/ADDRESSES, BUT THE ASSOCIATING WITH OTHERS FOR THE PURPOSE OF PROMOTING, FURTHERING OR ASSISTING THEM IN THE COMMISSION OF CRIME") PEOPLE V. CASTANEDA (2000) 23 CAL. 4th 743, 749. (A PERSONS ASSOCIATION WITH A GANG WITHOUT MORE DOES NOT AMOUNT TO A VIOLATION OF SECTION 186.22. (a)). SEE PEOPLE V. LOPEZ (1998) 66 CAL. APP. 4th 615, 630

APPELLANT IS GOING TO FURTHER LIST AN MENTION WHATS WRONG WITH, GANG EVIDENCE USED TO DESCRIMINATE AN NON-AFFILIATE. ACCORDING TO HUPPERT THE GANG REVERED THE COLOR RED AN THE NUMBER 14. (RT. RZ.) THEY FURTHER REVERED THE BANDANA (RT 2174), (THE EXPERT I.E EMPHASIS MINE) HE PREJUCIALLY RELATED AN EXAMPLE OF SERVING SEARCH WARRANTS IN THE RESIDENCE OF GANG MEMBERS IN WHICH OFFICERS HAD FOUND THE BANDANA TO BE NEATLY IRONED AN PLACED ON AN ALTER ALONG WITH THE CRUFIX AN VIRGIN MARY SHOWING WHAT HIGH ESTEM A INDIVIDUAL PLACES ON THIS ITEM (RT 2158), IN ANOTHER EXAMPLE THE EXPERT WAS AWARE THAT A PARTICULAR CRIME WAS NOT COMMITTED BY A GANG MEMBER SINCE THE MEMBER USED A BANDANA TO BINDL THE VICTUM - AS THE EXPERT OPINED THE BANDANA WAS HELD IN SUCH HIGH REGARD ESTEEM THAT A GANG MEMBER WOULD NEVER DIS RESPECT IT IN THAT MANNER (RT. 2174-2175) (I.E. EMPHASIS MINE, HOWEVER. THE DEFENDANT USE TO USE HIS HANKERCHIEF TO BLOW HIS NOSE WITH, IT WAS OLD, DIRTY AN RINKELED IT WAS NOT NEATLY IRONED, AN APPELLANT HAD A FRESH WOUND AN DISABLED HAND HE KINDA USED IT, UNEXPECTEDLY AS A ACE WRAP - HOWEVER DEFENDANTS ARGUES IT WASN'T NEATLY IRONED TO LABELED IT WAS HELD IN HIGH ESTEEM ~~ADD ITALICS~~ ~~TEST~~). ALSO HUPPERT DESCRIBED VIOLENCE AS A "KEY ELEMENT" OF THE NORTEÑO GANG SUBCULTURE, SINCE IT ELEVATES THE STATUS OF THE GANG MEMBER (RT 2171), HE NOTED THE DECEDENT HAD BEEN WEARING BLUE AND THAT MR, SCHOPPE - RICO HAD BEEN FOUND WITH A RED BANDANNA (RT 2172-2173), APPELLANT DECLARES THIS IS PREJUDICIAL TOO IN REGARDS TO ITS A SUGGESTIVE IDENTIFICATION PROCESS. HE ALSO NOTE, THE PRIMARY ACTIVITIES OF BOTH GANGS WERE ASSAULTS WITH FIREARMS AND ASSAULTS CAUSING "GROSS BODILY HARM", (RT 2123) HOWEVER APPELLANTS HAS NEVER BEEN INVOLVED IN SUCH TYPE OF HARM ACTIVITY OR BEEN CONVICTED OR ACCUSSED OF SUCH CONDUCT, AN APPELLANT. WILL LIKE TO NOTE, IN REGARDS TO (RT 2173) WHEN IT STATED, ONE OF THE PREDICATE ACTS COMMITTED BY THE E.O.L. INVOLVED THE BRUTAL ASSUALT BY THREE MEMBERS OF THE GANG AGAINST AN INNOCENT PERSON WHO HAPPENED TO BE WEARING THE WRONG COLORED BEANIE (RT 2173) I WAS INFORMED THEY WERE LED TO BELIEVE THIS PERSON WAS THE ONE WHO KILLED ONE OF THEIR CHILDHOOD FRIENDS, THEIR AT THAT SAME CORNER, THE DECEASED PERSON NAME WAS DOUGLAS ASKERN SEE (RT.) WAS KILLED FOR NO REASSON AN MATTHEW SPURLING SAW WHO DID IT, I WAS INFORMED THAT, THAT WAS IT WAS ABOUT HOWEVER HAD IT NOTHING TO DO WITH GANG ACTIVITY. AN DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, THE, COUNSEL FAILED TO CHALLENGE AN PROVIDE A DEFENSE AGAINTS THE LETTERS, EXHIBITS 55D, 55E AN 55F AS WELL IN REGARDS SEE PEOPLE V. PEREZ SUPRA. AN "SCALES 99-U.S. 901 U.S 203 (1961") THE INFORMATION WAS FALSE UNRELIABLE AN INSUFFICIENT A READING OF P.C. 186.22 (B) REQUIRES THE COURT OR PROSECUTORE TO LEGALLY SHOW THAT PETITIONER/APPELLANT KNOWINGLY PROMOTED, FURTHERED OR ASSISTED A STREET GANG IN COMMITTING UNLAWFUL ACTS OR ACTS OF MISCONDUCT LISTED AS SERIOUS (J-d) APPELLANTS ENHANCEMENTS/RENTENTION DOES NOT MEET THE REQUIREMENT AN THEREFORE IS UNWARRANTED

