1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    JOHN SCHOPPE-RICO,                          No. C 07-5416 JSW (PR)

9              Petitioner,                       **ORDER DENYING PETITION
                                                 FOR WRIT OF HABEAS
10   vs.                                         CORPUS AND DENYING
                                                 CERTIFICATE OF
11   ROBERT A. HOREL, Warden,                    APPEALABILITY**

12             Respondent.

13   _____/

14         This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

15   2254.  The court ordered respondent to show cause why the writ should not be granted.

16   Respondent has filed an answer and a memorandum of points and authorities in support

17   of it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.

18   For the reasons set out below, the petition is denied.

19                                    **BACKGROUND**

20         A jury in Contra Costa County Superior Court convicted Petitioner of first-degree

21   murder, *see* Cal. Penal Code § 187, with an enhancement for personal use and intentional

22   discharge of a firearm causing death, *see id.* at § 12022.53(b), (c), (d); carrying a loaded

23   firearm while an active street gang member on October 17, 2000, *see id.* at §

24   12031(a)(2)(C); carrying a concealed firearm while an active street gang member on

25   October 17, 2000, *see id.* at § 12025(a), (b)(3); discharging a firearm at an occupied

26   motor vehicle, *see id.* at § 246; carrying a loaded firearm while an active street gang

27   member on September 4, 2000, *see id.* at § 12031(a)(2)(C); and carrying a concealed

28   firearm while an active street gang member on September 4, 2000, *see id.* at § 12025 (a),

*United States District Court*
For the Northern District of California

(b)(3).  (Ex. 6 (opinion of court of appeal) at 7.)[1]  With sentence enhancements, he was sentenced to an indeterminate term of twenty-five years to life on count one (murder); a consecutive indeterminate term of twenty-five years to life on the enhancement to count one (intentional discharge of a firearm causing death); a determinate term of seven years on count four (shooting at an occupied motor vehicle); and two terms of two years each on counts two and five (carrying a loaded firearm while an active street gang member), to be served concurrently with the principal determinate term.  (*Id.*)  His sentences under counts three and six (carrying a concealed firearm while an active gang member) were stayed.  (*Id.*)

Petitioner's convictions were affirmed on appeal by the California Court of Appeal, which also modified the sentences to run his determinate sentence concurrently with his indeterminate sentence.  (*Id.* at 30.)  His petition for review by the California Supreme Court was denied.  (Ex. 8.)  His collateral attacks in all three levels of the California courts were rejected.

Petitioner then filed a habeas petition in this court.  It was dismissed with leave to amend.  Petitioner amended; the Court dismissed two of his issues and ordered Respondent to show cause on the others.  Petitioner's subsequent motions for leave to amend and his motion for a stay and abeyance were denied because his proposed changes were minor, unnecessary, or in the case of his attempt to reassert claims barred by *Stone v. Powell,* futile.

The part of the court of appeal's opinion dealing with an issue of first impression regarding the application of California's street gang firearms statutes, *see* Cal. Penal Code §§ 12025(a), (b)(3); 12031(a)(2)(c); 12031(a)(2)(c), was published; the remainder was not.  *See People v. Schoppe-Rico*, 140 Cal. App. 4th 1370, n.* (2006).  In its opinion the court of appeal set out the facts:

---

[1] Citations to "Ex." are to the record lodged with the court by the Attorney General.

United States District Court
For the Northern District of California

## A.

### The Car Wash Shooting

On September 4, 2000, appellant's then girlfriend, Jennifer Smith, decided that she wanted to "get away from [appellant] for a while." Smith arranged to meet a friend, Sharon Fawcett, at a car wash, where Smith got into Fawcett's car and sat in the passenger seat. When Smith told appellant that she intended to leave with Fawcett, appellant demanded that she come home with him instead. Smith refused to do so, and appellant then pulled out his gun and fired four or five shots at Fawcett's car, shooting out two of the tires.

We will refer to this incident as the "car wash shooting." Appellant in effect concedes that he did not offer any factual defense at trial to the charges arising out of this incident.

## B.

### The Murder

On October 17, 2000, Smith again decided to try to separate from appellant. Appellant followed her out of the house, however, and then ran after her and hit her, knocking her to the ground. Smith sought sanctuary in a nearby stranger's house, but appellant came in after her, hit her again, forced her to leave with him, and threatened to get his gun. At that point, another neighborhood resident, Anita Thompson, who did not know Smith but who had herself been a domestic violence victim, invited Smith into her home. She then loosed her roommate's pit bull into the yard in order to keep appellant at bay. About half an hour later, having ascertained that appellant was no longer in sight, Thompson offered to drive Smith to a friend's house. As the two women drove south on Port Chicago Highway, Smith pointed out appellant standing next to a fence close to a bus stop near the intersection of Port Chicago Highway and Pacifica.

Shortly thereafter near the same bus stop, Albert Melton tried to push two heavy shopping carts full of recyclable containers across Port Chicago Highway. Melton's long-time friend, Nick Taylor, saw Melton struggling with the carts and came to his aid. Meanwhile, Nick Taylor's wife, Rita Taylor, went across the street to a small shopping center to run an errand. [FN1. All further references to Taylor are to Nick Taylor. Rita Taylor did not see the shooter.]

As Melton and Taylor pushed the shopping carts onto the sidewalk, Melton saw a young Hispanic man leaning on the fence near the bus stop. Melton did not know the young man, and neither he nor Taylor said anything to him or made eye contact with him. Without warning, the young man reached under his shirt, pulled out a gun, and fired five or six shots, some of which hit Taylor, and at least one of which came close enough to Melton to pass through his hat. A passerby, Paul Lancaster, also saw the shooting, and observed that the shooter was using a sawed-off .22 rifle. The shooter pointed the gun at Lancaster and fired a couple of shots, but did not hit him. Both Melton and Lancaster then saw the man cross Port Chicago Highway and jump over a retaining wall into a residential area to the east. Taylor died as a result of the gunshot wounds he sustained.

3

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Only two of the trial witnesses-Melton and Lancaster-actually saw the man who fired the fatal shots. Lancaster was unable to identify appellant as the shooter in a field show-up shortly after the arrest, [FN2. We note, however, that in Lancaster's trial testimony, he consistently denied having said on the scene that appellant was not, or could not have been, the shooter. Rather, he said the man whom the police showed him shortly after the shooting (i.e., appellant) "could have very easily been" the shooter. Lancaster explained that he was unable to identify appellant as the shooter because he had not seen the shooter's face well enough to identify him based on his features, and the man the police showed him was wearing different clothes and looked taller. He pointed out, however, that he was unsure of the shooter's height, because the shooter was crouching at the time Lancaster saw him firing the shots.] and was not asked to identify him at trial.