THE OTHER FACTOR TO DETERMINE IS THE IMMUNITEZED WITNESS OR ALSO KNOWN AS MS SMITH.
WITH RESPECTS TO THE TESTIMONY, MS SMITH AN ANITA THOMPSON IS SUSPECT AS MENTIONED
BEFORE FOR THE FOLLOWING REASON. FOR ONE; MS. SMITH DIDN'T HAVE NO INFORMATION TO
DIVULGE IN THE BEGINING ON OCT, 17 OR 18, 2000. SHE ONLY LEARNED AN FOUND THINGS OUT
THRU. NUMEROUS OF SERIES NEWS PAPER ARTICLES PUBLISHED ON THE DETAINMENT OF THE
APPELLANT, POLICE REPORTS WERE PROVIDED TO HER ON APPELLANTS CASE BY HER INSLIMING
ATTORNEY MR. ASH, BEFORE SHE TESTIFIED AND SHE IN THE BEGINING WAS HELPING ELLEN V.
LEONIDA P.D AN P.I INVESTIGATOR JUAN SOLIS OUT IN THE INVESTIGATION TRYING TO
LOCATE + WITNESSES OF ██████. SHE AS WELL VISITED, AN WROTE AN TALKED TO APPELLANT MANY
OF TIMES BY ALL THESE MEANS ACQUIRING CERTAIN FACTS IN AN ON MR. SCHOPPE-RICO'S
CASE, HOWEVER WHEN SHE WAS FIRST ASK OR QUESTION SHE DIDN'T HAVE NO INFORMATION
AN SHE STATED NO SHE DIDN'T SEE NO SHOOTING OR WHO DONE IT SHE WAS NEVER A WITNESS
FOR SECONDLY; AFTER SHE GOT ARRESTED AN WHILE OUT ON FELONY PROBATION, SHE DECIDED
TO ILLEGALY CONTACT THE D.A AND ASK HIM TO GET HER OUT OF JAIL AN IF HE DID AN HER GETING
SOMETHING IN RETURN SHE WOULD HELP HIM OUT IN THE PROSECUTION.. AS WELL MS. SMITH
HAD MS. THOMPSON CONSPIRATED WITH HER AN MS. FANCITT. FURTHER, WITH RESPECT TO
THESE THREE ACCOMPLICES OR WITNESSES INFORMATION, THERE IS NO EVIDENCE . . . . . . . . .
(i) DETAILING THE PAST TESTIMONY PROVIDED BY THESE WITNESSES AND WHY THE CONFIDENTIAL INFORMANT
AN THESE WITNESSES IS CONSIDERED RELIABLE FOR THE CURRENT EVENT, (ii) WHETHER THE INFORMATION
IS FIRST-HAND OR HEARSAY, (iii) WHETHER DOCUMENTATION OR OTHER CIRCUMSTANCES SURROUNDING
THE CURRENT EVENT WOULD LEAD THE DECISION MAKER TO BELIEVE THE INFORMATION/TESTIMONY IS TRUE.
(iv) HOW MULTIPLE (IF ANY) CONFIDENTIAL INFORMANTS AS SHARON CONWAY OR WITNESSES COMPARES
WITH CONCLUSIONS OR WITH THE OTHER STATEMENTS AND THE CIRCUMSTANCES OR EVIDENCE ON WHICH THE
CONCLUSION OF RELIABILITY WAS BASED . . . . . (V) HOW IT WAS POSSIBLE THAT THE EVENT OCCURRED
AS DESCRIBED BY THE CONFIDENTIAL INFORMANT SHARON CONWAY AN WITNESSES OR ANY FACTS OR
EVIDENCE (WHO, WHAT, WHEN AND HOW) WHICH CONFIRM THE TRUTHFULNESS OF "SOME" ASPECTS OF
THE SOURCES STATEMENT AND . . . . . . (Vi) OF SPECIFIC ACTS OF GANG ACTIVITY ON ANY GIVEN
OCCASION, . . . b. ALLEGES INFORMATION, CONDUCT, SPEECH OR ASSOCIATION THAT HAS

NOTHING TO DO WITH GANG ACTIVITY (e.g. being A neighbor, saying Hello, legal Assistance in Utilities, READING MATERIAL; signing in loving memory REST IN PEACE CARDS, get well CARDS or BIRTHDAY CARDS ect, ... .) IN Limine SHARON CONWAY WAS THE CONFIDENTIAL INFORMANT WHO INFORMED THE DISTRICT ATTORNEY, THAT SHE SHOT MR. SCHOPPE-RICO IN THE HAND. SOMETIME ON IN THE END OF SEPTEMBER BETWEEN SEPT. AN OCT 1T, 2000 AN MR. SMITH TOLD CONWAY SHARON SHE HAD SHOT NICK TAYLOR ON OCT. 17, 2000, THIS IS VALUEBLE TESTIMONY AN INFORMATION. ~~FOR~~

DUE TO THIS, THIS IS/WAS THE WAY - SHE WAS COERCED AN FORCED INTO GIVING. ~~████████████████████████████████~~ THE (D.A.) FALSE TESTIMONY THEY COERCED HER INTO ~~████~~ GIVING IS AS FOLLOWS ~~████████~~

HOWEVER, ( 1. ) THE EVENTS OF OCTOBER 16th AN 17th ∴ AS FOLLOWS: MS. SMITH TESTIFIED THAT ON THE EVENING OF OCTOBER 16, 2000, SHE AN MR. SCHOPPE-RICO WERE AT A NEIGHBORS HOUSE. WHERE, MR. SCHOPPE-RICO BORROWED ELECTRICAL TAPE TO TAPE THE GUN (RT. 1849-1850) (I.E EMPHASIS MINE, APPELLANT ARGUES IT IS NOT TRUE AN HOW COME THESE NEIGHBORS AT THIS HOUSE WERE QUESTION OR SUBPEANAD. ) ... ALSO ON THAT NIGHT MR. SCHOPPE-RICO HAD BEEN SHOOTING OFF FIREWORKS (RT. 1899 ) (I.E THE FOLLOWING WAS MADE UP TOO.) ..... ALSO ON THE EVENING OF OCTOBER 16TH MR. SCHOPPE-RICO DECIDED THEY SHOULD MOVE ON TO THE ROOF, BECAUSE THEY COULD NOT SEE IF PEOPLE WERE TRYING TO SNEAK UP IF THEY WERE IN THE BEDROOM, THEY MOVED THEIR MATTRESS ONTO THE ROOF. (RT. 1849-1852 ) AllegedLY THIS OCCURED HOWEVER AS PROOF WHEN THEY SEARCHED (I.E ) APPELLANTS STEPGRANDFATHERS HOME, NO SUCH MATTRESS WAS FOUND OR ON A ROOF OR ●22 CASINGS, "PLUS "APPELLANT WOULDN'T BE ABLE TO CARRY A MATTRESS ONTO A ROOF disabled AT THE TIME. ... AllegedLY THEY - SPENT THE NIGHT OF OCTOBER 16th THRU 17th ON THE ROOF, SOMETIME AFTER MID-NIGHT MS. SMITH AWAKENED BY A GUNSHOT, SHE SAW MR. SCHOPPE-RICO PACING BACK AN FOURTH WITH HIS RIFLE (RT. 1853-1854 ) ( I.E. EMPHASIS MINE. APPELLANT WASN'T ON A ROOF. WITH A GUN NEVER THE LESS THATS WHY I SHE TOLD. ) SAID. MS. SMITH TOLD AN INVESTIGATOR SHE WAS NOT SURE WHICH GUN MR. SCHOPPE-RICO HAD THAT NIGHT. (RT. 1896). (I.E. THEIR WAS NEVER A GUN TO BEGIN WITH IN APPELLANTS POSSESSION. ) HOWEVER NONETHELESS SHE SAW MR. SCHOPPE-RICO WITH A GUN WHEN SHE WOKE UP (RT. 1898 ), HOWEVER THEIR WERE NOT SUCH CASINGS. OR AN THAT WERE DESCARDED FROM THE WEAPON FOUND AT 40 SHARON DR. BUT DOESN'T KNOW BECAUSE SHE NEVER SAW ONE. OR CASING SUBMITTED FROM 180 SHORE Rd