Melton did identify appellant as the shooter in his trial testimony. He also testified at trial that he had told the police during a field show-up that appellant had been the shooter, although he was wearing different clothes by the time he was arrested. This testimony was undercut, however, by evidence that in Melton's statements to the police, both at the field show-up and at a taped interview a few hours later, Melton was much more equivocal in his identification, saying only that appellant "[c]ould be" the shooter. He also asserted that the shooter had a mustache, whereas appellant had no facial hair.

According to the investigating officers, the witnesses at the scene said the shooter had worn brown khaki pants and a dark shirt. [FN3. One of the officers, however, testified that several bystanders identified the shooter as a Hispanic man with a white t-shirt and black pants.] Melton gave a similar description of the shooter's clothes at his taped interview. All of the witnesses described the shooter as Hispanic, and those who mentioned age all indicated that he was young. None of the investigating officers saw anyone in the area other than appellant who matched the description of the perpetrator. In addition, only 10 or 15 minutes passed between when Smith and Thompson saw appellant standing near the bus stop and the time of the shooting, and both women testified that they did not see any other young Hispanic man in the area when they passed the bus stop.

Shortly after the shooting, appellant approached a woman named Lydia Williams, who lived in the neighborhood toward which Melton and Lancaster testified the shooter had walked when he left the scene. Williams was pulling out of her driveway, and appellant asked her to give him a ride; she declined. Williams was suspicious, and when she encountered a police officer shortly thereafter, she told the officer, Deputy Whiddon, about the man she had seen. Williams and Whiddon drove around the neighborhood until they spotted appellant on a nearby street. Whiddon, who was on the scene to investigate the shooting, called for backup and arrested appellant. At the time of his encounter with Williams, and when arrested, appellant was wearing a white t-shirt and black shorts.

That afternoon, a resident at 40 Sharon Drive, in the same neighborhood where appellant was arrested, alerted police to the presence of a gun leaning against a fence in her yard, and some clothing under a nearby bush. The clothing consisted of black pants and a gray, nearly new Pro Spirit brand sweatshirt.

4

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

    At trial, Smith identified the clothing found at 40 Sharon Drive, and linked it to appellant.  Smith explained that the black pants belonged to her, and that appellant had been wearing them earlier that morning.  She was able to confirm that the pants were hers because a piece of paper in the pocket bore the hospital room number and telephone number of a friend whom she had recently visited in the hospital.  The sweatshirt found at 40 Sharon Drive was the same color and brand as a matching sweatshirt and pants outfit that Smith testified she had purchased for appellant shortly before the shooting.  During the investigation of the shooting, police seized a pair of matching sweatpants from the front yard of appellant's home.

    Smith also testified that appellant owned and frequently carried with him a very distinctive gun, a .22 caliber rifle, which Smith identified as the gun found near 40 Sharon Drive after the murder.  The gun had been modified in a unique way by sawing off part of the stock and wrapping the grip in electrical tape.  Lancaster testified that the gun used by the shooter was a sawed-off .22 rifle.  The prosecution's firearms expert testified that the .22 cartridges and bullets found at the scenes of the murder and the car wash shooting had been compared to those used in test firings from appellant's distinctive gun.  The expert concluded that both sets of crime scene cartridges had been fired from appellant's gun, and that the bullets also could have been fired from it, although this could not be determined conclusively.  In addition, appellant had gunshot residue on his hands when he was arrested.  [FN4. Appellant's trial counsel attributed this fact to appellant's having shot off fireworks and fired his gun during the night immediately preceding the shooting.]

15 (Ex. 6 at 2-6.)

16            **DISCUSSION**

17 **I. Standard of Review**

18    A district court may not grant a petition challenging a state conviction or sentence

19 on the basis of a claim that was reviewed on the merits in state court unless the state

20 court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

21 involved an unreasonable application of, clearly established Federal law, as determined

22 by the Supreme Court of the United States; or (2) resulted in a decision that was based on

23 an unreasonable determination of the facts in light of the evidence presented in the State

24 court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law

25 and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09

26 (2000), while the second prong applies to decisions based on factual determinations,

27 *Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

28 ///

United States District Court

For the Northern District of California

1    A state court decision is "contrary to" Supreme Court authority, that is, falls under

2    the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

3    that reached by [the Supreme] Court on a question of law or if the state court decides a

4    case differently than [the Supreme] Court has on a set of materially indistinguishable

5    facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

6    application of" Supreme Court authority, falling under the second clause of § 2254(d)(1),

7    if it correctly identifies the governing legal principle from the Supreme Court's decisions

8    but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

9    The federal court on habeas review may not issue the writ "simply because that court

10   concludes in its independent judgment that the relevant state-court decision applied

11   clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the

12   application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

13   Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

14   determination will not be overturned on factual grounds unless objectively unreasonable

15   in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322

16   at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

17   When there is no reasoned opinion from the highest state court to consider the

18   petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

19   501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

20   Cir.2000).

21   **II.    Claims Presented**

22   The Court dismissed two issues in the order to show cause because those claims

23   were barred by *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976), and ordered

24   Respondent to show cause why the petition should not be granted on Petitioner's

25   contentions that:  (1) trial counsel was ineffective because of conflicts, and failed to

26   investigate an alibi defense; (2) trial counsel was ineffective in failing to properly present

27   a defense regarding injuries to Petitioner's hands; (3) the prosecutor withheld exculpatory

28   evidence; (4)  trial counsel was ineffective in failing to present a defense of intoxication;

United States District Court

For the Northern District of California

(5) the jury committed misconduct; (7) trial counsel was ineffective in failing to object to, seek discovery of, or move to dismiss the charges of shooting at an occupied vehicle; (8) appellate counsel was ineffective in failing to argue trial counsel's ineffectiveness; (9) the admission of evidence from a "scent discrimination lineup" violated due process; (10) the trial court erred in failing to grant a motion under California Penal Code § 111.8.1 with respect to the street gang and firearm counts; (12) the instructions regarding the offenses of street gang firearm possession were fatally deficient; and (13) there was insufficient evidence to support his conviction for premeditated and deliberate first degree murder.

### A.      Ineffective Assistance of Counsel Claims

Petitioner's issues one, two, four and seven from the list above are ineffective assistance of trial counsel claims, and issue eight is an ineffective assistance of appellate counsel claim.  They will be addressed in this section.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88.  Second, he or she must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong.  *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  *Strickland*, 466 U.S. at 697.