## III   STATEMENT OF FACTS IN THE CASE

HOWEVER .... SHE did NOT SEE HIM WITH THE GUN AT ANY TIME LATER THAT DAY (RT 1898). (i.e.) THAN MS. SMITH DECIDED TO LEAVE AND SHE GRABBED HER CLOTHES AN WENT OUTSIDE MR. SCHOPPE-RICO FOLLOWED HER SAYING where's my money"? WHEN SHE RAN HE CHASED HER (RT 1857-1860) (I.E EMPHASIS MINE. APPELLANT LIKE TO NOTE, ALL HER BELONGINGS WERE ON THE OUTSIDE, SIDE OF THE HOUSE. WERE THE BED. ENTERTAINMEN CENTER AN EVERYTHING WAS. AN MS. SMITH ROBBED APPELLANT AN STOLD HIS MONEY AN WALLET AN APPELLANT ONLY ASK PALIGHTLY for it back.) MS. SMITH AGREED TO RETURN HOME. IF MR. SCHOPPE-RICO WOULD LEAD AN THAN SHE RAN THE OTHER WAY (ALLEGEDLY) HE SAID BITCH AN RAN AFTER HER. (RT 1861-1863) (I.E. EMPHASIS MINE. APPELLANT DOESN'T KNOW ALL ABOUT THIS OCCURING, HOWEVER APPELLANT NEVER. FOUGHT, HIT OR CHASED. OR YELLED OR CURSED AT MS. SMITH. OR WAS ANGRY AT HER, AN MS. SMITH WAS ON DRUGS THAT MORRNING AN WAS. HALLUCINATING). • MS. SMITH SAW A CHILD GETING READY FOR SCHOOL AN RAN INSIDE HIS HOUSE AN HIT HER (RT 1864) HOWEVER, (I.E. EMPHASIS MINE, THE CHILD WHOM'S HOME SHE RAN INTO, ACTUALLY CALLED ME OVER THEIR AN ASK ME IF I NEW HER, I SAID YA, SHE'S ON DRUG CRYSTAL METH HALLUCINATING, HE ASK ME TO ASK HER TO LEAVE, SO I ASKED HER TO LEAVE, "BECAUSE THIS CHILD doesn't KNOW HER." SO SHE LEFT AN WALKED 6 TO 10 FEET ACROSS THE STREET. THAT WAS IT, ) HOWEVER SHE CONTINUED "Allegedly.) HE TOLD HER TO GET HOME SAYING DONT MAKE ME GET MY GUN (RT. 1865) WHEN SHE AGAIN TOLD HIM HE WOULD HAVE TO LEAD THE WAY; HE SAID THATS IT, IM GETING MY GUN (RT 1866) ONCE (I.E EMPHASIS) AGAIN THIS CHILD NEVER TESTIFIED TO THIS EVEN OCCURING SEE REPORTER TRANSCRIPTS ON HIS TESTIMONY, FURTHER APPELLANT LIKE TO NOTE IN THIS AFOREMENTION EVENT ON MS. SMITH ROBBING APPELLANT AN HIM ASKING HER TO RETURN HIS MISSING WALLET OR MONEY PALIGHTLY. AN THIS CHILD ASKING THE APPELLANT TO ASK HER TO LEAVE HIS HOUSE. SHE INVADED, HAS NOTHING TO DO OR ANY LINK WHAT TO SO EVER TO DO WITH THE INCIDENT THAT OCCURED OVER ON PORT CHICAGO HWY AT A BUS STOP; WHAT EVER TOOK PLACE FROM OCTOBER 16 TO 17TH 2000 AT. 180 SHORE Rd NEVER INVOLVED A DOMESTIC DISPUTE, IT WAS JUST LIKE ANY ORDINARY CITIZENT MORRNING ONE AWAKEN TO BRUSH THEIR TEETH AN GETING DRESS TO START A NEW DAY, HOWEVER MS. SMITH BEING A DRUG ADDICT HER MORRNING STARTED WITH INJECTING CRYSTALMETH IN HER SYSTEM, HALLUCINATING AN TRYING OR ROBBING THE APPELLANT AN RUNNING OFF. SO THIS IS MISLEADING.)" HOWEVER A WOMEN ACCROSS THE ST. -- REET. (ANITA) TOLD MS. SMITH TO COME INSIDE HER HOUSE WHICH SHE DID, ANITA OFFERED MS SMITH A RIDE AND AS THEY PASSED PORT CHICAGO AND PACIFICA "(Alegedly)" MS. SMITH SAW

MR. SCHOPPE-RICO IN THE FIELD BY THE "BUS STOP" HE WAS WEARING DARK CLOTHING AN MS, SMITH DID NOT SEE A GUN (RT. 1866-1872) (I.E. MS THOMPSON ALSO DIDN'T REMEMBER WHO SHE SAW OR WHAT THE PERSON SHE SAW WAS WEARING EITHER .... AN SHE ONLY TESTIFIED TO THIS, AFTER MS. SMITH ASK HER TOO ....., TO COLLOBERATE. AN WAS CONTACTED A YEAR OR MORE LATER.....

( II: ) ANITA THOMPSON'S TESTIMONY:    ANITA THOMPSON LIVED AT 148 SHORE Rd IN BAY POINT (RT 1426 ) AT 8:30 OR 9:00 AM ON OCTOBER 17, 2000, SHE HEARD A WOMAN ( ALLEGEDLY) SCREAMING FOR HELP SAYING, HE'S GONNA KILL ME (RT. 1427-1429) I.E. EMPHASIS MINE-THIS WAS MS. SMITH WALKING OUT THE CHILDS HOME, HALLUCINATING DUE TO CRYSTALMETH NARCOTICS, AN WENT ACROSS THE STREET AFTER OBSERVING A LADY STANDING THEIR ....) THIS , MS, THOMPSON LOOKED OUT TO SEE A WOMAN RUNNING WITH A HISPANIC MAN CHASING HER. (RT 1429, 1431) ( I.E EMPHASIS MINE, I do NOT SEE A PERSON ELABORATE THAT A PERSON WAS CHASED 6 TO 10 FEET ACROSS A STREET.) (I. bid) MS. THOMPSON YELLED TO THE WOMAN TO COME INTO HER HOUSE , WHICH SHE DID. (RT 1432-1434). (ALLEGEDLY I.E ) THE MAN WAS ANGRY AN YELLING (RT 1432-1433), AN THE WOMEN -- JENNIFER WAS CRYING UPSET AN SCARED (RT 1435 )-1696)  SHE ONLY SAID ALL THIS AFTER MS. SMITH ASK HER TO CONSPIRATE AN COLLABERATE WITH HER FURTHER MS. THOMPSON WAS NEVER QUESTIONED TIL 2 YEARS AFTERWARDS, APPELLANT ALSO MOVES TO PROVE AN ARGUE THAT A PERSON PROV- IDING TESTIMONY BEING ABLE TO SEE OR FEEL A PERSON LOOKING AGITATED, WHILE NOT PAYING ATTENTION AN DRIVING FASTER THAN 80 MILES PER HOUR, IS UNCONVIENCABLE WHEN THIS SAME PERSON DOESN'T REMEMBER WHAT THE PERSON LOOK LIKE OR WAS WEARING, AN WITH THE MORR-NING SUNLIGHT IN THEIR EYES; HOWEVER MS THOMPSON AN MS. SMITH ASSURED THEY BOTH did NOT SEE NO-ONE ON PORT CHICAGO HWY AN PACIFICA STREET THAT MORNING, THAT BOTH WERE SURE THEY DIDN'T SEE, NOT EVEN ONE AFRICAN MALE OR A RYCLE-RECYCLE CART AT/OR NEAR A BUS STOP ON OCT. 17, 2000 WHEN THEY DROVE BY; SO ITS IMPOSSIBLE APPELLANT WAS THEIR, WHILE STOPING BY HIS FRIENDS OR/AN ACQUEINTANCE PLACE, HOWEVER MS. THOMPSON DROVE JENNIFER SMITH SOUTH ON PORT CHICAGO HWY TOWARD WILLOW PASS ROAD (RT, 1437-1438) (I.E BOTH STATED THEY DID NOT SEE NO-ONE ON THAT STREET. NO-AFRICANS-AMERICANS) FURTHERMORE, ON THE WAY, JENNIFER YELLED", OH MY GOD, THERE HE IS " AN MS, THOMPSON LOOKED OVER TOO SEE (I.E Allegedly ) MR. SCHOPPE-RICO BY A FENCE, APPEARING AGITATED (RT. 1439) 1441, 1443,) MS THOMPSON did NOT SEE A GUN (RT. 1456)