United States District Court

For the Northern District of California

### 1.    Claim One

#### a.    Conflict

In his statement of his first issue Petitioner contends that counsel was ineffective because she suffered from a conflict.  In the statement of facts that follows that headline statement of the issue, however, he also discusses counsel's failure to raise an intoxication defense, her failure to interview witnesses, and her failure to use Petitioner's hand injuries as a defense.  Petitioner also raised the hand injury and the intoxication defense claims as separate issues, so they are discussed in the appropriate sections for those claims below; the other points will be briefly addressed in this section.

The Sixth Amendment guarantee of assistance of counsel includes a right to counsel's undivided loyalty.  *Wood v. Georgia*, 450 U.S. 261, 271-72 (1981).  A criminal defendant accordingly is entitled under the Sixth Amendment to an effective attorney who can represent him competently *and* without conflicting interests.  *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).

Petitioner contends that his counsel "misrepresent[ed] [his] culpability in order to protect others."  (Pet. at 27.)  An "actual conflict of interest" only occurs when counsel "actively represented conflicting interests."  *Strickland*, 466 U.S. at 692.  A theoretical or potential conflict is insufficient to constitute actual conflict; instead counsel must have actively represented conflicting interests.  *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001); *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991).  A petitioner must prove an actual conflict through a factual showing in the record.  *Bragg*, 242 F.3d at 1087; *Morris*, 966 F.2d at 455.

Petitioner has completely failed to provide facts that would support his contention that his counsel suffered from a conflict.  He provides vague and conclusory allegations that counsel's representation was affected by her desire to protect higher-up gang members, but there is absolutely no evidence of this.  He thus has failed to establish the factual basis for this claim, and it is without merit.

///

United States District Court

For the Northern District of California

### b.      Failure to Interview Witnesses

Petitioner also contends in this issue that counsel failed to interview witnesses. Petitioner says that counsel should have interviewed "Dan," identified as the owner of a red Chrysler, and "Norteno East Bay Locos members."  He does not, however, say what these purported witnesses would have said and how it would have made it reasonably probable that there would be a different outcome.  He thus has failed to establish that counsel's performance was deficient or that he was prejudiced.  This claim is without merit.  *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001) (defendant's mere speculation that witness might have given helpful information if interviewed not enough to establish ineffective assistance).

### 2.      Claim Two –  Evidence of Injury to Hand

In his second claim, Petitioner contends that counsel was ineffective in not arguing that injuries to his hand and arm made it physically difficult or impossible for him to have committed the shooting, and in failing to use this to obtain a plea bargain.

Petitioner alleges that on September 20, 2000, he accidently shot himself in the hand. (Pet. at 30.)  The bullet traveled into his forearm and did not exit.  (*Id.*)  He was treated at a hospital, where a fixation screw was inserted to repair his injured wrist.  (*Id.*)  The murder of which Petitioner was convicted occurred on October 17, 2000, about a month after Petitioner's shooting accident.

Petitioner contends that the "exclusion" of evidence of the injury violated his rights, but in fact evidence of it was not excluded.  Defense counsel referred to it in her opening (RT 1263), and Petitioner's ex-girlfriend testified about it (RT 1847-49), as did a Contra Costa County sheriff's deputy (RT 2283-84).  It may be that Petitioner is confusing admission of evidence of the accidental shooting with evidence that *was* excluded, that he lied to the deputy investigating the accidental shooting, telling the deputy that someone else had shot him.  (RT 2284-85.)  Counsel's success in excluding that bit of information was not, of course, deficient performance.

///

9

United States District Court

For the Northern District of California

1    It also may be that Petitioner is trying to argue that counsel was ineffective in not

2    relying upon his injury as support for his innocence.

3    It is true that counsel did not mention the earlier injury in closing, much less

4    forcefully argue that he would have been physically incapable of shooting the victim.

5    This decision – whether to risk emphasizing Petitioner's possession of the gun and what

6    Respondent calls his "irresponsible" use of it – is quintessentially a tactical one, and

7    Petitioner has not overcome the presumption that it was sound trial strategy. *See*

8    *Strickland*, 466 U.S. at 689 (court considering ineffective assistance of counsel claim

9    "must indulge a strong presumption that counsel's conduct falls within the wide range of

10   reasonable professional assistance; that is, the defendant must overcome the presumption

11   that, under the circumstances, the challenged action might be considered sound trial

12   strategy."); *Brodit v. Cambra*, 350 F.3d 985, 994 (9th Cir. 2003) (state court reasonably

13   concluded that trial attorney provided effective assistance of counsel where attorney

14   declined to present evidence favorable to defense out of concern that it would open door

15   to unfavorable evidence).  Counsel's decision not use the argument could not be deficient

16   performance.

17   Furthermore, counsel's failure to use the argument was not prejudicial.  As the

18   court of appeal said in finding no prejudice from admission of a "dog scent" lineup:

19   We concur in appellant's assessment that the
     eyewitness descriptions and identification testimony in this
20   case were less than compelling.  What appellant's argument
     overlooks, however, is that the prosecution had additional,
21   much more persuasive evidence upon which to rely in
     identifying appellant as the perpetrator of the murder.  The
22   cartridges found at the murder scene, as well as those from
     the car wash shooting, were shown to have been fired from
23   appellant's distinctive gun, which matches Lancaster's
     description of the shooter's weapon.  Smith's testimony
24   linked appellate to the clothing that was found lying near the
     gun.  Appellant was arrested, with gunshot residue on his
25   hands, in the neighborhood toward which the shooter fled the
     scene, near the location where the gun and clothing were
26   abandoned.  No other person matching the shooter's
     description was seen in the area by any of the responding
27   police officers or other witnesses.

28

1  (Ex. 6 at 9.)  Given this evidence, it was not reasonably probable that the case would have

2  had a different outcome had counsel used the argument.

3      For these reasons, counsel was not ineffective in failing to use the injury evidence

4  more extensively.[2]

5          ### 3.  Claim Four – Intoxication

6      In Petitioner's claim numbered "(4)" in the list above, which was his fifth claim in

7  the petition, he contends that counsel was ineffective in failing to present a defense of

8  intoxication or mental illness.  He contends that counsel should have argued that his

9  intoxication made the crime involuntary manslaughter, not murder.  (Pet. at 43-45.)