( I.E. EMPHASIS MINE) APPELLANT STILL OBJECTS ON THOMPSON TESTIFYING TO HEARSAY, JENN YELLING, OH, MY GOD, THERE HE IS, HENCEFORTH ALL COURTS HAVE ADOPTED THE HEARSAY RULE WHICH UNDER CERTAIN CIRCUMSTANCES AS THESE FORBIDS A WITNESS FROM TESTIFYING, "HE SAID, . . . . "OR SHE . . SAID," FOR EXAMPLE SEE Fed RULE OF EVID 802, CAL'I EVID, CODE §1200, N.Y. CODE OF EVID §802, AND TEXAS. CIV. RULE OF EVID. 802.) THE HEARSAY RULE APPLYS TO WRITTEN AN OUT OF COURT STATEMENTS.), FURTHER, MS. THOMPSON dropped JENNIFER OFF NEAR WILLOW PASS ROAD, WHEN SHE WAS RETURNING HOME (Alleged) APPROXIMATELY TEN MINUTES AFTER SEEING THE MAN BY THE FENCE, SHE FOUND THE ROADS BLOCKED BY POLICE (RT. 1444-1445), (I.E. JENNIFER SAID THEY WENT SHOPPING AN GOT THEIR NAILS DONE.) MS. THOMPSON SAID HOWEVER SHE DIDNT SEE NO SHOOTING, SEE (RTS) . . . . _

III: MS. SMITHS SUSPECT TESTIMONY REGARDING CLOTHING.: MS, SMITH TESTIFIED THAT PRIOR TO OCTOBER 17, 2000, SHE HAD VISITED A FRIEND AT JOHN MUIR HOSPITAL (RT 1875), SHE HAD WORN HER BLACK PANTS. (Allegedly) MR. SCHOPPE-RICO HAD BEEN WEARING ON OCTOBER 17th (RT 1876). THE PAPER FOUND IN THE POCKET OF THE PANTS AT 40 SHARON DR. SHOWED HER FRIENDS HOSPITAL ROOM NUMBER AN TELEPHONE NUMBER (RT. 1877) (AN THESE WERE LOCATED 9 HOURS OR MORE LATER, AFTER ALL LAW ENFORCEMENT LEFT THE AREA. NOR DID THEY CONTAIN APPELLANTS D.N.A. BUT SOMEONE ELSE'S, NOR did A DOG (I.D) APPELLANT AS THOSE CONNECTED TO HIM I.E.). A DAY OR TWO before THE SHOOTING, MS. SMITH HAD PURCHASED CHARCOAL GRAY SWEATPANTS AND A SWEATSHIRT FOR (Allegedly) MR. SCHOPPE-RICO, which SHE BELIEVED WERE PRO-SPIRIT BRAND (RT. 1878-1879). EXHIBIT 18 C WAS THE TYPE OF SWEATSHIRT SHE HAD PURCHASED AN EXHIBIT 30 WAS THE TYPE OF SWEATPANTS (RT 1879-1880) (I.E EMPHASIS MINE. THESE WHERE HER ITEMS SHE Collected ON THE MORRNING OF OCT 17, 2000 WHEN SHE LEFT. APPELLANT LIKE TO NOTE, MS. SMITH IS HOMELESS AN SHE LEAVES HER CLOTHES AT HER FRIENDS HOUSES IN SHORE ACRES, CONCORD AN IN HER CAR, MS SMITH ONLY SAID THESE THINGS TO HELP THE D.A.). . . . MS. SMITH TESTIFIED That ON, OCTOBER 17th (Allegedly) MR. Schoppe-RICO HAD BEEN WEARING HER DARK PANTS (RT. 1856-1857). FURTHERMORE SHE TOLD POLICE ON OCTOBER 23, 2000 THAT AS THEY PASSED FORT CHICAGO HWY AN PRESIDIO. SHE HAD SEEN MR. SChoppe-RICO WEARING A WHITE T-SHIRT AN SHORTS (RT 1891) WHEN HE (I.E EMPHASIS MINE) APPELLANT STOPED BY HIS FRIENDS HOME. AN PLUS MS, SMITH AN THOMPSON NEVER SAW NO ONE SHOOTING. OR THE VICTUM OR WITNESSES THIS MEANING, APPELLANT WASNT THEIR WHEN THOSE AFRICAN-AMERICANS ARRIVED AT THE BUS STOP, THEY arrived way after

APPELLANT AS WELL HAS ~~ADDRESSED~~ NONE OR ANY MEANS TO BE AT A BUS STOP WHEN HE WAS NEVER THEIR WAITING FOR A BUS.) HOWEVER, MS. SMITH, SHE STATED SHE SPECIFICALLY RECALLED THE WHITE T-SHIRT AN SHORTS BECAUSE HE HAD BEEN WEARING WHITE SHOES WHICH MATCHED THE SHIRT (RT 1891-1892) (i.e. APPELLANT HAD ON WHEN HE WAS STOPED AN HELD WHITE SHOES WITH BLACK SHORTS AN A WHITE T-SHIRT.)        III A. STATEMENT OF FACTS, THE FORENSIC EVIDENCE (INTO REGARDS TO THE SCENT DESCRIMINATION CLOTHES.~ i.e.)   HAIRS WERE OBTAINED FROM THE SWEATSHIRT AN BLACK PANTS FOUND AT 40 SHARON DRIVE  (RT 1780) "CRIMINALIST" ALEX TAFLYA, COMPARED MS. SMITH'S AND MR. SCHOPPE-RICO'S HAIRS WITH THE HAIRS FOUND ON THE SWEAT SHIRT AND WARM UP PANTS. AND BOTH WERE "ELIMANATED" AS A POSSIBLE SOURCE FOR THOSE HAIRS (RT. 2329-2333-2336.) (i.e. EMPHASIS MINE— APPELLANT LIKE TO ARGUE MS. SMITH HAIRS WEREN'T FOUND DUE TO THE FACT WOMEN SHAVE ALL BODY HAIR'S AN MALES SUCH AS SCHOPPE-RICO DO HAVE A LOT OF BODY HAIRS, SCHOPPE-RICO IS HAIRY, SO ITS IMPOSSIBLE THAT MR. RICO-SCHOPPE HAD THOSE CLOTHES ON OCT 17, 00.) -