10     Respondent correctly contends that this claim is not exhausted.  Although the court

11  cannot grant relief on a claim that is unexhausted, such a claim can be denied.  *See* 28

12  U.S.C. § 2254(b)(2).  That will be done here.

13     Counsel must be afforded wide discretion in  abandoning inconsistent or

14  unsupported defenses.  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

15  Petitioner's defense at trial was that he was not even present at the scene, a contention

16  which would be inconsistent with a voluntary intoxication defense.  Although alterative

17  defenses are in theory possible, wise counsel would be understandably reluctant to

18  present an "I didn't do it, and if I did, I was high" defense.  Counsel's tactical decision

19  here was not ineffective.[3]  *See Bean v. Calderon*, 163 F.3d 1073, 1081-82 (9th Cir. 1998)

20

21      [2] In this issue Petitioner also presents the unrelated claim that counsel was
ineffective in not informing him that the prosecution had made a  plea offer, or in not
22  asking for one.  There is no evidence in the record that a plea offer was made, or that
counsel failed to inform Petitioner of any plea offer, or that she did not try to negotiate
23  one.  This claim is summarily denied.  *See* Rule 4, Rules Governing § 2254 Cases in
the United States District Courts, 28 U.S.C. foll. § 2254.

24

25      [3] California has abolished by statute the defenses of intoxication and diminished
capacity, *see* Cal. Penal Code §§ 22, 28(b), but voluntary intoxication short of
26  unconsciousness still can negate the express malice element of murder.  *See People v.
Turk*, 164 Cal. App. 4th 1361, 1374-78 (2008).  It cannot, however, be used to reduce
27  implied malice murder to manslaughter.  *Id.*  In consequence, the case upon which
Petitioner relies, *People v. Weber*, 228 Cal. App. 3d 1146 (1991), no longer is good
28  law to the extent it held that an instruction on involuntary manslaughter must be given

1   (counsel not ineffective in failing to present diminished capacity defense when main

2   defense theory was the inconsistent one of alibi).

### 4.   Claim Seven – Failure to File Motion to Dismiss

4       Section 246 of the California Penal Code establishes the offense of discharging a

5   firearm at an occupied motor vehicle, one of the offences of which Petitioner was

6   convicted.  In its order to show cause the Court characterized this issue as being "trial

7   counsel was ineffective in failing to object to, seek discovery of, or move to dismiss the

8   charges under California Penal Code § 246."

9       Habeas corpus petitions must meet heightened pleading requirements.  *McFarland*

10  *v. Scott*, 512 U.S. 849, 856 (1994).  An application for a federal writ of habeas corpus

11  filed by a prisoner who is in state custody pursuant to a judgment of a state court must

12  "specify all the grounds for relief which are available to the petitioner ... and shall set

13  forth in summary form the facts supporting each of the grounds thus specified."  Rule

14  2(c), Rules Governing § 2254 Cases.  "'[N]otice' pleading is not sufficient, for the

15  petition is expected to state facts that point to a 'real possibility of constitutional error.'"

16  Rule 4 Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir.

17  1970).  "Habeas petitions which appear on their face to be legally insufficient are subject

18  to summary dismissal."  *Calderon v. United States Dist. Court (Nicolaus)*, 98 F.3d 1102,

19  1108 (9th Cir. 1996) (Schroeder, J., concurring).  To the extent Petitioner claims that his

20  rights were violated by counsel's "failing to object to [and] seek discovery of" the Section

21  246 charges, his failure to provide any facts on these points or an explanation of the

22  claims is fatal to them under the above standard.

23      As with many of his claims, Petitioner's claim seven is a nearly incomprehensible

24  mishmash of various allegations.  However, it appears that the heart of this claim is a

25  contention that counsel failed to move to dismiss the Section 246 charge on grounds he

26  was not arraigned within the time required by California law.  *See* Cal. Penal Code §§

27

28  when a defense of voluntary intoxication is raised.  *Turk*, 164 Cal. App. 4th at 1376-
    77 (discussing *Weber*).

**United States District Court**
For the Northern District of California

825(a) ("[T]he defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays;" 849(a) ("When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.").

A lawyer need not file a motion that he or she knows to be meritless on the facts and the law.  Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion.  *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005); *see also Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under *Strickland* from failure to file a motion, petitioner must show that (1) had counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to the petitioner).

Ordinarily, noncompliance with the speedy arraignment statutes goes to the legality of the detention, not the legality of the prosecution, so is not grounds for dismissal of charges under California law.[4]  *People v. Valenzuela*, 86 Cal. App.3d 427, 430-31 (Cal.1978).  It is apparent that if counsel had moved to dismiss on speedy arraignment grounds the motion would have been denied.  That is, counsel was not ineffective, and Petitioner was not prejudiced.  This claim is without merit.

### 5.    Claim Eight – Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  *See*

---

[4] If a speedy arraignment claim is raised *after* conviction, the violation may be grounds for reversal if the defendant can show that he or she was prejudiced by the delay.  *Id.*  Here, of course, Petitioner's contention is that counsel should have moved to dismiss the charges *before* conviction, where it appears the rule is as stated above, i.e., the delay is not grounds for dismissal.  In any event, he does not allege or show prejudice.

*Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*, 466 U.S. 668.  *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849).

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  *Id.* at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he or she declined to raise a weak issue.  *Id.*

Because the Court determines in this ruling that all of Petitioner's other claims lack merit, his appellate counsel's failure to raise them on appeal was neither deficient nor prejudicial under the *Strickland* standard.  Consequently, Petitioner did not receive ineffective assistance of counsel on appeal, and he is not entitled to habeas relief on this claim.

**B.    *Brady* Claim**

In his third claim, Petitioner asserts that the prosecutor withheld exculpatory evidence.  As with his other issues, this one includes claims unrelated to the ostensible subject of the claim, and is in general difficult to understand.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.  The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v.*

United States District Court

For the Northern District of California

*Bagley*, 473 U.S. 667, 676 (1985).  Evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682.  "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The prosecution has a duty to learn of, and disclose, any exculpatory evidence known to others acting on the government's behalf. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).

Delays in disclosure of *Brady* material do not deprive an accused of due process, such as where disclosure is made as late as the pretrial conference, *see Reiger v. Christensen*, 789 F.2d 1425, 1432 (9th Cir. 1986), or even during trial where the disclosure, though tardy, is still of value to the accused, *see United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995); *see also United States v. Ruiz*, 536 U.S. 622 (2002) (due process does not require disclosure of identity and impeachment evidence regarding government informants early in pretrial proceedings).  Due process requires only the disclosure of exculpatory material in sufficient time to permit defendant to make effective use of the material. *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987).