CRIMINALIST KENNETH FUJII TESTIFIED THAT THE FOUR CARTRIDGE CASES RECOVERED AT THE SHOOTING SCENE HAD BEEN CYCLED THROUGH THE RIFLE FOUND IN THE YARD AT 40 SHARON DR. (RT. 2205, 2225, 2227.) THE RIFLE HAD SCRATCHES INSIDE THE FIRING CHAMBER WHICH HAD LEFT MARKS ON THE CARTRIDGES CASES. (RT. 2227) AS FOR THE SLUGS RECOVERED AT THE SCENE AN DURING THE AUTOPSY, MR. FUJII DEEMED .22 CALIBER SLUGS DIFFICULT TO MATCH, HE WAS ABLE ONLY TO OPINE THAT THE SLUGS COULD HAVE BEEN FIRED BY THE RIFLE (RT. 2230-2235.) (AN (i.e.) AN OPINE IS NOT A CERTAINTUDE OF FACT.   IN TOTAL ONLY 2 SHOTS HAD PENITRATED NICK TAYLOR.) TWO WERE FEDERAL AN TWO WERE REMINGTON (RT. 1744-1746) APPELLANT, i.e. EMPHASIS MINE'S ARGUES ACCORDING TO THE EXHIBITZ OF THE SLUGS. TWO WERE REMINGTON RIFLE CASINGS AN TWO WERE PISTOL FEDERAL CASINGS AN A RIFLE DOESN'T FIRE PISTOL CASINGS. . . . . "THE FOUR .22 SHELL CASINGS WERE FOUND ON THE WEST SIDE WALK OF PORT CHICAGO HWY, SOME NINETY FEET TO THE SOUTH OF THE DECEDENT (RT 1741-1742) (THESE CASINGS WERE IN THE SAME LOCATION AS IN A EXHIBIT PHOTO A PERSON WALKED ON THEM ~~████████~~ ~~█████████████████████████████████████~~, AS WELL THERE'S LACK OF CROSS EXAMINATION ON IF ANY SEEN THE VICTUM ARRIVED NEAR THE BUS STOP OR IF THEIR WAS A CONFRONTATION OR PROVOCKACATION THAT TRIGGERED THE SITUATION END RESULTS.) . . . ALSO MR. FUJII EXAMINED THE SIX CASING'S RECOVERED AFTER THE CAR WASH SHOOTING (RT. 2228.) HE CONCLUDED THAT ALL SIX HAD ALSO BEEN CYCLED THROUGH THE RIFLE, BASED ON THE CHAMBER FIRING (PEN MARKS) AS DID THE OTHER CARTRIDGES CASES  (RT. 2243).                (i.e. EMPHASIS

— However no conclusion of opine was presented or slugs had actually been cycled thru the rifle. Most rifles mark/stamp the shell the same while discharging out of the chamber.) After Mr. Schoppe-Rico's arrest, a gunshot residue test was done (RT. 1585-1590) (i.e. they weren't specific on which hand its contains were located on or if it were Federal or Remington powder.). Criminalist Jason Kwast testified that gunshot residue particles were lead, berium, and antimony and that he found six particles "highly" specific" to gunshot residue on the test disks (RT. 1687, 1692, 1696.) In addition, he found other particles which could have been gunshot residue. (RT 1696-1697). These results indicated that the person had fired a gun, had been near a gun, when it was fired or had touched an object bearing gunshot residue (RT. 1701) However particles highly specific to gunshot residue can also come from fireworks (RT. 1708-1709) i.e. emphasis mine. Also appellant was shot in the hand an thus leaving particles or gun powder residue on it an excluding him holding fireworks packets in his left hand an not right disabled injured hand an/on the night of Oct 16.00, at a party type setings.

• Thirdly an fourthly. III an IV. The instructions given to define the "street gang" firearm possession offenses an the rest of the were fatally deficent. An there were no substantial evidence to support a verdict of guilty of premeditated and deliberate intent to kill, as part of appellants Section 1118.1 arguement above mentioned, Mr. Schoppe-Rico contended at AOB 65 through 72. That "gang firearm possession" violations of Section 12025 and 12031 require that the possession have been for the benefit of a gang; he based this contention above on language appearing in Scales v. U.S. 367. U.S. 203 (1961) supra, People v. Robies supra 23 cal. 4th at 1115. [defining the phrase an active participation in a criminal street gang under Section 12031]; see AOB 67-72 ect. ect. an above, He explained that for order for a person to be in violation or found to violated Sections 12025 or 12031. First they have to determine if for one: He was a gangmember. Promoting furthering or that the possession had been for the benefit of a gang, under 186.22, describes gang activity, however as proven an discussed above, appellant has never been in violation or found in violation of Section 186.22 (a)

FOR ORDER TO BE CHARGED AND DISCRIMINATED UPON UNRELIABLE, INSUFFICIENT INFORMATION IS ERROR. DUE TO FOR ONE WE EXPLAINED THAT THE TRIAL COURT ENUMERATES THE FOLLOWING SIX PURPORTED ELEMENTS OF A SECTION 12031, SUBDIVISION (a)(2)(C) VIOLATION: WHICH ARE INADEQUATE DUE TO THE MOTION SECTION 1118.1 ARGUMENT WAS DINIED TO STRIKE ELEMENTS 3 THRU 6, WHICH NEVER INSTRUCTS THAT THE POSSESSION CHARGE IF IT WAS FOR THE BENEFIT OF A GANG, KNOWINGLY PROMOTED, FURTHERED OR ASSISTED IN STREET GANG ACTIVITY OR AN UNLAWFUL ACT AS CHARGED, AS THUS BEING THE REASON OF THE SECTION 12031 SUBDIVISION (a)(2)(C) VIOLATION CHARGE. IT WAS READ AS FOLLOWS........IN ORDER TO PROVE THIS CRIME, EACH OF THE FOLLOWING ELEMENTS MUST BE PROVED:...... 1.) A PERSON CARRIED A LOADED FIREARM ON HIS PERSON IN ANY PUBLIC PLACE;...... 2.) THE PERSON HAD KNOWLEDGE OF THE PRESENCE OF THE FIREARM; (I.E. WHICH APPELLANT DID NOT.)... 3.) AT THE TIME THE PERSON WAS AN ACTIVE PARTICIPANT IN A CRIMINAL STREET GANG; (I.E. WHICH HE WAS NOT.)...., 4.) THE MEMBERS OF THAT GANG ENGAGED IN OR HAVE ENGAGE IN A PATTERN OF CRIMINAL GANG ACTIVITY;..... 5.) THAT PERSON KNEW THAT THE GANG MEMBER ENGAGED IN OR HAVE ENGAGE IN A PATTERN OF CRIMINAL GANG ACTIVITY. (I.E. WHICH HE DID NOT),...... 6.) THAT PERSON DIRECTLY AND ACTIVELY COMMITTED THE CRIMES OF ASSUALT WITH A FIREARM, GROSSLY NEGLIGENT DISCHARGE OF FIREARM OR MURDER.    RT. 2399-2400

CONFUSIONALLY, THE TRIAL COURT ENUMERATED THESE SIX ADDITIONAL PURPORTED ELEMENTS OF A SECTION 12025, SUBDIVISION (a)(2) AND (b)(3) VIOLATION:

IN ORDER TO PROVE THIS CRIME, EACH OF THE FOLLOWING ELEMENTS MUST BE PROVED: 1. A PERSON CARRIED UPON HIS PERSON A PISTOL, REVOLVER OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON;...... 2.) THE PERSON HAD KNOWLEDGE OF THE PRESENCE OF THE FIREARM; (I.E. AS STATED ABOVE THESE WERE READ TWICE AN NO APPELLANT HAD KNOWLEDGE OF SAID FIREARM.).... 3. THE PERSON WAS AT THE TIME AN ACTIVE PARTICIPANT IN A CRIMINAL STREET GANG; (I.E. WHICH AT NO TIME HE WAS OR IN THE PAST)... 4. THE MEMBERS OF THE GANG ENGAGED IN A PATTERN OF CRIMINAL GANG ACTIVITY... (I.E. WHICH AT NO TIME HE WAS AWARE OF)... 5.) THAT PERSON KNEW THAT THE GANG MEMBERS ENGAGED IN OR HAVE ENGAGED IN A PATTERN OF CRIMINAL GANG ACTIVITY. (I.E. WHICH HE HAD NO KNOWLEDGE OF GANG LABLE PLACED UPON THEM) 6.) THAT PERSON DIRECTLY & ACTIVELY COMMITTED THE CRIME OF ASSUALT WITH A FIREARM, OR GROSSLY

NEGLIGENT DISCHARGE OF A FIREARM, OR MURDER. (RT 2401-2402) IF THEY IS GOING TO MODIFIED AN INSTRUCTION AT LEAST HAVE THEM DO IT CORRECTLY AN RIGHTOUSLY CONSTITUTIONALY & BY LAW WITH WHAT THE DEFENDANT IS OR ISN'T BEING ACCUSED OF. NEITHER OF THESE INSTRUCTIONS, OF COURSE, SAYS ANYTHING ABOUT AN ACT FOR THE BENEFIT OF A GANG, "OR AN ACT DONE" WILFULLY" TO PROMOTE, FURTHER OR ASSIST CRIMINAL CONDUCT BY MEMBERS OF A GANG

- INCONTENTION WITH THE NEW ADDED ADDITIONAL GROUNDS, GROUNDS THREE, FIVE AND SEVEN. DUE TO TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT AND ARGUE TO THE PENAL CODE § 246 CHARGE OF DISHARGING A FIREARM ON AN OCCUPIED MOTOR VEHICLE W/ ENHANCEMENTS.....

PUBLIC DEFENDER FAILED TO SUPPRESS THIS LURED CHARGE OR FILE ANY MOTIONS SUCH AS THE § 1429. (8) MOTION TO DISMISS BECAUSE OF FAILURE TO BRING THE P.C § 246 CASE TO TRIAL WITHIN PEN.C. § 1382. DEADLINE WAIVER. IN RE: PEOPLE V. VALENZUELA. APP. 150. CAL.RPTr. 314 POINT OF THIS AUTHORITY, VISE VERSA P.D. ELLEN LEONIDA, "INADEQUATTE" HALF DONE WRITS IN LIMINE IS PROOF OF THE INEFFECTIVENESS IN RE: PETITIONS FOR WRITS OF PROHIBITIONS REQUEST FOR STAY MEMORANDUM OF POINTS AND AUTHORITIES FILED JANUARY 18, 2002, IN THE COURT, I.E. "STATES" FOR ONE ON OCTOBER 19, 2000, A COMPLAINT WAS FILED IN THE CONTRA COSTA COUNTY SUPERIOR COURT, PITTSBURG DIVISION (DOCKET NUMBER: 4-123353-5.) CHARGING PETITIONER WITH MURDER, I.E. ONLY." AND NOT WITH ANY ADDITIONAL ENHANCEMENTS OR COUNTS", THIS MURDER ALLEGED TO HAVE OCCURRED ON THE "EARLY" MORNING OF OCTOBER 17, 2000, A COPY OF THIS COMPLAINT IS LODGED IN HER WRIT AS EXHIBIT-A..... HOWEVER ON NOVEMBER 2, 2000, IN VIOLATION OF PETITIONERS CONSTITIONER AMENDED RIGHTS AND PENAL CODE § 825, IN PREJUDICE, PROSECUTOR FURTHERED AMENDED COMPLAINT WHICH WAS FILED IN THE CONTRA COSTA COUNTY SUPERIOR COURT, NOW CHARGING PETITIONER WITH MURDER AND PREJUDICALLY IN ADDITION WITH BEING A

WITH BEING A STREET GANG MEMBER IN POSSESSION OF A FIREARM IN VIOLATION OF PENAL CODE SECTIONS 12031 (a)(2)(C) AND 12025 (A)(b)(3) ON OCTOBER 17, 2000, A COPY OF THE FIRST AMENDED COMPLAINT WAS LOGED THAN AS EXHIBIT-B, A PRELIMINARY HEARING WAS HELD IN THE CONTRA COSTA COUNTY SUPERIOR COURT PITTSBURG DIVISION, THE HONORABLE WILLIAM O, O'MALLEY PRESIDING THE HEARING WERE CONDUCTED OVER NUMEROUS SESSIONS BETWEEN APRIL 2, 2001 AND SEPTEMBER 12, 2001, A TRANSCRIPT OF THIS PRELIMINARY HEARING WAS LOGED "THEN IN" AS EXHIBIT-C \ ..... THEN IN VIOLATION OF PENAL CODE § 849 - PEN, C § 825 CCP, § 134 -135, Govt. C § § 6700, 6706, 71345, CODE OF CIVIL PROCEDURE § 134, AND PENAL CODE § 1385, ON SEPTEMBER 12, 2001, AT THE CONCLUSIONS OF THESE PRELIMINARY HEARINGS, PETITIONER WAS HELD TO ANSWER TO ALL CHARGES AN ENHANCEMENTS IN THE NEW AMENDED COMPLAINT(S) OVER DEFENSES OBJECTIONS .... ON SEPTEMBER 26, 2001, AN INFORMA- TION WAS ENTED IN CONTRA COSTA COUNTY SUPERIOR COURT (DOCET NUMBER: 5-011510-5, ) CHARGING PETITIONER ILLEGALY WITH THE OFFENSE CHARGED IN THE FIRST AMENDED COMPLAINT AS WE AS THREE ADDITIONAL COUNTS, DEFENDANT WAS ALREADY ACQUITTED OF, ONCE THE PROSECUTI OFFICE REFUSED TO FILE ON ONE FOR, AND THE LAW ENFORCEMENT RELEASED PETITIONER FROM CUSTOD FROM JAIL FROM THESE ADDITIONAL WERE CHARGES & COUNTS, I WAS ACQUITTED OF AT THIS TIME AND NEVER CHARGED FOR THEN, WHICH WERE VIOLATION OF P.C, SECTION 246, 12031 (a)(2)(C) AND 12025 (a)(b)(3) ALL ALLEGED TO HAVE OCCURED "SEPTEMBER 4, 2000", BEFORE PETIT- IONERS "HANDS" INJURIES & DISABILITIES, A COPY OF THAT INFORMATION, WAS LOGED THEREIN THEN A EXHIBIT-D, THIS HERE IS CONSTITUTING A DISMISSAL ON THESE AFOREMENTIO WERE CHARGES, THE REMEDY OF AN UNLAWFUL SERVICE OF AN ARREST WARRANT IS THE SAME A THAT FOR AN UNLAWFUL SERVICE OF A SEARCH WARRANT, IT DOES NOT DIRECTLY RESULT IN A DISMISSAL BUT COULD, "BUT IS A FACTOR", IN DETERMINING WHETHER TO SUPPRESS ANY EVIDENCE OR A CONFESSION OBTAINED AS A RESULT OF ILLEGAL SERVICES OF A WARRANT ('IF ONE WA GIVEN ISSUED I.E.)', IN RE: LARRY. C. (1982) 134, CA.3d.62, 67, 184 CR. 505, § 3.20, TIME LIMIT ON SERVICE OF WARRANT, UNLESS AN ARREST WARRANT IS SERVED WITHIN REASONABLE TIME AFTE THE COMPLAINT IS FILED, THE DEFENDANT MAY BE ENTITLED TO A DISMISSAL ON THE GROUND! THAT HE HAS BEEN DEPRIVED OF THE RIGHT TO A FAIR SPEEDY TRIAL. SEE JONES V. SUPERIOR COURT (1970) 3. L.3d. 734, 91, CR. 578 ¶ STABIO, V. SUPERIOR COURT (1994) 21. CA. 4th 1488 26, CR. 2d, 615, [SEE RIGHT TO SPEEDY TRIAL ] CHAP 14. IT STATES THAT ON SEPTEMBER, 4, 200