Prejudice will be found from a *Brady* violation if the prosecutor's non-disclosure of favorable evidence caused the defendant to receive an unfair trial, that is, if the missing evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *See Kyles*, 514 U.S. at 434-35.

One of Petitioner's claims in this section of his petition is that the prosecution should have preserved evidence of his hand injury, such as by taking photographs of it. (Pet. at 35.)  This is, of course, not a *Brady* claim, but is a claim that evidence was not created and then preserved.  Although it is true that the government has a duty to preserve

United States District Court

For the Northern District of California

material evidence, *California v. Trombetta*, 467 U.S. 479, 489 (1984), it does not have a duty to create it.  This claim is without merit.

Petitioner also asserts that the prosecution withheld information by "telling [Albert Melton] not to talk to [the] public defender."  (*Id.*)  The record, however, establishes that Melton was not told that he could not speak with the public defender's investigator, but that he "didn't have to."  (CT (preliminary hearing transcript) at 327-28.)  This claim is rejected.

Petitioner also refers to a mysterious "suspect Dan," but does not say who this was or what the prosecution knew about him that it did not disclose.  His apparent contention that the prosecution failed to compare some hairs found on clothing to Dan's hair is not a claim that evidence was not turned over, but rather that the prosecution did not *create* evidence for the defense.  The Ninth Circuit has held that a bad faith failure to collect exculpatory evidence can be a violation of due process, but noted in doing so that no Supreme Court case has so held.  *Miller v. Vasquez*, 868 F.2d 1116, 1120-21 (9th Cir.1989); *see* also *Cunningham v. Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003) (citing *Miller*); *White v. Tamlyn*, 961 F.Supp. 1047, 106 n.12 (E.D. Mich.1997) (describing *Miller* as "an aberration" and noting that an obligation to collect exculpatory evidence is not "clearly established" for habeas purposes).

Two indicia of bad faith on the part of the police are "official animus" and a "conscious effort to suppress exculpatory evidence."  *Trombetta*, 467 U.S. at 488. Plaintiff must "put forward specific, nonconclusory factual allegations that establish improper motive."  *Gausvik v. Perez*, 345 F.3d 813, 818 (9th Cir.2003); *People of Territory of Guam v. Muna*, 999 F.2d 397, 400 (9th Cir.1993) (stating that plaintiff bears the burden of showing the government's bad faith).

Petitioner has failed to make showing, or even allegation, of bad faith, and even if he had, failure to collect evidence could not be grounds for habeas relief here because no such obligation is clearly established by Supreme Court authority.  This claim is rejected.

Petitioner also contends in this claim that "suspect Dan, who owns a red Chrysler,"

United States District Court

For the Northern District of California

was not "put in a photo lineup," brought into court, or had his hair compared to unidentified samples from Petitioner's clothing. (Pet. at 35-36.) This again is a claim that the police and prosecutors failed to develop defense evidence, and for the reasons set out above it also fails.

Petitioner also contends that "nurse Vicki" observed his injury from the gun accident when she arrived to draw blood, and that she was not listed as a witness by the prosecution and her information "was withheld." Petitioner obviously was aware of her presence and could have called her as a witness had he wished, and he does not say what information was withheld. This claim is frivolous. *See United States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986) (defendant cannot claim *Brady* violation if"aware of the essential facts enabling him to take advantage of any exculpatory evidence.").

Petitioner also contends that the prosecution elicited perjured testimony from Smith, his girlfriend. (Pet. at 37-38.) This is, of course, not a *Brady* claim, but leaving that aside, Petitioner has failed to provide anything more than his conclusory statement that the testimony was false. This is not sufficient. *See* Rule 4 Advisory Committee Notes (petition is expected to state facts that point to a 'real possibility of constitutional error,'" quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)); *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (for *Agurs/Napue* claim the "petitioner must show that [] the testimony (or evidence) was actually false"). This claim is rejected.

### C.    Jury Misconduct

As in his other claims, in this one Petitioner asserts a number of grounds for relief. One of them is that the jury was biased because there were no Mexican-Americans on it, citing *Batson v. Kentucky*, 476 U.S. 79 (1986).

Petitioner did not make a *Wheeler/Batson* motion at the time the jury was empaneled, nor did he raise the issue on direct review.[5] His state habeas petition in the

---

[5] *People v. Wheeler*, 22 Cal. 3d 258 (1978), is a California state case analogous to the federal case of *Batson v. Kentucky*, 476 U.S. 79 (1996), which held that purposeful discrimination in the jury selection process violates the Equal Protection Clause of the Fourteenth Amendment  *Paulino v. Castro*, 371 F.3d 1083, 1088 n.4 (9th Cir. 2004).

United States District Court

For the Northern District of California

Supreme Court of California, however, has an issue labeled "Jury Misconduct" in which he does not argue that the strikes were discriminatory, but does cite *Batson*.  (Ex. 11 at 13.)  That may have been sufficient to fairly present the claim.  *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) (holding that a federal claim can be fairly presented by citation to state cases analyzing the federal issue).

The California Supreme Court denied the petition as follows:  "The petition for writ of habeas corpus is denied. (See *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1965) 9 Cal.4th 464, 474; *In re Dixon* (1953) 41 Cal.2d 756; *In re Lessard*, (1965) 62 Cal.2d 497, 503 (1965); *In re Waltreus* (1965) 62 Cal.2d 218; *In re Lindley* (1947) 29 Cal.2d 709."  (Ex. 12 at 1.)  Because it is not possible to determine which of the procedural grounds represented by the supreme court's citations applies to which issue in the petition, it cannot be said that the *Batson* claim was procedurally defaulted. *See Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1131 (9th Cir. 1996) (California Supreme Court order that did not specify which of 39 claims was barred by which of several state rules considered ambiguous and therefore insufficient to preclude federal collateral review).  This does, however, leave the question whether a timely objection in trial court is an essential part of a *Batson* claim.

*Batson* itself speaks of a "timely objection."  *Batson*, 476 U.S. at 99 (declining to "formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges").  Then in *Ford v. Georgia*, 498 U.S. (1991), the Supreme Court said that it would be "a sensible rule" to require that a *Batson* claim be raised in the period between the selection of the jurors and the administration of the oath, but "declined ... to decide when an objection must be made to be timely ..., recogniz[ing] that local practices would dictate proper deadlines in the contexts of the various procedures used to try criminal cases, and [leaving] it to the trial courts, with their wide 'variety of jury selection practices,' to implement *Batson* in the first instance."  *Id*. at 423 (quoting

18

United States District Court

For the Northern District of California

1   *Batson*, 476 U.S. at 99 n. 24).  The reference in this sentence to the "trial courts" makes

2   clear that although the Supreme Court left it to local practices to set deadlines for the

3   assertion of a *Batson* objection at trial, the Court envisioned that a "timely" objection

4   would occur in the trial court, not in subsequent appellate or collateral proceedings.