THE OFFICERS AND MAGISTRATE WHO ENTERED MY HOME, THEN ON SEPTEMBER 4, 2000, AND WHEN PETITIONER WAS IN CUSTODY RE (RT-          ) THEY HAD 48 HOURS TO FILE THOSE NEW AMENDED CHARGES, CONTRA COSTA COUNTY DISTRICT ATTORNEY AND SHERIFF DEPARTMENT FAILED TO DO THIS AND PETITIONER WAS RELEASED, FROM FROM ANY NEW CHARGES ON SEPTEMBER 4, 2000, TILL SEPTEMBER 26, 2001, I WAS PREJUDICIALLY CHARGED A YEAR LATER WITHOUT DISCOVERY AND DUE PROCESS OF THE LAW IN VIOLATION OF PETITIONERS CONSTITIONAL RIGHTS, ONCE PETITIONER WAS RELEASED NUMEROUS OF TIMES, BY THE CONTRA COSTA COUNTY SHERIFF DEPARTMENT AND NEVER ISSUED A WARRANT OR CHARGED PETITIONER THEN. PETITIONER WAS THEN LET GO, AS ACQUITTED OF THE 3246 P.C. CHARGE WITH ENHANCEMENTS; .... HOWEVER (2) MONTHS LATER ON OCT. 17, 2000, A PERSON WAS SHOT BY AN UNKNOWN INDIVIDUAL, NOT PETITIONER, THEN PETITIONER GETS WRONGLY ACCUSED AND DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENCE AND FACTS FABRICATED AND COERCED AGAINST PETITIONER AND EVIDENCE PROOF OF PETITIONERS INNOCENCE WITH HELD TO WRONGLY CONVIENCE JURORS AND WRONGLY CONVICT PETITIONER, THE LAW STATES, "A FIRST APPEARANCE BEFORE A MAGISTRATE, ARRESTED PERSON MUST BE TAKEN BEFORE A MAGISTRATE (WHICH NEVER WAS DONE IN PETITIONER CASE FROM SEP. 4, 00, TIL OCT. 16, 00.) WITHOUT NECESSARY UNNECESSARY "DELAY s"/ AN IN ANY EVENT, WITHIN (48) HOURS AFTER ARREST, THE 48 HOURS EXPIRE WHEN THE MAGISTRATE COURT IS NOT IN SESSION PEN. C. 8825. SECTION 825, PROVIDES HOWEVER THAT AN ARREST REQUIRES ARRAIGMENT AND A "PROBABLE CAUSE" DETERMINATION CONCERNING A PERSON ARRESTED WITHOUT A WARRANT MUST BE MADE WITHIN (48) HOURS OF ARREST IN RE: COUNTY OF RIVERSIDE V. MCLAUGHLIN (1991) 500 12. S. 44, 144, 1. Ed. 2d 49, 63, 111, Sct. 1661. COUNTY OF RIVERSIDE IS DISSCUSSED IN § 86.26 PEN. C. 8825. IS DISSCUSSED IN § 611, SEE § 14.14. TIME FOR ARRAIGMENTS TIME REQUIREMENTS FOR ARRAIGNMENT ARE PRIMARILY DISSCUSED IN § 611, THE BASIC ARRAIGMENT TIME REQUIREMENTS IN CRIMINAL CASES IS THAT THE PETITIONER MUST BE BROUGHT BEFORE A MAGISTRATE FOR ARRAIGMENT AND BAIL SETTING WITHOUT ANY UNNECESSARY DELAY, AND IN ANY EVENT WITHIN TWO DAYS OF ARREST, EXCLUDING NON-JUDICIAL DAYS, PEN. C § § 849 (2) ARREST WITHOUT WARRANT 8825. ARREST WITH WARRANT, PEOPLE V. THOMPSON (1980) 27, C.3d 303, 329, 165 CR. 289, 308, PEOPLE V. HAYDEL 1974) 12, C.3d. 190, 199, 115, CR. 394, 398; EVEN IF THE DEFENDANT WAS BROUGHT