5   Petitioner's failure to make a *Batson* motion in trial court therefore is fatal to his claim.

6   *See McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996) ("failure to object to the

7   discriminatory use of peremptory challenges prior to the conclusion of jury selection

8   waives the objection."); *Wilkerson v. Collins*, 950 F.2d 1054, 1063 (5th Cir.1992)

9   ("Wilkerson's failure to timely object at trial is a constitutional bar to his Batson

10  challenge."); *Thomas v. Moore*, 866 F.2d 803, 804 (5th Cir. 1989) (timely objection is

11  "requisite to a Batson claim"); *Jones v. Butler*, 864 F.2d 348, 369 (5th Cir.1988) ("a

12  contemporaneous objection to the use of peremptory challenges to exclude jurors on the

13  basis of race is a necessary predicate to later raising a *Batson* claim").

14       Petitioner also accuses the jury of misconduct in talking to the press.  (Pet. at 46.)

15  He says that a juror told a newspaper that the testimony of his former girlfriend did not

16  play a role in the verdict, "when it did."  (*Id.*)  Because the statement to the press occurred

17  after the verdict, and because there is no reason the testimony should not have been

18  considered by the jury, this claim is frivolous.

19       Finally, Petitioner makes conclusory allegations that jurors were biased against

20  him because they all were of a different social class than he, and some were military

21  veterans, knew police officers, feared gangs, or, in the case a nurse, had once preserved

22  gunshot residue evidence in another case.  (Pet. at 46-48.)

23       Defendants in criminal trials have a Sixth Amendment right to a verdict by

24  impartial jurors.  *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1982).  There are two

25  kinds of bias recognized as potential Sixth Amendment violations: actual bias and implied

26  bias.  *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008).  Here, there is no

27  evidence, just Petitioner's speculations, that the jurors harbored bias in fact.  And implied

28  bias arises only in extreme circumstances.  The Ninth Circuit has summarized the extreme

United States District Court

For the Northern District of California

1  circumstances it has recognized as potentially giving rise to implied bias:

2  (1) where the juror is apprised of such prejudicial information about the
   defendant that the court deems it highly unlikely that he can exercise
3  independent judgment even if the juror states he will, (2) the existence of
   certain relationships between the juror and the defendant, (3) where a juror
4  or his close relatives have been personally involved in a situation involving
   a similar fact pattern, and (4) where it is revealed that the juror is an actual
5  employee of the prosecuting agency, that the juror is a close relative of one
   of the participants in the trial or that the juror was a witness or somehow
6  involved in the underlying transaction.

7  *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1062 (9th Cir.1997).  None of these

8  situations is present here.

9  Petitioner thus has failed to show bias on the part of the jurors.

10  None of the various contentions raised in this claim have merit.

11  **D.     Scent Lineup**

12  Petitioner also alleges that "the trial court abused its discretion" in admitting what

13  he calls "scent discrimination lineup" evidence.  The court of appeal set out the

14  background:

15  On the evening of October 17, 2000, the day of the murder, a dog
   handler and her bloodhound were asked by police to conduct a procedure
16  known as a "scent lineup."  The canine in question had participated
   successfully in scent lineups during numerous training sessions, but had
17  also sometimes identified an incorrect person before being prompted to try
   again, and then identifying the correct person.
18  During the scent lineup conducted in this case, appellant and three
   randomly selected deputy sheriffs stood at locations equidistant from a
19  central point.  The dog was places at the central point, where she sniffed an
   open plastic bag containing the sweatshirt found at 40 Sharon Drive.  The
20  dog then smelled each of the men participating in the lineup, and, according
   to her handler's interpretation of her actions, identified appellant as the
21  person whose scent matched the scent emanating from the bag.

22  (Ex. 6 at 7-8.)

23  Petitioner contends here, as he did on direct appeal, that the trial court erred in

24  denying his motion to exclude the evidence as not generally accepted in the relevant

25  scientific community under California's *Kelly-Frye* test.[6]  The court of appeal rejected the

26  _____

27  [6] So called after *People v. Kelly*, 17 Cal.3d 24, 30-32 (1976), in which
   California reaffirmed its adherence to what was then the federal test for admission of
28  scientific evidence, as set out in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir.
   1923).  The test subsequently was superceded by statute in California as to polygraph
   tests, but apparently not as to other scientific evidence.  *See People v. Wilkinson*, 33

1    claim on the ground that any error was not prejudicial.  (Ex. 6 at 7-9.)

2         This claim is without merit for several reasons.  For one thing, the state court's

3    failure to apply the *Kelly/Frye* rule, a state evidentiary rule, cannot be the basis for federal

4    habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas

5    unavailable for violations of state law or for alleged error in the interpretation or

6    application of state law).  For another, if construed as a federal due process claim it has

7    not been exhausted, so although it can be denied, it cannot be granted.  *See* 28 U.S.C. §

8    2254(b)(2).  And finally, if construed as a general claim that it was a violation of due

9    process to admit the evidence, it cannot be the basis for habeas relief.  *See Holley v.*

10   *Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of

11   irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit

12   precedent but not contrary to, or an unreasonable application of, clearly established

13   Federal law under § 2254(d), hence not a proper basis for habeas relief).

14        **E.      Gang Firearm Count**

15        Petitioner contends that the trial court erred in failing to grant a motion for

16   acquittal under California Penal Code § 111.8.1 with respect to the street gang firearms

17   count, and that the jury instructions on the street gang firearms count was deficient.  Both

18   of these claims, which are numbered eleven and twelve in the list above, are based on his

19   contention that an element of the offense is that the firearm was carried in connection

20   with a gang activity – what the court of appeal called the "gang connection element."

21   (Ex. 6 at 10.)