TO COURT WITHIN TWO DAYS, THE ARRAIGNMENT MAY HAVE BEEN ILLEGALY DELAYED, IF THE TWO DAY DELAY WAS NO NECESSARY, PEOPLE V. POWELL (1967) 67. C.2d, 32, 59, CR 817, DRAGNA V. WHITE (1955) 45. C.2d, 469, 289, P.2d 428, THE "ONLY" DELAYS WHICH MAY BE DEEMED "NECESSARY" ARE THOSE NEEDED TO COMPLETE THE ARREST, BOOK THE ACCUSSED, TRANSPORT THE ACCUSSED TO COURT TO DETERMINE WHICH CHARGE TO FILE AN COMPLETE, THE ADMINISTRATIVE TASKS, NECESSARY FOR FILING A FORMAL PLEADING, AND NOTHING ELSE EITHER, DELAY IS NOT PERMISSIBLE FOR "FURTHER INVESTIGATION", PEOPLE V. WILLIAMS (1977) 68. CA.3d, 36, 43, 137 CR, 70, 74, PEOPLE V. THOMPSON, SUPRA." NOTE: i SEE DISCUSSIONS OF THE CONSTITUTIONAL REQUIREMENTS CONCERNING PROBABLE CAUSE, DETERMINATIONS FOR PERSONS ARRESSTED WITHOUT A WARRANT IN § 6.24," COUNSEL SHOULD BE SURE TO OBJECT ON CONSTITUTIONAL AS WELL AS STATUTORY GROUNDS, IN RE. PEOPLE V. TURNER (1994) 8, C.4th 137, 32 CR.2d 762, IN THIS CASE SCHOPPE-RICO'S PUBLIC DEFENDER FAILED TO DO SO, SO DID APPELLATE COUNSEL AND PETITIONER SUFFERED PREJUDICE DUE TO DELAY CONCERNING ANY OF THESE LISTED DEADLINE PETITIONERS ATTORNEYS SHOULD OF SEEKED SANCTIONS PER SUPRA, PEOPLE V. VALENZUELA (1978) 86 CA.3d, 427, 432: 150 CR. 314, 316, FOR DISCUSSIONS THAT SHOULD OF TOOK PLACE IN SCHOPPE-RICO'S CASE SEE § 14.34, RELIEF FROM PRE-ARRAIGNMENT DELAY IS MOST COMMONLY SOUGHT, WHEN THE DETENTION RESULTED IN THE DEFENDANTS INABILITY TO OBTAIN EVIDENCE TO SUPPORT HIS DEFENSE, I.E. AS IN SCHOPPE-RICO 'S SITUATION IS EXACTLY THE ISSUE AT HAND. SEE, eg. PEOPLE V. VALENZUELA SUPRA. CONFESSION' OBTAINED DURING A PROLONGED DETENTION ARE ALSO SUBJECT TO ATTACK, SEE PEOPLE V. PETTINGILL (1978) 21, C3d, 23), 244, 145 CR. 861, 869. COURT RELIED ON ILLEGAL DETENTION AND MIRANDA VIOLATION SEE PEOPLE V. THOMPSON SUPRA. UNNECESSARY DELAY IN ARRAIGNING DEFENDANT IS ONE FACTOR TO CONSID ER IN DETERMINING WHETHER CONFESSION MADE DURING PERIOD OF DELAY WAS INVOLUNTARY, ROGERS V. SUPERIOR COURT (1955) 46, C.2d 5, 10, 291, P.2d, 929, 933. DEFENDANT MUST SHOW CONFESSION IS A NECESSARY PRODUCT OF THE ILLEGAL DETENTION & CONVICTION, TO OBTAIN RELIEF, THE DEFENSE MUST SHOW THAT THAT THERE WERE AN ILLEGAL DENTETION SUCH, HE IS PROVING, THAT HE WAS CHARGED WITH A CRIME HE DIDN'T COMMITT. AFTER THE FACT, AND THE DETENTION PRODUCED INCRIMINATING INFO. PEOPLE V. TURNER SUPR OR THAT THERE WAS AN ESSENTIAL CONNECTION BETWEEN THE DETENTION AND INFORMATION, THAT ILLEGALLY INCRIMINATED PETITIONER, IN VIOLATION OF HIS MIRANDA CONSTITUTIONAL RIGHTS,

I SWEAR UNDER PERJURY THAT THE FORGOING IS TRUE AND CORRECT IN ITS TOTALLITY HEREIN. SUBMITTED WITH THE COURT

DATED. 10-16-07,

x John M Schoppa Rico

PETITIONER  SCHOPPE-RICO

# EXHIBIT: A

(22 pg) HAND INJURIES AND MEDICAL REPORTS
    WITH DIAGRAMS OF PHYSICAL IMPAIRMENT
    A PROOF OF DISABILITY

22 PAGES.

# EXHIBIT: B

1.) PAGES ONE THROUGH NINE. PAUL LANCASTERS TESTIMONY VIA FIRST INTERVIEW
DEFENDANTS EXHIBIT. 7. A. 011510-S  →  3/14

2.) PAGES ELEVEN TWELVE THIRTEEN. MISTAKEN IDENTITIEFICATIONS AND EYEWITNESS
PSYCHOLOGY AUTHORITIES, ...

3.) PAGES FOURTEEN THROUGH THIRTY. ALBERT MELTONS FIRST INTERVIEW AND
MISTAKEN ERRONOUS IDENTIFICATION ... DEFENDANTS EXHIBIT 6A. 011510-S. 3/14.

( 1.9 — PAGES 6

# EXHIBIT : C

1.) PAGE: ONE   MAP OF BAYPOINT STREET LOCATION OF WHERE,
INCIDENT AND   INVESTIGATORY STOP AND ARREST TOOK PLACE.

( go  PAGE . )

# EXHIBIT: D

1.) 59 PAGE — THE HASTING LAW JOURNAL, VOLUME 42. NO. NOV. 1990, SCIENCE, ON ANDREW, E. TASLITZ. ON DOGS. OLFACTORY.

( 59 )

( 59 PAGES. )

# EXHIBIT: E

1.) THE LASTEST OF PETITIONERS MENTAL HEALTH DISORDER CONDITIONS
WHILE INCARCERATED, THEY DATE BACK TO 2002. BEFORE TRIAL. ✓ I.E STILL
WAITING TO OBTAIN MENTAL HEALTH DISCOVERY FROM CONTRA COSTA COUNTY JAIL.
( 19-PAGES)

( P9 80)

( 19 PAGES ),

# EXHIBIT: F

1.) PAGE ONE. WAS LETTER FORWARDED TO KYLE GEE FOR HANDLING OR RESTITUTION FINE AND NEVER DID. AFTER COURT AND I CONTACTED HIM.

2.) PAGE TWO THROUGH TWELVE ARE COMPLAINTS FILED AGAINST KYLE GEE. APPELLATE ATTORNEY.

3.) PAGES THIRTEEN THROUGH FIFTEEN, IS LETTER ATTORNEY SENT ME, EXPLAINING HOW TO HANDLE MY STATE HABEAS AND FEDERAL HABEAS.

4.) SIXTEEN, SEVENTEEN ARE PAGES OF APPOINTED COUNSEL FROM PUBLIC DEFENDERS OFFICES SURVEY OF INEFFECTIVE ASSISTANCE OF COUNSEL THEY PROVIDE TO INDIGENT DEFENDANTS AND WHY

( P.S. 81 )                    ( 19 - PAGE )

# EXHIBIT : G

1.) PROPOSED QUESTIONAIRES FOR WITNESSES

# EXHIBIT: H

1.) PAGE ONE NEWS PAPER ARTICLE, OF WHICH STATEMENTS OF JURORS MADE TO NEWSPAPER REPORTER ON DELIBERATIONS.

2.) TWO AND THREE. AN ATTACH LETTER OF QUESTIONS WE HAD FOR JURORS AND INVESTIGATOR. INVESTIGATING JURY MISCONDUCT, PUBLIC DEFENDER WITHDREW INVESTIGATION AN MOTION AFTER IT WAS GRANTED.

( 3c PAGES.

# EXHIBIT: I

1.) ACCURATE DIAGRAM OF 180 SHORE Rd. RESIDENCE. AND LOCATION WERE ILLEGAL SEARCH & SEIZURES TOOK PLACE.

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, _JOHN MOSES SCHOPPE-RICO_, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _20,TH_ day of _JULY_, in the year of 20_08_, I served the following documents: (set forth the exact title of documents served)

A "STAY AND ABEYANCE" MOTION AND SECONDED AMENDED PETITION PROPOSED

WITH AFFADAVIT, THAT REFERS TO FIRST AMENDED PETITION AND ITS

EXHIBITS FILED WITH IT.

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

CLERKS OFFICE OF FEDERAL COURT.          ATTORNEY GENERALS OFFICE.

U.S. DISTRICT OF NORTHERN DISTRICT OF    SAN FRANCISCO OFFICE.

CALIFORNIA.                              455 GOLDEN GATE AVENUE STE 11000

450 GOLDEN GATE AVENUE, 16TH FLOOR       SAN FRANCISCO, CA. 94102-3664.

SAN FRANCISCO, CA. 94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _20th_ day of _July_, 20_08_.

Signed: _____
(Declarant Signature)

Rev. 12/06

77