22        This claim was raised on direct appeal and is the subject of the published portion

23   of the court of appeal opinion in Petitioner's case.  The court of appeal explained the

24   background (the footnotes are in the original):

25             Appellant was charged with four counts of firearm offenses, based

26   ─────────────────────────

27   Cal. 4th 821, 844-46 (2004).  The *Frye* test was superceded as to admissibility of
     scientific evidence in federal courts by the test announced in *Daubert v. Merrell Dow*
28   *Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

on allegations that during both the car wash shooting and the murder, he carried a concealed and loaded firearm.  Each of these counts was charged as a felony on the basis of California statutes which we will refer to as the street gang firearm statutes.  (§ 12025, subds. (a), (b)(3) [concealed firearm] (§ 12025(b)(3)); § 12031, subd. (a)(2)(C) [loaded firearm] (§ 12031(a)(2)(C).)  Each of these statutes makes the proscribed firearm possession a felony where the perpetrator "is an active participant in a criminal street gang, as defined in subdivision (a) of [s]ection 186.22 ...."[7] (§§ 12025(b)(3); 12031(a)(2)(C).)

The prosecution presented ample evidence that appellant met the statutory definition of an active participant in a criminal street gang.[8]FN8 and appellant does not argue otherwise on appeal.  Likewise, appellant does not challenge respondent's assertion that his participation in a criminal street gang was with knowledge that the gang's members had engaged in a pattern of criminal gang activity, and that, at least at some point in time, he willfully promoted, furthered, or assisted in felonious conduct by gang members.  Rather, he contends that the street gang firearm statutes require that the firearm offenses themselves be committed in connection with the defendant's active participation in a criminal street gang.  Based on this interpretation, appellant contends his firearm convictions must be reversed, because this element of the offenses was not established.

In effect, appellant seeks to add what we will refer to as a "gang connection element" to the street gang firearm statutes.  His argument is essentially that the relevant provision in each statute-"[w]here the person [who possesses the firearm] is an active participant in a criminal street gang" (§§ 12025(b)(3), 12031(a)(2)(C), italics added)-should be construed to mean something more specific-"where the person [who possesses the firearm] commits such possession in connection with the person's status as an active participant in a criminal street gang."

Appellant raises this argument in two separate procedural contexts.  He argues that (1) his motion for acquittal on the street gang firearm charges, made at the close of the prosecution's case under section 1181.1,

---

[7] Section 186.22, subdivision (a) (§ 186.22(a)) provides as follows: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

[8] This evidence included appellant's own statements to Smith that he was a gang member; Smith's testimony that appellant had engaged in a verbal altercation with a group of men wearing the color of a rival gang, and had pointed his gun at them and fired a shot in the air to chase them away; appellant's numerous tattoos indicating affiliation with the Norteno gang; and the presence in appellant's bedroom of gang graffiti and photographs of appellant with gang members. The prosecution also called a gang expert who testified that appellant had been "validated" by the police as a Norteno gang member in 1996, and described the nature, culture, and violent criminal behavior of the Norteno gang.

should have been granted, because the prosecution presented no evidence of the gang connection element; and (2) his conviction on the street gang firearm counts should be reversed because the jury was not instructed that it had to find the gang connection element in order to convict appellant on these counts.

Respondent contends that, even if appellant were correct in his statutory analysis, the prosecution presented sufficient evidence of the gang connection element for the firearm charges to survive appellant's motion for acquittal. As to the gun possession at the time of the murder, respondent argues that the gang connection element was shown by the fact that the victim was wearing blue, the color associated with the principal rival of appellant's gang. As to the gun possession at the time of the car wash shooting, respondent posits that this crime was committed as part of appellant's gang participation because it was "a manifestation of appellant's violent tendencies," which he "fostered specifically to benefit his gang, and its reputation for toughness."

We need not and do not determine whether respondent's factual conclusions regarding this issue are correct.[9]  Instead, we address and reject appellant's main argument, i.e., that the street gang firearm statutes incorporate a gang connection element.

*People v. Schoppe-Rico*, 140 Cal. App. 4th 1370, 1378-79 (2006).

As the court of appeal noted in the portion of the opinion quoted above, and explained more extensively later in the opinion, Petitioner's interpretation of state law is incorrect. There is no "gang connection element" to the street gang firearms offenses. *Id.* at 1383. Crucially, this holding as to state law is binding on this court in ruling on a federal habeas petition. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Although the first of Petitioner's issues involving this point is a contention that there was no evidence to support the firearms charges, that contention is dependent not on the state of the evidence but on his contention that there is a "gang connection element."

---

[9] As evidence that the color of the victim's clothing was the motive for the murder, respondent cites the opinion of the prosecution's gang expert. The expert's testimony about the color of the victim's clothing, however, was offered as one of a number of facts supporting the expert's opinion that appellant was still an active gang participant at the time of the murder. The expert was not asked to, and did not, render an opinion that the possession of the murder weapon, or the murder itself, for that matter, were committed in connection with appellant's gang participation. As for respondent's argument proposing a connection between appellant's gang participation and the car wash shooting, it arguably proves too much. If accepted, it would mean that every violent crime committed by a gang member, no matter how far removed from the perpetrator's gang activities, is ipso facto committed as part of the perpetrator's participation in a gang.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    That is, he contends that there was no evidence that his carrying the firearm was

2    connected to gang activity, so his motion to acquit on those charges should have been

3    granted.  But given that the predicate of this claim is wrong – that is, there is no "gang

4    connection" requirement – the federal habeas claim necessarily is without merit.  And the

5    second of his claims involving this point, that the jury should have been instructed about

6    the "gang connection element," is equally wrong.  These claims are rejected.

7    **F.    Sufficiency of the Evidence**

8        Petitioner contends that there was insufficient evidence of premeditation and

9    deliberation.  This claim was presented on direct review.  In rejecting it, the court of

10   appeal said:

11       In addition to his other arguments challenging his murder conviction,
     appellant contends that the evidence of premeditation and deliberation is
12   insufficient to support his conviction for first degree murder.  In assessing
     appellant's challenge to the sufficiency of the evidence, we are required to "
13   'review the whole record *in the light most favorable to the judgment below*
     to determine whether it discloses substantial evidence—that is, evidence
14   which is reasonable, credible, and of solid value—such that a reasonable
     trier of fact could find the defendant guilty beyond a reasonable doubt.' "
15   (*People v. Hawkins* (1995) 10 Cal.4th 920, 955, italics added, overruled on
     other grounds by *People v. Blakeley* (2000) 23 Cal.4th 82, 89, and *People v.*
16   *Lasko* (2000) 23 Cal.4th 101, 110; accord, *Jackson v. Virginia* (1979) 443
     U.S. 307, 319.)

17
     [Further discussion of California law omitted.]
18
         Appellant's sufficiency of the evidence argument stresses several
19   facts which he contends militate against a finding of premeditation and
     deliberation.  First, the weight of the evidence indicated that appellant was
20   angry and agitated on the morning of the murder due to his earlier domestic
     dispute with Smith.  Second, the shooting occurred in the presence of
21   several eyewitnesses, which appellant argues undercuts the inference that
     the murder was deliberately planned.  Finally, the only arguable evidence of
22   motive offered by the prosecution was the fact that the victim was wearing
     the color associated with a rival of appellant's gang.

23
         These facts, however, are not so inconsistent with premeditation and
24   deliberation as to require us to conclude that a reasonable jury could not
     have found appellant guilty of first-degree murder.  On the other side of the
25   evidentiary balance, the jury had the following additional facts to consider.

26       During appellant's altercation with Smith earlier in the morning on
     the day of the murder, appellant threatened Smith by saying, "Don't make
27   me get my gun."  When Smith still refused to come home with appellant, he
     responded by saying, "That's it. I'm getting my gun. You did it now. I'm
28   getting my gun."  The jury could reasonably have concluded that during the

interval of about half an hour between appellant's utterance of these threats and his murder of Taylor, appellant formulated the intent of using his gun to commit a violent assault; went back to his house and collected it; proceeded to the bus stop with that purpose in mind; and then carried out his intent by firing several shots at close range at a victim selected on the spot. This fact pattern indicates planning activity, and thus is entirely consistent with a finding of premeditation and deliberation, even if the ultimate target of appellant's murderous intent was not selected until the last minute. (See *People v. Francisco* (1994) 22 Cal.App.4th 1180, 1191-1192 [evidence that defendant gang member obtained gun in order to shoot someone, drove around looking for someone to shoot, and then fired several shots at close range at group of people wearing colors of rival gang, was sufficient to support finding of premeditation and deliberation].)

Furthermore, appellant's notebook, which was seized in a search of his home shortly after the murder, contained writings which the prosecution's gang expert testified referred to killing members of the rival Sureno gang, whose color was blue—the color Taylor was wearing when he was killed. This evidence clearly bears on the factors of planning activity and motive, and although we did not find it particularly persuasive in establishing that appellant was in fact the shooter, it carries significantly more weight on the question whether, assuming appellant was the shooter, his crime was characterized by premeditation and deliberation. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 849 [" 'A studied hatred and enmity, including a preplanned, purposeful resolve to shoot anyone in a certain neighborhood wearing a certain color, evidences the most cold-blooded, most calculated, most culpable, kind of premeditation and deliberation.' [Citation.]" (Italics omitted)].)

Finally, Melton testified that he and Taylor did not interact with appellant prior to the shooting, and there was no evidence that they did anything to provoke him. Rather, appellant pulled out his gun without warning; fired repeatedly, first at Melton and Taylor and then at Lancaster; and then simply walked away. The evidence that appellant fired multiple shots at several different people, without any apparent provocation, and then left the scene at a walking pace, also supports the jury's finding that appellant acted with premeditation and deliberation, based on the manner of killing. (See *People v. Francisco*, supra, 22 Cal.App.4th at pp. 1191-1192; cf. *People v. Hawkins*, supra, 10 Cal.4th at pp. 956-957 [evidence that victim was killed "execution-style" by shots to the head from above supported conviction of premeditated murder, even where evidence of planning and motive was minimal or absent].)

Given the state of the record, as outlined above, the applicable standard of review constrains us to reject appellant's sufficiency of the evidence challenge to his first-degree murder conviction. Although the evidence of premeditation and deliberation in this case "was admittedly not overwhelming, . . . 'we need not be convinced beyond a reasonable doubt that defendant premeditated the murder[]. The relevant inquiry on appeal is whether " 'any rational trier of fact' " could have been so persuaded.' [Citations.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 546.) Accordingly, we reject appellant's contention that the evidence is insufficient to support his conviction of first-degree murder.

(Ex. 6 at 17-20.)

25

United States District Court

For the Northern District of California

1   The Due Process Clause "protects the accused against conviction except upon

2   proof beyond a reasonable doubt of every fact necessary to constitute the crime with

3   which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who

4   alleges that the evidence in support of his state conviction cannot be fairly characterized

5   as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt

6   therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979),

7   which, if proven, entitles him to federal habeas relief, *id*. at 324.  The federal court

8   determines only whether, "after viewing the evidence in the light most favorable to the

9   prosecution, any rational trier of fact could have found the essential elements of the crime

10  beyond a reasonable doubt." *Id*. at 319.  Only if no rational trier of fact could have found

11  proof of guilt beyond a reasonable doubt, may the writ be granted.  *Id*. at 324.  When

12  considering a sufficiency of the evidence claim the Court must "view[] the evidence in

13  the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, so must assume

14  that the jury believed the witnesses.

15      Decisive for this issue is that California law, as determined by the court of appeal

16  and binding on this court, does not require that proof of the deliberation and

17  premeditation element of first degree murder be proof that the defendant premeditated

18  and deliberately committed the murder of any particular person, or of the person

19  ultimately killed.  (Ex. 6 at 19.)  *See Bradshaw v. Richey*, 546 U.S. at 76 (state appellate

20  court's holding interpreting state law binding on subsequent federal habeas court).  The

21  *Jackson* standard must be applied with reference to the applicable state law.  *Sarausad v.*

22  *Porter*, 479 F.3d 671, 678-79 (9th Cir. 2007) (noting that state law controls what there

23  must be substantial evidence of).  Because it is clear from the facts as set out by the court

24  of appeal that Petitioner lingered at the intersection – and indeed went there – with the

25  premeditated and deliberate intention of killing *someone*, there was sufficient evidence

26  for a rational jury to find that he was guilty of first degree murder beyond a reasonable

27  doubt.

28      This claim is without merit.

United States District Court

For the Northern District of California

### III.   Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  Also, Petitioner has filed a motion for a certificate of appealability, although at the time he filed it there was, of course, no final judgment.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal).  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  *See id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).

This was not a close case.  For the reasons set out above, jurists of reason would not find the result debatable or wrong.  A certificate of appealability will be denied.  Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a), Rules Governing § 2254 Cases.

### CONCLUSION

The petition for a writ of habeas corpus is DENIED.  Petitioner's motion for a certificate of appealability (document number 34) is DENIED.  A certificate of appealability is DENIED.  The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED:  November 15, 2010.

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

G:\JSWALL\Pro-Se Prisoner\2007\Schoppe-Rico5416.RUL.wpd

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOHN M. SCHOPPE-RICO,

        Plaintiff,

  v.

ROBERT A. HOREL et al,

        Defendant.

_____/

Case Number: CV07-05416 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 15, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

John M. Schoppe-Rico V-11328
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: November 15, 2010

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

**United States District Court**
For the Northern District of California